# EXHIBIT 7

1  Patrick R. Kitchin, Esq. (SBN 162965)
   THE LAW OFFICE OF PATRICK R. KITCHIN
2  565 Commercial Street, 4th Floor
   San Francisco, CA 94111
3  Telephone: (415) 677-9058
   Facsimile: (415) 627-9076
4  Attorneys for Plaintiffs

5  Daniel Feder (State Bar No. 130867)
   THE LAW OFFICES OF DANIEL FEDER
6   807 Montgomery Street
   San Francisco, CA 94133
7  (415) 391-9476

8  Counsel to Ann Otsuka, Janis Keefe, Corinne Phipps,
   and Justin Kiser

9              SUPERIOR COURT OF CALIFORNIA

10        FOR THE CITY AND COUNTY OF SAN FRANCISCO

11 ANN OTSUKA, an individual; JANIS          )  Case No.: CGC-06-452655
   KEEFE, an individual; CORINNE PHIPPS, an  )
12 individual; and JUSTIN KISER, an individual; )  FIRST AMENDED CLASS ACTION
13 and on behalf of all others similarly situated, )  COMPLAINT FOR:

14              Plaintiffs,                   )     • FRAUD
                                              )     • FALSE IMPRISONMENT
15        vs.                                 )     • WILLFUL VIOLATIONS OF LABOR
                                              )       CODE §§ 510 AND 204 (FAILURE TO
16 POLO RALPH LAUREN CORPORATION; a )           PAY WAGES EARNED)
   Delaware Corporation; POLO RETAIL, LLC., )  • WILLFUL VIOLATIONS OF LABOR
17 a Delaware Corporation; POLO RALPH     )       CODE § 221
   LAUREN CORPORATION, a Delaware        )     • BREACH OF CONTRACT
18 Corporation, doing business in California as )  • WILLFUL VIOLATIONS OF LABOR
   POLO RETAIL CORP; FASHIONS OUTLET    )       CODE §§ 201, 202 AND 203
19 OF AMERICA, INC., a Delaware Corporation )  • WILLFUL FAILURE TO PROVIDE
   and DOES 1-500, inclusive             )       REST PERIODS
20                                        )     • WILLFUL VIOLATIONS OF LABOR
                                          )       CODE § 226
21              Defendants.               )     • WILLFUL VIOLATIONS OF LABOR
                                                  CODE § 232
22                                              • VIOLATIONS OF BUSINESS AND
                                                  PROFESSIONS CODE §§ 17200, ET
23                                                SEQ.
                                                • UNJUST ENRICHMENT
24                                              • DECLARATORY RELIEF
                                                • RECOVERY UNDER THE PRIVATE
25                                                ATTORNEYS GENERAL ACT

26                                              JURY TRIAL DEMANDED

27                                              Complaint Filed: May 30, 2006

                                                                              1

1    Plaintiffs, individually and on behalf of all others similarly situated, for their

2  complaint against defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail

3  Corp., Fashions Outlet of America, Inc., and Does 1-500, inclusive, allege upon information

4  and belief, except as to the allegations that pertain to Plaintiffs and their counsel, as follows:

5                       <u>JURISDICTION AND VENUE</u>

6  1.    Plaintiff Ann Otsuka is an individual who resides, and at all times relevant has resided,

7  in Santa Clara County, California, who is a citizen of the State of California, and who was

8  employed by Polo Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail,

9  LLC, in Santa Clara County, California, between approximately May 2004 and approximately

10  November 2004.

11  2.    Plaintiff Corinne Phipps is an individual who at all times relevant resided in San

12  Francisco County, California, who is a citizen of the State of California, and who was

13  employed by Polo Retail Corp., and/or Polo Retail, LLC, and/or Polo Ralph Lauren

14  Corporation, in San Francisco County, California, between approximately May 2004 and

15  approximately December 2004.

16  3.    Plaintiff Justin Kiser is an individual who at all times relevant resided in Contra Costa

17  County, California, who is a citizen of the State of California, and who was employed by

18  Fashion Outlets of America, Inc., in San Francisco County, California, between

19  approximately July 2004 and approximately August 2005.

20  4.    Plaintiff Janis Keefe is an individual who at all times relevant resided in San Francisco

21  County, California, who is now a citizen of the State of Kentucky, and who was employed by

22  Polo Retail Corp., Polo Retail, LLC, and/or Polo Ralph Lauren Corporation, in San Francisco,

23  California, between approximately May 2004 and December 2004.

24  5.    Defendant Ralph Lauren Corporation, Inc., is a company organized and existing under

25  the laws of the State of Delaware, and doing business in cities throughout California,

26  including San Francisco.

27  6.    Defendant Polo Retail, LLC, is a company organized and existing under the laws of

<div align="center">2</div>

1  the State of Delaware, and doing business in cities throughout California, including in San
2  Francisco.

3  7.  Polo Retail Corp. is a business of unknown origin and business form, doing business
4  in California, including in San Francisco, as a fictitious business name of Polo Ralph Lauren
5  Corporation.

6  8.  Fashions Outlet of America, Inc., is a corporation organized and existing under the
7  laws of the State of Delaware, and doing business in cities throughout California, including in
8  San Francisco.

9  9.  Plaintiffs lack sufficient information and belief to allege the true names and capacities
10  of defendants sued herein as DOES 1 through 500, inclusive. For that reason, Plaintiffs sue
11  said fictitiously named defendants by such fictitious names. When the true names, nature and
12  capacity of said fictitiously named defendants are ascertained, Plaintiffs shall amend this
13  Complaint accordingly. At all times herein mentioned, all defendants herein, whether named
14  or unnamed were and are responsible and liable to Plaintiffs for all of the plaintiffs' damages
15  and other relief prayed for herein. Plaintiffs allege on information and belief that at all times
16  herein mentioned, each of the defendants herein, whether named or unnamed, was the agent,
17  servant employee, co-conspirator, co-adventurer, and employee of each other defendant
18  herein, whether named or unnamed. With respect to each action and inaction pled in the
19  following paragraphs, each of the defendants, whether named or unnamed, was acting within
20  the full course and scope of their agency and employment and was acting with the full
21  knowledge, consent, ratification and approval of each other defendant herein, whether named
22  or unnamed.

23  10.  This Court has personal jurisdiction over the Defendants, which: (1) conduct business
24  in the State of California through their retail clothing outlets in California; (2) hire and
25  maintain employees in the State of California; and (3) avail themselves of the protection of
26  the laws of the State of California.

27  11.  Venue is proper in this Court because Defendants committed the acts complained of

3

1    herein throughout California, including in San Francisco County.

2    ## NATURE OF THE ACTION—SUMMARY

3    12.    This action is brought by Plaintiffs and all other current and former employees of Polo

4    Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corp., Fashions Outlet of America,

5    Inc., and Does 1-500, in the State of California who have been injured by the conduct of

6    Defendants as alleged herein below.

7    13.    Defendants have engaged in a long-standing practice of violating the employment

8    rights of their employees. Those violations are summarized in this paragraph and are further

9    detailed below.

10        a)   Defendants have engaged and continue to engage in fraud toward their employees.

11            i)   Defendants represent to all of their hourly employees that they will be paid

12                a base wage, representing an hourly wage multiplied by all hours worked,

13                when, in fact, Defendants have instituted two programs that have permitted

14                Defendants to pay employees less than the promised base rate of pay and to

15                take back wages previously paid.  These two programs involve, first, an

16                arrearage program under which Defendants take back wages paid to

17                employees who fail to meet Defendants' unreasonably high sales targets,

18                and, second, a charge back program that permits Defendants to take back

19                wages paid to employees when products they have sold are returned to the

20                store for any reason and at any time. Defendants' employees, including

21                Plaintiffs named herein, relied on these representations, when, in fact, they

22                are false. Defendants do not provide employees with a base rate of pay as

23                Defendants promise in their Sales Associate Handbook at page 4, and at the

24                time the employees are hired, and Plaintiffs and the Class have been

25                injured as a result of Defendants' misrepresentations.

26            ii)  Defendants' falsely promise employees that they will perform at end-of-

27                the-year wage reconciliation to determine which employees are eligible to

                                                                                    4

1  receive premium overtime compensation for worked performed during the
2  entire course of the previous year. (As described herein, the reconciliation
3  constitutes a separate violation of California law relating to the timely
4  payment of wages.) This promise is made to all of Defendants' employees
5  through Defendants' Sales Associate Handbook at page 7. Defendants
6  have failed to fulfill that promise, and/or have performed that reconciliation
7  in a manner inconsistent with California law, all to the detriment of their
8  employees.

9  iii) Defendants represent to all of their employees that they will be permitted to
10  take two 15-minute rest breaks during an eight-hour shift. This
11  representation is made in Defendants' Retail Employee Handbook on page
12  18, which is provided to all employees, and it is also made during the
13  hiring process. Defendants' employees, including Plaintiffs named herein,
14  relied on this representation, when, in fact, it is false. Defendants do not
15  provide employees with rest breaks and Plaintiffs and the Class have been
16  injured as a result of Defendants' misrepresentations.

17  iv) Defendants routinely fraudulently manipulate Plaintiffs' and the Class's
18  time records to keep Defendants' employees from receiving wages for all
19  hours they worked.

20  b) Defendants routinely require all of their employees to perform work "off the
21  clock" for which they are not paid.

22  i) Defendants force employees to clock out of the Defendants' timekeeping
23  system, and/or shut down the timekeeping system, and then require them to
24  perform work without compensation.

25  ii) Defendants require employees at the end of their shifts to stand in line
26  and/or remain in their locked stores, for up to one half hour to undergo a
27  loss prevention search by managers after the employees have clocked out.

5

FIRST AMENDED CLASS ACTION COMPLAINT

They are warned that if they attempt to leave the store through the employee exit, before a manager authorizes them to leave, an alarm will sound, and/or will be unable to leave the stores until a manager unlocks the doors for them. They are warned that they can be disciplined or terminated if they attempt to leave the store through any exit until a manager has conducted his or her loss prevention search at the end of their shift. In short, Defendants' employees are subjected to false imprisonment on a daily basis. They are confined by their supervisors to the interior of their stores for an appreciable period of time each day without compensation under the express and unequivocal threat that they will be fired or reprimanded if they leave the store before a manger inspects them, and/or they are locked inside their stores until a manager releases them. Plaintiffs and the Class are also warned in Defendants' Retail Employee Handbook, at page 26, that all packages and bags are subject to inspection before the employee may exit the store, and that this requirement is "a condition of employment." Defendants thus intend to confine, and do confine, their employees through the unlawful assertion that Defendants have the legal right to detain employees within the stores' premises after the employees' work shifts are over.

iii) Defendants also require their employees to appear for work at a certain hour, or to return to work after a meal break at a certain time, and then make their employees wait for 20 minutes or more outside the store before opening the employee entrance door to permit them to begin or continue working. Employees are not compensated for this waiting time. Defendants' failure to pay their employees for all hours worked amounts in further violations of California's premium overtime compensation laws.

c) Defendants routinely fail to provide their employees with mandatory rest breaks,

6

1    warning employees that they will not sell enough products to meet their sales goals

2    if they waste time off the selling floor.  Defendants were and are required to pay

3    each employee who missed a rest period one additional hour of pay, and yet they

4    have failed to do so.

5    d)  Defendants routinely fail to pay wages to employees when those wages are earned,

6    and instead maintain an unconscionable and illegal arrearages program under

7    which Defendants collect from employees' wages they have earned.  If an

8    employee fails to meet his or her sales goals, Defendants' take from subsequent

9    wages the difference between the hourly rate promised to employees and a

10   percentage of the total value of products sold by the employees, in Plaintiffs' case,

11   8% of sales.  Because Defendants have misclassified their employees as bona fide

12   commissioned employees, Defendants' application of a commission-based wage

13   arrearage system is illegal, inequitable and unconscionable.

14   e)  Defendants maintain an illegal and unconscionable charge back or returns policy

15   that permits Defendants to collect from their employees' wages previously paid.

16   Because Defendants have misclassified their employees as bona fide

17   commissioned employees, Defendants' application of a commission-based charge

18   back system is illegal, inequitable and unconscionable.

19   f)  Defendants have established a wage system they call "Base Rate Against

20   Commission," and which they characterize as a *bona fide* commission based

21   system, when in fact it is not.  Defendants' wage system is an illegal scheme

22   designed to avoid the wage rules and overtime regulations set forth in Industrial

23   Welfare Commission Order 7-2001 and in the California Labor Code.

24       i)  A great number of Defendants' employees do not earn sufficient

25       commission to be classified as exempt employees under California law.

26       ii) Defendants set the target sales goals at such a high level that many, if not

27       most, employees consistently earn commissions that are at or below the

                                                                                    7

1         value of the Defendants' draw. They are therefore entitled to premium

2         overtime compensation for hours worked in excess of eight per day or 40

3         per week.

4         iii)   Consequently, Defendants "Base Rate Against Commission" system is

5         not bona fide. It is knowingly designed to misclassify Defendants'

6         employees to avoid paying them premium overtime wages and to avoid

7         other wages rules applicable to Defendants' employees. In the alternative,

8         Defendants routinely fail to pay premium overtime wages to their

9         purported commission-based employees who work in excess of eight hours

10       per day or more than 40 hours per week, who do not earn more than 50%

11       of their wages through commissions, and who do not earn 1.5 times the

12       applicable minimum wage.

13    g)  In conjunction with their "Base Rate Against Commission" system, Defendants

14      have established an annual review of their employees' right to receive premium

15      overtime wages, purporting to evaluate their employees' right to premium

16      overtime compensation at the end of Defendants' fiscal year. Defendants use this

17      illegal reconciliation system as a means to avoid paying wages to their employees

18      in a timely manner in accordance with California law. Furthermore, Defendants

19      fail to perform and/or fail to consistently perform, this end of the year evaluation

20      and fail to pay wages due to their employees. Defendants' illegal wage system

21      results in the additional failure to pay former employees all of their wages due

22      upon termination.

23    h)  Defendants fail to maintain proper records memorializing the hours worked by

24      their employees, the compensation paid to them, and the debits made to their

25      wages, and fail to make accurate payroll records available upon request.

26    i)  Defendants expressly prohibit their employees from disclosing their wages to

27      fellow employees in violation of California labor laws. Defendants' violation of

8

FIRST AMENDED CLASS ACTION COMPLAINT

California's labor laws governing an employee's right to discuss his or her wages with others is designed and/or operates to keep their employees from learning that Defendants are routinely and consistently violating the wage and hour laws detailed herein

j) Defendants have violated Labor Code § 203 by consistently failing to timely pay employees all wages due upon resignation and/or termination.

k) Defendants have violated Labor Code § 204 by consistently failing to pay employees in a timely way.

l) Defendants have violated Labor Code § 206.5 by consistently requiring employees to sign documents releasing them from the obligation to pay wages owed to employees.

m) Defendants have violated Labor Code § 208 by consistently failing to pay all wages due terminated employees at the place of discharge.

n) Defendants have violated Labor Code § 221 by consistently engaging in a practice of taking back wages previously paid to employees.

o) Defendants have violated Labor Code § 223 by consistently agreeing to pay employees certain wages and then though the use of deception and fraudulent payroll practices has secretly paid employees lower wages than promised.

p) Defendants have violated Labor Code § 226(a) by consistently failing to provide the accurate itemized statement of wages on employees' pay stubs as required under California law.

q) Defendants have violated Labor Code § 226.7 by consistently failing to provide employees with rest breaks during their working shifts.

r) Defendants have violated Labor Code § 227 by promising employees that they will provide medical and dental insurance to them after they have worked for the company for 90 calendar days and then has consistently breached that promise by failing to make payments into a health insurance fund covering those benefits

5

within 90 days.

s) Defendants have violated Labor Code § 232(c) by prohibiting employees from disclosing or discussing their wages, and, based on information and belief, has formally disciplined or otherwise discriminated against employees who disclose the amount of their wages.

t) Defendants have violated Labor Code § 432.5 by consistently requiring employees to sign documents, including the company's employee manuals that demand employees agree in writing to illegal policies and practices.

u) Defendants have violated Labor Code § 510 by consistently failing to pay premium overtime wages to its employees.

v) Defendants have violated Labor Code § 976 by consistently publishing misleading statements about the commissions it promises to employees.

w) Defendants have violated Labor Code § 1194 by consistently requiring employees to agree to waive their statutory right to premium overtime wages, and then fails to pay them premium overtime.

x) Defendants have violated Labor Code § 1199 by consistently violating provisions of Labor Code §§ 1171, et seq.

14.    In summary, Defendants have used fraud, deception and credible threats to maintain a work force denied of the basic employment rights guaranteed under California law.

## ANN OTSUKA

15.    Ann Otsuka worked for Polo Retail Corp., and/or Polo Ralph Lauren Corporation, and/or Polo Retail, LLC, between approximately May 2004 and approximately November 2004 in Defendants' Palo Alto retail store, as a sales associate in Defendants' Home Collection Department.

16.    When she began working for Defendants, Tin Huu, General Manager, told her she would be compensated as a draw versus commission employee at the initial rate of $12.00 per hour, with no commission. Defendants subsequently lowered Otsuka's hourly rate to $10.15,

10

1   plus 8% commission on sales. She was told she would receive greater compensation for sales

2   made in excess of her target sales goals, based on a commission rate of 8% of sales. She was

3   also told and understood that her base rate, based on her hourly wage multiplied by the total

4   hours she worked, would serve as a guaranteed wage payment. Defendants made this

5   representation to Otsuka in Defendants' Sales Associate Handbook and during the job

6   interview process. She was also told that her wages would increase as she increased her sales.

7   She was told that if she failed to sell a sufficient quantity of merchandise, she would be

8   reprimanded. She was also instructed through Polo's Sales Associate Handbook that she

9   could be terminated if she failed to meet her sales goals. She was not told and never

10  understood the wage system to mean that she could be forced to pay back some of her earned

11  wages if she failed to meet her sales goals. Nevertheless, Defendants established an arrearage

12  program after Otsuka was hired that permitted Defendants' to obtain previously paid wages

13  from Ann Otsuka through payroll deductions, which were insufficiently memorialized and

14  communicated to Otsuka. Otsuka never agreed to this arrearages program and was never

15  legally bound by its terms. When she sought guidance from Phoebe Morales (Store Manager)

16  and Ha'aheo Zablan (Home Collection/Men's Manager) about the new program, they told her

17  that they didn't really understand how it worked. These managers informed Otsuka that this

18  arrearage program should have been discussed with Otsuka before she was hired and

19  acknowledged to her that her pay records did not contain sufficient information to permit

20  them to understand and explain how the arrearages had been calculated. Otsuka's paycheck

21  stub had insufficient information describing the wages withheld, leading Otsuka to conclude

22  that payroll had simply made an error in calculating her wages. When she asked for a

23  complete accounting of her wages and how the arrearage deductions had been calculated, she

24  was denied sufficient accounting information to determine how her reduced wages had been

25  calculated. Otsuka relied to her detriment on the representations by Defendants regarding the

26  nature of her wages and was injured by Defendants' misrepresentations when she was in fact

27  paid less than promised. Furthermore, when she was hired by Defendants, she was required

11

1   to sign her acknowledgement that she had received and understood the policies she alleges

2   herein were and are illegal, and that purported to relieve Defendants of liability for their

3   illegal conduct, including those set out in the Defendants' Retail Employee Handbook. By

4   way of example, Defendants' Retail Employee Handbook (2002) provides that it is

5   unacceptable for an employee to divulge "personal salary arrangements to other Polo Retail

6   Corporation associates." Divulging such information, the Handbook continues, "may lead to

7   disciplinary action or termination. .."

8   17.    In addition, when Otsuka was hired, she was promised healthcare insurance after she

9   worked for 90 days. Polo did not fulfill that promise. As set forth below, Otsuka seeks

10  penalties only for this violation of the provisions set forth in the California Private Attorneys

11  General Act.

12  18.    Defendants also debited Otsuka's wages whenever a customer returned an item she

13  sold, regardless of whether the return was made within a day or within several months, and

14  regardless whether the item was deemed to be defective. By the time Defendants applied the

15  charge back debit to Otsuka, she had earned a commission and/or the wage on the items

16  returned or the wage earned, and was entitled to retain those earnings. Defendants also

17  routinely failed to provide her with an accounting of how and why her wages were being

18  debited, despite her requests.

19  19.    During the course of Ann Otsuka's employment with Defendants, she did not always

20  sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants.

21  Based on information and belief, on several occasions, she sold less than 50% of the sales

22  target set by Defendants. Consequently, less than one half of her compensation represented

23  commissions. Therefore, she was entitled to receive premium overtime compensation for

24  hours worked in excess of eight hours per day or 40 hours per week, during those periods in

25  which she was not an exempt employee. (IWC Order 7-2001.) Ann Otsuka worked hours in

26  excess of eight per day and/or 40 hours per week on a regular basis, both recorded and

27  unrecorded, during periods when she was entitled to premium overtime compensation. In

12

FIRST AMENDED CLASS ACTION COMPLAINT

1  addition, Otsuka's compensation was such that her commission earnings were generally at or
2  below her hourly-based draw. Defendants failed to provide all of those premium wages to
3  Plaintiff Ann Otsuka as required under California law.

4  20.    Defendants' Sales Associate Handbook specifically provides:

5       "Sales Associates and Senior Sales Associates are not eligible to receive a
6       premium overtime compensation rate. However, a sales commission
7       reconciliation will be performed at the close of each fiscal year to ensure each
8       associate is compliant with Federal Labor guidelines stipulating that the
9       majority of their pay must be in the form of commission. If an associate is
10      found to be overtime eligible at that time, then the appropriate amount of
11      overtime compensation will be paid to that associate."

12 21.    This payroll policy is illegal under California law and was applied to Ann Otsuka
13 during the course of her employment. By unlawfully delaying the "reconciliation" for up to a
14 year, Defendants failed to pay Ann Otsuka in a timely fashion. In fact, while Ann Otsuka
15 terminated her employment with Defendants in November 2004, Defendants have never paid
16 her all the premium overtime compensation she was and is owed. Defendants' representation
17 that they would perform an end-of-the-year reconciliation, upon which Otsuka reasonably
18 relied, was not fulfilled. Otsuka was entitled to premium compensation that was not paid to
19 her and that remains unpaid.

20 22.    On many days that Ann Otsuka worked, she was required to perform work without
21 compensation, working off the clock at the direction of, or with the knowledge and
22 acquiescence of, Defendants. Often, Defendants would instruct her not to clock out at the end
23 of a long shift, because her managers would adjust her stop work time later. Based on
24 information and belief, Defendants actually shut down the timekeeping system on occasions
25 when Otsuka was still working. Defendants failed to keep accurate records of the hours Ann
26 Otsuka worked and failed to report the time worked to her. In fact, Ann Otsuka was not paid
27 for all of the hours she worked.

13

FIRST AMENDED CLASS ACTION COMPLAINT

23.     In addition, on a daily basis, Defendants required Ann Otsuka to clock out and then wait for a manager to check her purse and bags to make sure she and the other employees leaving the store were not attempting to steal and smuggle merchandise out. Ann Otsuka routinely had to wait with other sales associates each day that she worked for the mandatory management inspection. She regularly was required to wait for 10 to 20 minutes for the inspection and was never compensated for that time. The management team and Kristi Mogel, Human Relations Manager instructed her that she was not to use the customer exit closest to the interior of the mall in which the store is located. When the store was closed at the end of the day, that door was locked by a manager and could not be opened without a key. Otsuka and the other sales associates did not have a key to that customer door. The other exit, also a customer door, was deemed to be the only door Otsuka and other employees were permitted to use, when entering or exiting the store. When the store was closed at the end of the day, that door was also locked by a manager and could not be opened without a key. Otsuka and the other sales associates did not have a key to that customer door either. Otsuka was warned by her managers she would be reprimanded or terminated if she left the store premises before a manager had inspected her. Defendants' Sales Associate Handbook was provided to Otsuka, and it stated that this inspection procedure was a condition of employment. She was, in fact, at the end of her work shift physically confined to the interior of the store and could not leave the store until she was inspected and a manager had unlocked the employee exit. This daily experience was frustrating. She was led to believe and did believe that Defendants' had the legal right to detain her in the store after her shift was over. She missed appointments she had scheduled after working hours because she was forced to wait within the confines of the store for upwards of 20 minutes.

24.     Ann Otsuka was not permitted to take rest breaks during the days that she worked. Her managers harassed her and her co-employees when she and they attempted to take rest breaks, telling them that they did not need to take the required breaks and that they would fall behind on sales if they took the breaks. Otsuka felt harassed and intimidated by the comments

14

1 | of her managers and did not take her mandatory breaks because she feared she would lose her
2 | job, or be harassed, if she did.

### CORINNE PHIPPS

4 | 25.      Corinne Phipps, previously known as Corinne Mullen, was employed by Polo Retail
5 | Corp. and/or Polo Ralph Lauren Corporation and/or Polo Retail, LLC, in Polo Ralph Lauren's
6 | retail store in San Francisco, California, between May 2004 and December 2004. She worked
7 | in Defendants' Home Collections Department, where she sold products for the home.

8 | 26.      When she began working for Defendants, she was told by her store's General
9 | Manager, Tin Hua, she would be compensated as a "draw versus commission" employee at
10 | $12.75 per hour. She was told that her wages would increase as she increased her sales. She
11 | was also told that her hourly rate would constitute a base guaranteed wage. Defendants made
12 | this representation to Phipps in Defendants' Sales Associate Handbook and during the job
13 | interview process. She was told that if she failed to sell a sufficient quantity of merchandise,
14 | she could be terminated. She was not told and never understood the wage system to mean
15 | that she could be forced to pay back some of her earned wages if she failed to meet her sales
16 | goals. Nevertheless, Defendants established an arrearage program that permitted Defendants'
17 | to obtain previously paid wages from Phipps through payroll deductions, which were
18 | insufficiently memorialized and communicated to Phipps. She never agreed to this arrearage
19 | program and was not legally bound by its terms. Phipps relied to her detriment on the
20 | representations by Defendants regarding the nature of her wages and was injured by
21 | Defendants' misrepresentations when she was in fact paid less than promised. Furthermore,
22 | when she was hired by Defendants, she was required to sign her acknowledgement that she
23 | had received and understood the policies she alleges herein were and are illegal, and that
24 | purported to relieve Defendants of liability for their illegal conduct, including those set out in
25 | Defendants' Retail Employee Handbook. By way of example, Defendants' Retail Employee
26 | Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary
27 |

15

1  arrangements to other Polo Retail Corporation associates." Divulging such information, the

2  Handbook continues, "may lead to disciplinary action or termination. .."

3  27.    In addition, when Phipps was hired, she was promised healthcare insurance after she

4  worked for 90 days. Polo did not fulfill that promise. As set forth below, Phipps seeks

5  penalties only for this violation of the provisions set forth in the California Private Attorneys

6  General Act.

7  28.    Defendants also debited Phipps's wages whenever a customer returned an item she

8  sold, regardless of whether the return was made within a day or within several months, and

9  regardless whether the item was deemed to be defective. By the time Defendants' applied the

10  arrearages debit to Phipps, she had earned the commission or the wage on the items returned

11  or the work performed, and was entitled to retain those earnings. Defendants' also routinely

12  failed to provide her with an accounting of how and why her wages were being debited,

13  despite her requests.

14  29.    During the course of Phipps's employment with Defendants, she did not always sell a

15  sufficient quantity of Polo merchandise to meet her sales target set by Defendants. On several

16  occasions, she sold less than 50% of the sales target set by Defendants. Consequently, less

17  than one half of her compensation represented commissions. Therefore, she was entitled to

18  receive premium overtime compensation for hours worked in excess of eight hours per day or

19  40 hours per week, during those periods in which she was not an exempt employee. (IWC

20  Order 7-2001.) Phipps worked hours in excess of eight per day and/or 40 hours per week on a

21  regular basis, both recorded and unrecorded, during periods when she was entitled to premium

22  overtime compensation. In addition, Phipps's compensation was such that her commission

23  earnings were generally at or below her hourly-based draw, based on Defendants' practice of

24  setting sales goals impossibly high. Defendants failed to provide all premium wages to

25  Plaintiff Corinne Phipps as required under California law.

26  30.    Defendants' Sales Associate Handbook specifically provides:

27

16

1  "Sales Associates and Senior Sales Associates are not eligible to receive a

2  premium overtime compensation rate. However, a sales commission

3  reconciliation will be performed at the close of each fiscal year to ensure each

4  associate is compliant with Federal Labor guidelines stipulating that the

5  majority of their pay must be in the form of commission. If an associate is

6  found to be overtime eligible at that time, then the appropriate amount of

7  overtime compensation will be paid to that associate."

8  31.    This payroll policy is illegal under California law and was applied to Corinne Phipps

9  during the course of her employment. By unlawfully delaying the "reconciliation" for up to a

10  year, Defendants failed to pay Corinne Phipps in a timely fashion. In fact, while Corinne

11  Phipps terminated her employment with Defendants in December 2004, Defendants have not

12  paid her all of the premium overtime compensation she was and is owed. Defendants'

13  representation that they would perform this end-of-the-year reconciliation, upon which Phipps

14  reasonably relied, was not fulfilled.

15  32.    On many days that Corinne Phipps worked, she was required to perform work without

16  compensation, working off the clock at the direction of and/or with the knowledge and

17  acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz

18  (Operations Manager) and Valerie Harrison (Department Manager) clocked her out while she

19  was still performing work. On other occasions, Defendants, through Operations Manager

20  Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time

21  records so they would reflect less time worked. On still other occasions, Defendants'

22  managers shut down the timekeeping system while Phipps was still working and, thus, failed

23  to accurately record her hours of work. She was not paid for any of this off-the-clock work.

24  33.    On a daily basis, Defendants required Corinne Phipps to clock out and then wait at the

25  employee exit for a manager to check her purse and bags to make sure she and the other

26  employees were not attempting to steal and smuggle merchandise out of the store. Corinne

27  Phipps routinely had to wait with other sales associates each day that she worked near the

17

FIRST AMENDED CLASS ACTION COMPLAINT

1    employee exit for the mandatory management inspection. She regularly was required to wait

2    for 10 to 15 minutes for the inspection and was never compensated for that time. She was

3    instructed by manager Theresa Cruz, and Valerie Harrison that she was not to use the

4    customer exit to leave the store and that if she tried to leave the store through the employee

5    exit before she had been inspected an alarm would sound and she would or could be

6    terminated. Defendants' Sales Associate Handbook was provided and/or shown to Phipps,

7    and it stated that this inspection procedure was a condition of employment. She felt herself to

8    be physically confined to the interior of the store and feared leaving the store except as

9    directed by her supervisors. She was led to believe her employer had the legal right to retain

10   her within the store. The experience was often frustrating and humiliating. She missed

11   appointments she had scheduled after working hours because she was forced to wait by the

12   employee exit for upwards of 30 minutes. Based on her observations and discussions with

13   other employees who were likewise forced to wait for up to 30 minutes, they shared her sense

14   of frustration and humiliation.

15   34.    At other times, Corinne Phipps was required to report to work at a certain hour and

16   then required to wait outside the store for up to 20 minutes for a manager to open the

17   employee entrance for her to begin work. On those occasions, her pay was docked and she

18   was deemed late to work. At other times, she was required to wait up to 20 minutes to be

19   granted access to the store after she took a meal break. Defendants' failure to permit her to

20   begin work at the time she was required to begin, at the beginning and middle of her work

21   shift caused her to lose wages she was entitled to earn. Corinne Phipps was not paid wages

22   for this waiting time that she suffered on behalf of Defendants.

23   35.    Corinne Phipps was not permitted to take rest breaks during the days that she worked.

24   Her managers harassed her and her co-employees when she and they attempted to take rest

25   breaks, telling them that they did not need to take the required breaks and that they would fall

26   behind on sales if they took the breaks. Phipps felt harassed and intimidated by the comments

27   of her managers and did not take her mandatory breaks because she feared she would lose her

19

1 | job or be harassed if she did.

2 | <center>**JUSTIN KISER**</center>

3 | 36.    Justin Kiser was employed by Fashions Outlet of America, Inc., and/or Polo Ralph

4 | Lauren Corporation and/or Polo Retail, LLC, between July 2004 and August 2005 in

5 | Defendants' San Francisco retail store, working as a sales associate in Polo's Men's

6 | Department and Men's Sport Department.

7 | 37.    When he began working for Defendants, he was told Tin Hua, Polo's General

8 | Manager, he would be compensated as a draw versus commissioned employee at the initial

9 | rate of $12.75 per hour. He was told that his wages would increase as he increased his sales.

10 | He was also told that his hour rate would constitute a base guaranteed wage. Defendants

11 | made this representation to Kiser in Defendants' Sales Associate Handbook and during the

12 | job interview process. He was told that if he failed to sell a sufficient quantity of

13 | merchandise, he could be terminated. He was not told and never understood the wage system

14 | to mean that he could be forced to pay back some of his earned wages if he failed to meet his

15 | sales goals. Nevertheless, Defendants established an arrearage program that permitted

16 | Defendants' to obtain previously paid wages from Kiser through payroll deductions, which

17 | were insufficiently memorialized and communicated to Kiser. He never agreed to this

18 | arrearage program and was not legally bound by its terms. Kiser relied to his detriment on the

19 | representations by Defendants regarding the nature of his wages and was injured by

20 | Defendants' misrepresentations when he was in fact paid less than promised. Furthermore,

21 | when he was hired by Defendants, he was required to sign his acknowledgement that he had

22 | received and understood the policies he alleges herein were and are illegal, and that purported

23 | to relieve Defendants of liability for their illegal conduct including those set out in the

24 | Defendants' Retail Employee Handbook. By way of example, Defendants' Retail Employee

25 | Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary

26 | arrangements to other Polo Retail Corporation associates." Divulging such information, the

27 | Handbook continues, "may lead to disciplinary action or termination. .."

<div align="right">19</div>

<center>**FIRST AMENDED CLASS ACTION COMPLAINT**</center>

38. Based on information and belief, during the course of Justin Kiser's employment with Defendants, he did not always sell a sufficient quantity of Polo merchandise to meet the sales target set by Defendants every pay period. Based on information and belief, on at least one occasion, he earned less than 50% of the sales target set by Defendants. Consequently, less than one half of his compensation represented commissions. Therefore, he was entitled to receive premium overtime compensation for hours worked in excess of eight hours per day or 40 hours per week during those pay periods in which he was not properly classified as an exempt employee. Justin Kiser worked hours in excess of eight hours per day and/or 40 hours per week on a regular basis, including during periods of time he failed to earn one half of his wages as commissions. In addition, based on information and belief, Kiser's compensation was such that his commission earnings were generally at or below his hourly-based draw, based on Defendants' practice of setting sales goals impossibly high. Defendants failed to provide those premium wages to Plaintiff Justin Kiser as required under California law.

39. Defendants' Sales Associate Handbook specifically provides:

> "Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate. However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission. If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

40. This payroll policy is illegal under California law and was applied to Justin Kiser during the course of his employment. By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Justin Kiser in a timely fashion. In fact, while Justin Kiser terminated his employment with Defendants in about August 2005, Defendants have not paid him all of the premium overtime compensation he earned. Defendants' representation that they would perform this reconciliation was not fulfilled.

41.     On many days that Justin Kiser worked, he was required to perform work without compensation, working off the clock at the direction and/or with the knowledge and acquiescence of Defendants. On a regular basis, managers in his store would shut down the timekeeping computer and therefore clock him out while he was still performing work. On other occasions, Defendants, through Operations Manager Theresa Cruz, would write down the hours he worked by fraudulently manipulating his time records so they would reflect less time worked.

42.     On a daily basis, Defendants required Justin Kiser to clock out and then wait at the employee exit for a manager to check his bags to make sure he and the other employees were not attempting to steal and smuggle merchandise out of the store. Justin Kiser routinely had to wait with other sales associates each day that he worked near the employee exit for the mandatory management inspection. He regularly was required to wait for 10 to 15 minutes for the inspection, and as long as 30 minutes, and was never compensated for that time. General Manager Tin Hua instructed him that he was not to use the customer exit to leave the store and that if he tried to leave the store through the employee exit before he had been inspected the alarm would sound and he would be terminated. Defendants' Sales Associate Handbook was provided to Kiser, and it stated that this inspection procedure was a condition of employment. He felt himself to be physically confided to the interior of the store and feared leaving the store except as directed by his supervisors. The experience was often frustrating and humiliating. He was led to believe that his employers had the legal right to detain him in the store after his shift was over. He missed appointments he had scheduled after working hours because he was forced to wait by the employee exit for upwards of 30 minutes. Based on his observations and discussions with other employees who were likewise forced to wait for up to 30 minutes, they shared his sense of frustration and humiliation.

43.     At other times, Justin Kiser was required to report to work at a certain hour and then required to wait outside the store for up to 20 minutes for a manager to open the employee entrance for him to begin work. At other times, Justin Kiser was required to wait up to 20

21

1   minutes to be granted access to the store after he took a meal break. Defendants' failure to

2   permit him to begin work at the time he was required to begin at the beginning and middle of

3   his work shift caused him to lose wages he was entitled to earn. Justin Kiser was not paid

4   wages for this waiting time that he suffered on behalf of Defendants.

5   44.   Justin Kiser was not permitted to take rest breaks during the days that he worked.

6   Managers, including Rosalinda Walwork and Theresa Cruz, harassed him and his co-

7   employees when he and they attempted to take rest breaks, telling them that they did not need

8   to take the required breaks and that they would fall behind on sales if they took the breaks.

9   Justin Kiser felt extremely harassed and intimidated by the comments of his managers and did

10   not take his mandatory breaks because he feared he would lose his job if he did.

11   45.   Defendant also debited Kiser's wages whenever an item he sold was returned by a

12   customer, regardless of whether the return was made within a day or within several months,

13   and regardless whether the item was deemed to be defective. By the time Defendants' applied

14   the charge back debit to Kiser, he had earned the commission or wages on the items returned

15   or the work performed, and he was entitled to retain those earnings. Defendants' routinely

16   failed to provide him with an accounting of how and why his wages were being debited.

17   **JANIS KEEFE**

18   46.   Janis Keefe, previously known as Janis Howay, worked for Polo Retail Corp., and/or

19   Polo Ralph Lauren Corporation and/or Polo Retail, LLC, between approximately May 2004

20   and approximately January 2005 in Defendants' San Francisco retail store, as a sales associate

21   in Polo's Men's Department and Men's Sport Department.

22   47.   When she began working for Defendants, Keefe was told by her store's General

23   manager, Tin Hua, she would be compensated as a "draw versus commission" employee at

24   $12.75 per hour. She was told that her wages would increase as she increased her sales. She

25   was also told that her hourly rate would constitute a base guaranteed wage. Defendants made

26   this representation to Keefe in Defendants' Sales Associate Handbook and during the job

27   interview process. She was told that if she failed to sell a sufficient quantity of merchandise,

22

1   she could be terminated. She was not told and never understood the wage system to mean

2   that she could be forced to pay back some of her earned wages if she failed to meet her sales

3   goals. Nevertheless, Defendants established an arrearage program after Keefe was hired that

4   permitted Defendants' to obtain previously paid wages from Keefe through payroll

5   deductions, which were insufficiently memorialized and communicated to Keefe. She never

6   agreed to this arrearage program and was not legally bound by its terms. Furthermore, when

7   she was hired by Defendants, she was required to sign her acknowledgement that she had

8   received and understood the policies she alleges herein were and are illegal, and that

9   purported to relieve Defendants of liability for their illegal conduct including those set out in

10  the Defendants' Retail Employee Handbook. By way of example, Defendants' Retail

11  Employee Handbook (2002) provides that it is unacceptable for an employee to divulge

12  "personal salary arrangements to other Polo Retail Corporation associates." Divulging such

13  information, the Handbook continues, "may lead to disciplinary action or termination. .."

14  48.   In addition, when Keefe was hired, she was promised healthcare insurance after she

15  worked for 90 days. Polo did not fulfill that promise. As set forth below, Keefe seeks

16  penalties only for this violation of the provisions set forth in the California Private Attorneys

17  General Act.

18  49.   During the course of Janis Keefe's employment with Defendants, she did not always

19  sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants. On

20  several occasions, she sold less than 50% of the sales target set by Defendants. Consequently,

21  less than one half of her compensation represented commissions. Therefore, she was entitled

22  to receive premium overtime compensation for hours worked in excess of eight hours per day

23  or 40 hours per week. Janis Keefe worked hours in excess of eight per day and/or 40 hours

24  per week on a regular basis. In addition, Keefe's compensation was such that her commission

25  earnings were generally at or below her hourly-based draw, based on Defendants' practice of

26  setting sales goals impossibly high. Defendants failed to provide all premium wages to

27  Plaintiff Janis Keefe as required under California law.

23

FIRST AMENDED CLASS ACTION COMPLAINT

50. Defendants' Sales Associate Handbook specifically provides:

"Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate. However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission. If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

51. This payroll policy is illegal under California law and was applied to Janis Keefe. By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Janis Keefe in a timely fashion. In fact, while Janis Keefe terminated her employment with Defendants in or about January 2005, Defendants have never paid her all premium overtime compensation she was and is owed. Defendants' representation that they would perform this reconciliation was not fulfilled.

52. On many days that Janis Keefe worked, she was required to perform work without compensation, working off the clock at the direction and/or with the knowledge and acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz, clocked her out while she was still performing work. On other occasions, Defendants, though Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time records so they would reflect less time worked. On other occasions, based on information and belief, Defendants' managers shut down the timekeeping system when Keefe was still working. Defendants failed to keep accurate records of the hours Keefe worked and failed to report the time to her. She was not paid for all the hours she worked.

53. On a daily basis, Defendants required Janis Keefe to clock out and then wait at the employee exit for a manager to check her purse and bags to make sure she and the other employees were not attempting to steal and smuggle merchandise out of the store. Janis Keefe routinely had to wait with other sales associates each day that she worked near the

24

1  employee exit for the mandatory management inspection. She regularly was required to wait
2  for 10 to 15 minutes for the inspection and was never compensated for that time. She was
3  instructed by Theresa Cruz, and Tin Hua that she was not to use the customer exit to leave the
4  store and that if she tried to leave the store through the employee exit before she had been
5  inspected, she could be terminated. Defendants' Sales Associate Handbook was provided
6  and/or shown to Keefe, and it stated that this inspection procedure was a condition of
7  employment. She felt herself to be physically confined to the interior of the store and feared
8  leaving the store except as directed by her supervisors. The experience was often frustrating
9  and demeaning. She was led to believe that her employers had the legal right to detain her
10  within her store after her work shift was over. She missed appointments she had scheduled
11  after working hours because she was forced to wait by the employee exit for upwards of 30
12  minutes. Based on her observations and discussions with other employees who were likewise
13  forced to wait for up to 30 minutes, they shared her sense of frustration as well.
14  54.  At other times, Janis Keefe was required to report to work at a certain hour and then
15  required to wait outside the store for up to 20 minutes for a manager to open the employee
16  entrance for her to begin work. At other times, Janis Keefe was required to wait up to 20
17  minutes to be granted access to the store after she took a meal break. Defendants' failure to
18  permit her to begin work at the time she was required to begin work at the beginning and
19  middle of her work shift caused her to lose wages she was entitled to earn. Janis Keefe was
20  not paid wages for this waiting time that she suffered on behalf of Defendants.
21  **CLASS ACTION ALLEGATIONS**
22  55.  Plaintiffs bring this class action pursuant to California Code of Civil Procedure section
23  382 on behalf of a Class consisting of all current and former hourly-based employees of
24  Defendants in the State of California who were subjected to the unlawful employment
25  practices described herein during all applicable statutes of limitations (the "Class Period").
26  Plaintiffs initially delineate the subclasses of the Class as follows:
27      a.  **Fraud Subclass:**  All of Defendants' employees in the State of California

25

FIRST AMENDED CLASS ACTION COMPLAINT

1  during all applicable statutes of limitations against whom Defendants
2  committed the fraudulent acts described herein.

3     b. **False Imprisonment Subclass:** All of Defendants' employees in the State
4  of California during all applicable statutes of limitations who were falsely
5  imprisoned, as described herein.

6     c. **Failure to Pay Wages Subclass:** All of Defendants' employees in the
7  State of California during all applicable statutes of limitations to whom
8  Defendants failed to pay wages due, as described herein.

9     d. **Arrearages Subclass:** All of Defendants' employees in the State of
10  California during all applicable statutes of limitations whose earned wages
11  were taken back by Defendants through Defendants' illegal arrearage
12  program, as described herein.

13     e. **Charge Back Subclass:** All of Defendants' employees in the State of
14  California during all applicable statutes of limitations whose earned wages
15  were taken back by Defendants through Defendants' illegal charge back or
16  returns policies and practices, as described herein.

17     f. **Breach of Contract Subclass:** All of Defendants' employees in the State
18  of California during all applicable statutes of limitations whose
19  employment contracts or covenants were breached by Defendants, as
20  described herein.

21     g. **Terminated/Resigned Subclass:** All of Defendants' employees in the
22  State of California during all applicable statutes of limitations who were
23  terminated or who resigned, and to whom Defendants failed to timely pay
24  all wages due, as described herein.

25     h. **Rest Break Subclass:** All of Defendants' employees in the State of
26  California during all applicable statutes of limitations who were denied rest
27  breaks, as described herein.

26

FIRST AMENDED CLASS ACTION COMPLAINT

      i.  **Records Subclass:**  All of Defendants' employees in the State of California during all applicable statutes of limitations whose accurate payroll records were not provided to and/or whose requests for those accurate payroll records were denied.

      j.  **Wage Disclosure Subclass:**  All of Defendants' employees in the State of California during all applicable statutes of limitations who were prohibited from disclosing or discussing their wages, as described herein.

      k.  **Unjust Enrichment Subclass:**  All of Defendants' employees in the State of California during all applicable statutes of limitations who sustained economic damages as a consequence of the claims asserted herein.

      l.  **Unfair Business Practice Subclass:**  All of Defendants' employees in the State of California during all applicable statutes of limitations who were subjected to the unfair business practices described herein.

      m.  **Private Attorneys General Subclass:**  All of Defendants' employees in the State of California during all applicable statutes of limitations whose claims for penalties are covered by the Private Attorneys General Act.

      n.  **Declaratory Relief Subclass:**  All of Defendants employees in the State of California during all applicable statutes of limitations who will be affected by the declarations of rights sought herein.

56.    The Class definition will be further defined in Plaintiffs' motion for class certification, in which Plaintiffs may establish the need for additional or fewer subclasses based on information obtained through discovery.

57.    The wrongful acts or omissions were and are a uniform practice that affected all putative class members in substantially similar ways. Defendants, by their practices and policies, have violated the rights of their employees under the California Labor Code, Industrial Wage Orders the common law of California, and the Unfair Competition Law. The questions raised are therefore of common or general interest to the class members, and they

27

1  have a well-defined community of interest in the questions of law and fact raised in this

2  action. The only recognizable difference between class members will be the amounts owed to

3  each individual member.

4  58.    Based on information and belief, Defendants have employed thousands of individuals

5  in the State of California (a number known particularly to Defendants) since the beginning of

6  the Class Period. These individuals have been subject to Defendants' unlawful and wrongful

7  practices, and their numerosity makes it impractical to bring them all before this forum, and

8  disposition of their claims in a class action is a benefit to the parties and to the court.

9  59.    A class action is superior to other available means for the fair and efficient

10  adjudication of this controversy. Individual joinder of all class members is not practicable,

11  and questions of law and fact common to the class predominate over any questions affecting

12  only individual members of the class. Each member of the class has been damaged and is

13  entitled to recover. Class action treatment will allow those similarly situated persons to

14  litigate their claims in the manner that is most efficient and economical for the parties and the

15  judicial system.

16  60.    A class action is appropriate because Plaintiffs' and class members' damages,

17  although by no means inconsequential, do not rise to the level to make prosecution of

18  individual claims economically feasible for Plaintiffs and the large number of class members.

19  The burden and expense of individual litigation makes it economically unfeasible, for both the

20  parties and the Court, for the members of the class to seek redress other than through a class

21  action. Consequently, there would be a failure of justice but for the maintenance of the

22  present class action.

23  61.    The prosecution of thousands of individual cases by members of the class would tend

24  to establish inconsistent standards of conduct for the Defendants and would result in the

25  impairment of class members' rights and the disposition of their interests through actions to

26  which they were not parties.

27  62.    Plaintiffs know of no difficulty that will be encountered in the management of this

28

FIRST AMENDED CLASS ACTION COMPLAINT

1   litigation that would preclude its maintenance as a class action.

2   63.    Plaintiffs have incurred and, during the pendency of this action, will incur attorneys'

3   fees and expenses. Such attorneys' fees and expenses are necessary for the prosecution of this

4   action and will result in a benefit to the class.

5   64.    Upon information and belief, Defendants were aware of the facts herein alleged at the

6   time they failed to perform the duties alleged herein.

7   65.    The names and addresses of the persons who are members of the class are available

8   from Defendants' records and are therefore known to Defendants. Notice can be provided to

9   the member of the class by mail, or by using techniques and a form of notice similar to those

10  customarily used in class actions under California law, with the costs of any notice to be

11  borne by Defendants.

12  66.    The Defendants' unlawful acts and unfair trade practices have affected all members of

13  the Class in a similar manner. Among the questions of law and fact common to the Class are:

14
15      (a)    Whether Defendants have committed actionable fraud (though
16             misrepresentations, false promises and tortuous concealment of
               material facts) with respect to the Class?

17      (b)    Whether Defendants have falsely imprisoned Class members
18             after their work shifts were over by forcing them to remain
               within Defendants' stores to wait for loss prevention
19             inspections?

20      (c)    Whether Defendants have unlawfully denied employees regular
               and overtime wages?

21
22      (d)    Whether Defendants have misclassified employees as bona fide
               commissioned employees?

23      (e)    Whether Defendants have unlawfully collected wages
24             previously paid and earned by employees based on unlawful
               arrearages and charge back programs?

25      (f)    Whether Defendants have unlawfully coerced or compelled or
26             otherwise required the Class to forego rest periods to maintain
               their jobs?

27

29

FIRST AMENDED CLASS ACTION COMPLAINT

1    (g)    Whether Defendants have failed to timely pay all employees?

2    (h)    Whether Defendants have failed to timely pay employees who
3           have quit or have been terminated?

4    (i)    Whether Defendants have breached employment contracts or
            covenants made with Class members?
5
6    (j)    Whether Defendants have maintained an illegal policy that
            prohibits employees from discussing their wages and terms of
7           employment with others?

8    (k)    Whether Defendants have violated California law, including
            California's Unfair Competition laws (Business & Professions
9           Code §§ 17200, et seq.) based on their violations of California
            law?
10

11   (l)    Whether Defendants have unlawfully failed to maintain
            employees' pay records, and/or failed to make those records
12          available for employee inspection upon request?

13

14   (m)    Whether Defendants' labor policies and practices, as described
            herein, constitute intentional or reckless violations of California
15          law, entitling Plaintiffs and the Class to punitive or exemplary
            damages?
16

17   67.    Plaintiffs' claims are typical of those of the Class they seek to represent because

18   Plaintiffs and all members of the Class were injured and/or continue to be injured in the same

19   manner by Defendants' illegal acts and practices, and other wrongful conduct complained of

20   herein.

21   68.    Plaintiffs will fully and adequately protect the interests of all members of the Class.

22   Plaintiffs have retained counsels who are experienced in employment class action litigation.

23   Plaintiffs have no interests that are adverse to or in conflict with other members of the Class

24   with respect to any of the claims asserted herein.

25   ///

26   ///

27

                                                                                    20

## First Cause of Action
(On Behalf of Plaintiffs and the Fraud Subclass)

## Against All Defendants

## FRAUD

69.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

70.    Defendants have made and, based on information and belief continue to make, false promises to employees regarding the wages they will receive while employed in Defendants' stores.

> a.    Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still employed the wages they will be paid while working at Defendants' stores. Defendants promise their employees that their base rate of pay, computed as the employees' hourly pay rate times the hours actually worked, would serve as a guaranteed minimum wage payment, and that while they may earn additional wages by selling more product, they will never be paid less that their base rate of pay.  However, Defendants have imposed an arrearages program that results in substantial debits to their employees' wages, in direct violation of their promises.  By debiting their employees wages when the employees fail to sell sufficient product to cover their base rate of pay, Defendants have caused Plaintiffs and the Class specific detriment, that is, the loss of wages promised.  In addition, Defendants have used an egregious charge back scheme to further reduce their employees' earnings by debiting employees' wages for items returned by customers at any time and for any reason.

> b.    Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still

31

employed that they will perform an end-of-the-year wage reconciliation and pay premium overtime wages, and that Defendants will properly record their employees' time and pay all wages due in a timely manner. In fact, Defendants do not perform this reconciliation and/or fail to pay premium wages as required by California law.

    c.  Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still employed that they will be provided rest breaks in compliance with California law. In fact, Defendants do not provide rest breaks and use coercion against their employees to make certain they will not take rest breaks.

    d.  Defendants manipulated and continue to manipulate the time records of Plaintiffs and the Class to conceal the fact that Defendants have failed to pay them all wages they are due for the time they have worked.

71.    At the time these representations were made by Defendants, Plaintiffs and Class members were ignorant of the falsity of Defendants' representations and believed them to be true. In reliance on these representations and/or without knowledge of the fraudulent concealments, Plaintiffs and Class members were induced to, and did, work for Defendants at lower rates of pay than they had been promised and under terms and conditions that constituted violations of California law. Had Plaintiffs and Class members known the actual facts, they would not have taken such action, that is, they would not have accepted employment with Defendants and/or would have demanded and received complete payment of their wages.

72.    Plaintiffs' and Class members' reliance on Defendants' representation was justified because Defendants employed Plaintiffs and Class members, and Plaintiffs and Class

<div align="center">32</div>

1  members perceived Defendants as having the legal and corporate authority to make the

2  promises they made.

3  73.    As a proximate result of the fraudulent conduct of Defendants, Plaintiffs and Class

4  members have been damaged in an amount to be proven at trial, but not less than the

5  jurisdictional limit of this Court.

6

7  74.    The aforementioned acts were intentional misrepresentation, deceit, and concealment

8  of material facts known to Defendants, with the intention on the part of Defendants of

9  depriving Plaintiffs and Class members of their rights under California law. Defendants'

10  conduct was despicable in that it subjected Plaintiffs and Class members to cruel and unjust

11  hardship, and Defendants acted in conscious disregard of rights of Plaintiffs and Class

12  members, so as to justify an award of exemplary and punitive damages. Wherefore, Plaintiffs

13  pray judgment as set forth herein below.

14

15                          **Second Cause of Action**

16      **(On Behalf of Plaintiffs and the False Imprisonment Subclass)**

17                          **Against All Defendants**

18                          FALSE IMPRISONMENT

19  75.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20  forth herein.

21  76.    On a daily basis, Defendants required Plaintiffs and Class members to clock out and

22  then wait at the employee exits for a manager to check their bags to make sure they were not

23  attempting to steal and smuggle merchandise out of the store. Plaintiffs and the Class

24  members routinely had to wait with other sales associates each day that they worked near the

25  employee exit for the mandatory management inspection. They were regularly required to

26  wait for 10 to 15 minutes for the inspection and were never compensated for that time. They

27

                                                                    33

FIRST AMENDED CLASS ACTION COMPLAINT

MAR-01-1996  07:33                                            P.10/29

1  were instructed that they were not to use the customer exit to leave the store and that if they

2  tried to leave the store through the employee exit before they had been inspected, they would

3  be terminated. In Defendants' stores, employees were physically unable to leave because the

4  doors to the stores were locked and they did not have keys to open the doors. Plaintiffs and

5  the Class members were physically confined to the interior of the store. The experience was

6

7  often frustrating, demeaning and humiliating.

8      77.    By forcing Plaintiffs and Class members to remain in their stores after they had

9  stopped working and were no longer receiving compensation, Defendants intentionally

10  confined Plaintiff and Class members in a non-consensual manner without a lawful privilege

11  for an appreciable length of time, and their confinement caused harm to the Plaintiffs and the

12  Class. As a direct, proximate and foreseeable result of Defendants' acts and failures to act as

13  alleged herein, Plaintiffs and Class members have suffered and continue to suffer emotional

14

15  distress, including but not limited to humiliation, shock, embarrassment, fear, anxiety and

16  discomfort, all to their damage in an amount to be determined according to proof at trial. In

17  addition, Plaintiffs and the Class have suffered the loss of wages for the time Defendants'

18  forced them to remain in the stores to be inspected by managers.

19      Wherefore, Plaintiff prays judgment as set forth herein below.

20

21                        **Third Cause of Action**

22  (On Behalf of Plaintiffs and the Failure to Pay Wages Subclass, Arrearages Subclass, Charge
Back Subclass, Breach of Contract Subclass, Terminated/Resigned Subclass and Unjust
Enrichment Subclass)

23

24                        **Against All Defendants**

25  **FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 510 AND 204 –
FAILURE TO PAY ALL WAGES, INCLUDING PREMIUM OVERTIME WAGES
UNDER CALIFORNIA LAW**

26      78.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

27

34

1    forth herein.

2         On January 1, 2000, Labor Code § 510(a) was enacted and provides:

3    Eight hours of labor constitutes a day's work. Any work in excess of
     eight hours in one workday and any work in excess of 40 hours in any
4    one workweek and the first eight hours worked on the seventh day of
     work in any one workweek shall be compensated at the rate of no less
5    than one and one-half times the regular rate of pay for an employee.
     Any work in excess of 12 hours in one day shall be compensated at the
6    rate of no less than twice the regular rate of pay for an employee. In
     addition, any work in excess of eight hours on any seventh day of a
7    workweek shall be compensated at the rate of no less than twice the
     regular rate of pay of an employee.
8

9         Labor Code § 1194(a) states:

10   Notwithstanding any agreement to work for a lesser wage, any
     employee receiving less than the legal minimum wage or the legal
11   overtime compensation applicable to the employee is entitled to recover
     in a civil action the unpaid balance of the full amount of this minimum
12   wage or overtime compensation, including interest thereon, reasonable
     attorney's fees, and costs of suit.
13

14        Labor Code § 204 states, in pertinent part:

15   All wages, other than those mentioned in Section 201, 202, 204.1, or
16   204.2, earned by any person in any employment are due and payable
     twice during each calendar month, on days designated in advance by
17   the employer as the regular paydays.

18   79.    Under California law, Defendants are required to pay wages for each hour worked,

19   and premium overtime wages when non-exempt employees work over 8 hours in a day or 40

20   hours in a week by calculating the hourly rate and then computing the overtime premium

21   amount owed. Plaintiffs and putative class members have worked for Defendants without

22   being paid for all hours worked, regular and overtime, as described above, including being

23   forced to work off the clock.

24   80.    Plaintiffs and members of the Class did not regularly earn more commission than their

25   base wages and were thus misclassified as exempt employees under IWC 7-2001. In fact,

26   Defendants wage system was not and is not a bona fide commission system permitting

27

35

FIRST AMENDED CLASS ACTION COMPLAINT

1   Defendants to avoid California's premium overtime compensation laws.

2     81.   In addition, because Defendants do not employee bona fide commissioned employees,

3   the application of Defendants' arrearage and charge back systems to hourly, non-exempt

4   employees violates California law as described herein.

5     82.   Plaintiffs and members of the Class who were deemed commissioned employees by

6   Defendants, who were not paid 1.5 times the applicable minimum wage, who did not earn

7   more than 50% of their wages from commissions during a specific pay period, who did not

8   regularly earn more commission than their basis rate of pay, and who worked overtime as

9   defined by California law, are also entitled to premium overtime wages. Defendants' once-a-

10   year reconciliation scheme, pursuant to which Defendants purport to determine if their

11   employees are entitled to premium overtime compensation, amounts to a willful failure to pay

12   wages timely.

13     83.   As a result of Defendants' violation of statutory duties to comply with statutory wage

14   requirements, as more fully set forth above, Plaintiffs and Class members were damaged in an

15   amount above the jurisdictional limits of this Court.

16     84.   Plaintiffs and Class members seek as damages all wages owed to individuals

17   employed by Defendants, plus all penalties permitted by law.

18     85.   Plaintiffs and Class members are entitled to, and therefore request, an award of pre-

19   judgment interest on the unpaid wages set forth herein.

20     86.   Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the

21   prosecution of this action. Plaintiffs seek attorneys' fees under all applicable provisions of

22   law. Wherefore, Plaintiffs pray judgment as set forth herein below.

23   ///

24   ///

25   ///

26   ///

27

FIRST AMENDED CLASS ACTION COMPLAINT

1              <u>**Fourth Cause of Action**</u>

2        (On Behalf of Plaintiffs and the Arrearages Subclass and the Charge Back Subclass)

3              <u>**Against All Defendants**</u>

4        <u>**WILLFUL VIOLATIONS OF LABOR CODE 221**</u>

5    87.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

6    forth herein.

7    88.    California Labor Code § 221 provides: "It shall be unlawful for any employer to

8    collect or receive from an employee any part of wages theretofore paid by said employer to

9    said employee."

10   89.    In violation of this Labor Code provision, Defendants have established a commission

11   arrearages programs that permits them to obtain wages back from employees who have earned

12   those wages.  Furthermore, Defendants initiated and applied the commission arrearages

13   program without their employees' knowledge.  In addition, Defendants' commission

14   arrearages program has been applied to Defendants' employees in a manner that is

15   inconsistent with express promises made to Defendants' employees at the commencement of

16   their employment and during the course of their employment.  Also, as alleged herein,

17   Defendants applied the commission arrearages program without providing their employees

18   with adequate records of its operation. Finally, because Defendants do not employee bona fide

19   commissioned employees, the application of Defendants' arrearage and charge back systems

20   to hourly, non-exempt employees violates California law as described herein.

21   90.    Defendants have also perpetuated an illegal and unconscionable charge back or

22   product returns policy that further results in the debiting of employees wages and that

23   operates in violation of Labor Code § 221. Again, Defendants failed to provide their

24   employees with adequate records of its operation.

25   91.    Plaintiffs and the Class have been injured as a result of Defendants violations of Labor

26   Code § 221, and Plaintiffs and Class members seek as damages all wages owed to individuals

27   employed by Defendants, plus all penalties permitted by law.

                                                                                      37

92.    Plaintiffs and Class members are entitled to, and therefore request, an award of pre-judgment interest on the unpaid wages set forth herein.

93.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of law.  Wherefore, Plaintiffs pray judgment as set forth herein below.

### Fifth Cause of Action

(On Behalf of Plaintiffs and the Breach of Contract Subclass)

### Against All Defendants

### BREACH OF CONTRACT — 4 years w/

94.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

95.    Plaintiffs and the Class entered into employment contracts with Defendants memorialized by employee manuals described herein.  These contracts were common to all of Defendants' similarly-situated employees in the State of California and imposed duties on Defendants, including the duty to pay wages as promised, the duty to provide rest breaks as required under California law, the duty to pay for all time worked, the duty to refrain from receiving back wages previously paid, and the duty to permit employees to leave Defendants' premises after they had completed their shifts.

96.    Defendants breached each and every one of these contractual duties.  Plaintiffs and the Class fulfilled any and all duties required of them to receive the benefit of the contracts they formed with Defendants.

97.    Plaintiffs and the Class sustained damages as a direct and proximate result of Defendants' contractual breaches, including the loss of wages.  Plaintiffs seek, on their own behalf and on behalf of the entire Class, the value of all damages caused by Defendants' breaches of contract described herein.

98.    Wherefore, Plaintiffs pray judgment as set forth herein below.

38

### Sixth Cause of Action

(On Behalf of Plaintiffs and the Terminated/Resigned Subclass)

### Against All Defendants

FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 201, 202, AND 203 --

FAILURE TO PAY WAGES UPON DISCHARGE OR QUITTING;

### WAITING TIME PENALTIES

99.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

100.    California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due immediately upon discharge or 72 hours after an employee quits. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages per violation. A worker need not prove malice or intentional conduct in establishing their claim for waiting time penalties, but merely establish the employer did not do something it was obligated to do. (See Mamika v. Barca (1998) 68 Cal. App. 4th 487; Barnhill v. Robert Saunders & Co. (1981) 125 Cal.App.3d 1.)

101.    Plaintiffs and Class members are entitled to unpaid compensation, but to date have not received such compensation. As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, including premium overtime hours, Plaintiffs and Class members who were terminated and who resigned are entitled to 30 days wages as penalty under Labor Code § 203, together with interest thereon and attorneys' fees and costs for each violation described above. Wherefore, Plaintiffs pray judgment as set forth herein below.

///

///

///

39

FIRST AMENDED CLASS ACTION COMPLAINT

1          <u>**Seventh Cause of Action**</u>

2          (On Behalf of Plaintiff Justin Kiser and the Rest Breaks Subclass)

3          <u>**Against All Defendants**</u>

4          **FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE § 226.7 –
           FAILURE TO AFFORD MANDATORY REST BREAKS AS REQUIRED BY**
5          **IWC ORDERS AND LABOR CODE**

6      102.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

7      forth herein.

8      103.    At all times relevant, Plaintiffs and the Class members were covered by the provisions

9      of Industrial Wage Commission ("IWC") Orders, including IWC Orders 7-2001.

10     104.    The IWC Orders provide, in applicable part:

11             12. (A)  Every employer shall authorize and permit all employees to
               take rest periods, which insofar as practicable shall be in the middle of
12             each work period. The authorized rest period time shall be based on the
               total hours worked daily at the rate of ten (10) minutes net rest time per
13             four (4) hours or major fraction thereof. However, a rest period need
14             not be authorized for employees whose total daily work time is less
               than three and one-half (3 ½) hours. Authorized rest period time shall
15             be counted as hours worked for which there shall be no deduction from
               wages.
16
               12. (B)  If an employer fails to provide an employee a rest period in
17             accordance with the applicable provisions of this order, the employer
18             shall pay the employee one (1) hour of pay at the employee's regular
               rate of compensation for each workday that the rest period is not
19             provided.

20             California Labor Code § 226.7 states:

21             (a) No employer shall require any employee to work during any meal
22             or rest period mandated by an applicable order of the Industrial Welfare
               Commission.
23
               (b) If an employer fails to provide an employee a meal period or rest
24             period in accordance with an applicable order of the Industrial Welfare
25             Commission, the employer shall pay the employee one additional hour
               of pay at the employee's regular rate of compensation for each work
26             day that the meal or rest period is not provided.

27     105.    Defendants routinely failed to provide Plaintiff Justin Kiser and the Class members

                                                                                    40

1   with a 10-minute paid rest period for each four (4) hour period of work, in compliance with

2   IWC Orders and Labor Code § 226.7. As a result of Defendants' failure, Plaintiff and the

3   Class members are entitled to recover an amount to be proved at trial, of not less than one

4   additional hour of pay at the regular rate of compensation for each workday that any one rest

5   period was not provided, and any and all penalties provided by law.

6   106.    Defendants' policy and practice of denying Plaintiff Justin Kiser and the Class rest

7   periods constitutes a willful violation of California Labor Code § 226.7. Plaintiff and the

8   entire Class have sustained damages as a direct and proximate consequence of the

9   Defendants' willful and illegal conduct, to wit, they have been forced to work continuously

10  throughout the day, every day, without being allowed to take rest periods.

11  107.    Plaintiff Justin Kiser has incurred, and will continue to incur attorneys' fees and costs

12  in the prosecution of this action. Plaintiff seeks attorneys' fees under all applicable provisions

13  of law. Wherefore, Plaintiff prays judgment as set forth herein below.

14                                  **Eighth Cause of Action**

15                        (On Behalf of Plaintiffs and the Records Subclass)

16                                    Against All Defendants

17              **FOR WILLFUL VIOLATIONS OF LABOR CODE § 226 –**
18          **FAILURE TO MAINTAIN PAY RECORDS; FAILURE TO MAKE**
                   **PAY RECORDS AVAILABLE UPON REQUEST**

19  108.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20  forth herein.

21  109.    Defendants knowingly and intentionally failed to maintain accurate pay records, and

22  failed to allow current and former employees to inspect pay records upon request, in violation

23  of California Labor Code § 226, as more fully alleged hereinabove.

24  110.    As a direct result of Defendants' failure, Plaintiffs and Class members were injured

25  and are entitled to recover an amount to be proved at trial, of not less than the penalties

26  provided by the Labor Code. In addition, Class members who are currently employed by

27  Defendants are entitled to equitable relief against Defendants to force Defendants to comply

                                                                                    41

                              FIRST AMENDED CLASS ACTION COMPLAINT

1    with California law.

2    111.    Plaintiffs and Class members are entitled to penalties and attorneys' fees pursuant to

3    Labor Code § 226 and California Code of Civil Procedure § 1021.5.  Wherefore, Plaintiffs

4    pray judgment as set forth herein below.

5                                    **Ninth Cause of Action**

6                        (On Behalf of Plaintiffs and the Wage Disclosure Subclass)

7                                    Against All Defendants

8                        **WILLFUL VIOLATION OF LABOR CODE § 232**

9    112.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

10   forth herein.

11   113.    Labor Code § 232, provides:

12
                 No employer may do any of the following:
13

14               (a) Require, as a condition of employment, that an employee refrain from
                     disclosing the amount of his or her wages.
15               (b) Require an employee to sign a waiver or other document that purports to
                     deny the employee the right to disclose the amount of his or her wages.
16               (c) Discharge, formally discipline, or otherwise discriminate against an
                     employee who discloses the amount of his or her wages.
17

18   114.    In violation of this prohibition, Defendants' specifically instruct their employees that

19   they are not permitted to disclose their compensation to other employees.

20   115.    Plaintiffs seek an order prohibiting Defendants from continuing to engage in this

21   illegal conduct, and seek all penalties available under California law, and seek the award of

22   attorneys' fees and costs associated with obtaining the relief requested.

23   116.    Wherefore, Plaintiffs pray judgment as set forth herein below.

24   ///

25   ///

26   ///

27

                                                                                    42

1

**Tenth Cause of Action**

2

(On Behalf of Plaintiffs and the Unfair Business Practice Subclass)

3

Against All Defendants

4

**FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
SECTIONS 17200, ET SEQ.**

5

**BASED UPON DEFENDANTS' UNFAIR BUSINESS ACTS AND PRACTICES**

6

7

117.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

8

forth herein.

9

118.    Plaintiffs further bring this action pursuant to the Business and Professions Code

10

Sections 17200, et seq., seeking restitution for monies owed for regular and overtime wages,

11

and injunctive relief to enjoin Defendants' illegal practices.

12

119.    Plaintiffs further bring this action pursuant to the Business and Professions Code

13

Sections 17200, et seq., seeking disgorgement of one hour of pay for every rest break missed

14

by the class during the past four years.  Unless Defendants are ordered to disgorge these

15

monies, they will be unjustly enriched by their illegal conduct.

16

120.    The Unfair Competition Law prohibits all unfair competition, which is defined as "any

17

unlawful, unfair or fraudulent business act or practice."  Plaintiffs and the class have standing

18

to bring this claim because they are direct victims of Defendants' illegal and unfair business

19

practices, which Defendants engaged in for their sole financial benefit.

20

121.    Defendants, and each of them, are "persons" as defined under Business and

21

Professions Code § 17201. Each of the directors, officers, and/or agents of Defendants, and

22

each of them, are equally responsible for the acts of the other directors, officers, employees

23

and/or agents as set forth in the Business and Professions Code § 17095.

24

122.    Plaintiffs and the Class members bring this action in the interest of themselves, as

25

representatives, and in the interest of other employees of Defendants, and each of them, and in

26

the interest of the public pursuant to § 17203 of the California Business and Professions Code.

27

Plaintiffs and Class members bring this cause of action seeking restitution for Defendants'

43

FIRST AMENDED CLASS ACTION COMPLAINT

1  failure to pay employees regular and overtime wages, as well as disgorgement of wage

2  penalties for every rest break Defendants failed to provide, as well as an injunction

3  prohibiting Defendants from denying employees regular and overtime wages and rest periods,

4  now and in the future.

5  123.    Plaintiffs and the Class members bring this action to pursue claims during a 4-year

6  statute of limitations under § 17208 of the California Business and Professions Code.

7  124.    The following practices of Defendants, and each of them, are unlawful and unfair

8  business practices under California Business and Professions Code §§ 17200 et seq.:

9          (a)    Failure to pay all regular and overtime wages, in violation of the

10                California Labor Code and all other applicable laws;

11         (b)    Failure to abide by promises regarding wages to be paid to

12                employees.

13         (c)    The use of fraud in the conduct of business.

14         (d)    The false imprisonment of employees after their work shifts were

15                over.

16         (e)    Imposition of an illegal and unconscionable arrearage program

17                designed to obtain back from Plaintiffs and the Class wages that

18                they had been previously paid, in violation of Labor Code § 221.

19         (f)    Imposition of an unconscionable charge back policy that permits

20                Defendants to debit their employees wages for commission on

21                merchandize returned by customers, regardless of the reason for

22                the return and regardless of how long after the sale had been

23                completed.

24         (g)    Breaches of employment contracts and covenants made to

25                employees.

26         (h)    Failure to provide rest breaks pursuant to the California Labor

27                Code and IWC wage orders;

44

1   (i) Failure to maintain accurate pay records, and make those records

2     available for inspection upon request by employees;

3   (j) Unjust enrichment due to the failure to pay wages, including

4     overtime wages.

5   (k) Imposing an illegal prohibition that employees may not disclose

6     or discuss their wages with others.

7 125. At all times material to this action, Defendants' conduct described above is an unfair,

8 unlawful, and/or fraudulent business practice in violation of California Business &

9 Professions Code §§ 17200 et seq.

10 126. As alleged hereinabove, Defendants have inequitably and unlawfully conspired,

11 agreed, arranged and combined to violate California labor laws, as alleged herein.

12 127. As set forth below, Plaintiffs and Class members are informed and believe and

13 thereupon allege, that by failing to pay wages to all employees at Defendants' business,

14 Defendants have engaged in business within the State of California in a manner that injured

15 competitors, lead to misrepresentations to the public about the manner in which Defendants

16 engaged in business, and/or destroyed competition in violation of Business and Professions

17 Code § 17043.  Upon information and belief, Plaintiffs and Class members allege that

18 Defendants engaged in the acts and omissions heretofore alleged for the purpose of profiting

19 from lower labor costs, and obtaining an unlawful or unfair advantage, all in a scheme to

20 engage in unfair competition, at the expense of their employees and to the detriment of public

21 policy for the lawful employment of employees.

22 128. Pursuant to Business and Professions Code §§ 17071 and 17075, the failure of

23 Defendants, and each of them, to pay all wages, including overtime wages, is admissible as

24 evidence of Defendants' intent to violate the California Unfair Competition Law.

25 129. As a direct and proximate result of the unfair, unlawful, and/or fraudulent business

26 practices alleged herein, Plaintiffs and the entire Class have been denied due wages, both

27 regular and overtime, as well as rest periods, all to their detriment and all to Defendants'

45

1  illegal economic advantage.

2  130.  Plaintiffs and the Class members are informed and believe and thereon allege that the

3  Defendants, and each of them, by committing the above-described acts, have deceived the

4  public by illegally depriving their employees regular and overtime wages, rest periods, and

5  engaging in the other wrongful conduct described herein.

6  131.  Business and Professions Code provides that the Court may restore to an aggrieved

7  party any money or property acquired by means of unlawful and unfair business practices, and

8  to disgorgement of penalty wages for failing to provide rest periods to employees.  Plaintiffs

9  and Class members seek restitution of all unpaid wages owing to them and members of the

10  general public, and to disgorgement, according to proof, that the Defendants have enjoyed as

11  a result of the unfair business practices.

12  132. .  Business and Professions Code § 17202 states: "Notwithstanding Section 3369 of the

13  Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

14  penal law in a case of unfair competition."

15  133.  In addition to restoration of all wages owed, Plaintiffs and Class members seek to

16  enforce penalties in the interest of themselves, in the interest of other employees of

17  Defendants, and each of them, and in the interest of the general public pursuant to § 17202:

18            (a)     Waiting time penalties (Labor Code § 203);

19            (b)     Extra hour of pay for not authorizing or permitting rest breaks

20  (Labor Code § 226.7);

21            (c)     Failure to maintain and make available for inspection accurate

22  pay records (Labor Code § 226);

23            (d)     Illegally prohibiting employees from disclosing or discussing

24  their wages (Labor Code § 232).

25  134.  There is a financial burden incurred in pursuing this action that would be unjust to

26  place on Plaintiffs and the Class members, because the burden of enforcing workforce-wide

27  rights is disproportionate to that of enforcing only individual claims.  It would be against the

46

1  Interests of justice to force payment of attorneys' fees from Plaintiff and Class members'

2  recovery in this action. Therefore, attorneys' fees are appropriate and sought pursuant to all

3  applicable laws, including but not limited to California Code of Civil Procedure § 1021.5.

4  135.    Unless equitable relief is granted, members of the Class will continue to be subjected

5  to Defendants' illegal conduct. Pursuant to Business and Professions Code §§ 17203,

6  Plaintiffs and the Class seek a permanent injunction enjoining Defendants' continuing

7  violations of California's Unfair Competition Law on the grounds that such acts described

8  herein violate § 17200 of the Business and Professions Code and California's public policy.

9  Wherefore, Plaintiffs pray judgment as set forth herein below.

10                        **Eleventh Cause of Action**

11             **(On Behalf of Plaintiffs and the Unjust Enrichment Subclass)**

12                          **Against All Defendants**

13                        **UNJUST ENRICHMENT**

14
15  136.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

16  forth herein.

17  137.    As a consequence of violating the employment rights of Plaintiffs and Class members,

18  Defendants, and each of them, were unjustly enriched at Plaintiffs' and Class members'

19  expense. Defendants gained an advantage by denying Plaintiffs and Class members regular

20  and overtime wages, by denying them rest periods, and by engaging in the other wrongful

21  conduct described herein. As a proximate result, Plaintiffs and Class members suffered

22  damages. The interests of equity require that Defendants pay restitution and penalties for

23  violating the Labor Code and Business and Professions Code. Wherefore, Plaintiff prays

24  judgment as set forth herein below.

25
26  ///

27

                                                                          47

<div align="center">

**Twelfth Cause of Action**

**Against All Defendants**

**(On Behalf of Plaintiffs and the Declaratory Relief Subclass)**

**FOR DECLARATORY RELIEF**

</div>

138.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

139.    Plaintiffs and the Class seek a Declaration by this Court that Defendants' concerted violations alleged herein constitute unfair business practices, in violation of the Unfair Competition Law.

140.    Plaintiffs and the Class also seek a Declaration by this Court that Defendants' policy and practice of denying regular and overtime wages and rest periods constitute a violation of California law, as alleged herein.

141.    In addition, Plaintiffs and Class members seek a Declaration by this Court that Defendants' policy and practice of failing to maintain accurate pay records, and failing to provide employees with those records for inspection upon request constitutes a violation of California law, as alleged herein.

<div align="center">

**Thirteenth Cause of Action**

**Against All Defendants**

**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT**
**(Labor Code §§2699, et seq.)**

(On Behalf of Plaintiffs, the Private Attorneys General Subclass and the State of California)

</div>

142.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

143.    Defendants have violated Labor Code § 203 by consistently failing to timely pay employees all wages due upon resignation and/or termination.

144.    Defendants have violated Labor Code § 204 by consistently failing to pay employees

48

<div align="center">

FIRST AMENDED CLASS ACTION COMPLAINT

</div>

1   in a timely way.

2   145.  Defendants have violated Labor Code § 206.5 by consistently requiring employees to

3   sign documents releasing them from the obligation to pay wages owed to employees.

4   146.  Defendants have violated Labor Code § 208 by consistently failing to pay all wages

5   due terminated employees at the place of discharge.

6   147.  Defendants have violated Labor Code § 221 by consistently engaging in a practice of

7   taking back wages previously paid to employees.

8   148.  Defendants have violated Labor Code § 223 by consistently agreeing to pay

9   employees certain wages and then though the use of deception and fraudulent payroll

10   practices has secretly paid employees lower wages than promised.

11   149.  Defendants have violated Labor Code § 226(a) by consistently failing to provide the

12   accurate itemized statement of wages on employees' pay stubs as required under California

13   law.

14   150.  Defendants have violated Labor Code § 226.7 by consistently failing to provide

15   employees with rest breaks during their working shifts.

16   151.  Defendants have violated Labor Code § 227 by promising employees that they will

17   provide medical and dental insurance to them after they have worked for the company for 90

18   calendar days and then has consistently breached that promise by failing to make payments

19   into a health insurance fund covering those benefits within 90 days.

20   152.  Defendants have violated Labor Code § 232(c) by prohibiting employees from

21   disclosing or discussing their wages, and, based on information and belief, has formally

22   disciplined or otherwise discriminated against employees who disclose the amount of their

23   wages.

24   153.  Defendants have violated Labor Code § 432.5 by consistently requiring employees to

25   sign documents, including the company's employee manuals that demand employees agree in

26   writing to illegal policies and practices.

27   154.  Defendants have violated Labor Code § 510 by consistently failing to pay premium

19

1    overtime wages to its employees.

2    155.    Defendants have violated Labor Code § 976 by consistently publishing misleading

3    statements about the commissions it promises to employees.

4    156.    Defendants have violated Labor Code § 1194 by consistently requiring employees to

5    agree to waive their statutory right to premium overtime wages, and then fails to pay them

6    premium overtime.

7    157.    Defendants have violated Labor Code § 1199 by consistently violating provisions of

8    Labor Code §§ 1171, et seq.

9    158.    Plaintiffs herein seek to serve as private attorneys general under the California Private

10   Attorneys General Act, Labor Code §§ 2699, et seq., and have provided proper notice to

11   defendants and the state of California.

12   159.    On or about June 23, 2006, the California Labor and Workforce Development Agency

13   provided notice to defendants and plaintiffs that it did not intend to investigate the allegations

14   contained in plaintiffs' properly and timely served notice letter.  (A copy of the California

15   Labor and Workforce Development Agency's June 23, 2006, letter is attached as Exhibit 1.)

16   160.    Plaintiffs are now entitled as a matter of law to amend this compliant to include their

17   requests for relief under the California Private Attorneys General Act, and hereby do so, and

18   to seek and collect statutory penalties available under the Private Attorneys General Act on

19   behalf of the State of California, themselves and the class they seek to represent.

20                          **PRAYER FOR RELIEF**

21        WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

22   them, as follows:

23        (a)      Certifying this action to proceed as a class action pursuant to California Code

24   of Civil Procedure section 382 and designating Plaintiffs as the representatives of the Class

25   and their legal counsels as counsels for the Class;

26        (b)      For damages for unpaid wages, including regular and overtime wages, and

27

                                                                                    50

1    such general and special damages as may be appropriate, according to proof at trial;

2         (c)    For 30 days waiting time penalties under Labor Code § 203;

3         (d)    For penalties under Labor Code § 210 and 558(a)(3);

4         (e)    For penalties under Labor Code § 226(f);

5         (f)    For damages calculated at one extra hour for each day no rest period was

6
7    provided (Labor Code § 226.7);

8         (g)    For all civil penalties available pursuant to Labor Code §§ 2699, et seq., as

9    alleged herein above.

10        (h)    For severe emotional distress caused by Defendants' concerted conduct,

11   including the false imprisonment of their employees;

12        (i)    Declaring that the concerted violations alleged herein constitute unfair

13   competition in violation of California's Unfair Competition Law, and violations of

14
15   California's Labor Code;

16        (j)    Permanently enjoining Defendants from continuing to engage in the unlawful

17   concerted conduct described herein;

18        (k)    Equitable remedies, including but not limited to, an equitable accounting, as

19   the court deems just and proper under the circumstances;

20        (l)    Awarding Plaintiffs and the Class punitive or exemplary damages based on

21   Defendants' oppressive and despicable conduct;

22        (m)    Granting Plaintiffs and the Class the costs of prosecuting this action, together

23
24   with interest and reasonable attorneys' and experts' fees; and

25        (n)    Granting such other relief as this Court may deem just and proper under the

26   circumstances.

27

51

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## JURY DEMAND

To the full extent available, Plaintiffs demand a trial by jury.

DATED: July 20 2006                    THE LAW OFFICE OF PATRICK R. KITCHIN

                                       By
                                          Patrick R. Kitchin, Esq.
                                          Attorneys for Plaintiffs

DATED: July 20, 2006                   THE LAW OFFICE OF DANIEL FEDER

                                       By
                                          Daniel L. Feder, Esq.
                                          Attorneys for Plaintiffs        by PRK

52



# CALIFORNIA
## Labor & Workforce Development Agency

June 23, 2006

Patrick R. Kitchin
Law Offices of Patrick R. Kitchin
565 Commercial St., 4th Floor
San Francisco, CA 94111

CSC- Lawyers Incorporating Service
Agent for Service of Process for
Polo Ralph Lauren Corp. doing business in California as
Delaware Polo Ralph Lauren Corporation
P.O. Box 526036
Sacramento, CA 95852-6036

Re:    LWDA No: 1410
       Employer:  Polo Ralph Lauren Corp., et al.
       Employee:  Ann Otsuka, et al.

Dear Employer and Representative of the Employee:

This is to inform you that the Labor and Workforce Development Agency (LWDA)
received your notice of alleged Labor Code violations pursuant to Labor Code Section
2699, postmarked June 02, 2006 and after review, does not intend to investigate the
allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "...civil
penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to
the LWDA for enforcement of labor laws and education of employers and employees about
their rights and responsibilities under this code". Labor Code Section 2699(l) specifies
"[t]he superior court shall review and approve any penalties sought as part of a proposed
settlement agreement pursuant to this part".

Consequently you must advise us of the results of the litigation, and forward a copy of the
court judgment or the court-approved settlement agreement.

Sincerely,

Richard L. Rice

Richard L. Rice
Undersecretary

07-13-06P02:14  RCVD

1 | Patrick R. Kitchin, Esq. (SBN 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
2 | 565 Commercial Street, 4th Floor
San Francisco, CA 94111
3 | Telephone:  (415) 677-9058
Facsimile:  (415) 627-9076
4 | Attorneys for Plaintiffs

ENDORSED
**F I L E D**
San Francisco County Superior Court

**JUL 2 0 2006**

GORDON PARK-LI, Clerk
BY: _____ RONNIE OTERO
Deputy Clerk



**CORPORATION SERVICE COMPANY'**

# Notice of Service of Process

null / ALL
Transmittal Number: 4859151
Date Processed: 07/28/2006

| | |
|---|---|
| **Primary Contact:** | Edward Scheuermann<br>Polo Ralph Lauren Corporation<br>625 Madison Avenue<br>Floor 11th<br>New York, NY 10022 |

| | |
|---|---|
| **Entity:** | Polo Ralph Lauren Corporation<br>Entity ID Number  0027848 |
| **Entity Served:** | Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corp |
| **Title of Action:** | Ann Otsuka vs. Polo Ralph Lauren Corporation |
| **Document(s) Type:** | Amended Complaint |
| **Nature of Action:** | Contract |
| **Court:** | San Francisco City and County Superior Court, California |
| **Case Number:** | CGC-06-452655 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 07/28/2006 |
| **Answer or Appearance Due:** | None Given |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | Patrick R. Kitchin<br>415-877-9058 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com