.

# EXHIBIT 16

F 09/18/06

WILLIAM J. GOINES (SBN 061290)
JEREMY A. MEIER (SBN 139849)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com
        meierj@gtlaw.com

**ENDORSED**
**FILED**
San Francisco County Superior Court

SEP 18 2006

GORDON PARK-LI, Clerk
BY _____
        WESLEY RAMIREZ
                Deputy Clerk

Attorneys for Defendants Polo Ralph Lauren
Corporation; Polo Retail, LLC; Fashions Outlet
of America, Inc.; and Polo Retail Corporation

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and JUSTIN KISER, an individual; and on behalf of all other similarly situated, <br><br> Plaintiff(s), <br><br> v. <br><br> POLO RALPH LAUREN CORPORATION, a Delaware Corporation; POLO RETAIL, LLC, a Delaware Corporation; POLO RALPH LAUREN CORPORATION, a Delaware Corporation, doing business in California as POLO RETAIL CORP; FASHIONS OUTLET OF AMERICA, INC., a Delaware Corporation and DOES 1-500, inclusive, <br><br> Defendant(s). | Case No. CGC-06-452655 <br><br> **DEFENDANTS POLO RALPH LAUREN CORPORATION, POLO RETAIL, LLC, POLO RETAIL CORP., AND FASHIONS OUTLET OF AMERICA, INC.'S APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF WILLIAM J. GOINES** <br><br> [CRC Rule 1800, *et seq.*] <br><br> Dept:     304 <br> Judge:    Hon. Richard Kramer <br><br> Date Action Filed: May 30, 2006 |

Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Fashions Outlet of America, Inc.; and Polo Retail Corporation (hereafter collectively "Polo" or "Defendants") bring this Application for Approval of Complex Litigation Designation (hereafter "Application") pursuant to California Rules of Court, Rule 1800, *et seq.*, and pursuant to this Court's July 30, 2004 General Order.

1

1    This Application is made, in particular, on the grounds that the case is a complex purported

2    class action employment lawsuit involving many claims and issues, numerous parties and witnesses,

3    a large number of anticipated pretrial motions, substantial discovery including a high volume of

4    documents and depositions and, as such, requires exceptional judicial management.

5    Further, Polo's application is based on Polo's counter Civil Case Cover Sheet filed September

6    8, 2006, this Application for Approval of Complex Litigation Designation, the Memorandum of

7    Points and Authorities in support thereof, all of the papers filed and proceedings thus far in this

8    action, and on any argument the Court may entertain at any hearing on this Application.

9

10   Dated: September 18, 2006.                    GREENBERG TRAURIG, LLP

11

12                                                By: ~~~~~~~

13                                                   William J. Goines, Esq.
                                                    Jeremy A. Meier, Esq.

14                                                Attorneys for Defendants Polo Ralph Lauren
                                                  Corporation; Polo Retail, LLC; Fashions Outlet
15                                                of America, Inc.; and Polo Retail Corporation

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND.

Plaintiffs Ann Otsuka, Janis Keefe, Corrine Phipps, and Justin Kiser (hereafter "Plaintiffs"), individually and on behalf of others, served their First Amended Complaint ("FAC") alleging a variety of employment related claims against Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Retail Corp.; and Fashions Outlet of America, Inc. on or about July 28, 2006, with Plaintiffs' May 30, 2006 Civil Case Cover Sheet designating the action as "not complex; for an unlimited amount; and for employment class action remedies of monetary, nonmonetary, and punitive damages."

The FAC is the operative complaint in this action, having been actually received by Polo on August 15, 2006. Polo made its first appearance in this action on September 8, 2006, when it filed a counter Civil Case Cover Sheet with its Application for Extension of Time to Respond to the FAC. On September 12, 2006, Commissioner Arlene T. Borick granted Polo's application and set Polo's responsive pleading as due to be filed and served by October 12, 2006.[1]

Plaintiffs' FAC includes the following causes of action against each of the four Polo Defendants: Fraud; False Imprisonment; Willful Violations of Labor Code §§510 and 204 [Failure to Pay Wages Earned]; Willful Violations of Labor Code §221; Breach of Contract; Willful Violations of Labor Code §§201, 202, and 203; Willful Failure to Provide Rest Periods; Willful Violations of Labor Code §226; Willful Violations of Labor Code §232; Violations of Business and Professions Code §§ 17200, et seq.; Unjust Enrichment; Declaratory Relief; and Recovery Under the Private Attorneys General Act. The FAC seeks class action status and compensatory and punitive damages and declaratory relief for the alleged failure to pay wages earned and to provide for rest periods, as well as for numerous alleged labor code violations and tort claims dating back several years.

Defendants respectfully requests this Court to grant this application for Complex Litigation Designation.

//

---

[1] Copies of Plaintiffs' FAC and their Civil Case Cover Sheet, along with Defendants' Counter Civil Case Cover Sheet, are attached to the September 18, 2006 Declaration of William J. Goines, Esq. (hereafter "Goines Decl.") as Exhibits A-C.

II.    LEGAL ARGUMENT

    A. The Interests of Judicial Efficiency and Economy Mandate Designating this Purported Employment Class Action as a "Complex Litigation" Case.

This purported class action lawsuit falls squarely within the definition of and factors for Complex Litigation (or Complex Case) designation in San Francisco Superior Court. "A 'complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." Cal. R. Ct. 1800(a). Further, this employment related purported class action case is already "provisionally a complex case" under Cal. R. Ct. 1800(c)(6).

Enunciated "factors" to be generally considered in determining whether to designate any case as a "complex case" all weigh in favor of granting Defendants' Application. Cal. R. Ct. 1800(b) specifies that "the court shall consider," for example, whether the action is likely to involve: "(1) Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming ...; (2) Management of a large number of witnesses or a substantial amount of documentary evidence; (3) Management of a large number of separately represented parties; (4) Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court; or (5) Substantial postjudgment judicial supervision." (Emphasis added.) This case can be expected to involve substantial time consuming management on both sides, and the interests of judicial efficiency and economy will be well served by a permanent Complex Litigation designation.

"The complex litigation procedure is intended to facilitate pretrial resolution of evidentiary and other issues, and to minimize the time and expense of lengthy or multiple trials." Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 966 (1997). Plaintiffs' FAC includes four individually named Plaintiff employees suing four separate Polo entities, on behalf of themselves and all others similarly situated. FAC, ¶¶1-8, 12.[2] Plaintiffs have alleged thirteen (13) different complex causes of action,

---

[2] Plaintiffs' FAC ¶12 states, "This action is brought by Plaintiffs and all other current and former employees of Polo Ralph Lauren Corporation. Polo Retail, LLC, Polo Retail Corp., Fashions Outlet of America, Inc., and DOES 1-500, in the State of California who have been injured by the conduct of the Defendants as alleged herein below."

1    involving alleged statutory Labor Code violations, tort claims, contract claims, and declaratory relief

2    claims. Plaintiffs seek significant unlimited monetary and nonmonetary relief, including punitive

3    damages. Goines Decl., Ex. A.; FAC, Prayer for Relief, pp. 50-52; and Ex. B, Plaintiffs' May 30,

4    2006 Civil Case Cover Sheet. This purported class action will thus necessarily entail significant pre-

5    trial motions, numerous witnesses (including potentially experts) and potential class members, as

6    well as a mountain of documentary evidence and oral and written discovery. Goines Decl., ¶¶4-5. It

7    is anticipated that the pre-trial motions will include, *inter alia*, demurrers, motions to strike, motions

8    for protective order and for limitations on discovery, as well as a contested motion for class action

9    certification. Goines Decl., ¶4. The management of this action will benefit from being designated as

10   complex with the requisite supervision and guidance from one judge who can marshal issues related

11   to the pleadings, discovery, motions and class certification issues with timeliness and consistency.

12   Goines Decl., ¶5.

13          Enhanced judicial management and supervision will help ensure that the parties' many claims,

14   defenses, and issues are efficiently and speedily resolved. Goines Decl., ¶6. The sheer volume of

15   anticipated document discovery, witnesses and depositions, written pre-trial motions, documentary

16   evidence, as well as the potential need for post-judgment supervision over a potential class of alleged

17   plaintiffs, will necessarily require especially significant judicial time, energy, and management.

18   There is no reason to take this case out of its "provisional designation" as Complex Litigation. There

19   is, indeed, no reason to think that the many unique facts, issues, and claims raised by Plaintiffs' class

20   action FAC would in any way lend themselves to "routine management" as otherwise required to take

21   it out of its provisional Complex designation. Cal. R. Ct. 1800(d). Clearly, the interests of the Court,

22   the parties, and counsel will best be served by a Complex Litigation designation so that this class

23   action litigation can proceed on an efficient and manageable track.

24   //

25   //

26   //

27   //

28   //

1    Accordingly, Polo requests that this Court approve its Application and permanently designate

2  this action as a Complex Litigation matter.

3

Dated:  September 18, 2006.                    GREENBERG TRAURIG, LLP

4

5

6                                              By: _____
                                                   William J. Goines, Esq.
7                                                  Jeremy A. Meier, Esq.

8                                              Attorneys for Defendants Polo Ralph Lauren
                                               Corporation; Polo Retail, LLC; Fashions Outlet
9                                              of America, Inc.; and Polo Retail Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Otsuka, et al. v. Polo Ralph Lauren Corporation, et al.                    Case No. CGC-06-452655

## PROOF OF SERVICE

I, Cathy Sandifer, am a citizen of the United States, over the age of eighteen years and not a party to the within action. I am an employee of GREENBERG TRAURIG, LLP, and my business address is 1900 University Avenue, Fifth Floor, East Palo Alto, CA 94303. On September 18, 2006, I served the following documents:

DEFENDANTS POLO RALPH LAUREN CORPORATION, POLO RETAIL, LLC, POLO RETAIL CORP., AND FASHIONS OUTLET OF AMERICA, INC.'S APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION; MEMORANDUM OF POINTS AND AUTHORITIES

☒    by transmitting via **FACSIMILE** the document(s) listed above to the fax numbers) set forth below, or as stated on the attached service list, on this date at approximately _____, from the sending facsimile machine telephone number of 650-289-7893. The transmission was reported as complete and without error by the machine. Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration. The transmission report was properly issued by the transmitting facsimile machine.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the **UNITED STATES MAIL** at East Palo Alto, California, addressed as set forth below.

☐    by **OVERNIGHT MAIL** by placing the document(s) listed above in a sealed overnight mail envelope with postage thereon fully prepaid, addressed as set forth below. I am aware that on motion of the party served, service is presumed invalid if delivery by Federal Express is more than one day after date of deposit with Federal Express.

☐    **(BY MESSENGER PERSONAL SERVICE).** I caused delivery of such envelope by hand to the offices of the addressee.

Patrick R. Kitchin, Esq.                             Daniel Feder, Esq.
Law Offices of Patrick R. Kitchin          Law Offices of Daniel L. Feder
565 Commercial St., 4th Fl.                    807 Montgomery St.
San Francisco, CA 94111                       San Francisco, CA 94133
(Fax: 415-627-9076)                             (Fax: 415-391-9432)

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service/Express Mail, Federal Express and other overnight mail services. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at East Palo Alto, California, in the ordinary course of such business.

//

//

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 18, 2006, at East Palo Alto, California.

_Cathy Sandifer_

Cathy Sandifer

F 09/18/06

1 │ WILLIAM J. GOINES (SBN 061290)
  │ JEREMY A. MEIER (SBN 139849)
2 │ GREENBERG TRAURIG, LLP
  │ 1900 University Avenue, Fifth Floor
3 │ East Palo Alto, California 94303
  │ Telephone: (650) 328-8500
4 │ Facsimile: (650) 328-8508
  │ Email: goinesw@gtlaw.com
5 │      meierj@gtlaw.com

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

SEP 1 8 2006

GORDON PARK-LI, Clerk
BY____WESLEY RAMIREZ____
Deputy Clerk

6 │ Attorneys for Defendants Polo Ralph Lauren
  │ Corporation; Polo Retail, LLC; Fashions Outlet
7 │ of America, Inc.; and Polo Retail Corporation

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        FOR THE COUNTY OF SAN FRANCISCO

11

| | |
|---|---|
| 12  ANN OTSUKA, an individual; JANIS<br>13  KEEFE, an individual; CORINNE PHIPPS,<br>an individual; and JUSTIN KISER, an<br>14  individual; and on behalf of all other similarly<br>situated,<br>15            Plaintiff(s),<br><br>16  v.<br><br>17  POLO RALPH LAUREN CORPORATION,<br>a Delaware Corporation; POLO RETAIL,<br>18  LLC, a Delaware Corporation; POLO<br>RALPH LAUREN CORPORATION, a<br>19  Delaware Corporation, doing business in<br>California as POLO RETAIL CORP;<br>20  FASHIONS OUTLET OF AMERICA, INC.,<br>a Delaware Corporation and DOES 1-500,<br>21  inclusive,<br><br>22            Defendant(s). | Case No. CGC-06-452655<br><br>**DECLARATION OF WILLIAM J. GOINES<br>IN SUPPORT OF DEFENDANTS POLO<br>RALPH LAUREN CORPORATION; POLO<br>RETAIL, LLC; POLO RETAIL CORP.; AND<br>FASHIONS OUTLET OF AMERICA, INC.'S<br>APPLICATION FOR APPROVAL OF<br>COMPLEX LITIGATION DESIGNATION**<br><br>DEPT:      304<br>JUDGE:    Hon. Richard A. Kramer<br><br>Date Action Filed: May 30, 2006 |

23            I, WILLIAM J. GOINES, declare:

24            1.      I am an attorney at law duly licensed to practice in the State of California and am a

25   shareholder of Greenberg Traurig, LLP, attorneys for Defendants Polo Ralph Lauren Corporation;

26   Polo Retail, LLC; Fashions Outlet of America, Inc.; and Polo Retail Corporation (hereafter "Polo" or

27   "Defendants").

28

                                               1

2.    I have personal knowledge of the matters set forth below except as to those which are stated on information and belief and, as to those, I am informed and believe that they are true. If called as a witness, I could and would competently testify to the following facts in a court of law.

3.    Greeenberg Traurig was retained by Polo to defend them in this matter on or about August 15, 2006. On August 16, 2006 I received for the first time a copy of Plaintiffs Ann Otsuka, Janis Keefe, Corrine Phipps, and Justin Kiser's (hereafter "Plaintiffs") First Amended Class Action Complaint (hereafter "FAC") against Polo for wage and hour, statutory labor law violations, and tort and contract claims. I am lead local counsel for Polo for this litigation and have recently completed an initial review and analysis of the lengthy FAC. Attached hereto as Exhibits A-C are true and accurate copies of Plaintiffs' First Amended Complaint, Plaintiffs' May 30, 2006 Civil Case Cover Sheet, and Polo's September 8, 2006 Counter Civil Case Cover Sheet.

4.    The FAC is a complex wage and hour and labor law putative class action against four corporate defendants, and contains thirteen different wage and hour, labor, tort, and contract claims, each of which raises unique and complex factual and legal issues. The FAC alleges six different California Labor Code violations, ranging from wage and commission claims, to meal and rest period issues, to paycheck and wage disclosure claims. The FAC further alleges causes of action for breach of contract, fraud, false imprisonment, unfair competition, and unjust enrichment, and seeks recovery under the Private Attorneys General Act as well as compensatory and punitive monetary damages and declaratory relief.  Discovery will be complex and demanding, involving, for example, potentially voluminous documents and records, many of which may be computerized and which may necessitate the need for expert testimony, analysis, and reporting.  Discovery, therefore, can be expected to entail significant time, expense and effort.  Similarly, pre-trial motions can also be expected to be intensive and wide-ranging, including demurrers, motions to strike, motions for protective orders, discovery motions, and a contested motion for class and subclass certification. All of this necessitates a Complex Litigation Designation to move this litigation forward in an efficient and manageable process.

5.    This putative class action will also involve many witnesses and parties (on both sides), including potentially testimony and analysis from experts.  Our clients' headquarters are located in

1  New York, New York, as are many of the relevant employee records and corporate documents.

2  Plaintiffs are potentially scattered across the state and the action will inevitably require significant

3  coordination and facilitation of discovery and scheduling. Further, the claims and issues raised by

4  Plaintiffs' FAC are not routine; to the contrary, these claims raise novel and unique questions of law

5  and fact. Further, there exists the potential for significant need for postjudgment judicial supervision.

6        6.      These claims will thus require a significant amount of time and energy from counsel,

7  witnesses, and the Court.  This litigation will benefit from a Complex Litigation Designation,

8  ensuring that all parties' interests, including the Court's, are well served by utilizing specialized and

9  cost effective case management.

10       I declare under penalty of perjury under the laws of the State of California that the foregoing

11  is true and correct and, if stated on information and belief, I believe it to be true.  Executed at East

12  Palo Alto, California, this 18th day of September, 2006.

13

14

                                    _____
15                                   William J. Goines

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF APPLICATION FOR COMPLEX LITIGATION DESIGNATION

A

Judge: KRAMER

Case:

**FILED**

San Francisco County/Superior Court

JUL 2 0 2006

GORDON PARK-LI, Clerk

BY: _____

Deputy Clerk

1  Patrick R. Kitchin, Esq. (SBN 162965)
   THE LAW OFFICE OF PATRICK R. KITCHIN
2  565 Commercial Street, 4th Floor
   San Francisco, CA 94111
3  Telephone: (415) 677-9058
   Facsimile: (415) 627-9076
4  Attorneys for Plaintiffs

5  Daniel Feder (State Bar No. 130867)
   THE LAW OFFICES OF DANIEL FEDER
6  807 Montgomery Street
   San Francisco, CA 94133
7  (415) 391-9476

8  Counsel to Ann Otsuka, Janis Keefe, Corinne Phipps,
   and Justin Kiser

9                    SUPERIOR COURT OF CALIFORNIA

10        FOR THE CITY AND COUNTY OF SAN FRANCISCO

11 ANN OTSUKA, an individual; JANIS          ) Case No.: CGC-06-452655
   KEEFE, an individual; CORINNE PHIPPS, an )
12 individual; and JUSTIN KISER, an individual; ) **FIRST AMENDED CLASS ACTION**
   and on behalf of all others similarly situated, ) **COMPLAINT FOR:**
13                                              )
14              Plaintiffs,                     )   • **FRAUD**
                                                )   • **FALSE IMPRISONMENT**
15        vs.                                   )   • **WILLFUL VIOLATIONS OF LABOR**
                                                )     **CODE §§ 510 AND 204 (FAILURE TO**
16 POLO RALPH LAUREN CORPORATION; a )             **PAY WAGES EARNED)**
   Delaware Corporation; POLO RETAIL, LLC., )   • **WILLFUL VIOLATIONS OF LABOR**
17 a Delaware Corporation; POLO RALPH        )     **CODE § 221**
   LAUREN CORPORATION, a Delaware           )   • **BREACH OF CONTRACT**
18 Corporation, doing business in California as )   • **WILLFUL VIOLATIONS OF LABOR**
   POLO RETAIL CORP; FASHIONS OUTLET        )     **CODE §§ 201, 202 AND 203**
19 OF AMERICA, INC., a Delaware Corporation )   • **WILLFUL FAILURE TO PROVIDE**
   and DOES 1-500, inclusive                 )     **REST PERIODS**
20                                            )   • **WILLFUL VIOLATIONS OF LABOR**
                                              )     **CODE § 226**
21              Defendants.                    )   • **WILLFUL VIOLATIONS OF LABOR**
                                              )     **CODE § 232**
22                                            )   • **VIOLATIONS OF BUSINESS AND**
                                                    **PROFESSIONS CODE §§ 17200, ET**
23                                                  **SEQ.**
                                                  • **UNJUST ENRICHMENT**
24                                                • **DECLARATORY RELIEF**
                                                  • **RECOVERY UNDER THE PRIVATE**
                                                    **ATTORNEYS GENERAL ACT**
25
                                                **JURY TRIAL DEMANDED**
26
                                                Complaint Filed: May 30, 2006
27

                                                                        1

1  Plaintiffs, individually and on behalf of all others similarly situated, for their

2  complaint against defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail

3  Corp., Fashions Outlet of America, Inc., and Does 1-500, inclusive, allege upon information

4  and belief, except as to the allegations that pertain to Plaintiffs and their counsel, as follows:

5  ## JURISDICTION AND VENUE

6  1.  Plaintiff Ann Otsuka is an individual who resides, and at all times relevant has resided,

7  in Santa Clara County, California, who is a citizen of the State of California, and who was

8  employed by Polo Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail,

9  LLC, in Santa Clara County, California, between approximately May 2004 and approximately

10  November 2004.

11  2.  Plaintiff Corinne Phipps is an individual who at all times relevant resided in San

12  Francisco County, California, who is a citizen of the State of California, and who was

13  employed by Polo Retail Corp., and/or Polo Retail, LLC, and/or Polo Ralph Lauren

14  Corporation, in San Francisco County, California, between approximately May 2004 and

15  approximately December 2004.

16  3.  Plaintiff Justin Kiser is an individual who at all times relevant resided in Contra Costa

17  County, California, who is a citizen of the State of California, and who was employed by

18  Fashion Outlets of America, Inc., in San Francisco County, California, between

19  approximately July 2004 and approximately August 2005.

20  4.  Plaintiff Janis Keefe is an individual who at all times relevant resided in San Francisco

21  County, California, who is now a citizen of the State of Kentucky, and who was employed by

22  Polo Retail Corp., Polo Retail, LLC, and/or Polo Ralph Lauren Corporation, in San Francisco,

23  California, between approximately May 2004 and December 2004.

24  5.  Defendant Ralph Lauren Corporation, Inc., is a company organized and existing under

25  the laws of the State of Delaware, and doing business in cities throughout California,

26  including San Francisco.

27  6.  Defendant Polo Retail, LLC, is a company organized and existing under the laws of

2

1   the State of Delaware, and doing business in cities throughout California, including in San

2   Francisco.

3   7.   Polo Retail Corp. is a business of unknown origin and business form, doing business

4   in California, including in San Francisco, as a fictitious business name of Polo Ralph Lauren

5   Corporation.

6   8.   Fashions Outlet of America, Inc., is a corporation organized and existing under the

7   laws of the State of Delaware, and doing business in cities throughout California, including in

8   San Francisco.

9   9.   Plaintiffs lack sufficient information and belief to allege the true names and capacities

10   of defendants sued herein as DOES 1 through 500, inclusive. For that reason, Plaintiffs sue

11   said fictitiously named defendants by such fictitious names. When the true names, nature and

12   capacity of said fictitiously named defendants are ascertained, Plaintiffs shall amend this

13   Complaint accordingly. At all times herein mentioned, all defendants herein, whether named

14   or unnamed were and are responsible and liable to Plaintiffs for all of the plaintiffs' damages

15   and other relief prayed for herein. Plaintiffs allege on information and belief that at all times

16   herein mentioned, each of the defendants herein, whether named or unnamed, was the agent,

17   servant employee, co-conspirator, co-adventurer, and employee of each other defendant

18   herein, whether named or unnamed. With respect to each action and inaction pled in the

19   following paragraphs, each of the defendants, whether named or unnamed, was acting within

20   the full course and scope of their agency and employment and was acting with the full

21   knowledge, consent, ratification and approval of each other defendant herein, whether named

22   or unnamed.

23   10.   This Court has personal jurisdiction over the Defendants, which: (1) conduct business

24   in the State of California through their retail clothing outlets in California; (2) hire and

25   maintain employees in the State of California; and (3) avail themselves of the protection of

26   the laws of the State of California.

27   11.   Venue is proper in this Court because Defendants committed the acts complained of

3

herein throughout California, including in San Francisco County.

## NATURE OF THE ACTION—SUMMARY

12.     This action is brought by Plaintiffs and all other current and former employees of Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corp., Fashions Outlet of America, Inc., and Does 1-500, in the State of California who have been injured by the conduct of Defendants as alleged herein below.

13.     Defendants have engaged in a long-standing practice of violating the employment rights of their employees. Those violations are summarized in this paragraph and are further detailed below.

     a)   Defendants have engaged and continue to engage in fraud toward their employees.

         i)   Defendants represent to all of their hourly employees that they will be paid a base wage, representing an hourly wage multiplied by all hours worked, when, in fact, Defendants have instituted two programs that have permitted Defendants to pay employees less than the promised base rate of pay and to take back wages previously paid. These two programs involve, first, an arrearage program under which Defendants take back wages paid to employees who fail to meet Defendants' unreasonably high sales targets, and, second, a charge back program that permits Defendants to take back wages paid to employees when products they have sold are returned to the store for any reason and at any time. Defendants' employees, including Plaintiffs named herein, relied on these representations, when, in fact, they are false. Defendants do not provide employees with a base rate of pay as Defendants promise in their Sales Associate Handbook at page 4, and at the time the employees are hired, and Plaintiffs and the Class have been injured as a result of Defendants' misrepresentations.

         ii)   Defendants' falsely promise employees that they will perform at end-of-the-year wage reconciliation to determine which employees are eligible to

4

1    receive premium overtime compensation for worked performed during the

2    entire course of the previous year.  (As described herein, the reconciliation

3    constitutes a separate violation of California law relating to the timely

4    payment of wages.)  This promise is made to all of Defendants' employees

5    through Defendants' Sales Associate Handbook at page 7.  Defendants

6    have failed to fulfill that promise, and/or have performed that reconciliation

7    in a manner inconsistent with California law, all to the detriment of their

8    employees.

9    iii) Defendants represent to all of their employees that they will be permitted to

10    take two 15-minute rest breaks during an eight-hour shift.  This

11    representation is made in Defendants' Retail Employee Handbook on page

12    18, which is provided to all employees, and it is also made during the

13    hiring process.  Defendants' employees, including Plaintiffs named herein,

14    relied on this representation, when, in fact, it is false.  Defendants do not

15    provide employees with rest breaks and Plaintiffs and the Class have been

16    injured as a result of Defendants' misrepresentations.

17    iv) Defendants routinely fraudulently manipulate Plaintiffs' and the Class's

18    time records to keep Defendants' employees from receiving wages for all

19    hours they worked.

20    b) Defendants routinely require all of their employees to perform work "off the

21    clock" for which they are not paid.

22    i)  Defendants force employees to clock out of the Defendants' timekeeping

23    system, and/or shut down the timekeeping system, and then require them to

24    perform work without compensation.

25    ii)  Defendants require employees at the end of their shifts to stand in line

26    and/or remain in their locked stores, for up to one half hour to undergo a

27    loss prevention search by managers after the employees have clocked out.

5

1   They are warned that if they attempt to leave the store through the
2   employee exit, before a manager authorizes them to leave, an alarm will
3   sound, and/or will be unable to leave the stores until a manager unlocks the
4   doors for them. They are warned that they can be disciplined or terminated
5   if they attempt to leave the store through any exit until a manager has
6   conducted his or her loss prevention search at the end of their shift. In
7   short, Defendants' employees are subjected to false imprisonment on a
8   daily basis. They are confined by their supervisors to the interior of their
9   stores for an appreciable period of time each day without compensation
10  under the express and unequivocal threat that they will be fired or
11  reprimanded if they leave the store before a manger inspects them, and/or
12  they are locked inside their stores until a manager releases them. Plaintiffs
13  and the Class are also warned in Defendants' Retail Employee Handbook,
14  at page 26, that all packages and bags are subject to inspection before the
15  employee may exit the store, and that this requirement is "a condition of
16  employment." Defendants thus intend to confine, and do confine, their
17  employees through the unlawful assertion that Defendants have the legal
18  right to detain employees within the stores' premises after the employees'
19  work shifts are over.

20   iii) Defendants also require their employees to appear for work at a certain
21        hour, or to return to work after a meal break at a certain time, and then
22        make their employees wait for 20 minutes or more outside the store before
23        opening the employee entrance door to permit them to begin or continue
24        working. Employees are not compensated for this waiting time.
25        Defendants' failure to pay their employees for all hours worked amounts in
26        further violations of California's premium overtime compensation laws.
27   c)  Defendants routinely fail to provide their employees with mandatory rest breaks,

6

AUG-16-2006  00:16    J RALPH LAUREN    P.09/27

1    warning employees that they will not sell enough products to meet their sales goals

2    if they waste time off the selling floor.  Defendants were and are required to pay

3    each employee who missed a rest period one additional hour of pay, and yet they

4    have failed to do so.

5    d)  Defendants routinely fail to pay wages to employees when those wages are earned,

6        and instead maintain an unconscionable and illegal arrearages program under

7        which Defendants collect from employees' wages they have earned.  If an

8        employee fails to meet his or her sales goals, Defendants' take from subsequent

9        wages the difference between the hourly rate promised to employees and a

10       percentage of the total value of products sold by the employees, in Plaintiffs' case,

11       8% of sales.  Because Defendants have misclassified their employees as bona fide

12       commissioned employees, Defendants' application of a commission-based wage

13       arrearage system is illegal, inequitable and unconscionable.

14   e)  Defendants maintain an illegal and unconscionable charge back or returns policy

15       that permits Defendants to collect from their employees' wages previously paid.

16       Because Defendants have misclassified their employees as bona fide

17       commissioned employees, Defendants' application of a commission-based charge

18       back system is illegal, inequitable and unconscionable.

19   f)  Defendants have established a wage system they call "Base Rate Against

20       Commission," and which they characterize as a *bona fide* commission based

21       system, when it fact it is not.  Defendants' wage system is an illegal scheme

22       designed to avoid the wage rules and overtime regulations set forth in Industrial

23       Welfare Commission Order 7-2001 and in the California Labor Code.

24       i)  A great number of Defendants' employees do not earn sufficient

25           commission to be classified as exempt employees under California law.

26       ii)  Defendants set the target sales goals at such a high level that many, if not

27           most, employees consistently earn commissions that are at or below the

7

1    value of the Defendants' draw. They are therefore entitled to premium

2    overtime compensation for hours worked in excess of eight per day or 40

3    per week.

4    iii)   Consequently, Defendants "Base Rate Against Commission" system is

5    not bona fide. It is knowingly designed to misclassify Defendants'

6    employees to avoid paying them premium overtime wages and to avoid

7    other wages rules applicable to Defendants' employees. In the alternative,

8    Defendants routinely fail to pay premium overtime wages to their

9    purported commission-based employees who work in excess of eight hours

10    per day or more than 40 hours per week, who do not earn more than 50%

11    of their wages through commissions, and who do not earn 1.5 times the

12    applicable minimum wage.

13    g)  In conjunction with their "Base Rate Against Commission" system, Defendants

14    have established an annual review of their employees' right to receive premium

15    overtime wages, purporting to evaluate their employees' right to premium

16    overtime compensation at the end of Defendants' fiscal year. Defendants use this

17    illegal reconciliation system as a means to avoid paying wages to their employees

18    in a timely manner in accordance with California law. Furthermore, Defendants

19    fail to perform and/or fail to consistently perform, this end of the year evaluation

20    and fail to pay wages due to their employees. Defendants' illegal wage system

21    results in the additional failure to pay former employees all of their wages due

22    upon termination.

23    h)  Defendants fail to maintain proper records memorializing the hours worked by

24    their employees, the compensation paid to them, and the debits made to their

25    wages, and fail to make accurate payroll records available upon request.

26    i)  Defendants expressly prohibit their employees from disclosing their wages to

27    fellow employees in violation of California labor laws. Defendants' violation of

8

FIRST AMENDED CLASS ACTION COMPLAINT

1      California's labor laws governing an employee's right to discuss his or her wages

2      with others is designed and/or operates to keep their employees from learning that

3      Defendants are routinely and consistently violating the wage and hour laws

4      detailed herein.

5    j)  Defendants have violated Labor Code § 203 by consistently failing to timely pay

6       employees all wages due upon resignation and/or termination.

7    k)  Defendants have violated Labor Code § 204 by consistently failing to pay

8       employees in a timely way.

9    l)  Defendants have violated Labor Code § 206.5 by consistently requiring employees

10      to sign documents releasing them from the obligation to pay wages owed to

11      employees.

12  m)  Defendants have violated Labor Code § 208 by consistently failing to pay all

13      wages due terminated employees at the place of discharge.

14   n)  Defendants have violated Labor Code § 221 by consistently engaging in a practice

15      of taking back wages previously paid to employees.

16   o)  Defendants have violated Labor Code § 223 by consistently agreeing to pay

17      employees certain wages and then though the use of deception and fraudulent

18      payroll practices has secretly paid employees lower wages than promised.

19   p)  Defendants have violated Labor Code § 226(a) by consistently failing to provide

20      the accurate itemized statement of wages on employees' pay stubs as required

21      under California law.

22   q)  Defendants have violated Labor Code § 226.7 by consistently failing to provide

23      employees with rest breaks during their working shifts.

24   r)  Defendants have violated Labor Code § 227 by promising employees that they will

25      provide medical and dental insurance to them after they have worked for the

26      company for 90 calendar days and then has consistently breached that promise by

27      failing to make payments into a health insurance fund covering those benefits

9

within 90 days.

s) Defendants have violated Labor Code § 232(c) by prohibiting employees from disclosing or discussing their wages, and, based on information and belief, has formally disciplined or otherwise discriminated against employees who disclose the amount of their wages.

t) Defendants have violated Labor Code § 432.5 by consistently requiring employees to sign documents, including the company's employee manuals that demand employees agree in writing to illegal policies and practices.

u) Defendants have violated Labor Code § 510 by consistently failing to pay premium overtime wages to its employees.

v) Defendants have violated Labor Code § 976 by consistently publishing misleading statements about the commissions it promises to employees.

w) Defendants have violated Labor Code § 1194 by consistently requiring employees to agree to waive their statutory right to premium overtime wages, and then fails to pay them premium overtime.

x) Defendants have violated Labor Code § 1199 by consistently violating provisions of Labor Code §§ 1171, et seq.

14.    In summary, Defendants have used fraud, deception and credible threats to maintain a work force denied of the basic employment rights guaranteed under California law.

## ANN OTSUKA

15.    Ann Otsuka worked for Polo Retail Corp., and/or Polo Ralph Lauren Corporation, and/or Polo Retail, LLC, between approximately May 2004 and approximately November 2004 in Defendants' Palo Alto retail store, as a sales associate in Defendants' Home Collection Department.

16.    When she began working for Defendants, Tin Hua, General Manager, told her she would be compensated as a draw versus commission employee at the initial rate of $12.00 per hour, with no commission. Defendants subsequently lowered Otsuka's hourly rate to $10.15,

10

1   plus 8% commission on sales. She was told she would receive greater compensation for sales

2   made in excess of her target sales goals, based on a commission rate of 8% of sales. She was

3   also told and understood that her base rate, based on her hourly wage multiplied by the total

4   hours she worked, would serve as a guaranteed wage payment. Defendants made this

5   representation to Otsuka in Defendants' Sales Associate Handbook and during the job

6   interview process. She was also told that her wages would increase as she increased her sales.

7   She was told that if she failed to sell a sufficient quantity of merchandise, she would be

8   reprimanded. She was also instructed through Polo's Sales Associate Handbook that she

9   could be terminated if she failed to meet her sales goals. She was not told and never

10  understood the wage system to mean that she could be forced to pay back some of her earned

11  wages if she failed to meet her sales goals. Nevertheless, Defendants established an arrearage

12  program after Otsuka was hired that permitted Defendants' to obtain previously paid wages

13  from Ann Otsuka through payroll deductions, which were insufficiently memorialized and

14  communicated to Otsuka. Otsuka never agreed to this arrearages program and was never

15  legally bound by its terms. When she sought guidance from Phoebe Morales (Store Manager)

16  and Ha'aheo Zablan (Home Collection/Men's Manager) about the new program, they told her

17  that they didn't really understand how it worked. These managers informed Otsuka that this

18  arrearage program should have been discussed with Otsuka before she was hired and

19  acknowledged to her that her pay records did not contain sufficient information to permit

20  them to understand and explain how the arrearages had been calculated. Otsuka's paycheck

21  stub had insufficient information describing the wages withheld, leading Otsuka to conclude

22  that payroll had simply made an error in calculating her wages. When she asked for a

23  complete accounting of her wages and how the arrearage deductions had been calculated, she

24  was denied sufficient accounting information to determine how her reduced wages had been

25  calculated. Otsuka relied to her detriment on the representations by Defendants regarding the

26  nature of her wages and was injured by Defendants' misrepresentations when she was in fact

27  paid less than promised. Furthermore, when she was hired by Defendants, she was required

11

FIRST AMENDED CLASS ACTION COMPLAINT

1    to sign her acknowledgement that she had received and understood the policies she alleges

2    herein were and are illegal, and that purported to relieve Defendants of liability for their

3    illegal conduct, including those set out in the Defendants' Retail Employee Handbook. By

4    way of example, Defendants' Retail Employee Handbook (2002) provides that it is

5    unacceptable for an employee to divulge "personal salary arrangements to other Polo Retail

6    Corporation associates." Divulging such information, the Handbook continues, "may lead to

7    disciplinary action or termination. .."

8    17.    In addition, when Otsuka was hired, she was promised healthcare insurance after she

9    worked for 90 days. Polo did not fulfill that promise. As set forth below, Otsuka seeks

10   penalties only for this violation of the provisions set forth in the California Private Attorneys

11   General Act.

12   18.    Defendants also debited Otsuka's wages whenever a customer returned an item she

13   sold, regardless of whether the return was made within a day or within several months, and

14   regardless whether the item was deemed to be defective. By the time Defendants applied the

15   charge back debit to Otsuka, she had earned a commission and/or the wage on the items

16   returned or the wage earned, and was entitled to retain those earnings. Defendants also

17   routinely failed to provide her with an accounting of how and why her wages were being

18   debited, despite her requests.

19   19.    During the course of Ann Otsuka's employment with Defendants, she did not always

20   sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants.

21   Based on information and belief, on several occasions, she sold less than 50% of the sales

22   target set by Defendants. Consequently, less than one half of her compensation represented

23   commissions. Therefore, she was entitled to receive premium overtime compensation for

24   hours worked in excess of eight hours per day or 40 hours per week, during those periods in

25   which she was not an exempt employee. (IWC Order 7-2001.) Ann Otsuka worked hours in

26   excess of eight per day and/or 40 hours per week on a regular basis, both recorded and

27   unrecorded, during periods when she was entitled to premium overtime compensation. In

1    addition, Otsuka's compensation was such that her commission earnings were generally at or

2    below her hourly-based draw. Defendants failed to provide all of those premium wages to

3    Plaintiff Ann Otsuka as required under California law.

4    20.     Defendants' Sales Associate Handbook specifically provides:

5            "Sales Associates and Senior Sales Associates are not eligible to receive a

6            premium overtime compensation rate. However, a sales commission

7            reconciliation will be performed at the close of each fiscal year to ensure each

8            associate is compliant with Federal Labor guidelines stipulating that the

9            majority of their pay must be in the form of commission. If an associate is

10           found to be overtime eligible at that time, then the appropriate amount of

11           overtime compensation will be paid to that associate."

12   21.     This payroll policy is illegal under California law and was applied to Ann Otsuka

13   during the course of her employment. By unlawfully delaying the "reconciliation" for up to a

14   year, Defendants failed to pay Ann Otsuka in a timely fashion. In fact, while Ann Otsuka

15   terminated her employment with Defendants in November 2004, Defendants have never paid

16   her all the premium overtime compensation she was and is owed. Defendants' representation

17   that they would perform an end-of-the-year reconciliation, upon which Otsuka reasonably

18   relied, was not fulfilled. Otsuka was entitled to premium compensation that was not paid to

19   her and that remains unpaid.

20   22.     On many days that Ann Otsuka worked, she was required to perform work without

21   compensation, working off the clock at the direction of, or with the knowledge and

22   acquiescence of, Defendants. Often, Defendants would instruct her not to clock out at the end

23   of a long shift, because her managers would adjust her stop work time later. Based on

24   information and belief, Defendants actually shut down the timekeeping system on occasions

25   when Otsuka was still working. Defendants failed to keep accurate records of the hours Ann

26   Otsuka worked and failed to report the time worked to her. In fact, Ann Otsuka was not paid

27   for all of the hours she worked.

13

23.  In addition, on a daily basis, Defendants required Ann Otsuka to clock out and then wait for a manager to check her purse and bags to make sure she and the other employees leaving the store were not attempting to steal and smuggle merchandise out. Ann Otsuka routinely had to wait with other sales associates each day that she worked for the mandatory management inspection. She regularly was required to wait for 10 to 20 minutes for the inspection and was never compensated for that time. The management team and Kristi Mogel, Human Relations Manager instructed her that she was not to use the customer exit closest to the interior of the mall in which the store is located. When the store was closed at the end of the day, that door was locked by a manager and could not be opened without a key. Otsuka and the other sales associates did not have a key to that customer door. The other exit, also a customer door, was deemed to be the only door Otsuka and other employees were permitted to use, when entering or exiting the store. When the store was closed at the end of the day, that door was also locked by a manager and could not be opened without a key. Otsuka and the other sales associates did not have a key to that customer door either. Otsuka was warned by her managers she would be reprimanded or terminated if she left the store premises before a manager had inspected her. Defendants' Sales Associate Handbook was provided to Otsuka, and it stated that this inspection procedure was a condition of employment. She was, in fact, at the end of her work shift physically confined to the interior of the store and could not leave the store until she was inspected and a manager had unlocked the employee exit. This daily experience was frustrating. She was led to believe and did believe that Defendants' had the legal right to detain her in the store after her shift was over. She missed appointments she had scheduled after working hours because she was forced to wait within the confines of the store for upwards of 20 minutes.

24.  Ann Otsuka was not permitted to take rest breaks during the days that she worked. Her managers harassed her and her co-employees when she and they attempted to take rest breaks, telling them that they did not need to take the required breaks and that they would fall behind on sales if they took the breaks. Otsuka felt harassed and intimidated by the comments

14

1  of her managers and did not take her mandatory breaks because she feared she would lose her

2  job, or be harassed, if she did.

3  ## CORINNE PHIPPS

4  25.    Corinne Phipps, previously known as Corinne Mullen, was employed by Polo Retail

5  Corp. and/or Polo Ralph Lauren Corporation and/or Polo Retail, LLC, in Polo Ralph Lauren's

6  retail store in San Francisco, California, between May 2004 and December 2004. She worked

7  in Defendants' Home Collections Department, where she sold products for the home.

8  26.    When she began working for Defendants, she was told by her store's General

9  Manager, Tin Hua, she would be compensated as a "draw versus commission" employee at

10  $12.75 per hour. She was told that her wages would increase as she increased her sales. She

11  was also told that her hourly rate would constitute a base guaranteed wage. Defendants made

12  this representation to Phipps in Defendants' Sales Associate Handbook and during the job

13  interview process. She was told that if she failed to sell a sufficient quantity of merchandise,

14  she could be terminated. She was not told and never understood the wage system to mean

15  that she could be forced to pay back some of her earned wages if she failed to meet her sales

16  goals. Nevertheless, Defendants established an arrearage program that permitted Defendants'

17  to obtain previously paid wages from Phipps through payroll deductions, which were

18  insufficiently memorialized and communicated to Phipps. She never agreed to this arrearage

19  program and was not legally bound by its terms. Phipps relied to her detriment on the

20  representations by Defendants regarding the nature of her wages and was injured by

21  Defendants' misrepresentations when she was in fact paid less than promised. Furthermore,

22  when she was hired by Defendants, she was required to sign her acknowledgement that she

23  had received and understood the policies she alleges herein were and are illegal, and that

24  purported to relieve Defendants of liability for their illegal conduct, including those set out in

25  Defendants' Retail Employee Handbook. By way of example, Defendants' Retail Employee

26  Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary

27

15

1   arrangements to other Polo Retail Corporation associates."  Divulging such information, the

2   Handbook continues, "may lead to disciplinary action or termination. .."

3   27.    In addition, when Phipps was hired, she was promised healthcare insurance after she

4   worked for 90 days.  Polo did not fulfill that promise.  As set forth below, Phipps seeks

5   penalties only for this violation of the provisions set forth in the California Private Attorneys

6   General Act.

7   28.    Defendants also debited Phipps's wages whenever a customer returned an item she

8   sold, regardless of whether the return was made within a day or within several months, and

9   regardless whether the item was deemed to be defective.  By the time Defendants' applied the

10  arrearages debit to Phipps, she had earned the commission or the wage on the items returned

11  or the work performed, and was entitled to retain those earnings.  Defendants' also routinely

12  failed to provide her with an accounting of how and why her wages were being debited,

13  despite her requests.

14  29.    During the course of Phipps's employment with Defendants, she did not always sell a

15  sufficient quantity of Polo merchandise to meet her sales target set by Defendants.  On several

16  occasions, she sold less than 50% of the sales target set by Defendants.  Consequently, less

17  than one half of her compensation represented commissions.  Therefore, she was entitled to

18  receive premium overtime compensation for hours worked in excess of eight hours per day or

19  40 hours per week, during those periods in which she was not an exempt employee.  (IWC

20  Order 7-2001.)  Phipps worked hours in excess of eight per day and/or 40 hours per week on a

21  regular basis, both recorded and unrecorded, during periods when she was entitled to premium

22  overtime compensation.  In addition, Phipps's compensation was such that her commission

23  earnings were generally at or below her hourly-based draw, based on Defendants' practice of

24  setting sales goals impossibly high.  Defendants failed to provide all premium wages to

25  Plaintiff Corinne Phipps as required under California law.

26  30.    Defendants' Sales Associate Handbook specifically provides:

27

16

1   "Sales Associates and Senior Sales Associates are not eligible to receive a

2   premium overtime compensation rate. However, a sales commission

3   reconciliation will be performed at the close of each fiscal year to ensure each

4   associate is compliant with Federal Labor guidelines stipulating that the

5   majority of their pay must be in the form of commission. If an associate is

6   found to be overtime eligible at that time, then the appropriate amount of

7   overtime compensation will be paid to that associate."

8   31.   This payroll policy is illegal under California law and was applied to Corinne Phipps

9   during the course of her employment. By unlawfully delaying the "reconciliation" for up to a

10  year, Defendants failed to pay Corinne Phipps in a timely fashion. In fact, while Corinne

11  Phipps terminated her employment with Defendants in December 2004, Defendants have not

12  paid her all of the premium overtime compensation she was and is owed. Defendants'

13  representation that they would perform this end-of-the-year reconciliation, upon which Phipps

14  reasonably relied, was not fulfilled.

15  32.   On many days that Corinne Phipps worked, she was required to perform work without

16  compensation, working off the clock at the direction of and/or with the knowledge and

17  acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz

18  (Operations Manager) and Valerie Harrison (Department Manager) clocked her out while she

19  was still performing work. On other occasions, Defendants, though Operations Manager

20  Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time

21  records so they would reflect less time worked. On still other occasions, Defendants'

22  managers shut down the timekeeping system while Phipps was still working and, thus, failed

23  to accurately record her hours of work. She was not paid for any of this off-the-clock work.

24  33.   On a daily basis, Defendants required Corinne Phipps to clock out and then wait at the

25  employee exit for a manager to check her purse and bags to make sure she and the other

26  employees were not attempting to steal and smuggle merchandise out of the store. Corinne

27  Phipps routinely had to wait with other sales associates each day that she worked near the

17

1    employee exit for the mandatory management inspection. She regularly was required to wait

2    for 10 to 15 minutes for the inspection and was never compensated for that time. She was

3    instructed by managers Theresa Cruz, and Valerie Harrison that she was not to use the

4    customer exit to leave the store and that if she tried to leave the store through the employee

5    exit before she had been inspected an alarm would sound and she would or could be

6    terminated. Defendants' Sales Associate Handbook was provided and/or shown to Phipps,

7    and it stated that this inspection procedure was a condition of employment. She felt herself to

8    be physically confined to the interior of the store and feared leaving the store except as

9    directed by her supervisors. She was led to believe her employer had the legal right to retain

10   her within the store. The experience was often frustrating and humiliating. She missed

11   appointments she had scheduled after working hours because she was forced to wait by the

12   employee exit for upwards of 30 minutes. Based on her observations and discussions with

13   other employees who were likewise forced to wait for up to 30 minutes, they shared her sense

14   of frustration and humiliation.

15   34.    At other times, Corinne Phipps was required to report to work at a certain hour and

16   then required to wait outside the store for up to 20 minutes for a manager to open the

17   employee entrance for her to begin work. On those occasions, her pay was docked and she

18   was deemed late to work. At other times, she was required to wait up to 20 minutes to be

19   granted access to the store after she took a meal break. Defendants' failure to permit her to

20   begin work at the time she was required to begin, at the beginning and middle of her work

21   shift caused her to lose wages she was entitled to earn. Corinne Phipps was not paid wages

22   for this waiting time that she suffered on behalf of Defendants.

23   35.    Corinne Phipps was not permitted to take rest breaks during the days that she worked.

24   Her managers harassed her and her co-employees when she and they attempted to take rest

25   breaks, telling them that they did not need to take the required breaks and that they would fall

26   behind on sales if they took the breaks. Phipps felt harassed and intimidated by the comments

27   of her managers and did not take her mandatory breaks because she feared she would lose her

1  job or be harassed if she did.

## JUSTIN KISER

3  36.    Justin Kiser was employed by Fashions Outlet of America, Inc., and/or Polo Ralph

4  Lauren Corporation and/or Polo Retail, LLC, between July 2004 and August 2005 in

5  Defendants' San Francisco retail store, working as a sales associate in Polo's Men's

6  Department and Men's Sport Department.

7  37.    When he began working for Defendants, he was told Tin Hua, Polo's General

8  Manager, he would be compensated as a draw versus commissioned employee at the initial

9  rate of $12.75 per hour. He was told that his wages would increase as he increased his sales.

10  He was also told that his hour rate would constitute a base guaranteed wage.  Defendants

11  made this representation to Kiser in Defendants' Sales Associate Handbook and during the

12  job interview process.  He was told that if he failed to sell a sufficient quantity of

13  merchandise, he could be terminated.  He was not told and never understood the wage system

14  to mean that he could be forced to pay back some of his earned wages if he failed to meet his

15  sales goals.  Nevertheless, Defendants established an arrearage program that permitted

16  Defendants' to obtain previously paid wages from Kiser through payroll deductions, which

17  were insufficiently memorialized and communicated to Kiser. He never agreed to this

18  arrearage program and was not legally bound by its terms.  Kiser relied to his detriment on the

19  representations by Defendants regarding the nature of his wages and was injured by

20  Defendants' misrepresentations when he was in fact paid less than promised.  Furthermore,

21  when he was hired by Defendants, he was required to sign his acknowledgement that he had

22  received and understood the policies he alleges herein were and are illegal, and that purported

23  to relieve Defendants of liability for their illegal conduct including those set out in the

24  Defendants' Retail Employee Handbook.  By way of example, Defendants' Retail Employee

25  Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary

26  arrangements to other Polo Retail Corporation associates."  Divulging such information, the

27  Handbook continues, "may lead to disciplinary action or termination. .."

19

38.   Based on information and belief, during the course of Justin Kiser's employment with Defendants, he did not always sell a sufficient quantity of Polo merchandise to meet the sales target set by Defendants every pay period.  Based on information and belief, on at least one occasion, he earned less than 50% of the sales target set by Defendants.  Consequently, less than one half of his compensation represented commissions.  Therefore, he was entitled to receive premium overtime compensation for hours worked in excess of eight hours per day or 40 hours per week during those pay periods in which he was not properly classified as an exempt employee.  Justin Kiser worked hours in excess of eight hours per day and/or 40 hours per week on a regular basis, including during periods of time he failed to earn one half of his wages as commissions.  In addition, based on information and belief, Kiser's compensation was such that his commission earnings were generally at or below his hourly-based draw, based on Defendants' practice of setting sales goals impossibly high.  Defendants failed to provide those premium wages to Plaintiff Justin Kiser as required under California law.

39.   Defendants' Sales Associate Handbook specifically provides:

"Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate.  However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission.  If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

40.   This payroll policy is illegal under California law and was applied to Justin Kiser during the course of his employment.  By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Justin Kiser in a timely fashion.  In fact, while Justin Kiser terminated his employment with Defendants in about August 2005, Defendants have not paid him all of the premium overtime compensation he earned.  Defendants' representation that they would perform this reconciliation was not fulfilled.

20

FIRST AMENDED CLASS ACTION COMPLAINT

41.    On many days that Justin Kiser worked, he was required to perform work without compensation, working off the clock at the direction and/or with the knowledge and acquiescence of Defendants. On a regular basis, managers in his store would shut down the timekeeping computer and therefore clock him out while he was still performing work. On other occasions, Defendants, through Operations Manager Theresa Cruz, would write down the hours he worked by fraudulently manipulating his time records so they would reflect less time worked.

42.    On a daily basis, Defendants required Justin Kiser to clock out and then wait at the employee exit for a manager to check his bags to make sure he and the other employees were not attempting to steal and smuggle merchandise out of the store. Justin Kiser routinely had to wait with other sales associates each day that he worked near the employee exit for the mandatory management inspection. He regularly was required to wait for 10 to 15 minutes for the inspection, and as long as 30 minutes, and was never compensated for that time. General Manager Tin Hua instructed him that he was not to use the customer exit to leave the store and that if he tried to leave the store through the employee exit before he had been inspected the alarm would sound and he would be terminated. Defendants' Sales Associate Handbook was provided to Kiser, and it stated that this inspection procedure was a condition of employment. He felt himself to be physically confided to the interior of the store and feared leaving the store except as directed by his supervisors. The experience was often frustrating and humiliating. He was led to believe that his employers had the legal right to detain him in the store after his shift was over. He missed appointments he had scheduled after working hours because he was forced to wait by the employee exit for upwards of 30 minutes. Based on his observations and discussions with other employees who were likewise forced to wait for up to 30 minutes, they shared his sense of frustration and humiliation.

43.    At other times, Justin Kiser was required to report to work at a certain hour and then required to wait outside the store for up to 20 minutes for a manager to open the employee entrance for him to begin work. At other times, Justin Kiser was required to wait up to 20

21

1    minutes to be granted access to the store after he took a meal break. Defendants' failure to

2    permit him to begin work at the time he was required to begin at the beginning and middle of

3    his work shift caused him to lose wages he was entitled to earn. Justin Kiser was not paid

4    wages for this waiting time that he suffered on behalf of Defendants.

5    44.    Justin Kiser was not permitted to take rest breaks during the days that he worked.

6    Managers, including Rosalinda Walwork and Theresa Cruz, harassed him and his co-

7    employees when he and they attempted to take rest breaks, telling them that they did not need

8    to take the required breaks and that they would fall behind on sales if they took the breaks.

9    Justin Kiser felt extremely harassed and intimidated by the comments of his managers and did

10   not take his mandatory breaks because he feared he would lose his job if he did.

11   45.    Defendant also debited Kiser's wages whenever an item he sold was returned by a

12   customer, regardless of whether the return was made within a day or within several months,

13   and regardless whether the item was deemed to be defective. By the time Defendants' applied

14   the charge back debit to Kiser, he had earned the commission or wages on the items returned

15   or the work performed, and he was entitled to retain those earnings. Defendants' routinely

16   failed to provide him with an accounting of how and why his wages were being debited.

17                                 JANIS KEEFE

18   46.    Janis Keefe, previously known as Janis Howay, worked for Polo Retail Corp., and/or

19   Polo Ralph Lauren Corporation and/or Polo Retail, LLC, between approximately May 2004

20   and approximately January 2005 in Defendants' San Francisco retail store, as a sales associate

21   in Polo's Men's Department and Men's Sport Department.

22   47.    When she began working for Defendants, Keefe was told by her store's General

23   manager, Tin Hua, she would be compensated as a "draw versus commission" employee at

24   $12.75 per hour. She was told that her wages would increase as she increased her sales. She

25   was also told that her hourly rate would constitute a base guaranteed wage. Defendants made

26   this representation to Keefe in Defendants' Sales Associate Handbook and during the job

27   interview process. She was told that if she failed to sell a sufficient quantity of merchandise,

                                                                              22

1  she could be terminated. She was not told and never understood the wage system to mean

2  that she could be forced to pay back some of her earned wages if she failed to meet her sales

3  goals. Nevertheless, Defendants established an arrearage program after Keefe was hired that

4  permitted Defendants' to obtain previously paid wages from Keefe through payroll

5  deductions, which were insufficiently memorialized and communicated to Keefe. She never

6  agreed to this arrearage program and was not legally bound by its terms. Furthermore, when

7  she was hired by Defendants, she was required to sign her acknowledgement that she had

8  received and understood the policies she alleges herein were and are illegal, and that

9  purported to relieve Defendants of liability for their illegal conduct including those set out in

10  the Defendants' Retail Employee Handbook. By way of example, Defendants' Retail

11  Employee Handbook (2002) provides that it is unacceptable for an employee to divulge

12  "personal salary arrangements to other Polo Retail Corporation associates." Divulging such

13  information, the Handbook continues, "may lead to disciplinary action or termination. .."

14  48. In addition, when Keefe was hired, she was promised healthcare insurance after she

15  worked for 90 days. Polo did not fulfill that promise. As set forth below, Keefe seeks

16  penalties only for this violation of the provisions set forth in the California Private Attorneys

17  General Act.

18  49. During the course of Janis Keefe's employment with Defendants, she did not always

19  sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants. On

20  several occasions, she sold less than 50% of the sales target set by Defendants. Consequently,

21  less than one half of her compensation represented commissions. Therefore, she was entitled

22  to receive premium overtime compensation for hours worked in excess of eight hours per day

23  or 40 hours per week. Janis Keefe worked hours in excess of eight per day and/or 40 hours

24  per week on a regular basis. In addition, Keefe's compensation was such that her commission

25  earnings were generally at or below her hourly-based draw, based on Defendants' practice of

26  setting sales goals impossibly high. Defendants failed to provide all premium wages to

27  Plaintiff Janis Keefe as required under California law.

23

FIRST AMENDED CLASS ACTION COMPLAINT

50.     Defendants' Sales Associate Handbook specifically provides:

      "Sales Associates and Senior Sales Associates are not eligible to receive a

      premium overtime compensation rate. However, a sales commission

      reconciliation will be performed at the close of each fiscal year to ensure each

      associate is compliant with Federal Labor guidelines stipulating that the

      majority of their pay must be in the form of commission. If an associate is

      found to be overtime eligible at that time, then the appropriate amount of

      overtime compensation will be paid to that associate."

51.     This payroll policy is illegal under California law and was applied to Janis Keefe. By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Janis Keefe in a timely fashion. In fact, while Janis Keefe terminated her employment with Defendants in or about January 2005, Defendants have never paid her all premium overtime compensation she was and is owed. Defendants' representation that they would perform this reconciliation was not fulfilled.

52.     On many days that Janis Keefe worked, she was required to perform work without compensation, working off the clock at the direction and/or with the knowledge and acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz, clocked her out while she was still performing work. On other occasions, Defendants, though Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time records so they would reflect less time worked. On other occasions, based on information and belief, Defendants' managers shut down the timekeeping system when Keefe was still working. Defendants failed to keep accurate records of the hours Keefe worked and failed to report the time to her. She was not paid for all the hours she worked.

53.     On a daily basis, Defendants required Janis Keefe to clock out and then wait at the employee exit for a manager to check her purse and bags to make sure she and the other employees were not attempting to steal and smuggle merchandise out of the store. Janis Keefe routinely had to wait with other sales associates each day that she worked near the

24

1    employee exit for the mandatory management inspection. She regularly was required to wait

2    for 10 to 15 minutes for the inspection and was never compensated for that time. She was

3    instructed by Theresa Cruz, and Tin Hua that she was not to use the customer exit to leave the

4    store and that if she tried to leave the store through the employee exit before she had been

5    inspected, she could be terminated. Defendants' Sales Associate Handbook was provided

6    and/or shown to Keefe, and it stated that this inspection procedure was a condition of

7    employment. She felt herself to be physically confined to the interior of the store and feared

8    leaving the store except as directed by her supervisors. The experience was often frustrating

9    and demeaning. She was led to believe that her employers had the legal right to detain her

10   within her store after her work shift was over. She missed appointments she had scheduled

11   after working hours because she was forced to wait by the employee exit for upwards of 30

12   minutes. Based on her observations and discussions with other employees who were likewise

13   forced to wait for up to 30 minutes, they shared her sense of frustration as well.

14   54.    At other times, Janis Keefe was required to report to work at a certain hour and then

15   required to wait outside the store for up to 20 minutes for a manager to open the employee

16   entrance for her to begin work. At other times, Janis Keefe was required to wait up to 20

17   minutes to be granted access to the store after she took a meal break. Defendants' failure to

18   permit her to begin work at the time she was required to begin work at the beginning and

19   middle of her work shift caused her to lose wages she was entitled to earn. Janis Keefe was

20   not paid wages for this waiting time that she suffered on behalf of Defendants.

21                          CLASS ACTION ALLEGATIONS

22   55.    Plaintiffs bring this class action pursuant to California Code of Civil Procedure section

23   382 on behalf of a Class consisting of all current and former hourly-based employees of

24   Defendants in the State of California who were subjected to the unlawful employment

25   practices described herein during all applicable statutes of limitations (the "Class Period").

26   Plaintiffs initially delineate the subclasses of the Class as follows:

27              a.  Fraud Subclass: All of Defendants' employees in the State of California

                                                                          25

1    during all applicable statutes of limitations against whom Defendants

2    committed the fraudulent acts described herein.

3    b. **False Imprisonment Subclass**: All of Defendants' employees in the State

4    of California during all applicable statutes of limitations who were falsely

5    imprisoned, as described herein.

6    c. **Failure to Pay Wages Subclass**: All of Defendants' employees in the

7    State of California during all applicable statutes of limitations to whom

8    Defendants failed to pay wages due, as described herein.

9    d. **Arrearages Subclass**: All of Defendants' employees in the State of

10    California during all applicable statutes of limitations whose earned wages

11    were taken back by Defendants through Defendants' illegal arrearage

12    program, as described herein.

13    e. **Charge Back Subclass**: All of Defendants' employees in the State of

14    California during all applicable statutes of limitations whose earned wages

15    were taken back by Defendants through Defendants' illegal charge back or

16    returns policies and practices, as described herein.

17    f. **Breach of Contract Subclass**: All of Defendants' employees in the State

18    of California during all applicable statutes of limitations whose

19    employment contracts or covenants were breached by Defendants, as

20    described herein.

21    g. **Terminated/Resigned Subclass**: All of Defendants' employees in the

22    State of California during all applicable statutes of limitations who were

23    terminated or who resigned, and to whom Defendants failed to timely pay

24    all wages due, as described herein.

25    h. **Rest Break Subclass**: All of Defendants' employees in the State of

26    California during all applicable statutes of limitations who were denied rest

27    breaks, as described herein.

26

    i.   **Records Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations whose accurate payroll records were not provided to and/or whose requests for those accurate payroll records were denied.

    j.   **Wage Disclosure Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who were prohibited from disclosing or discussing their wages, as described herein.

    k.   **Unjust Enrichment Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who sustained economic damages as a consequence of the claims asserted herein.

    l.   **Unfair Business Practice Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who were subjected to the unfair business practices described herein.

    m.   **Private Attorneys General Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations whose claims for penalties are covered by the Private Attorneys General Act.

    n.   **Declaratory Relief Subclass**: All of Defendants employees in the State of California during all applicable statutes of limitations who will be affected by the declarations of rights sought herein.

56.    The Class definition will be further defined in Plaintiffs' motion for class certification, in which Plaintiffs may establish the need for additional or fewer subclasses based on information obtained through discovery.

57.    The wrongful acts or omissions were and are a uniform practice that affected all putative class members in substantially similar ways. Defendants, by their practices and policies, have violated the rights of their employees under the California Labor Code, Industrial Wage Orders the common law of California, and the Unfair Competition Law. The questions raised are therefore of common or general interest to the class members, and they

27

1  have a well-defined community of interest in the questions of law and fact raised in this

2  action. The only recognizable difference between class members will be the amounts owed to

3  each individual member.

4  58.    Based on information and belief, Defendants have employed thousands of individuals

5  in the State of California (a number known particularly to Defendants) since the beginning of

6  the Class Period. These individuals have been subject to Defendants' unlawful and wrongful

7  practices, and their numerosity makes it impractical to bring them all before this forum, and

8  disposition of their claims in a class action is a benefit to the parties and to the court.

9  59.    A class action is superior to other available means for the fair and efficient

10  adjudication of this controversy. Individual joinder of all class members is not practicable,

11  and questions of law and fact common to the class predominate over any questions affecting

12  only individual members of the class. Each member of the class has been damaged and is

13  entitled to recover. Class action treatment will allow those similarly situated persons to

14  litigate their claims in the manner that is most efficient and economical for the parties and the

15  judicial system.

16  60.    A class action is appropriate because Plaintiffs' and class members' damages,

17  although by no means inconsequential, do not rise to the level to make prosecution of

18  individual claims economically feasible for Plaintiffs and the large number of class members.

19  The burden and expense of individual litigation makes it economically unfeasible, for both the

20  parties and the Court, for the members of the class to seek redress other than through a class

21  action. Consequently, there would be a failure of justice but for the maintenance of the

22  present class action.

23  61.    The prosecution of thousands of individual cases by members of the class would tend

24  to establish inconsistent standards of conduct for the Defendants and would result in the

25  impairment of class members' rights and the disposition of their interests through actions to

26  which they were not parties.

27  62.    Plaintiffs know of no difficulty that will be encountered in the management of this

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    litigation that would preclude its maintenance as a class action.

2    63.     Plaintiffs have incurred and, during the pendency of this action, will incur attorneys'

3    fees and expenses. Such attorneys' fees and expenses are necessary for the prosecution of this

4    action and will result in a benefit to the class.

5    64.     Upon information and belief, Defendants were aware of the facts herein alleged at the

6    time they failed to perform the duties alleged herein.

7    65.     The names and addresses of the persons who are members of the class are available

8    from Defendants' records and are therefore known to Defendants. Notice can be provided to

9    the member of the class by mail, or by using techniques and a form of notice similar to those

10   customarily used in class actions under California law, with the costs of any notice to be

11   borne by Defendants.

12   66.     The Defendants' unlawful acts and unfair trade practices have affected all members of

13   the Class in a similar manner. Among the questions of law and fact common to the Class are:

14
15          (a)     Whether Defendants have committed actionable fraud (though
16                  misrepresentations, false promises and tortuous concealment of
                    material facts) with respect to the Class?

17          (b)     Whether Defendants have falsely imprisoned Class members
18                  after their work shifts were over by forcing them to remain
                    within Defendants' stores to wait for loss prevention
19                  inspections?

20          (c)     Whether Defendants have unlawfully denied employees regular
21                  and overtime wages?

22          (d)     Whether Defendants have misclassified employees as bona fide
                    commissioned employees?

23          (e)     Whether Defendants have unlawfully collected wages
24                  previously paid and earned by employees based on unlawful
                    arrearages and charge back programs?

25          (f)     Whether Defendants have unlawfully coerced or compelled or
26                  otherwise required the Class to forego rest periods to maintain
                    their jobs?

27

29

(g)    Whether Defendants have failed to timely pay all employees?

(h)    Whether Defendants have failed to timely pay employees who have quit or have been terminated?

(i)    Whether Defendants have breached employment contracts or covenants made with Class members?

(j)    Whether Defendants have maintained an illegal policy that prohibits employees from discussing their wages and terms of employment with others?

(k)    Whether Defendants have violated California law, including California's Unfair Competition laws (Business & Professions Code §§ 17200, et seq.) based on their violations of California law?

(l)    Whether Defendants have unlawfully failed to maintain employees' pay records, and/or failed to make those records available for employee inspection upon request?

(m)    Whether Defendants' labor policies and practices, as described herein, constitute intentional or reckless violations of California law, entitling Plaintiffs and the Class to punitive or exemplary damages?

67.    Plaintiffs' claims are typical of those of the Class they seek to represent because Plaintiffs and all members of the Class were injured and/or continue to be injured in the same manner by Defendants' illegal acts and practices, and other wrongful conduct complained of herein.

68.    Plaintiffs will fully and adequately protect the interests of all members of the Class. Plaintiffs have retained counsels who are experienced in employment class action litigation. Plaintiffs have no interests that are adverse to or in conflict with other members of the Class with respect to any of the claims asserted herein.

///

///

30

## First Cause of Action
(On Behalf of Plaintiffs and the Fraud Subclass)

### Against All Defendants

### FRAUD

69. Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

70. Defendants have made and, based on information and belief continue to make, false promises to employees regarding the wages they will receive while employed in Defendants' stores.

a. Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still employed the wages they will be paid while working at Defendants' stores. Defendants promise their employees that their base rate of pay, computed as the employees' hourly pay rate times the hours actually worked, would serve as a guaranteed minimum wage payment, and that while they may earn additional wages by selling more product, they will never be paid less that their base rate of pay. However, Defendants have imposed an arrearages program that results in substantial debits to their employees' wages, in direct violation of their promises. By debiting their employees wages when the employees fail to sell sufficient product to cover their base rate of pay, Defendants have caused Plaintiffs and the Class specific detriment, that is, the loss of wages promised. In addition, Defendants have used an egregious charge back scheme to further reduce their employees' earnings by debiting employees' wages for items returned by customers at any time and for any reason.

b. Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still

31

1    employed that they will perform an end-of-the-year wage reconciliation

2    and pay premium overtime wages, and that Defendants will properly record

3    their employees' time and pay all wages due in a timely manner. In fact,

4    Defendants do not perform this reconciliation and/or fail to pay premium

5    wages as required by California law.

6       c. Defendants misrepresented to Plaintiffs during the course of their

7    employment and continue to misrepresent to Class members who are still

8    employed that they will be provided rest breaks in compliance with

9    California law. In fact, Defendants do not provide rest breaks and use

10   coercion against their employees to make certain they will not take rest

11   breaks.

12      d. Defendants manipulated and continue to manipulate the time records of

13   Plaintiffs and the Class to conceal the fact that Defendants have failed to

14   pay them all wages they are due for the time they have worked.

15   71.    At the time these representations were made by Defendants, Plaintiffs and Class

16   members were ignorant of the falsity of Defendants' representations and believed them to be

17   true. In reliance on these representations and/or without knowledge of the fraudulent

18   concealments, Plaintiffs and Class members were induced to, and did, work for Defendants at

19   lower rates of pay than they had been promised and under terms and conditions that

20   constituted violations of California law. Had Plaintiffs and Class members known the actual

21   facts, they would not have taken such action, that is, they would not have accepted

22   employment with Defendants and/or would have demanded and received complete payment

23   of their wages.

24   72.    Plaintiffs' and Class members' reliance on Defendants' representation was justified

25   because Defendants employed Plaintiffs and Class members, and Plaintiffs and Class

26

27

32

1   members perceived Defendants as having the legal and corporate authority to make the

2   promises they made.

3   73.    As a proximate result of the fraudulent conduct of Defendants, Plaintiffs and Class

4   members have been damaged in an amount to be proven at trial, but not less than the

5   jurisdictional limit of this Court.

6

7   74.    The aforementioned acts were intentional misrepresentation, deceit, and concealment

8   of material facts known to Defendants, with the intention on the part of Defendants of

9   depriving Plaintiffs and Class members of their rights under California law. Defendants'

10  conduct was despicable in that it subjected Plaintiffs and Class members to cruel and unjust

11  hardship, and Defendants acted in conscious disregard of rights of Plaintiffs and Class

12  members, so as to justify an award of exemplary and punitive damages. Wherefore, Plaintiffs

13  pray judgment as set forth herein below.

14

15              **Second Cause of Action**

16  **(On Behalf of Plaintiffs and the False Imprisonment Subclass)**

17              **Against All Defendants**

18              FALSE IMPRISONMENT

19  75.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20  forth herein.

21  76.    On a daily basis, Defendants required Plaintiffs and Class members to clock out and

22  then wait at the employee exits for a manager to check their bags to make sure they were not

23  attempting to steal and smuggle merchandise out of the store. Plaintiffs and the Class

24  members routinely had to wait with other sales associates each day that they worked near the

25  employee exit for the mandatory management inspection. They were regularly required to

26  wait for 10 to 15 minutes for the inspection and were never compensated for that time. They

27

33

1  were instructed that they were not to use the customer exit to leave the store and that if they

2  tried to leave the store through the employee exit before they had been inspected, they would

3  be terminated. In Defendants' stores, employees were physically unable to leave because the

4  doors to the stores were locked and they did not have keys to open the doors. Plaintiffs and

5

6  the Class members were physically confined to the interior of the store. The experience was

7  often frustrating, demeaning and humiliating.

8  77.    By forcing Plaintiffs and Class members to remain in their stores after they had

9  stopped working and were no longer receiving compensation, Defendants intentionally

10  confined Plaintiff and Class members in a non-consensual manner without a lawful privilege

11  for an appreciable length of time, and their confinement caused harm to the Plaintiffs and the

12

13  Class. As a direct, proximate and foreseeable result of Defendants' acts and failures to act as

14  alleged herein, Plaintiffs and Class members have suffered and continue to suffer emotional

15  distress, including but not limited to humiliation, shock, embarrassment, fear, anxiety and

16  discomfort, all to their damage in an amount to be determined according to proof at trial. In

17  addition, Plaintiffs and the Class have suffered the loss of wages for the time Defendants'

18  forced them to remain in the stores to be inspected by managers.

19      Wherefore, Plaintiff prays judgment as set forth herein below.

20              Third Cause of Action

21  (On Behalf of Plaintiffs and the Failure to Pay Wages Subclass, Arrearages Subclass, Charge
22  Back Subclass, Breach of Contract Subclass, Terminated/Resigned Subclass and Unjust
    Enrichment Subclass)

23              Against All Defendants

24  FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 510 AND 204 –
25  FAILURE TO PAY ALL WAGES, INCLUDING PREMIUM OVERTIME WAGES
                UNDER CALIFORNIA LAW

26  78.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

27

34

1  forth herein.

2      On January 1, 2000, Labor Code § 510(a) was enacted and provides:

3      Eight hours of labor constitutes a day's work. Any work in excess of
       eight hours in one workday and any work in excess of 40 hours in any
4      one workweek and the first eight hours worked on the seventh day of
       work in any one workweek shall be compensated at the rate of no less
5      than one and one-half times the regular rate of pay for an employee.
       Any work in excess of 12 hours in one day shall be compensated at the
6      rate of no less than twice the regular rate of pay for an employee. In
       addition, any work in excess of eight hours on any seventh day of a
7      workweek shall be compensated at the rate of no less than twice the
       regular rate of pay of an employee.
8
9      Labor Code § 1194(a) states:

10     Notwithstanding any agreement to work for a lesser wage, any
11     employee receiving less than the legal minimum wage or the legal
       overtime compensation applicable to the employee is entitled to recover
12     in a civil action the unpaid balance of the full amount of this minimum
       wage or overtime compensation, including interest thereon, reasonable
13     attorney's fees, and costs of suit.
14
       Labor Code § 204 states, in pertinent part:
15
       All wages, other than those mentioned in Section 201, 202, 204.1, or
16     204.2, earned by any person in any employment are due and payable
       twice during each calendar month, on days designated in advance by
17     the employer as the regular paydays.

18  79.    Under California law, Defendants are required to pay wages for each hour worked,

19  and premium overtime wages when non-exempt employees work over 8 hours in a day or 40

20  hours in a week by calculating the hourly rate and then computing the overtime premium

21  amount owed. Plaintiffs and putative class members have worked for Defendants without

22  being paid for all hours worked, regular and overtime, as described above, including being

23  forced to work off the clock.

24  80.    Plaintiffs and members of the Class did not regularly earn more commission than their

25  base wages and were thus misclassified as exempt employees under IWC 7-2001. In fact,

26  Defendants wage system was not and is not a bona fide commission system permitting

27

                                                                                    35

1   Defendants to avoid California's premium overtime compensation laws.

2   81.    In addition, because Defendants do not employee bona fide commissioned employees,

3   the application of Defendants' arrearage and charge back systems to hourly, non-exempt

4   employees violates California law as described herein.

5   82.    Plaintiffs and members of the Class who were deemed commissioned employees by

6   Defendants, who were not paid 1.5 times the applicable minimum wage, who did not earn

7   more than 50% of their wages from commissions during a specific pay period, who did not

8   regularly earn more commission than their basis rate of pay, and who worked overtime as

9   defined by California law, are also entitled to premium overtime wages. Defendants' once-a-

10  year reconciliation scheme, pursuant to which Defendants purport to determine if their

11  employees are entitled to premium overtime compensation, amounts to a willful failure to pay

12  wages timely.

13  83.    As a result of Defendants' violation of statutory duties to comply with statutory wage

14  requirements, as more fully set forth above, Plaintiffs and Class members were damaged in an

15  amount above the jurisdictional limits of this Court.

16  84.    Plaintiffs and Class members seek as damages all wages owed to individuals

17  employed by Defendants, plus all penalties permitted by law.

18  85.    Plaintiffs and Class members are entitled to, and therefore request, an award of pre-

19  judgment interest on the unpaid wages set forth herein.

20  86.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the

21  prosecution of this action. Plaintiffs seek attorneys' fees under all applicable provisions of

22  law. Wherefore, Plaintiffs pray judgment as set forth herein below.

23  ///

24  ///

25  ///

26  ///

27

36

## Fourth Cause of Action

(On Behalf of Plaintiffs and the Arrearages Subclass and the Charge Back Subclass)

### Against All Defendants

### WILLFUL VIOLATIONS OF LABOR CODE 221

87.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

88.     California Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

89.     In violation of this Labor Code provision, Defendants have established a commission arrearages programs that permits them to obtain wages back from employees who have earned those wages. Furthermore, Defendants initiated and applied the commission arrearages program without their employees' knowledge. In addition, Defendants' commission arrearages program has been applied to Defendants' employees in a manner that is inconsistent with express promises made to Defendants' employees at the commencement of their employment and during the course of their employment. Also, as alleged herein, Defendants applied the commission arrearages program without providing their employees with adequate records of its operation. Finally, because Defendants do not employee bona fide commissioned employees, the application of Defendants' arrearage and charge back systems to hourly, non-exempt employees violates California law as described herein.

90.     Defendants have also perpetuated an illegal and unconscionable charge back or product returns policy that further results in the debiting of employees wages and that operates in violation of Labor Code § 221. Again, Defendants failed to provide their employees with adequate records of its operation.

91.     Plaintiffs and the Class have been injured as a result of Defendants violations of Labor Code § 221, and Plaintiffs and Class members seek as damages all wages owed to individuals employed by Defendants, plus all penalties permitted by law.

37

92. Plaintiffs and Class members are entitled to, and therefore request, an award of pre-judgment interest on the unpaid wages set forth herein.

93. Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the prosecution of this action. Plaintiffs seek attorneys' fees under all applicable provisions of law. Wherefore, Plaintiffs pray judgment as set forth herein below.

### Fifth Cause of Action

(On Behalf of Plaintiffs and the Breach of Contract Subclass)

### Against All Defendants

### BREACH OF CONTRACT — 4 years wr

94. Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

95. Plaintiffs and the Class entered into employment contracts with Defendants memorialized by employee manuals described herein. These contracts were common to all of Defendants' similarly-situated employees in the State of California and imposed duties on Defendants, including the duty to pay wages as promised, the duty to provide rest breaks as required under California law, the duty to pay for all time worked, the duty to refrain from receiving back wages previously paid, and the duty to permit employees to leave Defendants' premises after they had completed their shifts.

96. Defendants breached each and every one of these contractual duties. Plaintiffs and the Class fulfilled any and all duties required of them to receive the benefit of the contracts they formed with Defendants.

97. Plaintiffs and the Class sustained damages as a direct and proximate result of Defendants' contractual breaches, including the loss of wages. Plaintiffs seek, on their own behalf and on behalf of the entire Class, the value of all damages caused by Defendants' breaches of contract described herein.

98. Wherefore, Plaintiffs pray judgment as set forth herein below.

38

## Sixth Cause of Action

(On Behalf of Plaintiffs and the Terminated/Resigned Subclass)

## Against All Defendants

**FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 201, 202, AND 203 --**
**FAILURE TO PAY WAGES UPON DISCHARGE OR QUITTING;**
**WAITING TIME PENALTIES**

99.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

100.    California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due immediately upon discharge or 72 hours after an employee quits. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages per violation. A worker need not prove malice or intentional conduct in establishing their claim for waiting time penalties, but merely establish the employer did not do something it was obligated to do. (See Mamika v. Barca (1998) 68 Cal. App. 4th 487; Barnhill v. Robert Saunders & Co. (1981) 125 Cal.App.3d 1.)

101.    Plaintiffs and Class members are entitled to unpaid compensation, but to date have not received such compensation. As a consequence of Defendants' willful conduct in not paying compensation for all hours worked, including premium overtime hours, Plaintiffs and Class members who were terminated and who resigned are entitled to 30 days wages as penalty under Labor Code § 203, together with interest thereon and attorneys' fees and costs for each violation described above. Wherefore, Plaintiffs pray judgment as set forth herein below.

///
///
///

39

1

**Seventh Cause of Action**

2

(On Behalf of Plaintiff Justin Kiser and the Rest Breaks Subclass)

3

**Against All Defendants**

4

**FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE § 226.7 –
FAILURE TO AFFORD MANDATORY REST BREAKS AS REQUIRED BY**

5

**IWC ORDERS AND LABOR CODE**

6      102.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

7      forth herein.

8      103.    At all times relevant, Plaintiffs and the Class members were covered by the provisions

9      of Industrial Wage Commission ("IWC") Orders, including IWC Orders 7-2001.

10     104.    The IWC Orders provide, in applicable part:

11             12. (A)  Every employer shall authorize and permit all employees to
               take rest periods, which insofar as practicable shall be in the middle of
12             each work period. The authorized rest period time shall be based on the
               total hours worked daily at the rate of ten (10) minutes net rest time per
13             four (4) hours or major fraction thereof. However, a rest period need
               not be authorized for employees whose total daily work time is less
14             than three and one-half (3 ½) hours. Authorized rest period time shall
               be counted as hours worked for which there shall be no deduction from
15             wages.

16
               12. (B)  If an employer fails to provide an employee a rest period in
17             accordance with the applicable provisions of this order, the employer
               shall pay the employee one (1) hour of pay at the employee's regular
18             rate of compensation for each workday that the rest period is not
               provided.
19

20             California Labor Code § 226.7 states:

21
               (a) No employer shall require any employee to work during any meal
22             or rest period mandated by an applicable order of the Industrial Welfare
               Commission.
23
               (b) If an employer fails to provide an employee a meal period or rest
24             period in accordance with an applicable order of the Industrial Welfare
               Commission, the employer shall pay the employee one additional hour
25             of pay at the employee's regular rate of compensation for each work
               day that the meal or rest period is not provided.
26

27     105.    Defendants routinely failed to provide Plaintiff Justin Kiser and the Class members

40

1  with a 10-minute paid rest period for each four (4) hour period of work, in compliance with

2  IWC Orders and Labor Code § 226.7. As a result of Defendants' failure, Plaintiff and the

3  Class members are entitled to recover an amount to be proved at trial, of not less than one

4  additional hour of pay at the regular rate of compensation for each workday that any one rest

5  period was not provided, and any and all penalties provided by law.

6  106.    Defendants' policy and practice of denying Plaintiff Justin Kiser and the Class rest

7  periods constitutes a willful violation of California Labor Code § 226.7. Plaintiff and the

8  entire Class have sustained damages as a direct and proximate consequence of the

9  Defendants' willful and illegal conduct, to wit, they have been forced to work continuously

10  throughout the day, every day, without being allowed to take rest periods.

11  107.    Plaintiff Justin Kiser has incurred, and will continue to incur attorneys' fees and costs

12  in the prosecution of this action. Plaintiff seeks attorneys' fees under all applicable provisions

13  of law. Wherefore, Plaintiff prays judgment as set forth herein below.

14                          **Eighth Cause of Action**

15                  (On Behalf of Plaintiffs and the Records Subclass)

16                          Against All Defendants

17          **FOR WILLFUL VIOLATIONS OF LABOR CODE § 226 –**
          **FAILURE TO MAINTAIN PAY RECORDS; FAILURE TO MAKE**
18                **PAY RECORDS AVAILABLE UPON REQUEST**

19  108.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20  forth herein.

21  109.    Defendants knowingly and intentionally failed to maintain accurate pay records, and

22  failed to allow current and former employees to inspect pay records upon request, in violation

23  of California Labor Code § 226, as more fully alleged hereinabove.

24  110.    As a direct result of Defendants' failure, Plaintiffs and Class members were injured

25  and are entitled to recover an amount to be proved at trial, of not less than the penalties

26  provided by the Labor Code. In addition, Class members who are currently employed by

27  Defendants are entitled to equitable relief against Defendants to force Defendants to comply

41

1  with California law.

2  111.    Plaintiffs and Class members are entitled to penalties and attorneys' fees pursuant to

3  Labor Code § 226 and California Code of Civil Procedure § 1021.5.  Wherefore, Plaintiffs

4  pray judgment as set forth herein below.

### Ninth Cause of Action

(On Behalf of Plaintiffs and the Wage Disclosure Subclass)

Against All Defendants

### WILLFUL VIOLATION OF LABOR CODE § 232

9  112.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

10  forth herein.

11  113.    Labor Code § 232, provides:

12
13          No employer may do any of the following:

14          (a) Require, as a condition of employment, that an employee refrain from
                  disclosing the amount of his or her wages.
15          (b) Require an employee to sign a waiver or other document that purports to
                  deny the employee the right to disclose the amount of his or her wages.
16          (c) Discharge, formally discipline, or otherwise discriminate against an
                  employee who discloses the amount of his or her wages.
17

18  114.    In violation of this prohibition, Defendants' specifically instruct their employees that

19  they are not permitted to disclose their compensation to other employees.

20  115.    Plaintiffs seek an order prohibiting Defendants from continuing to engage in this

21  illegal conduct, and seek all penalties available under California law, and seek the award of

22  attorneys' fees and costs associated with obtaining the relief requested.

23  116.    Wherefore, Plaintiffs pray judgment as set forth herein below.

24  ///

25  ///

26  ///

27

42

## Tenth Cause of Action

(On Behalf of Plaintiffs and the Unfair Business Practice Subclass)

Against All Defendants

### FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.
### BASED UPON DEFENDANTS' UNFAIR BUSINESS ACTS AND PRACTICES

117.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

118.    Plaintiffs further bring this action pursuant to the Business and Professions Code Sections 17200, et seq., seeking restitution for monies owed for regular and overtime wages, and injunctive relief to enjoin Defendants' illegal practices.

119.    Plaintiffs further bring this action pursuant to the Business and Professions Code Sections 17200, et seq., seeking disgorgement of one hour of pay for every rest break missed by the class during the past four years. Unless Defendants are ordered to disgorge these monies, they will be unjustly enriched by their illegal conduct.

120.    The Unfair Competition Law prohibits all unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice." Plaintiffs and the class have standing to bring this claim because they are direct victims of Defendants' illegal and unfair business practices, which Defendants engaged in for their sole financial benefit.

121.    Defendants, and each of them, are "persons" as defined under Business and Professions Code § 17201. Each of the directors, officers, and/or agents of Defendants, and each of them, are equally responsible for the acts of the other directors, officers, employees and/or agents as set forth in the Business and Professions Code § 17095.

122.    Plaintiffs and the Class members bring this action in the interest of themselves, as representatives, and in the interest of other employees of Defendants, and each of them, and in the interest of the public pursuant to § 17203 of the California Business and Professions Code. Plaintiffs and Class members bring this cause of action seeking restitution for Defendants'

43

1  failure to pay employees regular and overtime wages, as well as disgorgement of wage

2  penalties for every rest break Defendants failed to provide, as well as an injunction

3  prohibiting Defendants from denying employees regular and overtime wages and rest periods,

4  now and in the future.

5  123.    Plaintiffs and the Class members bring this action to pursue claims during a 4-year

6  statute of limitations under § 17208 of the California Business and Professions Code.

7  124.    The following practices of Defendants, and each of them, are unlawful and unfair

8  business practices under California Business and Professions Code §§ 17200 et seq.:

9        (a)    Failure to pay all regular and overtime wages, in violation of the

10            California Labor Code and all other applicable laws;

11        (b)    Failure to abide by promises regarding wages to be paid to

12            employees.

13        (c)    The use of fraud in the conduct of business.

14        (d)    The false imprisonment of employees after their work shifts were

15            over.

16        (e)    Imposition of an illegal and unconscionable arrearage program

17            designed to obtain back from Plaintiffs and the Class wages that

18            they had been previously paid, in violation of Labor Code § 221.

19        (f)    Imposition of an unconscionable charge back policy that permits

20            Defendants to debit their employees wages for commission on

21            merchandize returned by customers, regardless of the reason for

22            the return and regardless of how long after the sale had been

23            completed.

24        (g)    Breaches of employment contracts and covenants made to

25            employees.

26        (h)    Failure to provide rest breaks pursuant to the California Labor

27            Code and IWC wage orders;

44

(i)    Failure to maintain accurate pay records, and make those records available for inspection upon request by employee;

(j)    Unjust enrichment due to the failure to pay wages, including overtime wages.

(k)    Imposing an illegal prohibition that employees may not disclose or discuss their wages with others.

125.    At all times material to this action, Defendants' conduct described above is an unfair, unlawful, and/or fraudulent business practice in violation of California Business & Professions Code §§ 17200 et seq.

126.    As alleged hereinabove, Defendants have inequitably and unlawfully conspired, agreed, arranged and combined to violate California labor laws, as alleged herein.

127.    As set forth below, Plaintiffs and Class members are informed and believe and thereupon allege, that by failing to pay wages to all employees at Defendants' business, Defendants have engaged in business within the State of California in a manner that injured competitors, lead to misrepresentations to the public about the manner in which Defendants engaged in business, and/or destroyed competition in violation of Business and Professions Code § 17043.  Upon information and belief, Plaintiffs and Class members allege that Defendants engaged in the acts and omissions heretofore alleged for the purpose of profiting from lower labor costs, and obtaining an unlawful or unfair advantage, all in a scheme to engage in unfair competition, at the expense of their employees and to the detriment of public policy for the lawful employment of employees.

128.    Pursuant to Business and Professions Code §§ 17071 and 17075, the failure of Defendants, and each of them, to pay all wages, including overtime wages, is admissible as evidence of Defendants' intent to violate the California Unfair Competition Law.

129.    As a direct and proximate result of the unfair, unlawful, and/or fraudulent business practices alleged herein, Plaintiffs and the entire Class have been denied due wages, both regular and overtime, as well as rest periods, all to their detriment and all to Defendants'

45

1    illegal economic advantage.

2    130.    Plaintiffs and the Class members are informed and believe and thereon allege that the

3    Defendants, and each of them, by committing the above-described acts, have deceived the

4    public by illegally depriving their employees regular and overtime wages, rest periods, and

5    engaging in the other wrongful conduct described herein.

6    131.    Business and Professions Code provides that the Court may restore to an aggrieved

7    party any money or property acquired by means of unlawful and unfair business practices, and

8    to disgorgement of penalty wages for failing to provide rest periods to employees. Plaintiffs

9    and Class members seek restitution of all unpaid wages owing to them and members of the

10   general public, and to disgorgement, according to proof, that the Defendants have enjoyed as

11   a result of the unfair business practices.

12   132. .    Business and Professions Code § 17202 states: "Notwithstanding Section 3369 of the

13   Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

14   penal law in a case of unfair competition."

15   133. .    In addition to restoration of all wages owed, Plaintiffs and Class members seek to

16   enforce penalties in the interest of themselves, in the interest of other employees of

17   Defendants, and each of them, and in the interest of the general public pursuant to § 17202:

18        (a)    Waiting time penalties (Labor Code § 203);

19        (b)    Extra hour of pay for not authorizing or permitting rest breaks

20   (Labor Code § 226.7);

21        (c)    Failure to maintain and make available for inspection accurate

22   pay records (Labor Code § 226);

23        (d)    Illegally prohibiting employees from disclosing or discussing

24   their wages (Labor Code § 232).

25   134.    There is a financial burden incurred in pursuing this action that would be unjust to

26   place on Plaintiffs and the Class members, because the burden of enforcing workforce-wide

27   rights is disproportionate to that of enforcing only individual claims. It would be against the

46

1    interests of justice to force payment of attorneys' fees from Plaintiff and Class members'

2    recovery in this action. Therefore, attorneys' fees are appropriate and sought pursuant to all

3    applicable laws, including but not limited to California Code of Civil Procedure § 1021.5.

4    135.    Unless equitable relief is granted, members of the Class will continue to be subjected

5    to Defendants' illegal conduct. Pursuant to Business and Professions Code §§ 17203,

6    Plaintiffs and the Class seek a permanent injunction enjoining Defendants' continuing

7    violations of California's Unfair Competition Law on the grounds that such acts described

8    herein violate § 17200 of the Business and Professions Code and California's public policy.

9    Wherefore, Plaintiffs pray judgment as set forth herein below.

10                        **Eleventh Cause of Action**

11              **(On Behalf of Plaintiffs and the Unjust Enrichment Subclass)**

12                        **Against All Defendants**

13                        **UNJUST ENRICHMENT**

14

15    136.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

16    forth herein.

17    137.    As a consequence of violating the employment rights of Plaintiffs and Class members,

18    Defendants, and each of them, were unjustly enriched at Plaintiffs' and Class members'

19    expense. Defendants gained an advantage by denying Plaintiffs and Class members regular

20    and overtime wages, by denying them rest periods, and by engaging in the other wrongful

21    conduct described herein. As a proximate result, Plaintiffs and Class members suffered

22    damages. The interests of equity require that Defendants pay restitution and penalties for

23    violating the Labor Code and Business and Professions Code. Wherefore, Plaintiff prays

24    judgment as set forth herein below.

25

26    ///

27

                                                                                    47

                        FIRST AMENDED CLASS ACTION COMPLAINT

## Twelfth Cause of Action

### Against All Defendants

### (On Behalf of Plaintiffs and the Declaratory Relief Subclass)

### FOR DECLARATORY RELIEF

138.  Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

139.  Plaintiffs and the Class seek a Declaration by this Court that Defendants' concerted violations alleged herein constitute unfair business practices, in violation of the Unfair Competition Law.

140.  Plaintiffs and the Class also seek a Declaration by this Court that Defendants' policy and practice of denying regular and overtime wages and rest periods constitute a violation of California law, as alleged herein.

141.  In addition, Plaintiffs and Class members seek a Declaration by this Court that Defendants' policy and practice of failing to maintain accurate pay records, and failing to provide employees with those records for inspection upon request constitutes a violation of California law, as alleged herein.

## Thirteenth Cause of Action

### Against All Defendants

### VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT
### (Labor Code §§2699, et seq.)

(On Behalf of Plaintiffs, the Private Attorneys General Subclass and the State of California)

142.  Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

143.  Defendants have violated Labor Code § 203 by consistently failing to timely pay employees all wages due upon resignation and/or termination.

144.  Defendants have violated Labor Code § 204 by consistently failing to pay employees

48

1  in a timely way.

2  145.  Defendants have violated Labor Code § 206.5 by consistently requiring employees to

3  sign documents releasing them from the obligation to pay wages owed to employees.

4  146.  Defendants have violated Labor Code § 208 by consistently failing to pay all wages

5  due terminated employees at the place of discharge.

6  147.  Defendants have violated Labor Code § 221 by consistently engaging in a practice of

7  taking back wages previously paid to employees.

8  148.  Defendants have violated Labor Code § 223 by consistently agreeing to pay

9  employees certain wages and then though the use of deception and fraudulent payroll

10  practices has secretly paid employees lower wages than promised.

11  149.  Defendants have violated Labor Code § 226(a) by consistently failing to provide the

12  accurate itemized statement of wages on employees' pay stubs as required under California

13  law.

14  150.  Defendants have violated Labor Code § 226.7 by consistently failing to provide

15  employees with rest breaks during their working shifts.

16  151.  Defendants have violated Labor Code § 227 by promising employees that they will

17  provide medical and dental insurance to them after they have worked for the company for 90

18  calendar days and then has consistently breached that promise by failing to make payments

19  into a health insurance fund covering those benefits within 90 days.

20  152.  Defendants have violated Labor Code § 232(c) by prohibiting employees from

21  disclosing or discussing their wages, and, based on information and belief, has formally

22  disciplined or otherwise discriminated against employees who disclose the amount of their

23  wages.

24  153.  Defendants have violated Labor Code § 432.5 by consistently requiring employees to

25  sign documents, including the company's employee manuals that demand employees agree in

26  writing to illegal policies and practices.

27  154.  Defendants have violated Labor Code § 510 by consistently failing to pay premium

49

1  overtime wages to its employees.

2  155. Defendants have violated Labor Code § 976 by consistently publishing misleading

3  statements about the commissions it promises to employees.

4  156. Defendants have violated Labor Code § 1194 by consistently requiring employees to

5  agree to waive their statutory right to premium overtime wages, and then fails to pay them

6  premium overtime.

7  157. Defendants have violated Labor Code § 1199 by consistently violating provisions of

8  Labor Code §§ 1171, et seq.

9  158. Plaintiffs herein seek to serve as private attorneys general under the California Private

10  Attorneys General Act, Labor Code §§ 2699, et seq., and have provided proper notice to

11  defendants and the state of California.

12  159. On or about June 23, 2006, the California Labor and Workforce Development Agency

13  provided notice to defendants and plaintiffs that it did not intend to investigate the allegations

14  contained in plaintiffs' properly and timely served notice letter.  (A copy of the California

15  Labor and Workforce Development Agency's June 23, 2006, letter is attached as Exhibit 1.)

16  160. Plaintiffs are now entitled as a matter of law to amend this complaint to include their

17  requests for relief under the California Private Attorneys General Act, and hereby do so, and

18  to seek and collect statutory penalties available under the Private Attorneys General Act on

19  behalf of the State of California, themselves and the class they seek to represent.

20                                         **PRAYER FOR RELIEF**

21       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

22  them, as follows:

23       (a)  Certifying this action to proceed as a class action pursuant to California Code

24  of Civil Procedure section 382 and designating Plaintiffs as the representatives of the Class

25  and their legal counsels as counsels for the Class;

26       (b)  For damages for unpaid wages, including regular and overtime wages, and

50

1   such general and special damages as may be appropriate, according to proof at trial;

2      (c)    For 30 days waiting time penalties under Labor Code § 203;

3      (d)    For penalties under Labor Code § 210 and 558(a)(3);

4      (e)    For penalties under Labor Code § 226(f);

5
6      (f)    For damages calculated at one extra hour for each day no rest period was

7   provided (Labor Code § 226.7);

8      (g)    For all civil penalties available pursuant to Labor Code §§ 2699, et seq., as

9   alleged herein above.

10     (h)    For severe emotional distress caused by Defendants' concerted conduct,

11  including the false imprisonment of their employees;

12
13     (i)    Declaring that the concerted violations alleged herein constitute unfair

14  competition in violation of California's Unfair Competition Law, and violations of

15  California's Labor Code;

16     (j)    Permanently enjoining Defendants from continuing to engage in the unlawful

17  concerted conduct described herein;

18     (k)    Equitable remedies, including but not limited to, an equitable accounting, as

19  the court deems just and proper under the circumstances;

20     (l)    Awarding Plaintiffs and the Class punitive or exemplary damages based on

21  Defendants' oppressive and despicable conduct;

22
23     (m)    Granting Plaintiffs and the Class the costs of prosecuting this action, together

24  with interest and reasonable attorneys' and experts' fees; and

25     (n)    Granting such other relief as this Court may deem just and proper under the

26  circumstances.

27

54

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## JURY DEMAND

To the full extent available, Plaintiffs demand a trial by jury.


DATED:  July 20 2006                    THE LAW OFFICE OF PATRICK R. KITCHIN

By
Patrick R. Kitchin, Esq.
Attorneys for Plaintiffs


DATED:  July 20, 2006                   THE LAW OFFICE OF DANIEL FEDER

By
Daniel L. Feder, Esq.
Attorneys for Plaintiffs           by PRK

52



# C A L I F O R N I A
## Labor & Workforce Development Agency

June 23, 2006

Patrick R. Kitchin
Law Offices of Patrick R. Kitchin
565 Commercial St., 4th Floor
San Francisco, CA  94111

CSC- Lawyers Incorporating Service
Agent for Service of Process for
Polo Ralph Lauren Corp. doing business in California as
Delaware Polo Ralph Lauren Corporation
P.O. Box 526036
Sacramento, CA  95852-6036

Re:     LWDA No: 1410
        Employer:  Polo Ralph Lauren Corp., et al.
        Employee:  Ann Otsuka, et al.

Dear Employer and Representative of the Employee:

This is to inform you that the Labor and Workforce Development Agency (LWDA) received your notice of alleged Labor Code violations pursuant to Labor Code Section 2699, postmarked June 02, 2006 and after review, does not intend to investigate the allegations.

As a reminder to you, the provisions of Labor Code Section 2699(i) provides that "...civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the LWDA for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code". Labor Code Section 2699(l) specifies "[t]he superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part".

Consequently you must advise us of the results of the litigation, and forward a copy of the court judgment or the court-approved settlement agreement.

Sincerely,

*Richard L. Rice*

Richard L. Rice
Undersecretary

07-17-06 P02:14   RCVD

B

₮ 06/30/06

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, ___ mber, and address)*:
Patrick R. Kitchin
The Law Office of Patrick R. Kitchin    182965
565 Commercial Street, 4th Floor
San Francisco, CA 94111
TELEPHONE NO: (415) 677-9058    FAX NO: (415) 627-9076
ATTORNEY FOR *(Name)*: Plaintiffs

CHAMBERS COPY
Judge KRAMER
Case:

FOR COURT USE ONLY

**F I L E D**
San Francisco County Superior Court

MAY 3 0 2006

GORDON PARK-LI, Clerk
BY: _Wilma E. Hurtado_
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McALLISTER STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN FRANCISCO    CA 94102
BRANCH NAME: SAN FRANCISCO

CASE NAME: OTSUKA v. POLO

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CGC-06-452655 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE: DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply)*:
   a. [X] monetary    b. [X] nonmonetary; declaratory or injunctive relief    c. [X] punitive

4. Number of causes of action *(specify)*: 12

5. This case [X] is [ ] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 26, 2006

Patrick R. Kitchin    ▶ _[signature]_
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]
ESSENTIAL FORMS

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 201.8, 1800-1811
Standards of Judicial Administration, § 1
www.courtinfo.ca.gov

KITCHIN

C

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|

WILLIAM J. GOINES (SBN 61290)
GREENBERG TRAURIG, LLP
1900 University Avenue, 5ᵗʰ Floor
East Palo Alto, CA 94304

TELEPHONE NO.: 650-328-8500    FAX NO.: 650-328-8508
ATTORNEY FOR (Name): DEFENDANTS POLO RALPH LAUREN CORP., ET AL.

**CHAMBERS COPY-DO NOT FILE**
Judge: ___KRAMER___
Case: _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: OTSUKA v. POLO

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-06-452655 |
|---|---|---|---|---|
| ☒ Unlimited Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☒ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | | JUDGE:<br><br>DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☒ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☒ is ☐ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☒ Substantial amount of documentary evidence
   d. ☒ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☒ Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive

4. Number of causes of action (specify):

5. This case ☒ is ☐ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 7, 2006

William J. Goines
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

American Legal Net, Inc.
www.USCourtForms.com

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

Otsuka, et al. v. Polo Ralph Lauren, et al.                    Case No. CGC-06-452655

## PROOF OF SERVICE

I, Andrea Beggs, declare that I am a citizen of the United States, over the age of eighteen years and not a party to the within action. I am an employee of GREENBERG TRAURIG, LLP, and my business address is 1900 University Avenue, Fifth Floor, East Palo Alto, CA 94303. On the date written below, I served the following document(s):

## CIVIL CASE COVER SHEET - COMPLEX CASE COUNTER-DESIGNATION

by placing said document(s) listed above in a sealed envelope and served as detailed below:

| | |
|---|---|
| Patrick R. Kitchin, Esq. | Daniel Feder, Esq. |
| Law Offices of Patrick R. Kitchin | Law Offices of Daniel L. Feder |
| 565 Commercial St., 4th Fl. | 807 Montgomery Street |
| San Francisco, CA 94111 | San Francisco, CA 94133 |
| Tel: (415) 677-9058 | Tel: (415) 391-9476 |
| Fax: (415) 627-9076 | Fax: (415) 391-9432 |
| (Plaintiff's Co-Counsel) | (Plaintiff's C0-Counsel) |

☐ by transmitting via FACSIMILE the document(s) listed above to the fax numbers) set forth below, or as stated on the attached service list, on this date at approximately 3:00 pm, from the sending facsimile machine telephone number of 650-289-7893. The transmission was reported as complete and without error by the machine. Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration. The transmission report was properly issued by the transmitting facsimile machine.

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service/Express Mail, Federal Express and other overnight mail services. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at East Palo Alto, California, in the ordinary course of such business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 7, 2006 at East Palo Alto, California.

_____
Andrea Beggs

SV 346079217v1

Otsuka, et al. v. Polo Ralph Lauren Corporation, et al.     Case No. CGC-06-452655

## PROOF OF SERVICE

I, Cathy Sandifer, am a citizen of the United States, over the age of eighteen years and not a party to the within action. I am an employee of GREENBERG TRAURIG, LLP, and my business address is 1900 University Avenue, Fifth Floor, East Palo Alto, CA 94303. On September 18, 2006, I served the following documents:

DECLARATION OF WILLIAM J. GOINES IN SUPPORT OF DEFENDANTS POLO RALPH LAUREN CORPORATION, POLO RETAIL, LLC, POLO RETAIL CORP., AND FASHIONS OUTLET OF AMERICA, INC.'S APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION

☒ by transmitting via **FACSIMILE** the document(s) listed above to the fax numbers) set forth below, or as stated on the attached service list, on this date at approximately _____, from the sending facsimile machine telephone number of 650-289-7893. The transmission was reported as complete and without error by the machine. Pursuant to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original of this declaration. The transmission report was properly issued by the transmitting facsimile machine.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the **UNITED STATES MAIL** at East Palo Alto, California, addressed as set forth below.

☐ by **OVERNIGHT MAIL** by placing the document(s) listed above in a sealed overnight mail envelope with postage thereon fully prepaid, addressed as set forth below. I am aware that on motion of the party served, service is presumed invalid if delivery by Federal Express is more than one day after date of deposit with Federal Express.

☐ **(BY MESSENGER PERSONAL SERVICE).** I caused delivery of such envelope by hand to the offices of the addressee.

Patrick R. Kitchin, Esq.                     Daniel Feder, Esq.
Law Offices of Patrick R. Kitchin            Law Offices of Daniel L. Feder
565 Commercial St., 4th Fl.                  807 Montgomery St.
San Francisco, CA 94111                      San Francisco, CA 94133
(Fax: 415-627-9076)                          (Fax: 415-391-9432)

I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service/Express Mail, Federal Express and other overnight mail services. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at East Palo Alto, California, in the ordinary course of such business.

//

//

1

    I declare under penalty of perjury under the laws of the State of California that the foregoing is

2 true and correct.

    Executed on September 18, 2006, at East Palo Alto, California.

3

4                           Cathy Sandifer

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28