# EXHIBIT A

# (to Motion to Dismiss Second Amended Complaint)

1   Patrick R. Kitchin, Esq. (SBN 162965)
    **THE LAW OFFICE OF PATRICK R. KITCHIN**
2   565 Commercial Street, 4ᵗʰ Floor
    San Francisco, CA 94111
3   Telephone:  (415) 677-9058
    Facsimile:  (415) 627-9076
4   Attorneys for Plaintiffs

5   Daniel Feder (State Bar No. 130867)
    **THE LAW OFFICES OF DANIEL FEDER**
6    807 Montgomery Street
    San Francisco, CA 94133
7   (415) 391-9476

8   Counsel to Ann Otsuka, Janis Keefe, Corrine Phipps,
    and Justin Kiser

9

ENDORSED
F I L E D
San Francisco County Superior Court

MAY 3 0 2006

GORDON PARK-LI, Clerk
BY: ___CRISTINA E. BAUTISTA___
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

OCT 2 7 2006  -9⁰⁰AM

DEPARTMENT 212

10              SUPERIOR COURT OF CALIFORNIA

11         FOR THE CITY AND COUNTY OF SAN FRANCISCO

12   ANN OTSUKA, an individual; JANIS          )  Case No. **CGC - 0 6 - 4 5 2 6 5 5**
     KEEFE, an individual; CORRINE PHIPPS, an  )
13   individual; and JUSTIN KISER, an individual; )  **CLASS ACTION COMPLAINT FOR:**
14   and on behalf of all others similarly situated, )
                                                 )    • **FRAUD**
15              Plaintiffs,                       )    • **FALSE IMPRISONMENT**
                                                 )    • **WILLFUL VIOLATIONS OF**
16        vs.                                     )      **LABOR CODE §§ 510 AND 204**
                                                 )      **(FAILURE TO PAY WAGES**
17   POLO RALPH LAUREN CORPORATION; a )            **EARNED)**
     Delaware Corporation; POLO RETAIL, LLC., )   • **WILLFUL VIOLATIONS OF**
18   a Delaware Corporation; POLO RALPH        )      **LABOR CODE § 221**
     LAUREN CORPORATION, a Delaware          )    • **BREACH OF CONTRACT**
19   Corporation, doing business in California as )   • **WILLFUL VIOLATIONS OF**
     POLO RETAIL CORP; FASHIONS OUTLET             **LABOR CODE §§ 201, 202 AND 203**
20   OF AMERICA, INC., a Delaware Corporation       • **WILLFUL FAILURE TO**
     and DOES 1-500, inclusive                        **PROVIDE REST PERIODS**
21                                                  • **WILLFUL VIOLATIONS OF**
                                                      **LABOR CODE § 226**
22              Defendants.                         • **WILLFUL VIOLATIONS OF**
                                                      **LABOR CODE § 232**
23                                                  • **VIOLATIONS OF BUSINESS AND**
                                                      **PROFESSIONS CODE §§ 17200,**
24                                                    **ET SEQ.**
                                                    • **UNJUST ENRICHMENT**
25                                                  • **DECLARATORY RELIEF**

26                                                      **JURY TRIAL DEMANDED**

27

                                                                              1

                            **CLASS ACTION COMPLAINT**

1    Plaintiffs, individually and on behalf of all others similarly situated, for their

2    complaint against defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail

3    Corp., Fashions Outlet of America, Inc., and Does 1-500, inclusive, allege upon information

4    and belief, except as to the allegations that pertain to Plaintiffs and their counsel, as follows:

5                                    **JURISDICTION AND VENUE**

6    1.    Plaintiff Ann Otsuka is an individual who resides, and at all times relevant has resided,

7    in Santa Clara County, California, who is a citizen of the State of California, and who was

8    employed by Polo Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail,

9    LLC, in Santa Clara County, California, between approximately May 2004 and approximately

10   December 2004.

11   2.    Plaintiff Corrine Phipps is an individual who at all times relevant resided in San

12   Francisco County, California, who is a citizen of the State of California, and who was

13   employed by Polo Retail Corp., and/or Polo Retail, LLC, and/or Polo Ralph Lauren

14   Corporation, in San Francisco County, California, between approximately May 2004 and

15   approximately December 2004.

16   3.    Plaintiff Justin Kiser is an individual who at all times relevant resided in Contra Costa

17   County, California, who is a citizen of the State of California, and who was employed by

18   Fashion Outlets of America, Inc., in San Francisco County, California, between

19   approximately July 2004 and approximately August 2005.

20   4.    Plaintiff Janis Keefe is an individual who at all times relevant resided in San Francisco

21   County, California, who is now a citizen of the State of Kentucky, and who was employed by

22   Polo Retail Corp., Polo Retail, LLC, and/or Polo Ralph Lauren Corporation, in San Francisco,

23   California, between approximately May 2004 and December 2004.

24   5.    Defendant Ralph Lauren Corporation, Inc., is a company organized and existing under

25   the laws of the State of Delaware, and doing business in cities throughout California,

26   including San Francisco.

27   6.    Defendant Polo Retail, LLC, is a company organized and existing under the laws of

2

1    the State of Delaware, and doing business in cities throughout California, including in San

2    Francisco.

3    7.    Polo Retail Corp. is a business of unknown origin and business form, doing business

4    in California, including in San Francisco, as a fictitious business name of Polo Ralph Lauren

5    Corporation.

6    8.    Fashions Outlet of America, Inc., is a corporation organized and existing under the

7    laws of the State of Delaware, and doing business in cities throughout California, including in

8    San Francisco.

9    9.    Plaintiffs lack sufficient information and belief to allege the true names and capacities

10    of defendants sued herein as DOES 1 through 500, inclusive. For that reason, Plaintiffs sue

11    said fictitiously named defendants by such fictitious names. When the true names, nature and

12    capacity of said fictitiously named defendants are ascertained, Plaintiffs shall amend this

13    Complaint accordingly. At all times herein mentioned, all defendants herein, whether named

14    or unnamed were and are responsible and liable to Plaintiffs for all of the plaintiffs' damages

15    and other relief prayed for herein. Plaintiffs allege on information and belief that at all times

16    herein mentioned, each of the defendants herein, whether named or unnamed, was the agent,

17    servant employee, co-conspirator, co-adventurer, and employee of each other defendant

18    herein, whether named or unnamed. With respect to each action and inaction pled in the

19    following paragraphs, each of the defendants, whether named or unnamed, was acting within

20    the fall course and scope of their agency and employment and was acting with the full

21    knowledge, consent, ratification and approval of each other defendant herein, whether named

22    or unnamed.

23    10.    This Court has personal jurisdiction over the Defendants, which: (1) conduct business

24    in the State of California through their retail clothing outlets in California; (2) hire and

25    maintain employees in the State of California; and (3) avail themselves of the protection of

26    the laws of the State of California.

27    11.    Venue is proper in this Court because Defendants committed the acts complained of

3

1 | herein throughout California, including in San Francisco County.

2 | **NATURE OF THE ACTION—SUMMARY**

3 | 12.    This action is brought by Plaintiffs and all other current and former employees of Polo

4 | Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corp., Fashions Outlet of America,

5 | Inc., and Does 1-500, in the State of California who have been injured by the conduct of

6 | Defendants as alleged herein below.

7 | 13.    Defendants have engaged in a long-standing practice of violating the employment

8 | rights of their employees.  Those violations are summarized in this paragraph and are further

9 | detailed below.

10 |    a)  Defendants have engaged and continue to engage in fraud toward their employees.

11 |        i)  Defendants represent to all of their hourly employees that they will be paid

12 |            a base wage, representing an hourly wage multiplied by all hours worked,

13 |            when, in fact, Defendants have instituted two programs that have permitted

14 |            Defendants to pay employees less than the promised base rate of pay and to

15 |            take back wages previously paid.  These two programs involve, first, an

16 |            arrearage program under which Defendants take back wages paid to

17 |            employees who fail to meet Defendants' unreasonably high sales targets,

18 |            and, second, a charge back program that permits Defendants to take back

19 |            wages paid to employees when products they have sold are returned to the

20 |            store for any reason and at any time. Defendants' employees, including

21 |            Plaintiffs named herein, relied on these representations, when, in fact, they

22 |            are false.  Defendants do not provide employees with a base rate of pay as

23 |            Defendants promise in their Sales Associate Handbook at page 4, and at the

24 |            time the employees are hired, and Plaintiffs and the Class have been

25 |            injured as a result of Defendants' misrepresentations.

26 |        ii) Defendants' falsely promise employees that they will perform at end-of-

27 |            the-year wage reconciliation to determine which employees are eligible to

4

1        receive premium overtime compensation for worked performed during the

2        entire course of the previous year. (As described herein, the reconciliation

3        constitutes a separate violation of California law relating to the timely

4        payment of wages.) This promise is made to all of Defendants' employees

5        through Defendants' Sales Associate Handbook at page 7. Defendants

6        have failed to fulfill that promise, and/or have performed that reconciliation

7        in a manner inconsistent with California law, all to the detriment of their

8        employees.

9      iii) Defendants represent to all of their employees that they will be permitted to

10        take two 15-minute rest breaks during an eight-hour shift. This

11        representation is made in Defendants' Retail Employee Handbook on page

12        18, which is provided to all employees, and it is also made during the

13        hiring process. Defendants' employees, including Plaintiffs named herein,

14        relied on this representation, when, in fact, it is false. Defendants do not

15        provide employees with rest breaks and Plaintiffs and the Class have been

16        injured as a result of Defendants' misrepresentations.

17      iv) Defendants routinely fraudulently manipulate Plaintiffs' and the Class's

18        time records to keep Defendants' employees from receiving wages for all

19        hours they worked.

20    b) Defendants routinely require all of their employees to perform work "off the

21    clock" for which they are not paid.

22      i) Defendants force employees to clock out of the Defendants' timekeeping

23        system, and/or shut down the timekeeping system, and then require them to

24        perform work without compensation.

25      ii) Defendants require employees at the end of their shifts to stand in line

26        and/or remain in their locked stores, for up to one half hour to undergo a

27        loss prevention search by managers after the employees have clocked out.

5

1    They are warned that if they attempt to leave the store through the

2    employee exit, before a manager authorizes them to leave, an alarm will

3    sound, and/or will be unable to leave the stores until a manager unlocks the

4    doors for them.  They are warned that they can be disciplined or terminated

5    if they attempt to leave the store through any exit until a manager has

6    conducted his or her loss prevention search at the end of their shift.  In

7    short, Defendants' employees are subjected to false imprisonment on a

8    daily basis.  They are confined by their supervisors to the interior of their

9    stores for an appreciable period of time each day without compensation

10    under the express and unequivocal threat that they will be fired or

11    reprimanded if they leave the store before a manger inspects them, and/or

12    they are locked inside their stores until a manager releases them.  Plaintiffs

13    and the Class are also warned in Defendants' Retail Employee Handbook,

14    at page 26, that all packages and bags are subject to inspection before the

15    employee may exit the store, and that this requirement is "a condition of

16    employment."  Defendants thus intend to confine, and do confine, their

17    employees through the unlawful assertion that Defendants have the legal

18    right to detain employees within the stores' premises after the employees'

19    work shifts are over.

20    iii) Defendants also require their employees to appear for work at a certain

21    hour, or to return to work after a meal break at a certain time, and then

22    make their employees wait for 20 minutes or more outside the store before

23    opening the employee entrance door to permit them to begin or continue

24    working.  Employees are not compensated for this waiting time.

25    Defendants' failure to pay their employees for all hours worked amounts in

26    further violations of California's premium overtime compensation laws.

27    c)  Defendants routinely fail to provide their employees with mandatory rest breaks,

6

1    warning employees that they will not sell enough products to meet their sales goals
2    if they waste time off the selling floor.  Defendants were and are required to pay
3    each employee who missed a rest period one additional hour of pay, and yet they
4    have failed to do so.

5    d)  Defendants routinely fail to pay wages to employees when those wages are earned,
6    and instead maintain an unconscionable and illegal arrearages program under
7    which Defendants collect from employees' wages they have earned.  If an
8    employee fails to meet his or her sales goals, Defendants' take from subsequent
9    wages the difference between the hourly rate promised to employees and a
10    percentage of the total value of products sold by the employees, in Plaintiffs' case,
11    8% of sales.  Because Defendants have misclassified their employees as bona fide
12    commissioned employees, Defendants' application of a commission-based wage
13    arrearage system is illegal, inequitable and unconscionable.

14    e)  Defendants maintain an illegal and unconscionable charge back or returns policy
15    that permits Defendants to collect from their employees' wages previously paid.
16    Because Defendants have misclassified their employees as bona fide
17    commissioned employees, Defendants' application of a commission-based charge
18    back system is illegal, inequitable and unconscionable.

19    f)  Defendants have established a wage system they call "Base Rate Against
20    Commission," and which they characterize as a *bone fide* commission based
21    system, when it fact it is not.  Defendants' wage system is an illegal scheme
22    designed to avoid the wage rules and overtime regulations set forth in Industrial
23    Welfare Commission Order 7-2001 and in the California Labor Code.

24        i)   A great number of Defendants' employees do not earn sufficient
25            commission to be classified as exempt employees under California law.
26        ii)  Defendants set the target sales goals at such a high level that many, if not
27            most, employees consistently earn commissions that are at or below the

7

1    value of the Defendants' draw.  They are therefore entitled to premium

2    overtime compensation for hours worked in excess of eight per day or 40

3    per week.

4       iii)  Consequently, Defendants "Base Rate Against Commission" system is

5          not bona fide.  It is knowingly designed to misclassify Defendants'

6          employees to avoid paying them premium overtime wages and to avoid

7          other wages rules applicable to Defendants' employees.  In the alternative,

8          Defendants routinely fail to pay premium overtime wages to their

9          purported commission-based employees who work in excess of eight hours

10         per day or more than 40 hours per week, who do not earn more than 50%

11         of their wages through commissions, and who do not earn 1.5 times the

12         applicable minimum wage.

13   g)  In conjunction with their "Base Rate Against Commission" system, Defendants

14       have established an annual review of their employees' right to receive premium

15       overtime wages, purporting to evaluate their employees' right to premium

16       overtime compensation at the end of Defendants' fiscal year.  Defendants use this

17       illegal reconciliation system as a means to avoid paying wages to their employees

18       in a timely manner in accordance with California law.  Furthermore, Defendants

19       fail to perform and/or fail to consistently perform, this end of the year evaluation

20       and fail to pay wages due to their employees.  Defendants' illegal wage system

21       results in the additional failure to pay former employees all of their wages due

22       upon termination.

23   h)  Defendants fail to maintain proper records memorializing the hours worked by

24       their employees, the compensation paid to them, and the debits made to their

25       wages, and fail to make accurate payroll records available upon request.

26   i)  Defendants expressly prohibit their employees from disclosing their wages to

27       fellow employees in violation of California labor laws.  Defendants' violation of

8

1        California's labor laws governing an employee's right to discuss his or her wages

2        with others is designed and/or operates to keep their employees from learning that

3        Defendants are routinely and consistently violating the wage and hour laws

4        detailed herein.

5    14.  In summary, Defendants have used fraud, deception and credible threats to maintain a

6    work force denied of the basic employment rights guaranteed under California law.

7                **ANN OTSUKA**

8    15.  Ann Otsuka worked for Polo Retail Corp., and/or Polo Ralph Lauren Corporation,

9    and/or Polo Retail, LLC, between approximately May 2004 and approximately October 2004

10   in Defendants' Palo Alto retail store, as a sales associate in Defendants' Home Collection

11   Department.

12   16.  When she began working for Defendants, Tin Hua, General Manager, told her she

13   would be compensated as a draw versus commission employee at the initial rate of $12.00 per

14   hour, with no commission. Defendants subsequently lowered Otsuka's hourly rate to $10.15,

15   plus 8% commission on sales. She was told she would receive greater compensation for sales

16   made in excess of her target sales goals, based on a commission rate of 8% of sales. She was

17   also told and understood that her base rate, based on her hourly wage multiplied by the total

18   hours she worked, would serve as a guaranteed wage payment. Defendants made this

19   representation to Otsuka in Defendants' Sales Associate Handbook and during the job

20   interview process. She was also told that her wages would increase as she increased her sales.

21   She was told that if she failed to sell a sufficient quantity of merchandise, she would be

22   reprimanded. She was also instructed through Polo's Sales Associate Handbook that she

23   could be terminated if she failed to meet her sales goals. She was not told and never

24   understood the wage system to mean that she could be forced to pay back some of her earned

25   wages if she failed to meet her sales goals. Nevertheless, Defendants established an arrearage

26   program after Otsuka was hired that permitted Defendants' to obtain previously paid wages

27   from Ann Otsuka through payroll deductions, which were insufficiently memorialized and

9

1   communicated to Otsuka. Otsuka never agreed to this arrearages program and was never

2   legally bound by its terms. When she sought guidance from Phoebe Morales (Store Manager)

3   and Ha'aheo Zablan (Home Collection/Men's Manager) about the new program, they told her

4   that they didn't really understand how it worked. These managers informed Otsuka that this

5   arrearage program should have been discussed with Otsuka before she was hired and

6   acknowledged to her that her pay records did not contain sufficient information to permit

7   them to understand and explain how the arrearages had been calculated. Otsuka's paycheck

8   stub had insufficient information describing the wages withheld, leading Otsuka to conclude

9   that payroll had simply made an error in calculating her wages. When she asked for a

10  complete accounting of her wages and how the arrearage deductions had been calculated, she

11  was denied sufficient accounting information to determine how her reduced wages had been

12  calculated. Otsuka relied to her detriment on the representations by Defendants regarding the

13  nature of her wages and was injured by Defendants' misrepresentations when she was in fact

14  paid less than promised.

15  17.     Defendants also debited Otsuka's wages whenever a customer returned an item she

16  sold, regardless of whether the return was made within a day or within several months, and

17  regardless whether the item was deemed to be defective. By the time Defendants applied the

18  charge back debit to Otsuka, she had earned a commission and/or the wage on the items

19  returned or the wage earned, and was entitled to retain those earnings. Defendants also

20  routinely failed to provide her with an accounting of how and why her wages were being

21  debited, despite her requests.

22  18.     During the course of Ann Otsuka's employment with Defendants, she did not always

23  sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants.

24  Based on information and belief, on several occasions, she sold less than 50% of the sales

25  target set by Defendants. Consequently, less than one half of her compensation represented

26  commissions. Therefore, she was entitled to receive premium overtime compensation for

27  hours worked in excess of eight hours per day or 40 hours per week, during those periods in

10

1   which she was not an exempt employee. (IWC Order 7-2001.) Ann Otsuka worked hours in

2   excess of eight per day and/or 40 hours per week on a regular basis, both recorded and

3   unrecorded, during periods when she was entitled to premium overtime compensation. In

4   addition, Otsuka's compensation was such that her commission earnings were generally at or

5   below her hourly-based draw. Defendants failed to provide all of those premium wages to

6   Plaintiff Ann Otsuka as required under California law.

7   19.    Defendants' Sales Associate Handbook specifically provides:

8          "Sales Associates and Senior Sales Associates are not eligible to receive a

9          premium overtime compensation rate. However, a sales commission

10         reconciliation will be performed at the close of each fiscal year to ensure each

11         associate is compliant with Federal Labor guidelines stipulating that the

12         majority of their pay must be in the form of commission. If an associate is

13         found to be overtime eligible at that time, then the appropriate amount of

14         overtime compensation will be paid to that associate."

15  20.    This payroll policy is illegal under California law and was applied to Ann Otsuka

16  during the course of her employment. By unlawfully delaying the "reconciliation" for up to a

17  year, Defendants failed to pay Ann Otsuka in a timely fashion. In fact, while Ann Otsuka

18  terminated her employment with Defendants in October 2004, Defendants have never paid her

19  all the premium overtime compensation she was and is owed. Defendants' representation that

20  they would perform an end-of-the-year reconciliation, upon which Otsuka reasonably relied,

21  was not fulfilled. Otsuka was entitled to premium compensation that was not paid to her and

22  that remains unpaid.

23  21.    On many days that Ann Otsuka worked, she was required to perform work without

24  compensation, working off the clock at the direction of, or with the knowledge and

25  acquiescence of, Defendants. Often, Defendants would instruct her not to clock out at the end

26  of a long shift, because her managers would adjust her stop work time later. Based on

27  information and belief, Defendants actually shut down the timekeeping system on occasions

11

1  when Otsuka was still working.  Defendants failed to keep accurate records of the hours Ann

2  Otsuka worked and failed to report the time worked to her.  In fact, Ann Otsuka was not paid

3  for all of the hours she worked.

4  22.      In addition, on a daily basis, Defendants required Ann Otsuka to clock out and then

5  wait for a manager to check her purse and bags to make sure she and the other employees

6  leaving the store were not attempting to steal and smuggle merchandise out.  Ann Otsuka

7  routinely had to wait with other sales associates each day that she worked for the mandatory

8  management inspection.  She regularly was required to wait for 10 to 20 minutes for the

9  inspection and was never compensated for that time.  The management team and Kristi

10  Mogel, Human Relations Manager instructed her that she was not to use the customer exit

11  closest to the interior of the mall in which the store is located.  When the store was closed at

12  the end of the day, that door was locked by a manager and could not be opened without a key.

13  Otsuka and the other sales associates did not have a key to that customer door.  The other exit,

14  also a customer door, was deemed to be the only door Otsuka and other employees were

15  permitted to use, when entering or exiting the store.  When the store was closed at the end of

16  the day, that door was also locked by a manager and could not be opened without a key.

17  Otsuka and the other sales associates did not have a key to that customer door either.  Otsuka

18  was warned by her managers she would be reprimanded or terminated if she left the store

19  premises before a manager had inspected her.  Defendants' Sales Associate Handbook was

20  provided to Otsuka, and it stated that this inspection procedure was a condition of

21  employment.  She was, in fact, at the end of her work shift physically confined to the interior

22  of the store and could not leave the store until she was inspected and a manager had unlocked

23  the employee exit.  This daily experience was frustrating.  She was led to believe and did

24  believe that Defendants' had the legal right to detain her in the store after her shift was over.

25  She missed appointments she had scheduled after working hours because she was forced to

26  wait within the confines of the store for upwards of 20 minutes.

27  23.      Ann Otsuka was not permitted to take rest breaks during the days that she worked.

12

1    Her managers harassed her and her co-employees when she and they attempted to take rest

2    breaks, telling them that they did not need to take the required breaks and that they would fall

3    behind on sales if they took the breaks. Otsuka felt harassed and intimidated by the comments

4    of her managers and did not take her mandatory breaks because she feared she would lose her

5    job, or be harassed, if she did.

6                                    **CORRINE PHIPPS**

7    24.    Corrine Phipps, previously known as Corrine Mullen, was employed by Polo Retail

8    Corp, and/or Polo Ralph Lauren Corporation and/or Polo Retail, LLC, in Polo Ralph Lauren's

9    retail store in San Francisco, California, between May 2004 and December 2004. She worked

10   in Defendants' Home Collections Department, where she sold products for the home.

11   25.    When she began working for Defendants, she was told by her store's General

12   Manager, Tin Hua, she would be compensated as a "draw versus commission" employee at

13   $12.75 per hour. She was told that her wages would increase as she increased her sales. She

14   was also told that her hourly rate would constitute a base guaranteed wage. Defendants made

15   this representation to Phipps in Defendants' Sales Associate Handbook and during the job

16   interview process. She was told that if she failed to sell a sufficient quantity of merchandise,

17   she could be terminated. She was not told and never understood the wage system to mean

18   that she could be forced to pay back some of her earned wages if she failed to meet her sales

19   goals. Nevertheless, Defendants established an arrearage program that permitted Defendants'

20   to obtain previously paid wages from Phipps through payroll deductions, which were

21   insufficiently memorialized and communicated to Phipps. She never agreed to this arrearage

22   program and was not legally bound by its terms. Phipps relied to her detriment on the

23   representations by Defendants regarding the nature of her wages and was injured by

24   Defendants' misrepresentations when she was in fact paid less than promised.

25   26.    Defendants also debited Phipps's wages whenever a customer returned an item she

26   sold, regardless of whether the return was made within a day or within several months, and

27   regardless whether the item was deemed to be defective. By the time Defendants' applied the

13

1    arrearages debit to Phipps, she had earned the commission or the wage on the items returned

2    or the work performed, and was entitled to retain those earnings. Defendants' also routinely

3    failed to provide her with an accounting of how and why her wages were being debited,

4    despite her requests.

5    27.    During the course of Phipps's employment with Defendants, she did not always sell a

6    sufficient quantity of Polo merchandise to meet her sales target set by Defendants. On several

7    occasions, she sold less than 50% of the sales target set by Defendants. Consequently, less

8    than one half of her compensation represented commissions. Therefore, she was entitled to

9    receive premium overtime compensation for hours worked in excess of eight hours per day or

10   40 hours per week, during those periods in which she was not an exempt employee. (IWC

11   Order 7-2001.) Phipps worked hours in excess of eight per day and/or 40 hours per week on a

12   regular basis, both recorded and unrecorded, during periods when she was entitled to premium

13   overtime compensation. In addition, Phipps's compensation was such that her commission

14   earnings were generally at or below her hourly-based draw, based on Defendants' practice of

15   setting sales goals impossibly high. Defendants failed to provide all premium wages to

16   Plaintiff Corrine Phipps as required under California law.

17   28.    Defendants' Sales Associate Handbook specifically provides:

18        "Sales Associates and Senior Sales Associates are not eligible to receive a

19        premium overtime compensation rate. However, a sales commission

20        reconciliation will be performed at the close of each fiscal year to ensure each

21        associate is compliant with Federal Labor guidelines stipulating that the

22        majority of their pay must be in the form of commission. If an associate is

23        found to be overtime eligible at that time, then the appropriate amount of

24        overtime compensation will be paid to that associate."

25   29.    This payroll policy is illegal under California law and was applied to Corrine Phipps

26   during the course of her employment. By unlawfully delaying the "reconciliation" for up to a

27   year, Defendants failed to pay Corrine Phipps in a timely fashion. In fact, while Corrine

14

1   Phipps terminated her employment with Defendants in December 2004, Defendants have not

2   paid her all of the premium overtime compensation she was and is owed. Defendants'

3   representation that they would perform this end-of-the-year reconciliation, upon which Phipps

4   reasonably relied, was not fulfilled.

5   30.    On many days that Corrine Phipps worked, she was required to perform work without

6   compensation, working off the clock at the direction of and/or with the knowledge and

7   acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz

8   (Operations Manager) and Valerie Harrison (Department Manager) clocked her out while she

9   was still performing work. On other occasions, Defendants, though Operations Manager

10   Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time

11   records so they would reflect less time worked. On still other occasions, Defendants'

12   managers shut down the timekeeping system while Phipps was still working and, thus, failed

13   to accurately record her hours of work. She was not paid for any of this off-the-clock work.

14   31.    On a daily basis, Defendants required Corrine Phipps to clock out and then wait at the

15   employee exit for a manager to check her purse and bags to make sure she and the other

16   employees were not attempting to steal and smuggle merchandise out of the store. Corrine

17   Phipps routinely had to wait with other sales associates each day that she worked near the

18   employee exit for the mandatory management inspection. She regularly was required to wait

19   for 10 to 15 minutes for the inspection and was never compensated for that time. She was

20   instructed by manages Theresa Cruz, and Valerie Harrison that she was not to use the

21   customer exit to leave the store and that if she tried to leave the store through the employee

22   exit before she had been inspected an alarm would sound and she would or could be

23   terminated. Defendants' Sales Associate Handbook was provided and/or shown to Phipps,

24   and it stated that this inspection procedure was a condition of employment. She felt herself to

25   be physically confided to the interior of the store and feared leaving the store except as

26   directed by her supervisors. She was led to believe her employer had the legal right to retain

27   her within the store. The experience was often frustrating and humiliating. She missed

15

1    appointments she had scheduled after working hours because she was forced to wait by the

2    employee exit for upwards of 30 minutes. Based on her observations and discussions with

3    other employees who were likewise forced to wait for up to 30 minutes, they shared her sense

4    of frustration and humiliation.

5    32.    At other times, Corrine Phipps was required to report to work at a certain hour and

6    then required to wait outside the store for up to 20 minutes for a manager to open the

7    employee entrance for her to begin work. On those occasions, her pay was docked and she

8    was deemed late to work. At other times, she was required to wait up to 20 minutes to be

9    granted access to the store after she took a meal break. Defendants' failure to permit her to

10   begin work at the time she was required to begin, at the beginning and middle of her work

11   shift caused her to lose wages she was entitled to earn. Corrine Phipps was not paid wages for

12   this waiting time that she suffered on behalf of Defendants.

13   33.    Corrine Phipps was not permitted to take rest breaks during the days that she worked.

14   Her managers harassed her and her co-employees when she and they attempted to take rest

15   breaks, telling them that they did not need to take the required breaks and that they would fall

16   behind on sales if they took the breaks. Phipps felt harassed and intimidated by the comments

17   of her managers and did not take her mandatory breaks because she feared she would lose her

18   job or be harassed if she did.

19                                **JUSTIN KISER**

20   34.    Justin Kiser was employed by Fashions Outlet of America, Inc., and/or Polo Ralph

21   Lauren Corporation and/or Polo Retail, LLC, between July 2004 and August 2005 in

22   Defendants' San Francisco retail store, working as a sales associate in Polo's Men's

23   Department and Men's Sport Department.

24   35.    When he began working for Defendants, he was told Tin Hua, Polo's General

25   Manager, he would be compensated as a draw versus commissioned employee at the initial

26   rate of $12.75 per hour. He was told that his wages would increase as he increased his sales.

27   He was also told that his hour rate would constitute a base guaranteed wage. Defendants

                                                                              16

1    made this representation to Kiser in Defendants' Sales Associate Handbook and during the

2    job interview process.  He was told that if he failed to sell a sufficient quantity of

3    merchandise, he could be terminated.  He was not told and never understood the wage system

4    to mean that he could be forced to pay back some of his earned wages if he failed to meet his

5    sales goals.  Nevertheless, Defendants established an arrearage program that permitted

6    Defendants' to obtain previously paid wages from Kiser through payroll deductions, which

7    were insufficiently memorialized and communicated to Kiser. He never agreed to this

8    arrearage program and was not legally bound by its terms.  Kiser relied to his detriment on the

9    representations by Defendants regarding the nature of his wages and was injured by

10   Defendants' misrepresentations when he was in fact paid less than promised.

11   36.      Based on information and belief, during the course of Justin Kiser's employment with

12   Defendants, he did not always sell a sufficient quantity of Polo merchandise to meet the sales

13   target set by Defendants every pay period.  Based on information and belief, on at least one

14   occasion, he earned less than 50% of the sales target set by Defendants.  Consequently, less

15   than one half of his compensation represented commissions.  Therefore, he was entitled to

16   receive premium overtime compensation for hours worked in excess of eight hours per day or

17   40 hours per week during those pay periods in which he was not properly classified as an

18   exempt employee.  Justin Kiser worked hours in excess of eight hours per day and/or 40 hours

19   per week on a regular basis, including during periods of time he failed to earn one half of his

20   wages as commissions.  In addition, based on information and belief, Kiser's compensation

21   was such that his commission earnings were generally at or below his hourly-based draw,

22   based on Defendants' practice of setting sales goals impossibly high.  Defendants failed to

23   provide those premium wages to Plaintiff Justin Kiser as required under California law.

24   37.      Defendants' Sales Associate Handbook specifically provides:

25          "Sales Associates and Senior Sales Associates are not eligible to receive a

26          premium overtime compensation rate.  However, a sales commission

27          reconciliation will be performed at the close of each fiscal year to ensure each

17

1    associate is compliant with Federal Labor guidelines stipulating that the

2    majority of their pay must be in the form of commission.  If an associate is

3    found to be overtime eligible at that time, then the appropriate amount of

4    overtime compensation will be paid to that associate."

5    38.    This payroll policy is illegal under California law and was applied to Justin Kiser

6    during the course of his employment.  By unlawfully delaying the "reconciliation" for up to a

7    year, Defendants failed to pay Justin Kiser in a timely fashion.  In fact, while Justin Kiser

8    terminated his employment with Defendants in about August 2005, Defendants have not paid

9    him all of the premium overtime compensation he earned.  Defendants' representation that

10   they would perform this reconciliation was not fulfilled.

11   39.    On many days that Justin Kiser worked, he was required to perform work without

12   compensation, working off the clock at the direction and/or with the knowledge and

13   acquiescence of Defendants.  On a regular basis, managers in his store would shut down the

14   timekeeping computer and therefore clock him out while he was still performing work.  On

15   other occasions, Defendants, through Operations Manager Theresa Cruz, would write down

16   the hours he worked by fraudulently manipulating his time records so they would reflect less

17   time worked.

18   40.    On a daily basis, Defendants required Justin Kiser to clock out and then wait at the

19   employee exit for a manager to check his bags to make sure he and the other employees were

20   not attempting to steal and smuggle merchandise out of the store.  Justin Kiser routinely had

21   to wait with other sales associates each day that he worked near the employee exit for the

22   mandatory management inspection.  He regularly was required to wait for 10 to 15 minutes

23   for the inspection, and as long as 30 minutes, and was never compensated for that time.

24   General Manager Tin Hua instructed him that he was not to use the customer exit to leave the

25   store and that if he tried to leave the store through the employee exit before he had been

26   inspected the alarm would sound and he would be terminated.  Defendants' Sales Associate

27   Handbook was provided to Kiser, and it stated that this inspection procedure was a condition

18

1  of employment. He felt himself to be physically confided to the interior of the store and

2  feared leaving the store except as directed by his supervisors. The experience was often

3  frustrating and humiliating. He was led to believe that his employers had the legal right to

4  detain him in the store after his shift was over. He missed appointments he had scheduled

5  after working hours because he was forced to wait by the employee exit for upwards of 30

6  minutes. Based on his observations and discussions with other employees who were likewise

7  forced to wait for up to 30 minutes, they shared his sense of frustration and humiliation.

8  41.    At other times, Justin Kiser was required to report to work at a certain hour and then

9  required to wait outside the store for up to 20 minutes for a manager to open the employee

10  entrance for him to begin work. At other times, Justin Kiser was required to wait up to 20

11  minutes to be granted access to the store after he took a meal break. Defendants' failure to

12  permit him to begin work at the time he was required to begin at the beginning and middle of

13  his work shift caused him to lose wages he was entitled to earn. Justin Kiser was not paid

14  wages for this waiting time that he suffered on behalf of Defendants.

15  42.    Justin Kiser was not permitted to take rest breaks during the days that he worked.

16  Managers, including Rosalinda Walwork and Theresa Cruz, harassed him and his co-

17  employees when he and they attempted to take rest breaks, telling them that they did not need

18  to take the required breaks and that they would fall behind on sales if they took the breaks.

19  Justin Kiser felt extremely harassed and intimidated by the comments of his managers and did

20  not take his mandatory breaks because he feared he would lose his job if he did.

21  43.    Defendant also debited Kiser's wages whenever an item he sold was returned by a

22  customer, regardless of whether the return was made within a day or within several months,

23  and regardless whether the item was deemed to be defective. By the time Defendants' applied

24  the charge back debit to Kiser, he had earned the commission or wages on the items returned

25  or the work performed, and he was entitled to retain those earnings. Defendants' routinely

26  failed to provide him with an accounting of how and why his wages were being debited.

27  ///

19

## JANIS KEEFE

44.    Janis Keefe, previously known as Janis Howay, worked for Polo Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail, LLC, between approximately May 2004 and approximately January 2005 in Defendants' San Francisco retail store, as a sales associate in Polo's Men's Department and Men's Sport Department.

45.    When she began working for Defendants, Keefe was told by her store's General manager, Tin Hua, she would be compensated as a "draw versus commission" employee at $12.75 per hour. She was told that her wages would increase as she increased her sales. She was also told that her hourly rate would constitute a base guaranteed wage. Defendants made this representation to Keefe in Defendants' Sales Associate Handbook and during the job interview process. She was told that if she failed to sell a sufficient quantity of merchandise, she could be terminated. She was not told and never understood the wage system to mean that she could be forced to pay back some of her earned wages if she failed to meet her sales goals. Nevertheless, Defendants established an arrearage program after Keefe was hired that permitted Defendants' to obtain previously paid wages from Keefe through payroll deductions, which were insufficiently memorialized and communicated to Keefe. She never agreed to this arrearage program and was not legally bound by its terms.

46.    During the course of Janis Keefe's employment with Defendants, she did not always sell a sufficient quantity of Polo merchandise to meet her sales target set by Defendants. On several occasions, she sold less than 50% of the sales target set by Defendants. Consequently, less than one half of her compensation represented commissions. Therefore, she was entitled to receive premium overtime compensation for hours worked in excess of eight hours per day or 40 hours per week. Janis Keefe worked hours in excess of eight per day and/or 40 hours per week on a regular basis. In addition, Keefe's compensation was such that her commission earnings were generally at or below her hourly-based draw, based on Defendants' practice of setting sales goals impossibly high. Defendants failed to provide all premium wages to Plaintiff Janis Keefe as required under California law.

20

47.    Defendants' Sales Associate Handbook specifically provides:

"Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate. However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission. If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

48.    This payroll policy is illegal under California law and was applied to Janis Keefe. By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Janis Keefe in a timely fashion. In fact, while Janis Keefe terminated her employment with Defendants in or about January 2005, Defendants have never paid her all premium overtime compensation she was and is owed. Defendants' representation that they would perform this reconciliation was not fulfilled.

49.    On many days that Janis Keefe worked, she was required to perform work without compensation, working off the clock at the direction and/or with the knowledge and acquiescence of Defendants. Sometimes, managers in her store, including Theresa Cruz, clocked her out while she was still performing work. On other occasions, Defendants, though Theresa Cruz, would write down the hours she worked by fraudulently manipulating her time records so they would reflect less time worked. On other occasions, based on information and belief, Defendants' managers shut down the timekeeping system when Keefe was still working. Defendants failed to keep accurate records of the hours Keefe worked and failed to report the time to her. She was not paid for all the hours she worked.

50.    On a daily basis, Defendants required Janis Keefe to clock out and then wait at the employee exit for a manager to check her purse and bags to make sure she and the other employees were not attempting to steal and smuggle merchandise out of the store. Janis Keefe routinely had to wait with other sales associates each day that she worked near the

21

1   employee exit for the mandatory management inspection. She regularly was required to wait

2   for 10 to 15 minutes for the inspection and was never compensated for that time. She was

3   instructed by Theresa Cruz, and Tin Hua that she was not to use the customer exit to leave the

4   store and that if she tried to leave the store through the employee exit before she had been

5   inspected, she could be terminated. Defendants' Sales Associate Handbook was provided

6   and/or shown to Keefe, and it stated that this inspection procedure was a condition of

7   employment. She felt herself to be physically confined to the interior of the store and feared

8   leaving the store except as directed by her supervisors. The experience was often frustrating

9   and demeaning. She was led to believe that her employers had the legal right to detain her

10  within her store after her work shift was over. She missed appointments she had scheduled

11  after working hours because she was forced to wait by the employee exit for upwards of 30

12  minutes. Based on her observations and discussions with other employees who were likewise

13  forced to wait for up to 30 minutes, they shared her sense of frustration as well.

14  51.     At other times, Janis Keefe was required to report to work at a certain hour and then

15  required to wait outside the store for up to 20 minutes for a manager to open the employee

16  entrance for her to begin work. At other times, Janis Keefe was required to wait up to 20

17  minutes to be granted access to the store after she took a meal break. Defendants' failure to

18  permit her to begin work at the time she was required to begin work at the beginning and

19  middle of her work shift caused her to lose wages she was entitled to earn. Janis Keefe was

20  not paid wages for this waiting time that she suffered on behalf of Defendants.

21                          **CLASS ACTION ALLEGATIONS**

22  52.     Plaintiffs bring this class action pursuant to California Code of Civil Procedure section

23  382 on behalf of a Class consisting of all current and former hourly-based employees of

24  Defendants in the State of California who were subjected to the unlawful employment

25  practices described herein during all applicable statutes of limitations (the "Class Period").

26  Plaintiffs initially delineate the subclasses of the Class as follows:

27          a.   **Fraud Subclass**: All of Defendants' employees in the State of California

                                                                              22

during all applicable statutes of limitations against whom Defendants committed the fraudulent acts described herein.

b.  **False Imprisonment Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations who were falsely imprisoned, as described herein.

c.  **Failure to Pay Wages Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations to whom Defendants failed to pay wages due, as described herein.

d.  **Arrearages Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations whose earned wages were taken back by Defendants through Defendants' illegal arrearage program, as described herein.

e.  **Charge Back Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations whose earned wages were taken back by Defendants through Defendants' illegal charge back or returns policies and practices, as described herein.

f.  **Breach of Contract Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations whose employment contracts or covenants were breached by Defendants, as described herein.

g.  **Terminated/Resigned Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations who were terminated or who resigned, and to whom Defendants failed to timely pay all wages due, as described herein.

h.  **Rest Break Subclass**:  All of Defendants' employees in the State of California during all applicable statutes of limitations who were denied rest breaks, as described herein.

23

i.   **Records Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations whose accurate payroll records were not provided to and/or whose requests for those accurate payroll records were denied.

j.   **Wage Disclosure Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who were prohibited from disclosing or discussing their wages, as described herein.

k.   **Unjust Enrichment Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who sustained economic damages as a consequence of the claims asserted herein.

l.   **Unfair Business Practice Subclass**: All of Defendants' employees in the State of California during all applicable statutes of limitations who were subjected to the unfair business practices described herein.

m.   **Declaratory Relief Subclass**: All of Defendants employees in the State of California during all applicable statutes of limitations who will be affected by the declarations of rights sought herein.

53.   The Class definition will be further defined in Plaintiffs' motion for class certification, in which Plaintiffs may establish the need for additional or fewer subclasses based on information obtained through discovery.

54.   The wrongful acts or omissions were and are a uniform practice that affected all putative class members in substantially similar ways. Defendants, by their practices and policies, have violated the rights of their employees under the California Labor Code, Industrial Wage Orders the common law of California, and the Unfair Competition Law. The questions raised are therefore of common or general interest to the class members, and they have a well-defined community of interest in the questions of law and fact raised in this action. The only recognizable difference between class members will be the amounts owed to each individual member.

24

55.    Based on information and belief, Defendants have employed thousands of individuals in the State of California (a number known particularly to Defendants) since the beginning of the Class Period. These individuals have been subject to Defendants' unlawful and wrongful practices, and their numerosity makes it impractical to bring them all before this forum, and disposition of their claims in a class action is a benefit to the parties and to the court.

56.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Each member of the class has been damaged and is entitled to recover. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

57.    A class action is appropriate because Plaintiffs' and class members' damages, although by no means inconsequential, do not rise to the level to make prosecution of individual claims economically feasible for Plaintiffs and the large number of class members. The burden and expense of individual litigation makes it economically unfeasible, for both the parties and the Court, for the members of the class to seek redress other than through a class action. Consequently, there would be a failure of justice but for the maintenance of the present class action.

58.    The prosecution of thousands of individual cases by members of the class would tend to establish inconsistent standards of conduct for the Defendants and would result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.

59.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

60.    Plaintiffs have incurred and, during the pendency of this action, will incur attorneys' fees and expenses. Such attorneys' fees and expenses are necessary for the prosecution of this

25

1    action and will result in a benefit to the class.

2    61.    Upon information and belief, Defendants were aware of the facts herein alleged at the

3    time they failed to perform the duties alleged herein.

4    62.    The names and addresses of the persons who are members of the class are available

5    from Defendants' records and are therefore known to Defendants.  Notice can be provided to

6    the member of the class by mail, or by using techniques and a form of notice similar to those

7    customarily used in class actions under California law, with the costs of any notice to be

8    borne by Defendants.

9    63.    The Defendants' unlawful acts and unfair trade practices have affected all members of

10   the Class in a similar manner.  Among the questions of law and fact common to the Class are:

11

12         (a)    Whether Defendants have committed actionable fraud (though
                  misrepresentations, false promises and tortuous concealment of
13                material facts) with respect to the Class?

14         (b)    Whether Defendants have falsely imprisoned Class members
                  after their work shifts were over by forcing them to remain
15                within Defendants' stores to wait for loss prevention
                  inspections?
16

17         (c)    Whether Defendants have unlawfully denied employees regular
                  and overtime wages?

18
           (d)    Whether Defendants have misclassified employees as bona fide
19                commissioned employees?

20         (e)    Whether Defendants have unlawfully collected wages
                  previously paid and earned by employees based on unlawful
21                arrearages and charge back programs?

22         (f)    Whether Defendants have unlawfully coerced or compelled or
23                otherwise required the Class to forego rest periods to maintain
                  their jobs?
24
           (g)    Whether Defendants have failed to timely pay all employees?
25

26         (h)    Whether Defendants have failed to timely pay employees who
                  have quit or have been terminated?

27

26

(i)  Whether Defendants have breached employment contracts or covenants made with Class members?

(j)  Whether Defendants have maintained an illegal policy that prohibits employees from discussing their wages and terms of employment with others?

(k)  Whether Defendants have violated California law, including California's Unfair Competition laws (Business & Professions Code §§ 17200, et seq.) based on their violations of California law?

(l)  Whether Defendants have unlawfully failed to maintain employees' pay records, and/or failed to make those records available for employee inspection upon request?

(m)  Whether Defendants' labor policies and practices, as described herein, constitute intentional or reckless violations of California law, entitling Plaintiffs and the Class to punitive or exemplary damages?

64.    Plaintiffs' claims are typical of those of the Class they seek to represent because Plaintiffs and all members of the Class were injured and/or continue to be injured in the same manner by Defendants' illegal acts and practices, and other wrongful conduct complained of herein.

65.    Plaintiffs will fully and adequately protect the interests of all members of the Class. Plaintiffs have retained counsels who are experienced in employment class action litigation. Plaintiffs have no interests that are adverse to or in conflict with other members of the Class with respect to any of the claims asserted herein.

///

///

///

///

///

///

27

**First Cause of Action**
(On Behalf of Plaintiffs and the Fraud Subclass)

**Against All Defendants**

**FRAUD**

66.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

67.    Defendants have made and, based on information and belief continue to make, false promises to employees regarding the wages they will receive while employed in Defendants' stores.

        a.  Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still employed the wages they will be paid while working at Defendants' stores. Defendants promise their employees that their base rate of pay, computed as the employees' hourly pay rate times the hours actually worked, would serve as a guaranteed minimum wage payment, and that while they may earn additional wages by selling more product, they will never be paid less that their base rate of pay.  However, Defendants have imposed an arrearages program that results in substantial debits to their employees' wages, in direct violation of their promises.  By debiting their employees wages when the employees fail to sell sufficient product to cover their base rate of pay, Defendants have caused Plaintiffs and the Class specific detriment, that is, the loss of wages promised.  In addition, Defendants have used an egregious charge back scheme to further reduce their employees' earnings by debiting employees' wages for items returned by customers at any time and for any reason.

        b.  Defendants misrepresented to Plaintiffs during the course of their employment and continue to misrepresent to Class members who are still

28

1        employed that they will perform an end-of-the-year wage reconciliation

2        and pay premium overtime wages, and that Defendants will properly record

3        their employees' time and pay all wages due in a timely manner.  In fact,

4        Defendants do not perform this reconciliation and/or fail to pay premium

5        wages as required by California law.

6     c. Defendants misrepresented to Plaintiffs during the course of their

7        employment and continue to misrepresent to Class members who are still

8        employed that they will be provided rest breaks in compliance with

9        California law.  In fact, Defendants do not provide rest breaks and use

10       coercion against their employees to make certain they will not take rest

11       breaks.

12     d. Defendants manipulated and continue to manipulate the time records of

13        Plaintiffs and the Class to conceal the fact that Defendants have failed to

14        pay them all wages they are due for the time they have worked.

15 68.  At the time these representations were made by Defendants, Plaintiffs and Class

16 members were ignorant of the falsity of Defendants' representations and believed them to be

17 true.  In reliance on these representations and/or without knowledge of the fraudulent

18 concealments, Plaintiffs and Class members were induced to, and did, work for Defendants at

19 lower rates of pay than they had been promised and under terms and conditions that

20 

21 constituted violations of California law.  Had Plaintiffs and Class members known the actual

22 facts, they would not have taken such action, that is, they would not have accepted

23 employment with Defendants and/or would have demanded and received complete payment

24 of their wages.

25 69.  Plaintiffs' and Class members' reliance on Defendants' representation was justified

26 because Defendants employed Plaintiffs and Class members, and Plaintiffs and Class

27

                         29

1    members perceived Defendants as having the legal and corporate authority to make the

2    promises they made.

3    70.     As a proximate result of the fraudulent conduct of Defendants, Plaintiffs and Class

4    members have been damaged in an amount to be proven at trial, but not less than the

5    jurisdictional limit of this Court.

6

7    71.     The aforementioned acts were intentional misrepresentation, deceit, and concealment

8    of material facts known to Defendants, with the intention on the part of Defendants of

9    depriving Plaintiffs and Class members of their rights under California law.  Defendants'

10   conduct was despicable in that it subjected Plaintiffs and Class members to cruel and unjust

11   hardship, and Defendants acted in conscious disregard of rights of Plaintiffs and Class

12   members, so as to justify an award of exemplary and punitive damages.  Wherefore, Plaintiffs

13   pray judgment as set forth herein below.

14

15                          **Second Cause of Action**

16          **(On Behalf of Plaintiffs and the False Imprisonment Subclass)**

17                          **Against All Defendants**

18                          **FALSE IMPRISONMENT**

19   72.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20   forth herein.

21   73.     On a daily basis, Defendants required Plaintiffs and Class members to clock out and

22   then wait at the employee exits for a manager to check their bags to make sure they were not

23   attempting to steal and smuggle merchandise out of the store.  Plaintiffs and the Class

24   members routinely had to wait with other sales associates each day that they worked near the

25   employee exit for the mandatory management inspection.  They were regularly required to

26   wait for 10 to 15 minutes for the inspection and were never compensated for that time.  They

27

30

1  were instructed that they were not to use the customer exit to leave the store and that if they

2  tried to leave the store through the employee exit before they had been inspected, they would

3  be terminated. In Defendants' stores, employees were physically unable to leave because the

4  doors to the stores were locked and they did not have keys to open the doors. Plaintiffs and

5  the Class members were physically confined to the interior of the store. The experience was

6  

7  often frustrating, demeaning and humiliating.

8  74.    By forcing Plaintiffs and Class members to remain in their stores after they had

9  stopped working and were no longer receiving compensation, Defendants intentionally

10  confined Plaintiff and Class members in a non-consensual manner without a lawful privilege

11  for an appreciable length of time, and their confinement caused harm to the Plaintiffs and the

12  Class. As a direct, proximate and foreseeable result of Defendants' acts and failures to act as

13  alleged herein, Plaintiffs and Class members have suffered and continue to suffer emotional

14  distress, including but not limited to humiliation, shock, embarrassment, fear, anxiety and

15  discomfort, all to their damage in an amount to be determined according to proof at trial. In

16  

17  addition, Plaintiffs and the Class have suffered the loss of wages for the time Defendants'

18  forced them to remain in the stores to be inspected by managers.

19  Wherefore, Plaintiff prays judgment as set forth herein below.

20  ### Third Cause of Action

21  (On Behalf of Plaintiffs and the Failure to Pay Wages Subclass, Arrearages Subclass, Charge
22  Back Subclass, Breach of Contract Subclass, Terminated/Resigned Subclass and Unjust
   Enrichment Subclass)

23  ### Against All Defendants

24  **FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 510 AND 204 –
25  FAILURE TO PAY ALL WAGES, INCLUDING PREMIUM OVERTIME WAGES
   UNDER CALIFORNIA LAW**

26  75.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

27  

31

1   forth herein.

2      On January 1, 2000, Labor Code § 510(a) was enacted and provides:

3      Eight hours of labor constitutes a day's work.  Any work in excess of
       eight hours in one workday and any work in excess of 40 hours in any
4      one workweek and the first eight hours worked on the seventh day of
       work in any one workweek shall be compensated at the rate of no less
5      than one and one-half times the regular rate of pay for an employee.
       Any work in excess of 12 hours in one day shall be compensated at the
6      rate of no less than twice the regular rate of pay for an employee.  In
       addition, any work in excess of eight hours on any seventh day of a
7      workweek shall be compensated at the rate of no less than twice the
       regular rate of pay of an employee.
8

9       Labor Code § 1194(a) states:

10     Notwithstanding any agreement to work for a lesser wage, any
       employee receiving less than the legal minimum wage or the legal
11     overtime compensation applicable to the employee is entitled to recover
       in a civil action the unpaid balance of the full amount of this minimum
12     wage or overtime compensation, including interest thereon, reasonable
       attorney's fees, and costs of suit.
13

14     Labor Code § 204 states, in pertinent part:

15     All wages, other than those mentioned in Section 201, 202, 204.1, or
16     204.2, earned by any person in any employment are due and payable
       twice during each calendar month, on days designated in advance by
17     the employer as the regular paydays.

18  76.    Under California law, Defendants are required to pay wages for each hour worked,

19  and premium overtime wages when non-exempt employees work over 8 hours in a day or 40

20  hours in a week by calculating the hourly rate and then computing the overtime premium

21  amount owed.  Plaintiffs and putative class members have worked for Defendants without

22  being paid for all hours worked, regular and overtime, as described above, including being

23  forced to work off the clock.

24  77.    Plaintiffs and members of the Class did not regularly earn more commission than their

25  base wages and were thus misclassified as exempt employees under IWC 7-2001.  In fact,

26  Defendants wage system was not and is not a bona fide commission system permitting

27

                                                                                         32

1   Defendants to avoid California's premium overtime compensation laws.

2   78.    In addition, because Defendants do not employee bona fide commissioned employees,

3   the application of Defendants' arrearage and charge back systems to hourly, non-exempt

4   employees violates California law as described herein.

5   79.    Plaintiffs and members of the Class who were deemed commissioned employees by

6   Defendants, who were not paid 1.5 times the applicable minimum wage, who did not earn

7   more than 50% of their wages from commissions during a specific pay period, who did not

8   regularly earn more commission than their basis rate of pay, and who worked overtime as

9   defined by California law, are also entitled to premium overtime wages.  Defendants' once-a-

10  year reconciliation scheme, pursuant to which Defendants purport to determine if their

11  employees are entitled to premium overtime compensation, amounts to a willful failure to pay

12  wages timely.

13  80.    As a result of Defendants' violation of statutory duties to comply with statutory wage

14  requirements, as more fully set forth above, Plaintiffs and Class members were damaged in an

15  amount above the jurisdictional limits of this Court.

16  81.    Plaintiffs and Class members seek as damages all wages owed to individuals

17  employed by Defendants, plus all penalties permitted by law.

18  82.    Plaintiffs and Class members are entitled to, and therefore request, an award of pre-

19  judgment interest on the unpaid wages set forth herein.

20  83.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the

21  prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of

22  law.  Wherefore, Plaintiffs pray judgment as set forth herein below.

23  ///

24  ///

25  ///

26  ///

27  ///

33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Fourth Cause of Action**

(On Behalf of Plaintiffs and the Arrearages Subclass and the Charge Back Subclass)

**Against All Defendants**

**WILLFUL VIOLATIONS OF LABOR CODE 221**

84.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

85.    California Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

86.    In violation of this Labor Code provision, Defendants have established a commission arrearages programs that permits them to obtain wages back from employees who have earned those wages. Furthermore, Defendants initiated and applied the commission arrearages program without their employees' knowledge. In addition, Defendants' commission arrearages program has been applied to Defendants' employees in a manner that is inconsistent with express promises made to Defendants' employees at the commencement of their employment and during the course of their employment. Also, as alleged herein, Defendants applied the commission arrearages program without providing their employees with adequate records of its operation. Finally, because Defendants do not employee bona fide commissioned employees, the application of Defendants' arrearage and charge back systems to hourly, non-exempt employees violates California law as described herein.

87.    Defendants have also perpetuated an illegal and unconscionable charge back or product returns policy that further results in the debiting of employees wages and that operates in violation of Labor Code § 221. Again, Defendants failed to provide their employees with adequate records of its operation.

88.    Plaintiffs and the Class have been injured as a result of Defendants violations of Labor Code § 221, and Plaintiffs and Class members seek as damages all wages owed to individuals employed by Defendants, plus all penalties permitted by law.

34

1  89.    Plaintiffs and Class members are entitled to, and therefore request, an award of pre-

2  judgment interest on the unpaid wages set forth herein.

3  90.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the

4  prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of

5  law.  Wherefore, Plaintiffs pray judgment as set forth herein below.

6                              **Fifth Cause of Action**

7                  (On Behalf of Plaintiffs and the Breach of Contract Subclass)

8                              **Against All Defendants**

9                              **BREACH OF CONTRACT**

10  91.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

11  forth herein.

12  92.    Plaintiffs and the Class entered into employment contracts with Defendants

13  memorialized by employee manuals described herein.  These contracts were common to all of

14  Defendants' similarly-situated employees in the State of California and imposed duties on

15  Defendants, including the duty to pay wages as promised, the duty to provide rest breaks as

16  required under California law, the duty to pay for all time worked, the duty to refrain from

17  receiving back wages previously paid, and the duty to permit employees to leave Defendants'

18  premises after they had completed their shifts.

19  93.    Defendants breached each and every one of these contractual duties.  Plaintiffs and the

20  Class fulfilled any and all duties required of them to receive the benefit of the contracts they

21  formed with Defendants.

22  94.    Plaintiffs and the Class sustained damages as a direct and proximate result of

23  Defendants' contractual breaches, including the loss of wages.  Plaintiffs seek, on their own

24  behalf and on behalf of the entire Class, the value of all damages caused by Defendants'

25  breaches of contract described herein.

26  95.    Wherefore, Plaintiffs pray judgment as set forth herein below.

27

35

1
2
3
4
5
6

## Sixth Cause of Action

(On Behalf of Plaintiffs and the Terminated/Resigned Subclass)

### Against All Defendants

**FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 201, 202, AND 203 –**
**FAILURE TO PAY WAGES UPON DISCHARGE OR QUITTING;**

### WAITING TIME PENALTIES

7   96.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

8   forth herein.

9   97.    California Labor Code §§ 201 and 202 require Defendants to pay their employees all

10  wages due immediately upon discharge or 72 hours after an employee quits. California Labor

11  Code § 203 provides that if an employer willfully fails to timely pay such wages the employer

12  must, as a penalty, continue to pay the subject employees' wages until the back wages are

13  paid in full or an action is commenced. The penalty cannot exceed 30 days of wages per

14  violation. A worker need not prove malice or intentional conduct in establishing their claim

15  for waiting time penalties, but merely establish the employer did not do something it was

16  obligated to do. (See Mamika v. Barca (1998) 68 Cal. App. 4th 487; Barnhill v. Robert

17  Saunders & Co. (1981) 125 Cal.App.3d 1.)

18  98.    Plaintiffs and Class members are entitled to unpaid compensation, but to date have not

19  received such compensation. As a consequence of Defendants' willful conduct in not paying

20  compensation for all hours worked, including premium overtime hours, Plaintiffs and Class

21  members who were terminated and who resigned are entitled to 30 days wages as penalty

22  under Labor Code § 203, together with interest thereon and attorneys' fees and costs for each

23  violation described above. Wherefore, Plaintiffs pray judgment as set forth herein below.

24  ///

25  ///

26  ///

27  ///

36

1

<u>**Seventh Cause of Action**</u>

2

(On Behalf of Plaintiff Justin Kiser and the Rest Breaks Subclass)

3

<u>**Against All Defendants**</u>

4

**FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE § 226.7 –**
**FAILURE TO AFFORD MANDATORY REST BREAKS AS REQUIRED BY**

5

<u>**IWC ORDERS AND LABOR CODE**</u>

6

99.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

7

forth herein.

8

100.   At all times relevant, Plaintiffs and the Class members were covered by the provisions

9

of Industrial Wage Commission ("IWC") Orders, including IWC Orders 7-2001.

10

101.   The IWC Orders provide, in applicable part:

11

> 12. (A)  Every employer shall authorize and permit all employees to
> take rest periods, which insofar as practicable shall be in the middle of

12

> each work period. The authorized rest period time shall be based on the
> total hours worked daily at the rate of ten (10) minutes net rest time per

13

> four (4) hours or major fraction thereof. However, a rest period need
> not be authorized for employees whose total daily work time is less

14

> than three and one-half (3 ½) hours. Authorized rest period time shall
> be counted as hours worked for which there shall be no deduction from

15

> wages.

16

17

> 12. (B)  If an employer fails to provide an employee a rest period in
> accordance with the applicable provisions of this order, the employer

18

> shall pay the employee one (1) hour of pay at the employee's regular
> rate of compensation for each workday that the rest period is not

19

> provided.

20

California Labor Code § 226.7 states:

21

> (a) No employer shall require any employee to work during any meal
> or rest period mandated by an applicable order of the Industrial Welfare

22

> Commission.

23

> (b) If an employer fails to provide an employee a meal period or rest
> period in accordance with an applicable order of the Industrial Welfare

24

> Commission, the employer shall pay the employee one additional hour

25

> of pay at the employee's regular rate of compensation for each work
> day that the meal or rest period is not provided.

26

27

102.   Defendants routinely failed to provide Plaintiff Justin Kiser and the Class members

37

1    with a 10-minute paid rest period for each four (4) hour period of work, in compliance with

2    IWC Orders and Labor Code § 226.7.  As a result of Defendants' failure, Plaintiff and the

3    Class members are entitled to recover an amount to be proved at trial, of not less than one

4    additional hour of pay at the regular rate of compensation for each workday that any one rest

5    period was not provided, and any and all penalties provided by law.

6    103.    Defendants' policy and practice of denying Plaintiff Justin Kiser and the Class rest

7    periods constitutes a willful violation of California Labor Code § 226.7.  Plaintiff and the

8    entire Class have sustained damages as a direct and proximate consequence of the

9    Defendants' willful and illegal conduct, to wit, they have been forced to work continuously

10   throughout the day, every day, without being allowed to take rest periods.

11   104.    Plaintiff Justin Kiser has incurred, and will continue to incur attorneys' fees and costs

12   in the prosecution of this action.  Plaintiff seeks attorneys' fees under all applicable provisions

13   of law.  Wherefore, Plaintiff prays judgment as set forth herein below.

14                          **Eighth Cause of Action**

15                   (On Behalf of Plaintiffs and the Records Subclass)

16                          Against All Defendants

17           **FOR WILLFUL VIOLATIONS OF LABOR CODE § 226 –
     FAILURE TO MAINTAIN PAY RECORDS; FAILURE TO MAKE**
18                **PAY RECORDS AVAILABLE UPON REQUEST**

19   105.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

20   forth herein.

21   106.    Defendants knowingly and intentionally failed to maintain accurate pay records, and

22   failed to allow current and former employees to inspect pay records upon request, in violation

23   of California Labor Code § 226, as more fully alleged hereinabove.

24   107.    As a direct result of Defendants' failure, Plaintiffs and Class members were injured

25   and are entitled to recover an amount to be proved at trial, of not less than the penalties

26   provided by the Labor Code.  In addition, Class members who are currently employed by

27   Defendants are entitled to equitable relief against Defendants to force Defendants to comply

                                                                    38

1  with California law.

2  108.    Plaintiffs and Class members are entitled to penalties and attorneys' fees pursuant to

3  Labor Code § 226 and California Code of Civil Procedure § 1021.5.  Wherefore, Plaintiffs

4  pray judgment as set forth herein below.

5  **Ninth Cause of Action**

6  (On Behalf of Plaintiffs and the Wage Disclosure Subclass)

7  Against All Defendants

8  **WILLFUL VIOLATION OF LABOR CODE § 232**

9  109.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

10  forth herein.

11  110.    Labor Code § 232, provides:

12  No employer may do any of the following:

13

14  (a) Require, as a condition of employment, that an employee refrain from
    disclosing the amount of his or her wages.

15  (b) Require an employee to sign a waiver or other document that purports to
    deny the employee the right to disclose the amount of his or her wages.

16  (c) Discharge, formally discipline, or otherwise discriminate against an
    employee who discloses the amount of his or her wages.

17

18  111.    In violation of this prohibition, Defendants' specifically instruct their employees that

19  they are not permitted to disclose their compensation to other employees.

20  112.    Plaintiffs seek an order prohibiting Defendants from continuing to engage in this

21  illegal conduct, and seek all penalties available under California law, and seek the award of

22  attorneys' fees and costs associated with obtaining the relief requested.

23  113.    Wherefore, Plaintiffs pray judgment as set forth herein below.

24  ///

25  ///

26  ///

27

39

**Tenth Cause of Action**

(On Behalf of Plaintiffs and the Unfair Business Practice Subclass)

Against All Defendants

**FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200, ET SEQ.**
**BASED UPON DEFENDANTS' UNFAIR BUSINESS ACTS AND PRACTICES**

114.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

115.    Plaintiffs further bring this action pursuant to the Business and Professions Code Sections 17200, et seq., seeking restitution for monies owed for regular and overtime wages, and injunctive relief to enjoin Defendants' illegal practices.

116.    Plaintiffs further bring this action pursuant to the Business and Professions Code Sections 17200, et seq., seeking disgorgement of one hour of pay for every rest break missed by the class during the past four years.  Unless Defendants are ordered to disgorge these monies, they will be unjustly enriched by their illegal conduct.

117.    The Unfair Competition Law prohibits all unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice."  Plaintiffs and the class have standing to bring this claim because they are direct victims of Defendants' illegal and unfair business practices, which Defendants engaged in for their sole financial benefit.

118.    Defendants, and each of them, are "persons" as defined under Business and Professions Code § 17201. Each of the directors, officers, and/or agents of Defendants, and each of them, are equally responsible for the acts of the other directors, officers, employees and/or agents as set forth in the Business and Professions Code § 17095.

119.    Plaintiffs and the Class members bring this action in the interest of themselves, as representatives, and in the interest of other employees of Defendants, and each of them, and in the interest of the public pursuant to § 17203 of the California Business and Professions Code. Plaintiffs and Class members bring this cause of action seeking restitution for Defendants'

40

1  failure to pay employees regular and overtime wages, as well as disgorgement of wage

2  penalties for every rest break Defendants failed to provide, as well as an injunction

3  prohibiting Defendants from denying employees regular and overtime wages and rest periods,

4  now and in the future.

5  120.    Plaintiffs and the Class members bring this action to pursue claims during a 4-year

6  statute of limitations under § 17208 of the California Business and Professions Code.

7  121.    The following practices of Defendants, and each of them, are unlawful and unfair

8  business practices under California Business and Professions Code §§ 17200 et seq.:

9         (a)    Failure to pay all regular and overtime wages, in violation of the

10            California Labor Code and all other applicable laws;

11         (b)    Failure to abide by promises regarding wages to be paid to

12            employees.

13         (c)    The use of fraud in the conduct of business.

14         (d)    The false imprisonment of employees after their work shifts were

15            over.

16         (e)    Imposition of an illegal and unconscionable arrearage program

17            designed to obtain back from Plaintiffs and the Class wages that

18            they had been previously paid, in violation of Labor Code § 221.

19         (f)    Imposition of an unconscionable charge back policy that permits

20            Defendants to debit their employees wages for commission on

21            merchandize returned by customers, regardless of the reason for

22            the return and regardless of how long after the sale had been

23            completed.

24         (g)    Breaches of employment contracts and covenants made to

25            employees.

26         (h)    Failure to provide rest breaks pursuant to the California Labor

27            Code and IWC wage orders;

41

1            (i)    Failure to maintain accurate pay records, and make those records

2                  available for inspection upon request by employees;

3            (j)    Unjust enrichment due to the failure to pay wages, including

4                  overtime wages.

5            (k)   Imposing an illegal prohibition that employees may not disclose

6                  or discuss their wages with others.

7   122.    At all times material to this action, Defendants' conduct described above is an unfair,

8 unlawful, and/or fraudulent business practice in violation of California Business &

9 Professions Code §§ 17200 et seq.

10   123.    As alleged hereinabove, Defendants have inequitably and unlawfully conspired,

11 agreed, arranged and combined to violate California labor laws, as alleged herein.

12   124.    As set forth below, Plaintiffs and Class members are informed and believe and

13 thereupon allege, that by failing to pay wages to all employees at Defendants' business,

14 Defendants have engaged in business within the State of California in a manner that injured

15 competitors, lead to misrepresentations to the public about the manner in which Defendants

16 engaged in business, and/or destroyed competition in violation of Business and Professions

17 Code § 17043. Upon information and belief, Plaintiffs and Class members allege that

18 Defendants engaged in the acts and omissions heretofore alleged for the purpose of profiting

19 from lower labor·costs, and obtaining an unlawful or unfair advantage, all in a scheme to

20 engage in unfair competition, at the expense of their employees and to the detriment of public

21 policy for the lawful employment of employees.

22   125.    Pursuant to Business and Professions Code §§ 17071 and 17075, the failure of

23 Defendants, and each of them, to pay all wages, including overtime wages, is admissible as

24 evidence of Defendants' intent to violate the California Unfair Competition Law.

25   126.    As a direct and proximate result of the unfair, unlawful, and/or fraudulent business

26 practices alleged herein, Plaintiffs and the entire Class have been denied due wages, both

27 regular and overtime, as well as rest periods, all to their detriment and all to Defendants'

42

1    illegal economic advantage.

2    127.    Plaintiffs and the Class members are informed and believe and thereon allege that the

3    Defendants, and each of them, by committing the above-described acts, have deceived the

4    public by illegally depriving their employees regular and overtime wages, rest periods, and

5    engaging in the other wrongful conduct described herein.

6    128.    Business and Professions Code provides that the Court may restore to an aggrieved

7    party any money or property acquired by means of unlawful and unfair business practices, and

8    to disgorgement of penalty wages for failing to provide rest periods to employees.  Plaintiffs

9    and Class members seek restitution of all unpaid wages owing to them and members of the

10   general public, and to disgorgement, according to proof, that the Defendants have enjoyed as

11   a result of the unfair business practices.

12   129.    Business and Professions Code § 17202 states: "Notwithstanding Section 3369 of the

13   Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

14   penal law in a case of unfair competition."

15   130.    In addition to restoration of all wages owed, Plaintiffs and Class members seek to

16   enforce penalties in the interest of themselves, in the interest of other employees of

17   Defendants, and each of them, and in the interest of the general public pursuant to § 17202:

18                   (a)    Waiting time penalties (Labor Code § 203);

19                   (b)    Extra hour of pay for not authorizing or permitting rest breaks

20           (Labor Code § 226.7);

21                   (c)    Failure to maintain and make available for inspection accurate

22           pay records (Labor Code § 226);

23                   (d)    Illegally prohibiting employees from disclosing or discussing

24           their wages (Labor Code § 232).

25   131.    There is a financial burden incurred in pursuing this action that would be unjust to

26   place on Plaintiffs and the Class members, because the burden of enforcing workforce-wide

27   rights is disproportionate to that of enforcing only individual claims.  It would be against the

                                                                                              43

1    interests of justice to force payment of attorneys' fees from Plaintiff and Class members'
2    recovery in this action.  Therefore, attorneys' fees are appropriate and sought pursuant to all
3    applicable laws, including but not limited to California Code of Civil Procedure § 1021.5.
4    132.    Unless equitable relief is granted, members of the Class will continue to be subjected
5    to Defendants' illegal conduct.  Pursuant to Business and Professions Code §§ 17203,
6    Plaintiffs and the Class seek a permanent injunction enjoining Defendants' continuing
7    violations of California's Unfair Competition Law on the grounds that such acts described
8    herein violate § 17200 of the Business and Professions Code and California's public policy.
9    Wherefore, Plaintiffs pray judgment as set forth herein below.

10                                   **Eleventh Cause of Action**
11                **(On Behalf of Plaintiffs and the Unjust Enrichment Subclass)**
12                                   **Against All Defendants**
13                                   **UNJUST ENRICHMENT**

14
15    133.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set
16    forth herein.
17    134.    As a consequence of violating the employment rights of Plaintiffs and Class members,
18    Defendants, and each of them, were unjustly enriched at Plaintiffs' and Class members'
19    expense.  Defendants gained an advantage by denying Plaintiffs and Class members regular
20    and overtime wages, by denying them rest periods, and by engaging in the other wrongful
21    conduct described herein.  As a proximate result, Plaintiffs and Class members suffered
22    damages.  The interests of equity require that Defendants pay restitution and penalties for
23    violating the Labor Code and Business and Professions Code.  Wherefore, Plaintiff prays
24    judgment as set forth herein below.
25
26    ///
27

44

**Twelfth Cause of Action**

**Against All Defendants**

**(On Behalf of Plaintiffs and the Declaratory Relief Subclass)**

**FOR DECLARATORY RELIEF**

135.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

136.    Plaintiffs and the Class seek a Declaration by this Court that Defendants' concerted violations alleged herein constitute unfair business practices, in violation of the Unfair Competition Law.

137.    Plaintiffs and the Class also seek a Declaration by this Court that Defendants' policy and practice of denying regular and overtime wages and rest periods constitute a violation of California law, as alleged herein.

138.    In addition, Plaintiffs and Class members seek a Declaration by this Court that Defendants' policy and practice of failing to maintain accurate pay records, and failing to provide employees with those records for inspection upon request constitutes a violation of California law, as alleged herein.

///

///

///

///

///

///

///

///

///

///

///

45

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

3 them, as follows:

4      (a)    Certifying this action to proceed as a class action pursuant to California Code

5 of Civil Procedure section 382 and designating Plaintiffs as the representatives of the Class

6
and their legal counsels as counsels for the Class;

7

8      (b)    For damages for unpaid wages, including regular and overtime wages, and

9 such general and special damages as may be appropriate, according to proof at trial;

10     (c)    For 30 days waiting time penalties under Labor Code § 203;

11     (d)    For penalties under Labor Code § 210 and 558(a)(3);

12     (e)    For penalties under Labor Code § 226(f);

13     (f)    For damages calculated at one extra hour for each day no rest period was

14
provided (Labor Code § 226.7);

15

16     (g)    For severe emotional distress caused by Defendants' concerted conduct,

17 including the false imprisonment of their employees;

18     (h)    Declaring that the concerted violations alleged herein constitute unfair

19 competition in violation of California's Unfair Competition Law, and violations of

20 California's Labor Code;

21     (i)    Permanently enjoining Defendants from continuing to engage in the unlawful

22
concerted conduct described herein;

23

24     (j)    Equitable remedies, including but not limited to, an equitable accounting, as

25 the court deems just and proper under the circumstances;

26     (k)    Awarding Plaintiffs and the Class punitive or exemplary damages based on

27 Defendants' oppressive and despicable conduct;

46

1    (l)    Granting Plaintiffs and the Class the costs of prosecuting this action, together

2  with interest and reasonable attorneys' and experts' fees; and

3    (m)    Granting such other relief as this Court may deem just and proper under the

4  circumstances.

5                              **JURY DEMAND**

6        To the full extent available, Plaintiffs demand a trial by jury.

7

8

9  DATED: May 26, 2006              THE LAW OFFICE OF PATRICK R. KITCHIN

10

11                                 By:_____
                                   Patrick R. Kitchin, Esq.
12                                 Attorneys for Plaintiffs

13

14  DATED: May 26, 2006              THE LAW OFFICE OF DANIEL FEDER

15                                 By: _____
                                   Daniel L. Feder, Esq.    PRK
16                                 Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

                                                                        47