1  William J. Goines (SBN 061290)
   Alisha M. Louie (SBN 240863)
2  GREENBERG TRAURIG, LLP
   1900 University Avenue, Fifth Floor
3  East Palo Alto, CA 94303
   Telephone: (650) 328-8500
4  Facsimile: (650) 328-8508
   Email:   goinesw@gtlaw.com
5             louiea@gtlaw.com

6  Jeremy A. Meier (SBN 139849)
   GREENBERG TRAURIG, LLP
7  1201 K Street, Suite 1100
   Sacramento, CA  95814-3938
8  Telephone:  (916) 442-1111
   Facsimile:  (916) 448-1709
9  Email:   meierj@gtlaw.com

10 Brian S. Cousin (Pro Hac Vice)
   Neil A. Capobianco (Pro Hac Vice)
11 GREENBERG TRAURIG, LLP
   MetLife Building, 200 Park Avenue
12 New York, NY 10166
   Telephone:  (212) 801-9200
13 Facsimile:  (212) 801-6400
   Email:   cousinb@gtlaw.com
14           capobiancon@gtlaw.com

15 Attorneys for Defendants Polo Ralph Lauren
   Corporation; Polo Retail, LLC; Polo Ralph Lauren
16 Corporation, doing business in California as Polo Retail
   Corporation; and Fashions Outlet of America, Inc.

17

18                    **UNITED STATES DISTRICT COURT**

19                   **NORTHERN DISTRICT OF CALIFORNIA**

20 ANN OTSUKA, an individual; JANIS KEEFE,          Case No.  C07-02780 SI
   an individual; CORINNE PHIPPS, and
21 individual; and JUSTIN KISER, an individual;      **MEMORANDUM OF POINTS AND**
   and RENEE DAVIS, an individual, and on           **AUTHORITIES IN SUPPORT OF**
22 behalf of all others similarly situated,          **DEFENDANTS' MOTION TO DISMISS**
                                                     **UNDER RULE 12(b)(6)**
23          Plaintiff,
                                                     ORAL ARGUMENT REQUESTED
24 v.

25 POLO RALPH LAUREN CORPORATION, a                  Date:   January 18, 2008
   Delaware Corporation; et al.,                     Time:   9:00 a.m.
26                                                   Dept:   Courtroom 10, 19th Fl.
           Defendants.                               Judge:  Hon. Susan Illston
27
                                                     Action Filed: May 30, 2006
28 AND RELATED CROSS-ACTIONS.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

    A.    The Individual Plaintiffs Have Distinctly Different Factual Issues. .................... 1

    B.    The Defendants and Their California Business Operations ................................. 2

    C.    Plaintiffs' Allegations in the Original Complaint and Second
        Amended Complaint ............................................................................................ 4

III.  LEGAL ARGUMENT ............................................................................................... 5

    A.    The Legal Standard .............................................................................................. 5

    B.    Davis's Claims for Fraud and Statutory Wage Violations are Barred
        by the Statutes of Limitation ............................................................................... 5

    C.    Davis Claims Do Not Relate Back To The Original Complaint .......................... 6

        1.    The Original Complaint Was Founded On Conduct, Transactions
            Or Occurrences Which Are Distinctly Different From the Conduct,
            Transactions or Occurrences Related to Davis's Claims. ....................... 6

            (i)    The Original Four Plaintiffs Worked at Retail Stores Under
                  Different Procedures. ................................................................... 6

            (ii)   Davis Worked at a Separate Class of Stores under Separate
                  Circumstances .............................................................................. 9

IV.   CONCLUSION ......................................................................................................... 11

1

## TABLE OF AUTHORITIES

2                                                                                        **Page**

3

4    **Federal Cases**

5    *Beesig v. Dolphin Boating & Swimming* Club,
        683 F.2d 1271, 1278  (9th Cir. 1982) ................................................................. 10

6    *Conley v. Gibson*,
        355 U.S. 41, 45-46 (1957) ..................................................................................... 5

7    *In re Syntex Corp. Secs. Litigation*,
        855 F.Supp. 1086 (C.D. Cal. 1994), *aff'd*  95 F.3d. 922 (9th Cir. 1996) ............................. 10

8
     *Oja v. United States Army Corps of Eng'rs*,
9        440 F.3d 1122, 1134 -5 (9th Cir. 2006) ...................................................................... 10, 11

     *Parks School of Business, Inc. v.* Symington,
10       51 F.3d 1480, 1484  (9th Cir. 1995). ........................................................................ 5

11   *Phillips v Ford Motor Company*
        435 F.3d 785, 788 (7th Cir. 2006) .............................................................................. 10

12   *Rosenbaum v. Syntex Corp.*,
        95 F.3d 922, 935 (9th Cir. 1996) ............................................................................... 7

13

14   **Federal Statutes**

15   Fed. R. Civ. P. 12(b)(6) ................................................................................................. 5

     Fed. R. Civ. P. 15(c) ..................................................................................................... 6
16

17   **State Statutes**

     Cal. Civ. Proc. Code 338(a)............................................................................................ 5
18

19

20

21

22

23

24

25

26

27

28

MPA'S IN SUPPORT OF  MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    __INTRODUCTION__

Plaintiff Renee Davis's ("Davis") claims for fraud, wage and hour violations of the California Labor Code and for recovery under the California Private Attorneys Act (California Labor Code section 2699.5), as brought forth in Plaintiffs Ann Otsuka, Janis Keefe, Corinne Phipps, Justin Kiser and Davis's ("Plaintiffs") Second Amended Complaint, must be dismissed because they fail to state a claim upon which relief can be granted. These claims, as detailed below, are barred by the applicable statutes of limitation.

Further, Davis cannot gain the pleading benefit of the "relation back" doctrine, as enunciated in Rule 15(c) of the Federal Rules of Procedure, because her claims do *not* arise out of the same conduct, transaction, or occurrence set forth in Plaintiffs' initial Complaint ("Original Complaint"). The Court should grant Defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corporation and Fashions Outlet of America, Inc.'s ("Defendants" or "Polo") instant Motion to Dismiss, based on Rule 12(b)(6) of the Federal Rules of Procedure, because even accepting the allegations made by Davis as true, she cannot escape the fact that her time to assert these claims has run.

Simply put, Davis no longer has standing to bring forth her claims for fraud, statutory Labor Code violations and for recovery under the California Private Attorneys Act against Defendants.

## II.    __FACTUAL BACKGROUND__

### A.    __The Individual Plaintiffs Have Distinctly Different Factual Issues.__

This lawsuit was first filed in the Superior Court for the County of San Francisco on May 30, 2006, alleging multiple class-wide claims for violation of wage and hour laws, breach of contract, fraud, and false imprisonment. The four named Plaintiffs in the original Complaint alleged that they were bringing claims against Defendants individually and on behalf of all others similarly situated against Defendants (*i.e.*, a "putative" class action). The initial Plaintiffs were all former retail sales associates who worked in Ralph Lauren stores in either San Francisco or Palo Alto ("Polo full price stores").

1    Otsuka was a sales associate in the Home Collection Department of the Palo Alto store

2    from approximately May 2004 to October 2004. (Exhibit A, Original Complaint, ¶ 15.) Keefe

3    was a sales associate in the Men's Department of the San Francisco store from approximately

4    May 2004 to January 2005. (Exhibit A, Original Complaint, ¶ 44.) Phipps was a sales associate

5    in the Home Collection Department in the San Francisco store from approximately May 2004

6    to December 2004. (Exhibit A, Original Complaint, ¶ 24.)  Kiser was a sales associate in the

7    Men's Department of the San Francisco store from approximately July 2004 to August 2005.

8    (Exhibit A, Original Complaint, ¶ 34.)

9    Plaintiffs then filed a First Amended Complaint in state court on July 20, 2006.

10   Following substantial discovery, motion practice (including a demurrer which was granted in

11   part) and removal to this Court, on October 24, 2007 Plaintiffs again amended their Complaint

12   a second time to add a new Plaintiff, Renee Davis, to "represent" a new class of individuals

13   (those who were sales associates in Polo Ralph Lauren Factory outlet stores). As alleged in

14   Plaintiffs' operative Second Amended Complaint ("SAC") and as discussed in detail herein,

15   Davis was employed as an outlet "associate" at a Polo Ralph Lauren Factory Outlet, located in

16   Cabazon, California ("Cabazon outlet store") from approximately October 2002 through

17   February 2004. (SAC, ¶ 57.)

18       **B.    The Defendants and Their California Business Operations**

19   Defendants, together, own and operate a number of retail establishments throughout the

20   United States and world, including Polo full price stores, Polo Ralph Lauren Factory Outlet

21   ("Polo outlet store"), and other various separate stores.

22   Defendants presently own and operate nine Polo full price stores in California.  By way

23   of background, the Polo full price stores market large ticket items and a selective line of

24   merchandise that is the premium label for the Polo retail stores. Defendants own and operate 13

25   separate Polo outlet stores in California. Polo outlet stores are located solely in outlet malls and

26   the majority of the merchandise represents moderately priced Polo goods not available in the

27   Polo full price stores.  Defendants also own and operate other stores not part of the vertical

28   retail format of the Polo line of merchandise, and which have not been included in this action.

1        Although Polo full price stores and Polo outlet stores are owned and operated by

2 Defendants, each store is unique and, as a result, maintains different policies, practices and

3 procedures for their business operations.  Polo full price stores are located in high-end retail

4 areas that include shopping malls and other retail centers. With the exception of Polo full price

5 stores located in in-door shopping centers, most Polo full price stores have their own separate

6 entrance and exit. Polo full price stores generally hire full-time sales associates who work on a

7 "draw versus commission" structure[1] with most sales associates earning commission

8 compensation as opposed to a draw.

9        The Polo full price stores generally operate on one shift, given the full-time nature of

10 the sales associates it employs, with the exception of stores that have longer store hours that

11 extend beyond eight hours in a day. For those stores, generally there are two shifts that sales

12 associates operate. The typical sales associate in a Polo full price store is a more experienced

13 seller with a career interest in full-time sales and previous work in the industry.

14        Sales associates in the Polo full price stores readily make themselves available to their

15 clients.  Sales associates coordinate and schedule their rest and meal breaks with their

16 managers, other sales associates in their department, and according to scheduling demands with

17 clients.

18        Polo *outlet* stores are much different. Had Plaintiffs wanted to include Davis's claims

19 originally, they could have.  The very fact they have amended their Complaint now a second

20 time to add Davis and her new claims speaks volumes as to the inherent differences between

21 Plaintiffs' Initial Complaint and their current claims.

22        In the Polo outlet stores, typical sales associates are seasonal, part-time, and not career

23 oriented salespersons. There is a substantially larger turnaround rate amongst Sales Associates

24 in the Polo outlet stores from Polo full price stores. The Polo outlet stores experience a high-

25 volume of foot traffic, sales associates are not as focused on developing a book of business, and

26 almost all sales associates in the Polo outlet stores are part-time employees.

27

28 [1] The Polo full price store located Burlingame, California compensates its Sales Associates on a base plus commission compensation structure.

1    Polo outlet store sales associates are paid hourly and do not receive commission for

2    sales.  Based on the volume of employees, including sales associates and the hourly

3    compensation environment, a manager is designated to be on the floor at all times, and referred

4    to as the Customer Service Manager ("CSR"). The CSR regulates and enforces the schedules of

5    the Sales Associates on the floor, monitoring their shifts and time on the floor, including rest

6    and/or meal breaks.  Each Polo outlet store sales associate is scheduled to take his/her rest

7    and/or meal break at a designated time that is scheduled at the start of each business day.  Polo

8    outlet store sales associates do not have flexibility with their schedules.

9    **C.    Plaintiffs' Allegations in the Original Complaint and Second Amended**
10        **Complaint**

11    Plaintiffs' Original Complaint filed on May 30, 2006, asserted causes of action on

12    behalf of Plaintiffs, individually and on behalf of all others similarly situated against

13    Defendants.  (Exhibit A, Original Complaint).  It is organized into several different parts.

14    Section I (¶¶ 1-11) alleges Plaintiffs' basis for jurisdiction and venue; Section II (¶¶ 12-14) is a

15    summary of the nature of the action; Section III (¶¶ 15-51) alleges the particular conduct,

16    transaction, or occurrence which Plaintiffs allege is the basis for their claims they have

17    asserted; Section IV makes Plaintiffs' class action allegations; Section V asserts each and every

18    claim on behalf of Plaintiffs (individually or as a whole); and the final sections, Section VI and

19    VII , include Plaintiffs' prayer for relief and demand for jury trial.

20    Plaintiffs' Second Amended Complaint is organized in the same fashion as Plaintiffs'

21    Original Complaint. The substance, however, has changed dramatically. As discussed herein,

22    the most substantive changes made in Plaintiffs' complaint are the additions of Davis as a new

23    Polo outlet store Plaintiff and the factual allegations she has made, in Section III, regarding the

24    particular conduct, transaction, or occurrence which form the basis of her claims against

25    Defendants.  From the face of the complaint(s), it is apparent Davis has little in common with

26    the other prior named Plaintiffs: her allegations differ, her claims arise out of different facts and

27    occurrences, from a different line of retail stores (Polo full price stores versus Polo outlet

28    stores) and she lacks sufficient commonality to "relate back" to the Original Complaint.

III.   **LEGAL ARGUMENT**

   A.   **The Legal Standard**

A District Court may dismiss a complaint or any count therein that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle to him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Parks School of Business, Inc. v.* Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

   B.   **Davis's Claims for Fraud and Statutory Wage Violations are Barred by the Statutes of Limitation**

The claims brought by Davis are barred by the applicable statutes of limitation (with the admitted exception of her fifth claim for breach of contract and ninth claim for unfair competition).[2] As discussed, Plaintiffs have alleged that Davis worked at the Cabazon outlet store from October 2002 to April 2004. (SAC, ¶ 5). Although the Original Complaint was filed May 30, 2006, Davis' claims were not brought forth until the SAC, which was filed on October 24, 2007. Because the claims Davis alleges must be measured against the timing of the filing of the SAC, not the Original Complaint, Davis' claims must be dismissed as they are barred by applicable statute of limitations.

The relevant statutes of limitation for Davis' claims are as follows: (1) fraud, three years (California Code of Civil Procedure section 338(d)); (2) statutory violations of the California Labor Code, three years under California Code of Civil Procedure section 338(a) (for California Labor Code Sections 510, 204, 221, 201, 202, 203, 226.7, 226, and 232); and (3) three years for violation of the Private Attorneys General Act (California Code of Civil Procedure section 338(a)).

Davis terminated her employment with Defendants in or about April 2004, as alleged in the SAC. *She thus should have filed suit against Defendants no later than April 2007 (the three-year anniversary of her termination date from the Cabazon outlet store) in order to seek*

---

[2] These two claims have a four-year statute of limitations under California law and Polo is not challenging the sufficiency of these claims at the pleading stage.

recovery on the fraud and third, fourth, sixth, seventh, eighth, ninth, tenth and twelfth claims for statutory violations of the California Labor Code. Since Davis failed to timely file suit, each of these particular claims should now be dismissed.

### C.    Davis Claims Do Not Relate Back To The Original Complaint

Davis' claims for fraud, violations of the California Labor Code and the Private Attorneys General Act are barred by applicable statutes of limitation in that she failed to assert her claims within three years of the termination date of her employment with Defendants. Although the Federal Rules, and in particular Rule 15(c) of the Federal Rules of Civil Procedure, provide for the "relation back" of amendments to the date of the original filing, there are certain requirements that must still be met for the complaint to be viable.

Rule 15(c) requires that an amendment to a pleading relates back to the date of the original pleading when:

>    (A)    the law that provides the applicable statute of limitations allows relation back;
>
>    (B)    the amendment asserts a claim or defense that **arose out of the conduct, transaction, or occurrence** set out -- or attempted to be set out -- in the original pleading.

Fed. R. Civ. P. 15(c) (emphasis added).  Since Davis' claims against Defendants for fraud, violations of the California Labor Code and the Private Attorneys General Act are barred by three year statutes of limitation, Davis' claims can only survive if it is determined that her new claims arise out of the same conduct, transaction or occurrence set forth in the Original Complaint.

>    **1.    The Original Complaint Was Founded On Conduct, Transactions Or Occurrences Which Are Distinctly Different From the Conduct, Transactions or Occurrences Related to Davis's Claims.**
>
>    (i)    The Original Four Plaintiffs Worked at Retail Stores Under Different Procedures.

An amendment adding a party plaintiff relates back to the date of the original pleading only when:  1) the original complaint gave the defendant adequate notice of the claims of the

newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff. *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th Cir. 1996).  In *Rosenbaum*, Plaintiffs were seeking to "expand the class" and the Court ruled there was no equitable tolling for non asserted class members.

As discussed herein, Plaintiffs' Original Complaint (Section III, ¶¶ 15-51) sets forth the specific conduct, transaction, or occurrence which forms the basis for Otsuka, Phipps, Kiser and Keefe's initial claims against Defendants. Those factual allegations, however, are distinct from the factual allegations that Davis now alleges in the SAC. (SAC, ¶¶ 57-64).  In particular, the factual allegations by Davis in the SAC differ in the nature of the specific acts and conduct causing harm, the status of the separate employees, and the varied circumstances distinguishing Polo full price retail stores from Polo outlet stores.

Otsuka, a Sales Associate in the Home Department of the Palo Alto Polo full price store, has alleged her injuries based on the actions of the store management in the Palo Alto store. (Exhibit A, Original Complaint, ¶¶ 15-23).  In particular, she alleges that the store's General Manager, Tin Hua, explained her compensation structure and how she was a draw versus commission employee. (Exhibit A, Original Complaint, ¶ 16). Otsuka further alleges that Phoebe Morales, the store manager, and Ha'aheo Zablan, Home Collection/Men's Manager, acknowledged their lack of understanding about the arrearages program. (Exhibit A, Original Complaint, ¶ 16). The specific conduct, transaction, or occurrence which forms the basis for Otsuka's claims regarding failure to pay premium overtime, her work off-the-clock, and rest and meal break violations are all based on actions that took place solely in the Palo Alto full price store. (Exhibit A, Original Complaint, ¶¶ 21-23).

Phipps, a Sales Associate in the Home Department of the San Francisco full price store, alleges injuries based on the actions of the store management in the San Francisco store. (Exhibit A, Original Complaint, ¶¶ 24-33). In particular, she alleges that the store's General Manager, Tin Hua, explained her compensation structure and how she was a draw versus commission employee. (Exhibit A, Original Complaint, ¶ 25). Phipps further alleges that

Theresa Cruz, Operations Manager and Valerie Harrison, Department Manager, clocked her out while she was still performing work. (Exhibit A, Original Complaint, ¶ 30). Phipps also alleges that Theresa Cruz fraudulently manipulated her time records. (Exhibit A, Original Complaint, ¶ 30). Valerie Harrison and Theresa Cruz, as alleged by Phipps, stated that if Phipps tried to leave the store before she had been inspected an alarm would sound and she would or could be terminated. (Exhibit A, Original Complaint, ¶ 31). Phipps also alleges that her managers in the store harassed her and her co-employees when she attempted to take breaks. (Exhibit A, Original Complaint, ¶ 33). The specific conduct, transaction, or occurrence which forms the basis for Phipps' claims regarding failure to pay premium overtime, her work off-the-clock, and rest and meal break violations are all based on actions that took place solely in the San Francisco full price store

Kiser, a Sales Associate in the Polo Men's Department and Men's Sport Department of the San Francisco Polo full price store, also alleges his injuries based on actions of the store management in the San Francisco Store. (Exhibit A, Original Complaint, ¶¶ 34-43). In particular, Kiser alleges that the store's General Manager, Tin Hua, explained his compensation structure and how he was a draw versus commission employee. (Exhibit A, Original Complaint, ¶ 35). Kiser further alleges that Theresa Cruz, Operations Manager, would write down the hours he worked by fraudulently manipulating his time records. (Exhibit A, Original Complaint, ¶ 39). Managers Rosalinda Walwork and Theresa Cruz. as alleged by Kiser, harassed him and his co-employees when they attempted to take rest breaks. (Exhibit A, Original Complaint, ¶ 42). The specific conduct, transaction, or occurrence which forms the basis for Kiser's claims regarding failure to pay premium overtime, his work off-the-clock, false imprisonment, and rest and meal break violations are all based on actions that took place solely in the San Francisco full price store

Keefe, another Sales Associate in the Polo Men's Department and Men's Sport Department of the San Francisco Polo full price store, has similarly alleged her injuries based on the actions of the store management in the San Francisco Store. (Exhibit A, Original Complaint, ¶ 44-51). In particular, she alleges that the store's General Manager, Tin Hua,

explained her compensation structure and how she was a draw versus commission employee

(Exhibit A, Original Complaint, ¶ 45).  Further, Keefe alleges that the managers in her store,

including Theresa Cruz, clocked her out while she was still performing work. (Exhibit A,

Original Complaint, ¶ 49). On other occasions, managers, including Theresa Cruz, would write

down the hours she worked by fraudulently manipulating her time records so they would reflect

less time worked. (Exhibit A, Original Complaint, ¶49). Keefe alleges she was instructed by

Theresa Cruz and Tin Hua that she was not to use the customer exit to leave the store and that if

she tired to leave through the employee exit prior to being inspected she would be terminated.

(Exhibit A, Original Complaint, ¶ 50). The specific conduct, transaction, or occurrence which

forms the basis for Keefe's claims regarding failure to pay premium overtime, her work off-

the-clock, and rest and meal break violations are all based on actions that took place solely in

the San Francisco full price store

These operative factual allegations, as alleged by Otsuka, Phipps, Kiser and Keefe, are

alleged in the Original Complaint as the specific source of each of the Plaintiffs' injuries, and

give rise to their instant claims.  On the other hand, at this late date Davis attempts to set forth

different fact allegations arising out of different conduct, transactions or occurrences.

> (ii)    Davis Worked at a Separate Class of Stores under Separate
>         Circumstances.

Davis has alleged that her claims arise out of conduct, transactions or occurrences that

took place in the Cabazon *outlet* store, where she alleges she was a sales associate. (SAC, ¶¶

57-64).  Davis alleges that her store's general manager and Human Resources Department

Manager, April Hicks, informed Davis her hourly rate of compensation and that she was not

permitted to discuss her wages with other employees. Davis underwent loss prevention

inspections and attended morning meetings at her store, which she alleges she was not properly

compensated for. (SAC, ¶ 60).

Davis's managers and supervisors locked the store's exit door and required Davis to

clock out and then wait at the store exit for inspection, prior to being able to leave the store.

(SAC, ¶ 61). Davis attended morning meetings in the store that she was not compensated for.

(SAC, ¶ 62). During sales and holidays, Davis alleges she was not always permitted to take rest breaks because there were not enough sales associates on duty to assist customers.

In this instance, therefore, Plaintiffs seek to expand the class to now include a new *outlet store* class representative, one whose alleged wrongs inherently arise from different facts and circumstances. There is an insufficient factual basis, from the pleadings alone, to allow Davis to "piggyback" on the other Plaintiffs' original claims.

Unrelated Plaintiffs cannot join a pending action and avoid the statute of limitations. "Unless the substituted and substituting plaintiffs are so closely related that they in effect are but one, an amended complaint substituting plaintiffs relates back only when the relief sought is sufficiently similar to constitute an identity of interest…. The amendment … relates back only if appellants can show an identity of interest." *Beesig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278 (9th Cir. 1982).

"Notice from a previous complaint seldom is adequate when substituting plaintiffs, unless the change merely brings in the real party in interest or accomplishes some similar technical result. New, unrelated plaintiffs generally are unable to assert a cause of action sufficiently confined to the facts stated in the original pleadings to support an inference of adequate notice. Defendants usually are prejudiced by the different identity of plaintiffs, if by nothing else." *Id*. While "routine substitution" of a new class representative may be allowed under a relation back theory and tolling principles, Plaintiffs do not seek a "routine" substitution of a new class representative to replace a disqualified or substituted same class. *See Phillips v Ford Motor Company*, 435 F.3d 785, 788 (7th Cir. 2006). Davis was added to seek redress for an entirely new class or subclass of persons, precluding the application of the relation back theory to Plaintiffs' benefit. *In re Syntex Corp. Secs. Litigation*, 855 F.Supp. 1086 (C.D. Cal. 1994), *aff'd* 95 F.3d. 922 (9th Cir. 1996).

Further, the very fact that Davis included in the SAC new allegations regarding the conduct, transaction, or occurrence upon which she has based her claims is evidence in and of itself of the manifest *differences* from the Original Complaint. *Oja v. United States Army Corps of Eng'rs*, 440 F.3d 1122, 1134 -5 (9th Cir. 2006). The *Oja* court dismissed a second amended

10

1  complaint for similar reasons.  The *Oja* plaintiffs' first amended complaint sought relief against

2  the defendant for disclosure of his personal information on defendant's website. (*Oja*, at 1134).

3  Soon after, plaintiff filed a second amended complaint which alleged claims for a second

4  disclosure by defendant that occurred on a separate website.  *Id.*  At issue for the Ninth Circuit

5  was whether the relation back doctrine would apply to the claims brought forth by the plaintiff

6  in the second amended complaint which would otherwise be barred by the statute of

7  limitations. *Id* at 1134-5.

8      The Ninth Circuit, in upholding the finding of the District Court that the second

9  amended complaint in *Oja* did *not* relate back, determined that the claims brought by plaintiff

10 for disclosure of personal information were "based on the acts of disclosure themselves, each of

11 which is distinct in time and place, if not substance" *Id.* at 1135.  As with the varied allegations

12 about the Polo retail and outlet stores and procedures, the allegations as to time, place and

13 manner are distinct and different.  The Davis claims arise out of a completely different set of

14 facts and circumstances, those pertaining to Polo outlet store in Cabazon.  Her claims have no

15 similarity to whatever may have occurred in the Palo Alto or San Francisco full price retail

16 stores, as alleged by Plaintiffs Otsuka, Phipps, Kiser and Keefe in the Original Complaint.

17     Therefore, where, as in the instant case, an amendment alleges a separate violation of

18 the same statute or contract, it remains subject to the applicable statute of limitations if based

19 on different conduct, transactions or occurrences. *Id.*  Davis should have brought her claims

20 within the appropriate time.  They are now barred by the statutes of limitation.

21 **IV.    <u>CONCLUSION</u>**

22     Davis's claims do not relate back to the filing of the Original Claim and her untimely

23 claims for Fraud, Violations of the California Labor Code and the Private Attorneys General

24 Act should be dismissed with prejudice.

25 //

26 //

27 //

28 //

1

Dated: November 13, 2007.          GREENBERG TRAURIG, LLP

2

3

4                                              By: /s/ William J. Goines
                                                    William J. Goines
5                                                   Jeremy A. Meier
                                                    Alisha M. Louie
6
                                               Attorney for Defendants Polo Ralph Lauren
7                                              Corporation; Polo Retail, LLC; Polo Ralph
                                               Lauren Corporation, doing business in
8                                              California as Polo Retail Corporation; and
                                               Fashions Outlet of America, Inc
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA'S IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT