1  Patrick R. Kitchin, Esq. (State Bar No. 162965)
   **THE LAW OFFICE OF PATRICK R. KITCHIN**
2  565 Commercial Street, 4th Floor
   San Francisco, CA 94111
3  Telephone:  (415) 677-9058
   Facsimile:  (415) 627-9076
4  Counsel to Janis Keefe, Corinne Phipps
   and Renee Davis
5

6  Daniel Feder, Esq. (State Bar No. 130867)
   **THE LAW OFFICES OF DANIEL FEDER**
7  807 Montgomery Street
   San Francisco, CA 94133
8  (415) 391-9476
   Counsel to Ann Otsuka
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

13  ANN OTSUKA, an individual; JANIS      )   Case No.:  C-07-02780-SI
    KEEFE, an individual; CORINNE PHIPPS, an )
14  individual; and RENEE DAVIS, an individual, )   **THIRD AMENDED CLASS ACTION**
    and on behalf of all others similarly situated, )   **COMPLAINT FOR:**
15                                          )
                                            )   • **FRAUD**
16              Plaintiffs,                  )   • **VIOLATIONS OF LABOR CODE §§**
                                            )     **510 AND 204 (FAILURE TO PAY**
17         vs.                              )     **WAGES EARNED)**
                                            )   • **VIOLATIONS OF LABOR CODE §**
18  POLO RALPH LAUREN CORPORATION; a )         **221**
    Delaware Corporation; POLO RETAIL, LLC., )   • **BREACH OF CONTRACT**
19  a Delaware Corporation; POLO RALPH     )   • **WILLFUL VIOLATIONS OF LABOR**
    LAUREN CORPORATION, a Delaware        )     **CODE §§ 201, 202 AND 203**
20  Corporation, doing business in California as )   • **FAILURE TO PROVIDE REST**
    POLO RETAIL CORP; and FASHIONS        )     **PERIODS (LABOR CODE § 226.7)**
21  OUTLET OF AMERICA, INC., a Delaware   )   • **VIOLATIONS OF LABOR CODE §**
    Corporation                            )     **226**
22                                          )   • **VIOLATIONS OF BUSINESS AND**
                                            )     **PROFESSIONS CODE §§ 17200, ET**
23              Defendants.                  )     **SEQ.**
                                            )   • **DECLARATORY RELIEF**
24                                          )
                                            )
25                                          )   **JURY TRIAL DEMANDED**
                                            )
26                                          )   **Complaint Filed: May 30, 2006**
                                            )
27  _____     )
                                                                              1

1    Plaintiffs, individually and on behalf of all others similarly situated, for their complaint

2    against Defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corp., and

3    Fashions Outlet of America, Inc., inclusive, allege upon information and belief, except as to

4    the allegations that pertain to Plaintiffs and their counsel, as follows:

5                          **JURISDICTION AND VENUE**

6    1.      Plaintiff Ann Otsuka is an individual who resides, and at all times relevant has resided,

7    in Santa Clara County, California, who is a citizen of the State of California, and who was

8    employed by Polo Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail,

9    LLC, in Santa Clara County, California, between approximately May 2004 and November

10   2004.

11   2.      Plaintiff Corinne Phipps is an individual who at all times relevant resided in San

12   Francisco County, California, who is a citizen of the State of California, and who was

13   employed by Polo Retail Corp., and/or Polo Retail, LLC, and/or Polo Ralph Lauren

14   Corporation, in San Francisco County, California, between approximately May 2004 and

15   December 2004.

16   3.      Plaintiff Janis Keefe is an individual who at all times relevant resided in San Francisco

17   County, California, who is a citizen of the State of California, and who was employed by Polo

18   Retail Corp., Polo Retail, LLC, and/or Polo Ralph Lauren Corporation, in San Francisco,

19   California, between approximately May 2004 and December 2004.

20   4.      Plaintiff Renee Davis is an individual who at all times relevant resided in Riverside

21   County, California, who is a citizen of the State of California, and who was employed by Polo

22   Retail Corp., Polo Retail, LLC, Polo Ralph Lauren Corporation and/or Fashions Outlet of

23   America, Inc., in Defendants' factory outlet store in Cabazon, California, between

24   approximately October 2002 and February 2004.

25   5.      Defendant Ralph Lauren Corporation, Inc., is a company organized and existing under

26   the laws of the State of Delaware, and doing business in cities throughout California,

27   including San Francisco.

2

1   6.     Defendant Polo Retail, LLC, is a company organized and existing under the laws of

2   the State of Delaware, and doing business in cities throughout California, including in San

3   Francisco.

4   7.     Defendant Polo Retail Corp. is a business of unknown origin and business form, doing

5   business in California, including in San Francisco, as a fictitious business name of Polo Ralph

6   Lauren Corporation.

7   8.     Defendant Fashions Outlet of America, Inc., is a corporation organized and existing

8   under the laws of the State of Delaware, and doing business in cities throughout California,

9   including in San Francisco.

10  9.     This case originally was filed May 30, 2006, in the Superior Court of California for

11  the City and County of San Francisco.  On May 29, 2007, Defendants removed it to the

12  United States District Court for the Northern District of California.

13  ### <u>NATURE OF THE ACTION—SUMMARY</u>

14  10.    This action is brought by Plaintiffs and all other former employees of Polo Ralph

15  Lauren Corporation, Polo Retail, LLC, Polo Retail Corp., and Fashions Outlet of America,

16  Inc., in the State of California who have been subjected to the conduct of Defendants as

17  alleged below during the applicable statutes of limitations.  These employees were employed

18  in Defendants' full-price retail stores ("Retail Stores") and/or factory outlet stores ("Outlet

19  Stores") in California.

20  11.    Defendants have engaged in a long-standing practice of violating the employment

21  rights of their employees.  Those violations are summarized in this paragraph and are further

22  detailed below.

23          a)   In their Retail and Outlet Stores, Defendants routinely required all of their

24               employees to perform unpaid work "off the clock." Defendants required their

25               employees to remain in their locked and/or door-alarmed stores for up to one half

26               hour to undergo a "loss prevention search" by managers after the employees

27               clocked out at the end of their shifts and were no longer being paid for their labor. 3

b) In their Retail and Outlet Stores, Defendants routinely failed to provide their employees with mandatory rest breaks.

c) In their Retail and Outlet Stores, Defendants routinely failed to pay wages to employees when those wages were earned.

d) In their Retail and Outlet Stores, Defendants violated Labor Code § 510 by consistently failing to pay premium overtime wages.

e) In their Retail and Outlet Stores, Defendants violated Labor Code §§ 201, *et seq.*, by consistently failing to timely pay employees all wages due upon resignation and/or termination, and violated Labor Code § 204 by consistently failed to pay employees in a timely manner.

f) In their Retail and Outlet Stores, Defendants violated Labor Code § 208 by consistently failing to pay all wages due terminated employees at the place of discharge.

g) In their Retail and Outlet Stores Defendants failed to maintain proper records memorializing the hours worked by their employees and the compensation paid, and failed to make accurate payroll records available upon request to any of their employees.

h) In their Retail and Outlet Stores, Defendants violated Labor Code § 432.5 by consistently requiring employees to sign documents, including the company's employee manuals, and thereby agree to Defendants' illegal policies and practices.

i) In their Retail and Outlet Stores, Defendants violated Labor Code § 1199 by consistently violating provisions of Labor Code §§ 1171, *et seq*.

j) In their Retail Stores, excluding only Defendants' Burlingame California store, Defendants maintained a wage system they called "Base Rate Against Commission," which they characterized as a *bona fide* commission-based system, when it was not. Defendants' wage system was an illegal scheme designed to avoid the wage rules and overtime regulations set forth in Industrial Welfare

Commission Order 7-2001 and the California Labor Code.

k) In their Retail Stores, between 2004 and 2007, Defendants took back wages previously paid to and earned by employees through Defendants' "Arrears Program." Because Defendants misclassified their employees as *bona fide* commissioned employees, Defendants' application of a commission-based wage arrears system was illegal, inequitable and unconscionable.

l) In their Retail Stores, Defendants engaged in fraud by falsely promising employees that they would perform an end-of-the-year wage reconciliation to determine which employees were eligible to receive premium overtime compensation for work performed during the entire course of the previous year. This written promise was made to all Defendants' employees through Defendants' Sales Associate Compensation Handbooks. Defendants intentionally failed to fulfill that promise, all to the detriment of their employees. Defendants used this false promise of reconciliation each year as a means to avoid timely paying wages to their employees in accordance with California law.

m) In their Retail Stores, Defendants violated Labor Code § 1194 by consistently requiring employees to agree to waive their statutory right to premium overtime wages by acknowledging in writing that they understand they were not entitled to the timely payment of premium overtime wages and they were not permitted to discuss their wages with others.

12.    In summary, Defendants used fraud, deception, unfair business practices and credible threats to deprive their employees of the basic employment rights guaranteed by California law.

### ANN OTSUKA

13.    Ann Otsuka worked for Polo Retail Corp., and/or Polo Ralph Lauren Corporation, and/or Polo Retail, LLC, in Defendants' Palo Alto Retail Store from approximately May 2004-October 2004, as a sales associate in Defendants' Home Collection Department.

5

14.    When Ann Otsuka began working for Defendants, Tin Hua, General Manager, told her she would be compensated as a draw versus commission employee at the initial rate of $12.00 per hour, or 8% commission on sales exceeding Defendants' minimum sales requirement, whichever amount was greater.  Defendants subsequently lowered Ms. Otsuka's hourly rate to $10.15, or 8% commission on sales exceeding Defendants' minimum sales requirement, whichever was greater.  She was not told and/or never understood the wage system meant Defendants would force her to pay back some of her earned wages if she failed to meet certain sales minimums established by Defendants.    Nevertheless, Defendants established a commission-based arrears program that Defendants used in or about September or October 2004 to obtain previously paid wages from Ms. Otsuka through payroll deductions, which were insufficiently memorialized and communicated to Ms. Otsuka.  Ms. Otsuka was not, however, a *bona fide* commissioned employee under California law and, therefore, the arrears program was applied to her illegally.  Further, Ms. Otsuka's paycheck stub had insufficient information describing wages withheld.  When she asked for a complete accounting of her wages and an explanation of the arrears deductions, she was denied the information necessary to determine how her reduced wages had been calculated.

15.    In addition, when Ann Otsuka was hired by Defendants, she was required to sign an acknowledgement that she had received and understood the policies she alleges herein were illegal.  The acknowledgement further purported to relieve Defendants of liability for their illegal conduct, including that set out in the Defendants' Retail Employee Handbook.  By way of example, Defendants' Retail Employee Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary arrangements to other Polo Retail Corporation associates."  It further provides that divulging such information, "may lead to disciplinary action or termination."  Defendants' compensation handbook, also provided to Ann Otsuka, required her to agree to illegal overtime policies.  These policies violated California law.

16.    During at least two pay periods, less than 50% of Ann Otsuka's wages came from commissions.  During at least one of those pay periods, Ann Otsuka worked overtime hours

and was entitled to, but not paid, all of the premium overtime due to her.  In addition, Ann Otsuka's wage earnings did not regularly meet and exceed the sales minimums set by Defendants.  She exceeded Defendants' sales minimum during only approximately five out of the 12 pay periods she worked for Defendants. Therefore, she was entitled to receive premium overtime compensation for hours worked in excess of eight hours per day or 40 hours per week, during those periods in which she was not an exempt employee.  (IWC Order 7-2001.) Defendants failed to provide all of those premium wages to Ms. Otsuka as required by law.

17.     Ann Otsuka received and reviewed Defendants' Sales Associate Compensation Handbook, which specifically provided:

> "Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate.   However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission.  If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

18.     This payroll policy is illegal under California law and was applied to Ann Otsuka during the course of her employment.  By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Ann Otsuka in a timely fashion.  In fact, while Ms. Otsuka terminated her employment with Defendants in October 2004, in response to Defendants' arrears program, Defendants have never paid her all the premium overtime compensation she was and is owed.  Defendants' representation that they would perform an end-of-the-year reconciliation, upon which Otsuka reasonably relied, was not fulfilled.  While this promise has been made to the Misclassification Subclass (see below) since at least 2002, Defendants first performed this promised reconciliation in late 2007, and then only after Plaintiffs asserted this claim in this case.  Ann Otsuka was entitled to premium compensation that was not paid to her and that remains unpaid.

19.     At the end of Ms. Otsuka's daily shifts, Defendants required her to clock out and then wait for a manager to check her person and personal effects to ensure she and other

1   employees leaving the store were not attempting to steal merchandise.  Ms. Otsuka routinely

2   had to wait with other sales associates each day for 10 to 20 minutes for the inspection.  She

3   was never compensated for that time.  Defendants' management team, including Kristi Mogel,

4   Human Relations Manager, instructed her that she was not to use the customer exit closest to

5   the interior of the mall in which the store is located.  When the store was closed at the end of

6   the day, that door was locked by a manager and could not be opened without a key.  Ann

7   Otsuka and the other sales associates did not have a key to that customer door.  The other exit,

8   also a customer door, was the only door Otsuka and other employees were permitted to use.

9   When the store closed each day, that door was also locked by a manager and could not be

10  opened without a key.  Ms. Otsuka and the other sales associates did not have a key to that

11  customer door either.  Otsuka was warned by her managers she would be reprimanded or

12  terminated if she left the store premises before a manager had inspected her.  Defendants'

13  Sales Associate Handbook, which was provided to Ms. Otsuka, stated this inspection

14  procedure was a condition of employment.  At the end of their shifts, Ms. Otsuka and her

15  fellow employees were physically confined to the interior of the store and could not leave the

16  store until they were inspected and a manager had unlocked the employee exit.

17  20.     Ann Otsuka was not permitted to take all of her rest breaks during the days that she

18  worked.   Her managers harassed her and her co-employees when she and they attempted to

19  take rest breaks, telling them they would fall behind on sales if they took the breaks. Ms.

20  Otsuka did not the mandatory rest breaks to which she was entitled because she feared she

21  would lose her job, or be harassed, if she did.

22  ### CORINNE PHIPPS

23  21.     Corinne Phipps (nee Mullen) was employed by Polo Retail Corp, and/or Polo Ralph

24  Lauren Corporation and/or Polo Retail, LLC, in Polo Ralph Lauren's retail store in San

25  Francisco, California, during approximately May-December 2004, in the Home Collections

26  Department.

27

8

22.     When Corinne Phipps began working for Defendants, Defendants' General Manager Tin Hua told her she would be compensated as a "draw versus commission" employee at $12.75 per hour, or 8% commission on product sales, whichever was greater.  She was not told and/or never understood Defendants would force her to pay back some of her earned commission wages if she did not meet sales minimums established by Defendants.  Nevertheless, Defendants established an arrears program that purported to authorize Defendants' to take previously paid commission wages from Ms. Phipps through payroll deductions that were insufficiently memorialized and communicated to her.  Ms. Phipps first learned about the arrears program from co-worker, Ann Otsuka, after Defendants had calculated Ms. Phipps owed the company money for failing to meet Defendants' sales minimum.  Ms. Phipps resigned in protest against Defendants' illegal policy.

23.     Further, when Defendants hired Ms. Phipps, they required her to sign an acknowledgement that she had received and understood the policies she alleges herein were illegal.  The acknowledgement purported to relieve Defendants of liability for their illegal conduct and practices, including those referenced in Defendants' Retail Employee Handbook.  By way of example, Defendants' Retail Employee Handbook (2002) provides that it is unacceptable for an employee to divulge "personal salary arrangements to other Polo Retail Corporation associates."  Divulging such information, the Handbook continues, "may lead to disciplinary action or termination. ..."  Defendants' compensation handbook, also provided to Ms. Phipps, required her to agree to illegal overtime policies.  These policies violated California law.

24.     During Ms. Phipps's employment with Defendants, she did not always sell enough merchandise to meet the sales target set by Defendants.  During at least four pay periods, Ms. Phipps sold less than 50% of the sales target set by Defendants.  During those four pay periods, Ms. Phipps was entitled to but not paid premium overtime compensation.    In addition, her compensation was such that her commission earnings were always below her hourly-based draw, based on Defendants' practice of setting sales minimums at a level that

was extremely difficult for employees to meet. Therefore, she was entitled to receive premium overtime compensation for hours worked in excess of eight hours per day or 40 hours per week, during those periods in which she was not an exempt employee. (IWC Order 7-2001.) Defendants failed to provide all premium wages to Ms. Phipps as required by California law by misclassifying her as an exempt employee.

25.     Ms. Phipps received and reviewed Defendants' Sales Associate Compensation Handbook, which specifically provided Defendants' Sales Associate Handbook specifically provides:

> "Sales Associates and Senior Sales Associates are not eligible to receive a premium overtime compensation rate. However, a sales commission reconciliation will be performed at the close of each fiscal year to ensure each associate is compliant with Federal Labor guidelines stipulating that the majority of their pay must be in the form of commission. If an associate is found to be overtime eligible at that time, then the appropriate amount of overtime compensation will be paid to that associate."

26.     This payroll policy is illegal under California law and was applied to Corinne Phipps during the course of her employment. By unlawfully delaying the "reconciliation" for up to a year, Defendants failed to pay Ms. Phipps in a timely fashion. In fact, while Corinne Phipps terminated her employment with Defendants in December 2004, Defendants have not paid her all of the premium overtime compensation she was and is owed. Defendants' representation that they would perform an end-of-the-year reconciliation, upon which Ms. Phipps reasonably relied, was not fulfilled. While this promise has been made to the entire Misclassification Subclass since at least 2002, Defendants first performed this promised reconciliation in late 2007, and then only after Plaintiffs asserted this claim in this case. Corinne Phipps was entitled to premium compensation that was not paid to her and that remains unpaid.

27.     At the end of Ms. Phipps's daily shifts, Defendants required her to clock out and then wait at the employee exit for a manager to check her purse and bags to make sure she and the other employees were not attempting to steal merchandise. Ms. Phipps routinely had to wait

10

1   with other sales associates near the employee exit for the mandatory management inspection.

2   She regularly was required to wait 10-15 minutes, but never was compensated for that time.

3   She was instructed by managers Theresa Cruz and Valerie Harrison that she was not to use

4   any customer exit to leave the store, and that if she tried to leave the store through the

5   employee exit before she had been inspected an alarm would sound and she could be

6   terminated.  Defendants' Sales Associate Handbook, which was provided and/or shown to

7   Ms. Phipps, stated this inspection procedure was a condition of employment.  Ms. Phipps felt

8   physically confined and feared leaving the store except as directed by her supervisors.  She

9   was led to believe her employer had the legal right to confine her within the store.

10                                    **JANIS KEEFE**

11  28.    Janis Keefe (nee Howay) worked for Polo Retail Corp., and/or Polo Ralph Lauren

12  Corporation and/or Polo Retail, LLC, during approximately May 2004-January 2005 in

13  Defendants' San Francisco retail store, as a sales associate in the Men's Department and

14  Men's Sport Department.

15  29.    When she began working there, Defendants' General Manager Tin Hua told her she

16  would be compensated as a "draw versus commission" employee at $12.75 per hour, or 8%

17  commission on sales, whichever was greater.  She was not told and/or never understood the

18  wage system to mean that she could be forced to pay back some of her earned wages if she

19  did not meet sales minimums established by Defendants.    Nevertheless, Defendants

20  established an arrears program that purportedly authorized Defendants to take or obtain

21  previously paid commission wages from Ms. Keefe through payroll deductions, which

22  Defendants did in or about September and December 2004.    These deductions were

23  insufficiently memorialized and communicated to her.

24  30.    Further, when Defendants hired Ms. Keefe, they required to sign an acknowledgement

25  that she had received and understood the policies she alleges herein were illegal.    The

26  acknowledgement also purported to relieve Defendants of liability for their illegal conduct

27  and practices, including those set out in Defendants' Retail Employee Handbook.  By way of

1    example, Defendants' Retail Employee Handbook (2002) provides that it is unacceptable for

2    an employee to divulge "personal salary arrangements to other Polo Retail Corporation

3    associates."  Divulging such information, the Handbook continues, "may lead to disciplinary

4    action or termination.  ..." Defendants' compensation handbook, also provided to Ms. Keefe,

5    required her to agree to illegal overtime policies.  These policies violated California law.

6    31.    During the course of Janis Keefe's employment with Defendants, she did not always

7    sell enough Polo merchandise to meet sales target set by Defendants.  During at least two pay

8    periods, Ms. Keefe sold less than 50% of the sales target set by Defendants.   During those

9    two pay periods, Ms. Keefe was entitled to but not paid premium overtime compensation.  In

10   addition, her compensation was such that her commission earnings were generally at or below

11   her hourly-based draw, based on Defendants' practice of setting sales minimums excessively

12   high.  During the approximately 18 pay periods Ms. Keefe worked for Defendants, she sold

13   enough merchandise to meet Defendants' sales minimum on only five occasions.  Therefore,

14   she was entitled to receive premium overtime compensation for hours worked in excess of

15   eight hours per day or 40 hours per week during those periods in which she was not an

16   exempt employee.  (IWC Order 7-2001.)  Defendants failed to provide all premium wages to

17   Plaintiff Janis Keefe as required under California law.

18   32.    Defendants' Sales Associate Handbook specifically provides:

19
20         "Sales Associates and Senior Sales Associates are not eligible to receive a
           premium overtime compensation rate.    However, a sales commission
           reconciliation will be performed at the close of each fiscal year to ensure each
21         associate is compliant with Federal Labor guidelines stipulating that the
           majority of their pay must be in the form of commission.  If an associate is
22         found to be overtime eligible at that time, then the appropriate amount of
           overtime compensation will be paid to that associate."
23

24   33.    This payroll policy is illegal under California law and was applied to Ms. Keefe during

25   the course of her employment.  By unlawfully delaying the "reconciliation" for up to a year,

26   Defendants failed to pay Ms. Keefe in a timely fashion.  In fact, while Ms. Keefe terminated

27   her employment with Defendants in January 2005, Defendants have not paid her all of the

12

1    premium overtime compensation she was and is owed.  Defendants' representation that they

2    would perform an end-of-the-year reconciliation, upon which Ms. Keefe reasonably relied,

3    was not fulfilled.  While this promise has been made to the entire Misclassification Subclass

4    since at least 2002, Defendants first performed this promised reconciliation in late 2007, and

5    then only after Plaintiffs asserted this claim in this case.  Janis Keefe was entitled to premium

6    compensation that was not paid to her and that remains unpaid.

7    34.     At the end of Ms. Keefe's shifts, Defendants required her to clock out and then wait at

8    the employee exit for a manager to check her person and personal effects to ensure she and

9    other employees were not attempting to steal merchandise.  Ms. Keefe routinely had to wait

10   with other sales associates each day near the employee exit for the mandatory management

11   inspection.  She regularly was required to wait 10-15 minutes for the inspection and was

12   never compensated for that time.  Theresa Cruz and Tin Hua instructed her she was not to use

13   a customer exit to leave the store and if she tried to leave the store through the employee exit

14   before she had been inspected, she could be terminated.  Defendants' Sales Associate

15   Handbook, which was provided and/or shown to Ms. Keefe, stated this inspection procedure

16   was a condition of employment.  She felt herself to be physically confined to the store's

17   interior and feared leaving the store except as directed by her supervisors.  She was led to

18   believe her employers had the legal right to detain her within her store after her work shift

19   was over.

20   35.     Janis Keefe was not permitted to take all of her rest breaks.  Her managers harassed

21   her and her co-employees when she and they attempted to take rest breaks, telling them that

22   they did not need to take the required breaks and that they would fall behind on sales if they

23   took the breaks.  Ms. Keefe felt harassed and intimidated by the comments of her managers,

24   and did not take her mandatory breaks because she feared she would lose her job, or be

25   harassed, if she did.

26                                **RENEE DAVIS**

27   36.     Renee Davis was employed in Defendants' Cabazon factory outlet store between

1  approximately November 2002 and March 2004 by Fashions Outlet of America, and/or Polo

2  Retail Corp., and/or Polo Ralph Lauren Corporation and/or Polo Retail, LLC.

3  37.     When Renee Davis began working for Defendants, she was told she would be

4  compensated on an hourly basis, at $8.00 per hour, as a seasonal employee.  Her store's

5  General Manager and Human Resources Department Manager, April Hicks, informed Ms.

6  Davis she was not permitted to discuss these wages with other employees and if she did so it

7  could cause unnecessary personnel problems.

8  38.     Renee Davis was provided Polo Ralph Lauren employee handbooks, the same

9  handbooks used in the Retail Stores, and was instructed those written policies governed her

10  duties and rights as an employee.  Based on information and belief, Renee Davis was required

11  to sign her acknowledgement that she would abide by the policies, some of which, as describe

12  above, were illegal under California law.

13  39.     Renee Davis was later re-classified by Defendants as a permanent employee.  She

14  worked various shifts, sometimes opening the store in the morning and sometimes closing it at

15  the end of the business day.  On several occasions, Ms. Davis worked more than eight hours a

16  day.  While she was, on occasion, paid premium overtime wages for working more than 8

17  hours in one day, Defendants' time records failed to record all compensable time she spent in

18  the store and on duty.  Thus, while Defendants paid Ms. Davis normal hourly compensation

19  and even premium overtime compensation on occasion, Defendants failed to pay her for

20  waiting for and undergoing loss prevention inspections.  On many days that Renee Davis

21  worked, she thus was required to perform work without compensation, working off the clock

22  at the direction and/or with the knowledge and acquiescence of Defendants.  On occasion, she

23  was entitled to, but not paid, premium overtime compensation for time she was on duty in the

24  store but was not being paid.

25  40.     When Ms. Davis worked the closing shift, Defendants' managers locked the store's

26  exit door and then required Ms. Davis to clock out and wait at the store exit for a manager to

27  check her person and personal effects to ensure she and the other employees were not

14

1    attempting to steal merchandise.  She regularly was required to wait 10-15 minutes for the

2    inspections, after she had clocked out, and was never compensated for that time.  She was

3    instructed by her store management that she could not leave the building until she had been

4    inspected.  Defendants' Sales Associate Handbook, which was provided and/or shown to

5    Renee Davis, stated this inspection procedure was a condition of employment.  She was

6    physically confined to the interior of the store and feared leaving the store through an alarmed

7    back door, except as directed by her supervisors.  The experience was often frustrating and

8    demeaning.  She was led to believe that her employers had the legal right to detain her within

9    her store after her work shift was over.

10   41.    Renee Davis was not always permitted to take rest breaks during the days that she

11   worked, especially during sales and holidays.   She estimates she missed her rest breaks

12   approximately 25% of the days she worked, often because there were not enough sales

13   associates on duty to assist customers if anyone took their rest breaks.  The store managers

14   were aware that Ms. Davis and her co-workers were not always able to take their rest breaks.

15   Yet, she and they did not receive compensation for these missed breaks as required by

16   California law.

17   42.    Defendants did not properly memorialize the time Renee Davis worked and,

18   consequently, their payroll records were inaccurate, in violation of California law.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

15

# CLASS ACTION ALLEGATIONS

43.    Plaintiffs brought this action in the Superior Court of California as a class action under Code of Civil Procedure § 382.  Following removal, Plaintiffs now bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class and subclass:

## CLASS

All former hourly-based employees of Defendants who were employed in Defendants' Retail and Outlet Stores in the State of California between May 30, 2002, and the present (the "Class Period").

## MISCLASSIFICATION SUBCLASS

All members of the Class who were misclassified as *bona fide* commission salespersons during the Class Period.

44.    The Class definition may be further defined or modified in Plaintiffs' motion for class certification, depending on additional information obtained through ongoing discovery.

45.    Defendants' wrongful conduct was a uniform practice that affected all proposed class members in substantially similar ways.  Defendants, by their standardized practices and policies, violated the rights of their employees under the California Labor Code, Industrial Wage Orders, the common law of California, and the Unfair Competition Law.  The questions raised therefore are of common or general interest to the Class members, and they have a well-defined community of interest in the questions of law and fact raised in this action.  The only salient difference between Class members will be the amounts owed to each individual member.

46.    Based on information and belief, Defendants have employed thousands of individuals in the State of California (a number known particularly to Defendants) since the beginning of the Class Period.  These individuals have been subject to Defendants' unlawful and wrongful practices, and their numerosity makes it impractical to bring them all before this forum, and disposition of their claims in a class action thus is a benefit to the parties and to the court.

47.    A class action is superior to other available means for the fair and efficient

16

1   adjudication of this controversy.  Individual joinder of all class members is not practicable,

2   and questions of law and fact common to the class predominate over any questions affecting

3   only individual members of the class.  Each member of the class has been damaged and is

4   entitled to recover.  Class action treatment will allow those similarly situated persons to

5   litigate their claims in the manner that is most efficient and economical for the parties and the

6   judicial system.

7   48.     A class action is appropriate because Plaintiffs' and Class members' damages,

8   although by no means inconsequential, do not rise to the level to make prosecution of

9   individual claims economically feasible for Plaintiffs and the large number of Class members.

10  The burden and expense of individual litigation makes it economically unfeasible, for both the

11  parties and the Court, for members of the Class to seek redress other than through a class

12  action.  Consequently, there would be a failure of justice but for the maintenance of the

13  present class action.

14  49.     The prosecution of thousands of individual cases by members of the class would tend

15  to establish inconsistent standards of conduct for the Defendants and would result in the

16  impairment of Class members' rights and the disposition of their interests through actions to

17  which they were not parties.

18  50.     Plaintiffs know of no difficulty that will be encountered in the management of this

19  litigation that would preclude its maintenance as a class action.

20  51.     Plaintiffs have incurred and, during the pendency of this action, will incur attorneys'

21  fees and expenses.  Such attorneys' fees and expenses are necessary for the prosecution of this

22  action and will result in a benefit to the class.

23  52.     The names and addresses of the persons who are members of the class are available

24  from Defendants' records and are therefore known to Defendants.  Notice can be provided to

25  the member of the class by mail, or by using techniques and a form of notice similar to those

26  customarily used in class actions under Federal law, with the costs of any notice to be borne

27  by Defendants.

17

53.     The Defendants' unlawful acts and unfair trade practices have affected all members of the Class in a similar manner.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants have committed actionable fraud (through misrepresentations, false promises and tortuous concealment of material facts) with respect to the Class?

(b)     Whether Defendants have unlawfully denied Class members regular and overtime wages?

(c)     Whether Defendants have misclassified Class members as *bona fide* commissioned employees?

(d)     Whether Defendants have unlawfully collected wages previously paid and earned by Class members based on an unlawful arrears program?

(e)     Whether Defendants have unlawfully coerced or compelled or otherwise required the Class to forego rest periods?

(f)     Whether Defendants have failed to timely pay all Class members?

(g)     Whether Defendants have failed to timely pay Class members who have quit or have been terminated?

(h)     Whether Defendants have breached employment contracts or covenants made with Class members?

(i)     Whether Defendants have violated California law by requiring Class members to agree in writing to illegal labor practices?

(j)     Whether Defendants have violated California law, including California's Unfair Competition laws (Business & Professions Code §§ 17200, *et seq.*) based on their violations of California law?

(k)     Whether Defendants have unlawfully failed to maintain Class

18

members' pay records, and/or failed to make those records

available for Class members' inspection upon request?

    (l)    Whether Defendants' labor policies and practices, as described

herein, constitute intentional or reckless violations of California

law, entitling Plaintiffs and the Class to exemplary damages?

54.    Plaintiffs' claims are typical of those of the Class they seek to represent because Plaintiffs and all members of the Class were injured in the same manner by Defendants' illegal acts and practices, and other wrongful conduct complained of herein.

55.    Plaintiffs will fully and adequately protect the interests of all members of the Class. Plaintiffs have retained attorneys who are experienced in employment class action litigation under California and Federal law.  Plaintiffs have no interests that are adverse to or in conflict with other members of the Class with respect to any of the claims asserted herein.

### First Cause of Action

### FRAUD

(On Behalf of the Misclassification Subclass against all Defendants)

56.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

57.    Defendants made false promises to employees regarding the wages they would receive while employed in Defendants' stores.

58.    Specifically, Defendants misrepresented to Plaintiffs Ann Otsuka, Janis Keefe, Corinne Phipps and the Misclassification Subclass that Defendants would perform an end-of-the-year wage reconciliation and pay premium overtime wages due, and that Defendants would properly record their employees' time and pay all wages due in a timely manner, including premium overtime.  Defendants made these representations to all members of the Misclassification Subclass in Defendants' written employee compensation handbook and employee handbook.  In fact, Defendants did not perform this reconciliation and failed to pay premium wages as required by California law.  Although Defendant have made this written

19

1   promise to all Class members since at least 2002, Defendants first attempted to perform on

2   this promise in 2007.  The reconciliation performed in 2007 in direct response to this lawsuit,

3   however, was not performed in compliance with California law.

4   59.     At the time these representations were made by Defendants, Plaintiffs and members of

5   the Misclassification Subclass were ignorant of the falsity of Defendants' representations and

6   believed them to be true, or were subject to Defendants' intentional concealment of these

7   material facts.   In reliance on these representations and/or without knowledge of the

8   fraudulent concealments, Plaintiffs and Misclassification Subclass members were induced to,

9   and did, work for Defendants at lower rates of pay than they had been promised and under

10  terms and conditions that constituted violations of California law.   Had Plaintiffs and

11  Misclassification Subclass members known the actual facts, they would not have taken such

12  action, that is, they would not have accepted employment with Defendants and/or would have

13  demanded and received complete payment of the wages to which the law entitled them.

14  60.     Plaintiffs' and Misclassification Subclass members' reliance on Defendants'

15  representations were justified because Defendants employed Plaintiffs and Misclassification

16  Subclass members, and they perceived Defendants as having the legal and corporate authority

17  to make the representations they made.

18  61.     As a proximate result of the fraudulent conduct of Defendants, Plaintiffs and

19  Misclassification Subclass members have been damaged in an amount to be proven at trial.

20  62.     The aforementioned acts were intentional misrepresentations, deceit, and concealment

21  of material facts known to Defendants, with the intention on the part of Defendants of

22  depriving Plaintiffs and Misclassification Subclass members of their rights under California

23  law.  Defendants' conduct was despicable in that it subjected Plaintiffs and Misclassification

24  Subclass members to cruel and unjust hardship, and Defendants acted in conscious disregard

25  of rights of Plaintiffs and Misclassification Subclass members, so as to justify an award of

26  exemplary and punitive damages.   Wherefore, Plaintiffs pray judgment as set forth herein

27  below.

20

**Second Cause of Action**

**FOR VIOLATIONS OF LABOR CODE 221**

(On Behalf of the Misclassification Subclass against all Defendants)

63.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

64.    California Labor Code § 221 provides:  "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

65.    In violation of this Labor Code provision, Defendants established a commission arrears program that permitted them to obtain wages back from employees who had earned those wages.  Furthermore, Defendants initiated and applied the commission arrears program without their employees' full knowledge and informed consent.  In addition, Defendants' commission arrears program has been applied to Defendants' employees in a manner that is inconsistent with express promises made to Defendants' employees at the commencement of their employment and during the course of their employment.  Also, as alleged herein, Defendants applied the commission arrears program without providing their employees with adequate records of its operation. Finally, because Defendants do not employee *bona fide* commissioned employees, the application of Defendants' arrears program to hourly, non-exempt employees violates California law as described herein.

66.    Misclassification Subclass members have been injured as a result of Defendants' violations of Labor Code § 221, and they seek as damages all wages owed to individuals employed by Defendants, plus all penalties permitted by law.

67.    Misclassification Subclass members are entitled to, and therefore request, an award of pre-judgment interest on the unpaid wages set forth herein.

68.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of law.  Wherefore, Plaintiffs pray judgment as set forth herein below.

21

**<u>Third Cause of Action</u>**

**FOR VIOLATIONS OF CALIFORNIA LABOR CODE §§ 510 AND 204 –**

**FAILURE TO PAY WAGES, INCLUDING PREMIUM OVERTIME WAGES**

(On Behalf of the Class against all Defendants)

69.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

On January 1, 2000, Labor Code § 510(a) was enacted and provides:

Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Labor Code § 1194(a) states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Labor Code § 204 states, in pertinent part:

All wages, other than those mentioned in Section 201, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.

70.    Under California law, Defendants are required to pay wages for each hour worked, and premium overtime wages when non-exempt employees work over 8 hours in a day or 40 hours in a week, by calculating the hourly rate and then computing the overtime premium amount owed.  Plaintiffs and members of the Class have worked for Defendants without being

22

1    paid for all hours worked, regular and overtime, as described above, including being forced to

2    work off the clock at the ends of their working shifts.

3    71.    In addition, Plaintiffs Ann Otsuka, Janis Keefe, Corinne Phipps and members of the

4    Misclassification Subclass did not regularly earn more commission than their base wages, did

5    not always earn more that 50% of their wages from commissions, and did not regularly meet

6    and exceed the sales targets set by Defendants.  Thus, these individuals were misclassified as

7    exempt employees under IWC 7-2001.   Defendants wage system was not a *bona fide*

8    commission system, and it permitted Defendants to avoid California's premium overtime

9    compensation laws.

10   72.    Furthermore, because Defendants do not employ *bona fide* commissioned employees

11   in their Retail Stores, the application of Defendants' arrears program to hourly, non-exempt

12   employees violates California law as described herein.  Thus, Plaintiffs and members of the

13   Misclassification Subclass who were deemed commissioned employees by Defendants, who

14   were not paid 1.5 times the applicable minimum wage for working overtime, who did not earn

15   more than 50% of their wages from commissions during a specific pay period, who did not

16   regularly earn more commission than their base rate of pay, and who worked overtime as

17   defined by California law, are entitled to premium overtime wages.  Defendants' once-a-year

18   reconciliation scheme, pursuant to which Defendants purport to determine if their employees

19   are entitled to premium overtime compensation, constitutes a willful failure to pay wages

20   timely.

21   73.    Due to Defendants' violation of duties to comply with statutory wage requirements,

22   the entire Class was damaged.

23   74.    Class members seek as damages all wages owed to individuals employed by

24   Defendants, plus penalties permitted by law.

25   75.    Class members are entitled to, and therefore request, an award of pre-judgment

26   interest on the unpaid wages.

27   76.    Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the

23

1  prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of

2  law.  Wherefore, Plaintiffs pray judgment as set forth below.

3  **Fourth Cause of Action**

4  **BREACH OF CONTRACT**

5  (On Behalf of the Class against all Defendants)

6  77.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

7  forth herein.

8  78.    Plaintiffs and the Class entered into employment contracts with Defendants

9  memorialized by employee manuals described herein.  These contracts were common to all of

10  Defendants' similarly-situated employees in the State of California and imposed duties on

11  Defendants, including the duty to pay wages as promised, the duty to provide rest breaks as

12  required under California law, the duty to pay for all time worked, the duty to refrain from

13  receiving back wages previously paid, and the duty to permit employees to leave Defendants'

14  premises after they had completed their shifts.

15  79.    Defendants breached all these contractual duties.  Plaintiffs and the Class fulfilled any

16  and all duties required of them to receive the benefit of the contracts they formed with

17  Defendants.

18  80.    Plaintiffs and the Class sustained damages as a direct and proximate result of

19  Defendants' contractual breaches, including the loss of wages.  Plaintiffs seek, on their own

20  behalf and on behalf of the entire Class, the value of all damages caused by Defendants'

21  breaches of contract described herein.

22  81.    Wherefore, Plaintiffs pray judgment as set forth herein below.

23  ///

24  ///

25  ///

26  ///

27  ///

24

**Fifth Cause of Action**

**FOR WILLFUL VIOLATIONS OF CALIFORNIA LABOR CODE §§ 201 -203 –**

**FAILURE TO PAY WAGES UPON DISCHARGE OR QUITTING;**

**WAITING TIME PENALTIES**

(On Behalf of the Class against all Defendants)

82.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

83.    California Labor Code §§ 201 and 202 require Defendants to pay their employees all wages due immediately upon discharge or 72 hours after an employee quits.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced.  The penalty cannot exceed 30 days of wages per violation.  A worker need not prove malice or intentional conduct in establishing their claim for waiting time penalties, but merely establish the employer did not do something it was obligated to do.  (*See* <u>Mamika v. Barca</u> (1998) 68 Cal. App. 4th 487; <u>Barnhill v. Robert Saunders & Co</u>. (1981) 125 Cal.App.3d 1.)

84.    Plaintiffs and Class members are entitled to unpaid compensation, but have not yet received such compensation.  Due to Defendants' willful conduct in not paying compensation for all hours worked, including premium overtime hours, Plaintiffs and Class members who were terminated or resigned are entitled to up to 30 days' wages as penalty under Labor Code § 203, plus interest and attorneys' fees and costs for each violation described above.  Wherefore, Plaintiffs pray judgment as set forth herein below.

///

///

///

///

///

25

### Sixth Cause of Action

**FOR VIOLATIONS OF CALIFORNIA LABOR CODE § 226.7 –**

**FAILURE TO AFFORD MANDATORY REST BREAKS AS REQUIRED BY**

**IWC ORDERS AND THE LABOR CODE**

(On Behalf the Class against all Defendants)

85.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

86.     At all times relevant, Plaintiffs and the Class members were covered by the provisions of Industrial Wage Commission ("IWC") Orders, including IWC Orders 7-2001.

87.     The IWC Orders provide, in applicable part:

> 12. (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

> 12. (B)  If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

> California Labor Code § 226.7 states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

88.     Defendants routinely failed to provide Plaintiffs and the Class members with a

minute paid rest period for each four (4) hour period of work, or major portion thereof, as required by IWC Orders and Labor Code § 226.7.  As a result, Plaintiffs and the Class members are entitled to recover an amount to be proven at trial, of not less than one additional hour of pay at the regular rate of compensation for each workday that any one rest period was not provided, and any and all penalties provided by law.

89.      Defendants' policy and practice of denying Plaintiffs and the Class rest periods constitutes a willful violation of California Labor Code § 226.7.  Plaintiffs and the entire Class have sustained damages as a direct and proximate consequence of the Defendants' willful and illegal conduct, to wit, they have been forced to work continuously throughout the day, every day, without being allowed to take the rest periods to which they legally were entitled.

90.      Plaintiffs have incurred, and will continue to incur attorneys' fees and costs in the prosecution of this action.  Plaintiffs seek attorneys' fees under all applicable provisions of law.  Wherefore, Plaintiffs pray judgment as set forth herein below.

<u>**Seventh Cause of Action**</u>

**FOR VIOLATIONS OF LABOR CODE § 226 –**

**FAILURE TO MAINTAIN PAY RECORDS; FAILURE TO MAKE**

**PAY RECORDS AVAILABLE UPON REQUEST**

(On Behalf of the Class against all Defendants)

91.      Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

92.      Defendants knowingly and intentionally failed to maintain accurate pay records, and failed to allow current and former employees to inspect accurate pay records upon request, in violation of California Labor Code § 226, as more fully alleged hereinabove.

93.      As a direct result of Defendants' failure, Plaintiff and Class members were injured and are entitled to recover an amount to be proven at trial, of not less than the penalties provided by the Labor Code.

27

1    94.    Plaintiff and Class members are entitled to penalties and attorneys' fees pursuant to

2    Labor Code § 226 and California Code of Civil Procedure § 1021.5.  Wherefore, Plaintiffs

3    pray judgment as set forth herein below.

**Eighth Cause of Action**

**FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**

**SECTIONS 17200, *ET SEQ*.**

(On Behalf of the Class against all Defendants)

95.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

forth herein.

96.    Plaintiffs further bring this action pursuant to Business and Professions Code Sections

17200, *et seq*., seeking restitution for monies owed for regular and overtime wages.

97.    Plaintiffs further bring this action pursuant to Business and Professions Code Sections

17200, *et seq*., seeking disgorgement of one hour of pay for every rest break missed by the

Class during the four years preceding the filing of this action through the present.  Unless

Defendants are ordered to disgorge these monies, they will be unjustly enriched by their

illegal conduct.

98.    The Unfair Competition Law prohibits all unfair competition, which is defined as "any

unlawful, unfair or fraudulent business act or practice."  Plaintiffs and the class have standing

to bring this claim because they are direct victims of Defendants' illegal and unfair business

practices, which Defendants engaged in for their sole financial benefit.

99.    Defendants, and each of them, are "persons" as defined under Business and

Professions Code § 17201.  Each of the directors, officers, and/or agents of Defendants, and

each of them, are equally responsible for the acts of the other directors, officers, employees

and/or agents as set forth in the Business and Professions Code § 17095.

100.    Plaintiffs and the Class members bring this action in the interest of themselves, as

representatives, and in the interest of other employees of Defendants, and each of them, and in

the interest of the public pursuant to § 17203 of the Business and Professions Code.  Plaintiffs

28

1    and Class members bring this cause of action seeking restitution for Defendants' failure to

2    pay employees regular and overtime wages, as well as disgorgement of wage penalties for

3    every rest break Defendants failed to provide.

4    101.    Plaintiffs and the Class members bring this action to pursue claims during a 4-year

5    statute of limitations under § 17208 of the California Business and Professions Code.

6    102.    The following practices of Defendants, and each of them, are unlawful and unfair

7    business practices under California Business and Professions Code §§ 17200 *et seq.*:

8        (a)    failure to pay all regular and overtime wages, in violation of the

9                California Labor Code and all other applicable laws;

10       (b)    failure to abide by promises regarding wages to be paid to

11               employees.

12       (c)    the use of fraud in the conduct of business;

13       (d)    imposition of an illegal and unconscionable arrears program

14               designed to obtain back from Plaintiffs and the Misclassification

15               Subclass wages that they had been previously paid, in violation of

16               Labor Code § 221;

17       (e)    breaches of employment contracts and covenants made to

18               employees;

19       (f)    failure to provide rest breaks pursuant to the Labor Code and

20               IWC wage orders;

21       (g)    failure to maintain accurate pay records, and make those records

22               available for inspection upon request by employees; and

23       (h)    unjust enrichment due to the failure to pay wages, including

24               overtime wages.

25   103.    At all times relevant, Defendants' conduct described above constituted an unfair,

26   unlawful, and/or fraudulent business practice in violation of Business & Professions Code §§

27   17200, *et seq.*

29

1   104.    Defendants have inequitably and unlawfully conspired, agreed, arranged and

2   combined to violate California labor laws, as alleged herein.

3   105.    As a direct and proximate result of the unfair, unlawful, and/or fraudulent business

4   practices alleged herein, Plaintiffs and the entire Class have been denied due wages, both

5   regular and overtime, as well as rest periods, all to their detriment and all to Defendants'

6   illegal economic advantage.

7   106.    The Unfair Competition Law provides that the Court may restore to an aggrieved party

8   any money or property acquired by means of unlawful and unfair business practices, and to

9   disgorgement of penalty wages for failing to provide rest periods to employees.  Plaintiffs and

10  Class members seek restitution of all unpaid wages owed to them and members of the general

11  public, and disgorgement of monies Defendants obtained from their unfair business practices.

12  107.    Business and Professions Code § 17202 states: "Notwithstanding Section 3369 of the

13  Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

14  penal law in a case of unfair competition."

15  108.    In addition to restoration of all wages owed, Plaintiffs and Class members seek to

16  enforce penalties in the interest of themselves, in the interest of other employees of

17  Defendants, and in the interest of the general public pursuant to § 17202:

18              (a)    waiting time penalties (Labor Code § 203);

19              (b)    extra hour of pay for not authorizing or permitting rest breaks

20          (Labor Code § 226.7); and

21              (c)    penalties for failure to maintain and make available for

22          inspection accurate pay records (Labor Code § 226);

23  109.    There is a financial burden incurred in pursuing this action that would be unjust to

24  place on Plaintiffs and the Class members, because the burden of enforcing workforce-wide

25  rights is disproportionate to that of enforcing only individual claims.  It would be against the

26  interests of justice to force payment of attorneys' fees from Plaintiff and Class members'

27  recovery in this action.  Therefore, attorneys' fees are appropriate and sought pursuant to all

30

1  applicable laws, including but not limited to Code of Civil Procedure § 1021.5.

2  110.    Wherefore, Plaintiffs pray judgment as set forth herein below.

3                                    **Ninth Cause of Action**

4                              **FOR DECLARATORY RELIEF**

5                      (On Behalf of the Class against All Defendants)

6  111.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set

7  forth herein.

8  112.    Plaintiffs and the Class seek a declaration that Defendants' concerted violations

9  alleged herein constitute unfair business practices, in violation of the Unfair Competition

10 Law.

11 113.    Plaintiffs and the Class also seek a declaration that Defendants' policy and practice of

12 denying regular and overtime wages and rest periods constitute a violation of California law,

13 as alleged herein.

14 114.    In addition, Plaintiffs and Class members seek a declaration that Defendants' policy

15 and practice of failing to maintain accurate pay records, and failing to provide employees with

16 those records for inspection upon request, constitutes a violation of California law, as alleged

17 herein.

18                                  **PRAYER FOR RELIEF**

19         WHEREFORE, Plaintiffs pray for relief as follows:

20         (a)     for an order certifying this action as a class action pursuant to Federal Rule of

21 Civil Procedure 23, designating Plaintiffs as the representatives of the Class, and designating

22 their attorneys counsel for the Class;

23         (b)     for damages for unpaid wages, including regular and overtime wages, and such

24 general and special damages as may be appropriate, according to proof at trial;

25         (c)     for 30 days waiting time penalties under Labor Code § 203;

26         (d)     for penalties under Labor Code § 558(a)(3);

27         (e)     for penalties under Labor Code § 226(f);

31

1    (f)    for damages calculated at one extra hour for each day no rest period was

2    provided (Labor Code § 226.7);

3    (g)    for a declaration that Defendants' conduct as alleged herein constitutes unfair

4    competition in violation of California's Unfair Competition Law and Labor Code;

5    (h)    for punitive or exemplary damages; for costs of prosecuting this action,

6    together with interest and reasonable attorneys' and experts' fees; and

7    (i)    for such other relief as the Court may deem just.

8                                      <u>**JURY DEMAND**</u>

9    Plaintiffs demand a trial by jury.

10

11    DATED:  March 17, 2008              THE LAW OFFICE OF PATRICK R. KITCHIN

12

13                                       By:_____/s/_____
                                            Patrick R. Kitchin, Esq.
14
                                         Attorneys for Janis Keefe, Corinne Phipps
15                                       and Renee Davis

16

17    DATED:  March 17, 2008              THE LAW OFFICES OF DANIEL FEDER

18                                       By:_____/s/_____
19                                          Daniel L. Feder, Esq.

20                                       Attorneys for Plaintiff Ann Otsuka

21

22

23

24

25

26

27
                                                                             32