Patrick R. Kitchin, Esq. (SBN. 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
415-677-9058
415-627-9076 (fax)

Attorneys for Plaintiffs
Janis Keefe, Corinne Phipps and Renee Davis

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and RENEE DAVIS, an individual; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>POLO RALPH LAUREN CORPORATION; a Delaware Corporation; POLO RETAIL, LLC., a Delaware Corporation; POLO RALPH LAUREN CORPORATION, a Delaware Corporation, doing business in California as POLO RETAIL CORP; and FASHIONS OUTLET OF AMERICA, INC., a Delaware Corporation<br><br>Defendants. | Case No.: C-07-02780-SI<br><br>**DECLARATION OF PATRICK R. KITCHIN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Judge: Hon. Susan Illston**<br>**Hearing Date: July 11, 2008**<br>**Hearing Time: 9:00 a.m.**<br><br>**Location: Courtroom 10, 19th Floor**<br>**450 Golden Gate Avenue**<br>**San Francisco, California 94102** |

I, Patrick R. Kitchin, declare as follows:

1. In this action, I serve as counsel to Plaintiffs Janis Keefe, Corinne Phipps and Renee Davis, individually and on behalf of all others similarly situated. I make this declaration in support of Plaintiffs motion for class certification based on personal knowledge.

2. I graduated from The University of Michigan Law School in May 1992 and was admitted to the California State Bar in December 1992. I have been actively practicing law in the State of California for approximately 14 years. Between September 1992 and March 1999, I worked as an associate for the following law firms: Stutz, Gallagher, Artiano, Shinoff & Holtz (San Diego, 1992-1995); Hovey & Kirby (San Diego, 1995-1997); and Sedgwick, Detert, Moran & Arnold (San Francisco 1997-1999). In those positions I worked on various litigation teams representing auto manufacturers, pharmaceutical companies, municipal school districts, community colleges, property owners, large and small businesses, and various employers across the State of California. Many of these litigation matters involved claims for damages in excess of $1 million.

3. In the spring of 1999, I formed The Law Office of Patrick R. Kitchin in San Francisco, California. I am the principal and sole owner of the firm, which specializes in representing plaintiffs in employment law matters. I have substantial experience in the prosecution of class action matters in both State and Federal Courts.

4. In September 2002, on behalf of aggrieved employees, my office filed an employment class action against Polo Ralph Lauren Corporation and other related business entities alleging labor law violations relating to Polo’s mandatory employee uniform policies and practices. After two years of litigation, including motions to dismiss and for summary judgment, plaintiffs achieved a class-wide settlement of all claims in that case, for a total value of $1,500,000. That settlement was approved by Judge Vaughn Walker of the United States District Court for the Northern District of California (Toni Young v. Polo

Ralph Lauren Corporation, et al. Case No. C02-4546 VRW). I served as colead class counsel class counsel.

5. In March 2003, my office filed an employment class action on behalf of employees of The Gap and Banana Republic, alleging labor law violations similar in kind to the ones alleged in the above-referenced Polo case, and served as class counsel. On May 31, 2005, Judge James Warren of the San Francisco Superior Court granted final approval of a class wide settlement of that action, which resulted in substantial benefits to the affected employees. (Robert Boleyn v. The Gap, et al., Case Number CGC-03-417075.)

6. In May 2003, my office filed an employment class action for employees of Chico's FSA, Inc., alleging labor law violations relating to Chico's mandatory employee uniform policies and practices (Villanueva v. Chico's FAS, Inc., Case No. CGC-03-420380). In December 2005, the San Francisco Superior Court approved a class-wide settlement valued at $500,000, and appointed my office as class counsel.

7. In July 2005, I filed an employment class action against Catalina Restaurant Group, Inc., in Alameda County Superior Court, Case No. RG05224331, alleging violations of California labor laws. The Superior Court granted final approval of a class-wide settlement of $225,000, in May 2007, appointing me as class counsel.

8. I have also participated in the prosecution of other employment and consumer class action cases in California during the past four years, including cases against 24 Hour Fitness, USA, Inc., Catalina Restaurant Group, Inc., Ross Dress for Less, Inc., and Bimbo Bakeries, Inc.

9. Since opening my law practice in 1999, I have also tried several personal injury cases to verdict and have represented employees in discrimination, harassment and retaliation cases. I currently represent a former Polo employee in an action venued in Los Angeles Superior Court alleging Polo failed to pay him all of the commissions due after he left Polo's employment. That matter is set for trial in July 2008. (Scott Strohschein v. Polo Rodeo, Inc., et al., Case No. 08C00893.)

10. In all of the cases described above, including the instant one, I have played a significant role in the factual investigation of class-wide claims, the analysis of class wide damages, drafting pleadings and motions, appearing and arguing almost all motions, and working with the representative class plaintiffs.

11. In the instant case, I have taken 14 depositions of Defendants' witnesses across the country, in New York, Chicago, San Francisco, Palo Alto and Irvine. I have also partnered with other experienced attorneys in the prosecution of this case, including Nancy E. Hudgins, Matthew M. Grigg, Mary M. Leichliter, and William B. Sturgeon. (See, Declaration of Nancy E. Hudgins, submitted herewith.) I have been the primary contact with Plaintiffs during the course of this litigation, keeping them abreast of every significant development.

12. Plaintiffs Keefe, Phipps and Davis have been intimately involved in the prosecution of this action and have cooperated fully with counsel to fulfill their fiduciary duties to the class. They have each had their depositions taken and have assisted counsel in preparing responses to written discovery and in identifying factual issues relevant to their claims. To date, I have personally devoted nearly 1,000 hours to this case and will continue this level of involvement as this case proceeds.

13. Plaintiffs' litigation team also includes economists, licensed private investigators, paralegals and experienced legal assistants who have devoted substantial time to this case under counsels' direction. My office and the Law Offices of Nancy E. Hudgins have devoted substantial resources to the prosecution of this case and have incurred substantial costs on behalf of the putative class. We have made this case a priority and will continue to devote the necessary time and financial resources to its successful prosecution.

14. Finally, I have served as counsel in five lawsuits against the Defendants since 2002 and have personally counseled numerous current and former Polo employees on various employment issues. I have an intimate understanding of Polo's employment policies and practices, its history of operation in California, and I have spoken with dozens of Polo's

employees over the years on various topics relating to the claims made in this case. I have taken depositions of a large number of Polo managers, including senior department heads, some of them on multiple occasions. Numerous current and former employees of the company have directly benefited from my advocacy. Over one hundred Polo employees have contacted my office over the past six years to seek my assistance and counsel.

15. My prosecution of the Toni Young v. Polo matter (see above) resulted in the revocation of Polo's mandatory employee uniform policy across California. I believe the change in that uniform policy has saved Polo employees hundreds of thousands of dollars since the mandatory uniform policy was revoked in December 2002 (three months after I filed the uniform lawsuit against the company.) The results of my advocacy continue to benefit current Polo employees who are no longer required to purchase Polo products as a term and condition of employment.

16. On Saturday, May 31, 2008, I received from Polo's counsel an Excel file containing records of product sales, hours worked, wages paid and commissions earned for Polo fiscal years 2003, 2004, 2005, 2006 and 2007, containing data covering 14,320 pay periods for its Full Price sales associates in California. (These pay periods include data on managers and what Polo calls "senior sellers." The number of pay periods is over estimated in the data because Polo includes references to employees after they are no longer working for the company as products they sold are returned to the store.) The Excel worksheets for each year slightly vary in format, but each fiscal year includes data permitting an accurate analysis of factors relevant to determining the composition and identity of misclassification subclass members.

17. Pursuant to a stipulation between the parties, Polo produced the data in lieu of producing a qualified witness. I have spent approximately 30 hours reviewing the data, identifying misclassification subclass members and preparing the Excel worksheet attached to this declaration as Exhibit 100. Exhibit 100 lists 49 individuals who failed to cover their wages through product sales more than 50% of the pay periods they worked for Polo.

These individuals were identified by sorting the data in various ways, including by store, employee number, sales history, wage history, commission payments and commission rates. When I identified an employee who had failed to cover their hourly wages through sales during a single fiscal years, I copied the employees data to Exhibit 100. With the assistance of a paralegal in my office, I then ran searches for data pertaining to the employee in all other years. When I found data in other years pertaining to the individual, I copied the data into Exhibit 100. The only change made to Polo's payroll records was to the color of the wage entries and in some instances the removal of duplicative data. When a sales associate failed to sell enough merchandise to cover their hourly wage, I highlighted that pay period in red. The data is black on those occasions when a sales associate's sales covered their hourly wages for that pay period. The only analysis I performed on the data was to count the total number of pay periods shown for a specific employee in Polo's data and the total number of times the employee failed to cover their hourly draw. The results of this simple analysis are shown below each employee's data in large print, such as "Missed Draw Target Every Pay Period," meaning the employee failed to cover their wages during any pay period during their employment.

18. Exhibit 100 includes data relating to the sales performance and wages of 49 former Polo employees. I identified an additional 20 individuals whose data have not yet been added to Exhibit 100. Those additional 20 employees are identified by the following numbers in Polo's wage records: 54579, 54983, 20933, 37761, 54835, 555375, 55671, 13779, 51740, 56355, 62750, 52209, 54487, 57865, 66345, 327291, 15671, 61456, 61469 and 55552. According to Polo's data, all of these additional 20 individuals failed to cover their hourly wages through commissions more than 50% of the time. Eight of these individuals never covered their wages through sales. Overall, then, I have identified a total of 69 members of the misclassification subclass, a number sufficient to justify class treatment.

19. The data Polo produced to Plaintiffs, however, does not appear complete. For example, the data for fiscal year 2004 only shows 771 total workweeks for all employees, while all other years show substantially greater numbers of workweeks: 2033 workweeks for 2003, 3440 workweeks for 2005, 4024 workweeks for 2006 and 4052 workweeks for 2007. In addition, data relating to persons Polo calls "senior sellers" have been removed from the Excel workbook.

20. In the subsequent weeks, Plaintiffs intend to re-notice the deposition of a qualified Polo witness who can explain the way the data were compiled and maintained, and what was included or excluded from its production to my office.

21. Based on my review and understanding of the data, three things are apparent. First, Polo's payroll records permit one to identify through a straightforward mechanical formula specific individuals whose sales and wage histories demonstrate they were misclassified as exempt employees. (That Polo maintains the data in Excel format makes the task comparatively simple.) Second, Polo's payroll data appear sufficiently consistent across fiscal years to permit Plaintiffs to evaluate data relating to all Full-Price Store employees who worked for Polo at any time since 2002. Third, the number and composition of the misclassification subclass is likely to grow once Polo provides missing data relating to fiscal year 2004 and senior sellers. Plaintiffs seek to certify a misclassification subclass consisting of such individuals, including those 69 individuals listed in Exhibit 100.

22. On June 4, 2008, Polo's counsel provided my office with Exhibit 107, a compilation of data relating to those persons whose wages were negatively affected by Polo's arrears program. Based on discussions with Polo's counsel, William Goines, I understand Polo knows the specific identify of those persons identified in Exhibit 107 by name. Polo identifies a total of 55 individuals who fell into arrears during the pendency of the arrears program (2004-2006) because they had failed to cover their hourly wages through product sales. Forty-nine of these individuals had their wages adversely affected when Polo debited their earned commissions in subsequent pay periods.

23. On May 31, 2008, Polo produced a database containing the names of 5,352 individuals who terminated their employment with Polo between May 2002 and May 2008. These data apparently do not contain the names of cashiers, like Plaintiff Renee Davis, who worked in Polo's Factory Outlet stores during this time period. I informed Polo's counsels of this data problem on June 5, 2008, asking them to provide my office with a count of these cashiers. I have not received that additional information as of today. Given Polo's counsels' cooperation to date, I anticipate Polo will produce the requested information before Plaintiffs file their reply brief to this motion. At that time, Plaintiffs should have a complete count of the class members.

24. In my estimation, individualized issues concerning the Arrears Subclass would relate primarily, if not exclusively, to a straightforward mechanical calculation of damages.

25. Attached as Exhibit 1. is a true and correct copy of a printout from Polo Ralph Lauren Corporation's corporate website.

26. Attached as Exhibit 2. is a true and correct copy an excerpt from Polo Ralph Lauren's 2007 Annual Report (available at http://investor.polo.com/).

27. Attached as Exhibit 3. is a true and correct copy of a Polo Ralph Lauren's list of California stores.

28. Attached as Exhibit 4. is a true and correct copy of the Deposition of Kimberly Babka, 113:25-114:3, 119:1-5.

29. Attached as Exhibit 5. is a true and correct copy of the Deposition of Sharonda Weatherspoon, 45:11-13, 83:16-85:15.

30. Attached as Exhibit 6. is a true and correct copy of the Deposition of Theresa Cruz, 61:2-7, 99:13-23, 100:14-20.

31. Attached as Exhibit 7. is a true and correct copy of the Deposition of Tin Hua, 30:20-31:6.

32. Attached as Exhibit 8. is a true and correct excerpt of the Deposition of Corinne Phipps, 39:4-10.

33. Attached as Exhibit 9. is a true and correct excerpt of the Deposition of Janis Keefe, 116:11-19.

34. Attached as Exhibit 10. is a true and correct excerpt of the Deposition of Renee Davis, 67:17-68:13, 21:11-17.

35. Attached as Exhibit 11. is a true and correct excerpt of the Deposition of Justin Kiser, 107:11-20.

36. Attached as Exhibit 12. is a true and correct copy of the Polo Employee Handbook dated 2002.

37. Attached as Exhibit 13. is a true and correct copy of the Polo Employee Handbook dated 2007.

38. Attached as Exhibit 14. is a true and correct excerpt of the Deposition of Kimberly Babka, 74:3-21.

39. Attached as Exhibit 15. is a true and correct excerpt of the Deposition of Phoebe Mireles, 95:24-96:2.

40. Attached as Exhibit 16. is a true and correct excerpt of the Deposition of Sharonda Weatherspoon, 76:9-77:7.

41. Attached as Exhibit 17. is a true and correct excerpt of the Deposition of Valerie Harrison, 90:8-22.

42. Attached as Exhibit 18. is a true and correct excerpt of the Deposition of Corinne Phipps, 55:22-64:11.

43. Attached as Exhibit 19. is a true and correct excerpt of the Deposition of Harvey Resnick, 39:14-45:5, 71:17-72:10.

44. Attached as Exhibit 20. is a true and correct excerpt of the Deposition of Janis Keefe, 113:19-21.

45. Attached as Exhibit 21. is a true and correct excerpt of the Deposition of Valerie Harrison, 125:19-23.

46. Attached as Exhibit 22. is a true and correct excerpt of the Deposition of Tin Hua, 66:25-68:9.

47. Attached as Exhibit 23. is a true and correct excerpt of the Deposition of Phoebe Mireles, 23:19-24:5.

48. Attached as Exhibit 24. is a true and correct excerpt of the Deposition of Sharonda Weatherspoon, 61:17-62:12, 71:24-72:5.

49. Attached as Exhibit 25. is a true and correct excerpt of the Deposition of Kristi Mogel, 151:2-13.

50. Attached as Exhibit 26. is a true and correct excerpt of the Deposition of Theresa Cruz, 48:20-23, 50:16-24.

51. Attached as Exhibit 27. is a true and correct excerpt of the Deposition of Valerie Harrison, 28:5-12.

52. Attached as Exhibit 28. is a true and correct excerpt of the Deposition of Janis Keefe, 58:16-59:6.

53. Attached as Exhibit 29. is a true and correct excerpt of the Deposition of Renee Davis, 42:6-23.

54. Attached as Exhibit 30. is a true and correct excerpt of the Deposition of Theresa Cruz, 140:1-14.

55. Attached as Exhibit 31. is a true and correct excerpt of the Deposition of Valerie Harrison, 90:23-91:4.

56. Attached as Exhibit 32. is a true and correct excerpt of the Deposition of Kristi Mogel, 152:20-154:22.

57. Attached as Exhibit 33. is a true and correct excerpt of the Deposition of Valerie Harrison, 29:11-15.

58. Attached as Exhibit 34. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 42:22-43:5.

59. Attached as Exhibit 35. is a true and correct excerpt of the Deposition of Sharonda Weatherspoon, 62:13-63:23, 68:14-69:1.

60. Attached as Exhibit 36. is a true and correct excerpt of the Deposition of Theresa Cruz, 49:3-25.

61. Attached as Exhibit 37. is a true and correct excerpt of the Deposition of Phoebe Mireles, 41:20-42:9.

62. Attached as Exhibit 38. is a true and correct excerpt of the Deposition of Harvey Resnick, 26:22-27:4, 27:22-25.

63. Attached as Exhibit 39. is a true and correct excerpt of the Deposition of Phoebe Mireles, 79:7-11.

64. Attached as Exhibit 40. is a true and correct excerpt of the Deposition of Janis Keefe, 102:24-110:23.

65. Attached as Exhibit 41. is a true and correct excerpt of the Deposition of Renee Davis, 73:12-74:24.

66. Attached as Exhibit 42. is a true and correct excerpt of the Deposition of Beth Flynn, 25:13-26:2.

67. Attached as Exhibit 43. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 124:3-125:3.

68. Attached as Exhibit 44. is a true and correct excerpt of the Deposition of Harvey Resnick, 29:5-23.

69. Attached as Exhibit 45. is a true and correct excerpt of the Deposition of Phoebe Mireles, 51:23-59:15.

70. Attached as Exhibit 46. is a true and correct excerpt of the Deposition of Harvey Resnick, 37:14-38:11.

71. Attached as Exhibit 47. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 54:3-14.

72. Attached as Exhibit 48. is a true and correct excerpt of the Deposition of Justin Kiser, 251:9-21.

73. Attached as Exhibit 49. is a true and correct excerpt of the Deposition of Janis Keefe, 106:12-20, 107:3-6.

74. Attached as Exhibit 50. is a true and correct excerpt of the Deposition of Theresa Cruz, 254:2-13.

75. Attached as Exhibit 51. is a true and correct excerpt of the Deposition of Renee Davis, 75:3-76:5.

76. Attached as Exhibit 52. is a true and correct excerpt of the Deposition of Harvey Resnick, 127:17-130:12.

77. Attached as Exhibit 53. is a true and correct excerpt of the Deposition of Justin Kiser, 255:24-256:6.

78. Attached as Exhibit 54. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 125:4-25.

79. Attached as Exhibit 55. is a true and correct excerpt of the Deposition of Theresa Cruz, 78:6-79:21.

80. Attached as Exhibit 56. is a true and correct copy of the Declaration of Judy Liu.

81. Attached as Exhibit 57. is a true and correct excerpt of the Deposition of Harvey Resnick, 46:10-47:1, 129:6-16.

82. Attached as Exhibit 58. is a true and correct copy of the Declaration of Asya Soloian.

83. Attached as Exhibit 59. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 141:17-20, 22:10-15, 26:6-27:2, 117:19-119:1, 120:3-15, 141:10-142:13, 121:4-6, 123:1-11.

84. Attached as Exhibit 60. is a true and correct excerpt of the Deposition of Kimberly Babka, 124:25-125:11.

85. Attached as Exhibit 61. is a true and correct excerpt of the Deposition of Kimberly Babka, 122:20-123:24.

86. Attached as Exhibit 62. is a true and correct excerpt of the Deposition of Theresa Cruz, 221:25-222:8.

87. Attached as Exhibit 63. is a true and correct excerpt of the Deposition of Corinne Phipps, 51:17-52:8, 63:9-18.

88. Attached as Exhibit 64. is a true and correct excerpt of the Deposition of Justin Kiser, 261:24-264:12.

89. Attached as Exhibit 65. is a true and correct excerpt of the Deposition of Harvey Resnick, 43:2-44:2, 98:3-99:5.

90. Attached as Exhibit 66. is a true and correct copy of the Declaration of Allison Dankberg.

91. Attached as Exhibit 67. is a true and correct excerpt of the Deposition of Corinne Phipps, 63:20-64:6.

92. Attached as Exhibit 68. is a true and correct excerpt of the Deposition of Janis Keefe, 109:1-13, 110:12-23.

93. Attached as Exhibit 69. is a true and correct excerpt of the Deposition of Renee Davis, 75:3-78:1.

94. Attached as Exhibit 70. is a true and correct excerpt of the Deposition of Justin Kiser, 258:18-259:18, 253:18-22.

95. Attached as Exhibit 71. is a true and correct copy of the Declaration of Katy Fawver.

96. Attached as Exhibit 72. is a true and correct copy of the Declaration of Megan Glassmeyer.

97. Attached as Exhibit 73. is a true and correct copy of the Declaration of Saundra Nicholson.

98. Attached as Exhibit 74. is a true and correct copy of the Declaration of Mara Apodaca.

99. Attached as Exhibit 75. is a true and correct copy of the Declaration of Amir Filsoof.

100. Attached as Exhibit 76. is a true and correct excerpt of the Deposition of Kristi Mogel, 157:2-10.

101. Attached as Exhibit 77. is a true and correct excerpt of the Deposition of Valerie Harrison, 170:8-171-8.

102. Attached as Exhibit 78. is a true and correct excerpt of the Deposition of Rosalinda Wallwork, 143:3-21.

103. Attached as Exhibit 79. is a true and correct excerpt of the Deposition of Phoebe Mireles, 63:5-64:13.

104. Attached as Exhibit 80. is a true and correct excerpt of the Deposition of Theresa Cruz, 257:19-24, and 258:2-12.

105. Attached as Exhibit 81. is a true and correct excerpt of the Deposition of Valerie Harrison, 166:20-167-18.

106. Attached as Exhibit 82. is a true and correct copy of the Declaration of Mandy Shade.

107. Attached as Exhibit 83. is a true and correct copy of the Declaration of Dave Land.

108. Attached as Exhibit 84. is a true and correct excerpt of the Deposition of Justin Kiser, 281:2 -282:23, 285:16-286:15.

109. Attached as Exhibit 85. is a true and correct excerpt of the Deposition of Janis Keefe, 84:2-85:24.

110. Attached as Exhibit 86. is a true and correct excerpt of the Deposition of Joanne Conovas, 53:15-25.

111. Attached as Exhibit 87. is a true and correct excerpt of the Deposition of Beth Flynn, 74:3-17.

112. Attached as Exhibit 88. is a true and correct excerpt of the Deposition of Sharonda Weatherspoon, 49:12-21.

113. Attached as Exhibit 89. is a true and correct copy of the Polo Employee Compensation Handbook, dated April 2002.

114. Attached as Exhibit 90. is a true and correct excerpt of the Deposition of Kimberly Babka, 77:2-10, 79:3-80:24.

115. Attached as Exhibit 91. is a true and correct excerpt of the Deposition of Theresa Cruz, 61:2-7, 158:8-15.

116. Attached as Exhibit 92. is a true and correct excerpt of the Deposition of Kristi Mogel, 76:21-77:18, 135:15-136:1.

117. Attached as Exhibit 93. is a true and correct excerpt of the Deposition of Valerie Harrison, 99:20-24.

118. Attached as Exhibit 94. is a true and correct excerpt of the Deposition of Corinne Phipps, 112:4-14.

119. Attached as Exhibit 95. is a true and correct excerpt of the Deposition of Harvey Resnick, 67:21-69:2.

120. Attached as Exhibit 96. is a true and correct excerpt of the Deposition of Kimberly Babka, 49:20-51:25.

121. Attached as Exhibit 97. is a true and correct copy of the PRC Sales Associate Compensation Re-Structure April 2002.

122. Attached as Exhibit 98. is a true and correct excerpt of the Deposition of Kimberly Babka, 56:4-10.

123. Attached as Exhibit 99. is a true and correct copy of Defendants' responses to Plaintiffs' Judicial Council Form Interrogatories.

124. Attached as Exhibit 100. is a true and correct copy of a table I created showing wage data for 49 former employees of the Defendants in California.

125. Attached as Exhibit 101. is a true and correct copy of a February 7, 1994, Opinion Letter of the California Department of Industrial Relations, Division of Labor Standards Enforcement, signed by Chief Counsel H. Thomas Cadell, Jr., and a true and correct copy of page 50-5 of the California Division of Labor Standards Enforcement, Enforcement Policies and Interpretations Manual, each addressing suspect commission plans like Polo's.

126. Attached as Exhibit 102. is a true and correct excerpt of the Deposition of Evan Cohen, 14:2-19, 76:5-77:16.

127. Attached as Exhibit 103. is a true and correct copy of Polo's Special FY05 Addendum.

128. Attached as Exhibit 104. is a true and correct of Polo's Fiscal 2007 Compensation Update.

129. Attached as Exhibit 105. is a true and correct excerpt of the Deposition of Harvey Resnick, 59:7-21, 109:13-110:6.

130. Attached as Exhibit 106. is a true and correct excerpt of the Deposition of Kimberly Babka, 89:24-90:5.

131. Attached as Exhibit 107. is a true and correct of data produced to Plaintiffs by Polo showing former employees affected by Polo's Arrears program between 2004 and 2006.

132. Attached as Exhibit 108. is a true and correct of the Declaration of Kayla Benado.

133. Attached as Exhibit 109. is a true and correct of the Declaration of Samir Abu Tahir.

///

///

///

///

///

///

///

134. Attached as Exhibit 110. is a true and correct of the Declaration of Amberly Ahring.

135. Attached as Exhibit 111. is a true and correct of the Declaration of Harvey Resnick.

136. Attached as Exhibit 112. is a true and correct of the Declaration of Stacy Shade.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was made on June 3, 2007, in San Francisco, California.

/s/ Patrick R Kitchin

Patrick R. Kitchin