Patrick R. Kitchin, Esq. (SBN. 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
415-677-9058
415-627-9076 (fax)

Attorneys for Plaintiffs
Janis Keefe, Corinne Phipps and Renee Davis

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and RENEE DAVIS, an individual; individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>     vs.<br><br>POLO RALPH LAUREN CORPORATION; a Delaware Corporation; POLO RETAIL, LLC., a Delaware Corporation; POLO RALPH LAUREN CORPORATION, a Delaware Corporation, doing business in California as POLO RETAIL CORP; and FASHIONS OUTLET OF AMERICA, INC., a Delaware Corporation<br><br>          Defendants. | Case No.: C-07-02780-SI<br><br>**AMENDED DECLARATION OF PATRICK R. KITCHIN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**Judge: Hon. Susan Illston**<br>**Hearing Date: July 11, 2008**<br>**Hearing Time: 9:00 a.m.**<br><br>**Location: Courtroom 10, 19th Floor**<br>450 Golden Gate Avenue<br>San Francisco, California 94102 |

I, Patrick R. Kitchin, declare as follows:

1. In this action, I serve as counsel to Plaintiffs Janis Keefe, Corinne Phipps and Renee Davis, individually and on behalf of all others similarly situated. I make this declaration in support of Plaintiffs motion for class certification based on personal knowledge.

2. I graduated from The University of Michigan Law School in May 1992 and was admitted to the California State Bar in December 1992. I have been actively practicing law in the State of California for approximately 14 years. Between September 1992 and March 1999, I worked as an associate for the following law firms: Stutz, Gallagher, Artiano, Shinoff & Holtz (San Diego, 1992-1995); Hovey & Kirby (San Diego, 1995-1997); and Sedgwick, Detert, Moran & Arnold (San Francisco 1997-1999). In those positions I worked on various litigation teams representing auto manufacturers, pharmaceutical companies, municipal school districts, community colleges, property owners, large and small businesses, and various employers across the State of California. Many of these litigation matters involved claims for damages in excess of $1 million.

3. In the spring of 1999, I formed The Law Office of Patrick R. Kitchin in San Francisco, California. I am the principal and sole owner of the firm, which specializes in representing plaintiffs in employment law matters. I have substantial experience in the prosecution of class action matters in both State and Federal Courts.

4. In September 2002, on behalf of aggrieved employees, my office filed an employment class action against Polo Ralph Lauren Corporation and other related business entities alleging labor law violations relating to Polo's mandatory employee uniform policies and practices. After two years of litigation, including motions to dismiss and for summary judgment, plaintiffs achieved a class-wide settlement of all claims in that case, for a total value of $1,500,000. That settlement was approved by Judge Vaughn Walker of the United States District Court for the Northern District of California (Toni Young v. Polo

Ralph Lauren Corporation, et al. Case No. C02-4546 VRW). I served as colead class counsel class counsel.

5.  In March 2003, my office filed an employment class action on behalf of employees of The Gap and Banana Republic, alleging labor law violations similar in kind to the ones alleged in the above-referenced Polo case, and served as class counsel. On May 31, 2005, Judge James Warren of the San Francisco Superior Court granted final approval of a class wide settlement of that action, which resulted in substantial benefits to the affected employees. (Robert Boleyn v. The Gap, et al., Case Number CGC-03-417075.)

6.  In May 2003, my office filed an employment class action for employees of Chico's FSA, Inc., alleging labor law violations relating to Chico's mandatory employee uniform policies and practices (Villanueva v. Chico's FAS, Inc., Case No. CGC-03-420380). In December 2005, the San Francisco Superior Court approved a class-wide settlement valued at $500,000, and appointed my office as class counsel.

7.  In July 2005, I filed an employment class action against Catalina Restaurant Group, Inc., in Alameda County Superior Court, Case No. RG05224331, alleging violations of California labor laws. The Superior Court granted final approval of a class-wide settlement of $225,000, in May 2007, appointing me as class counsel.

8.  I have also participated in the prosecution of other employment and consumer class action cases in California during the past four years, including cases against 24 Hour Fitness, USA, Inc., Catalina Restaurant Group, Inc., Ross Dress for Less, Inc., and Bimbo Bakeries, Inc.

9.  Since opening my law practice in 1999, I have also tried several personal injury cases to verdict and have represented employees in discrimination, harassment and retaliation cases. I currently represent a former Polo employee in an action venued in Los Angeles Superior Court alleging Polo failed to pay him all of the commissions due after he left Polo's employment. That matter is set for trial in July 2008. (Scott Strohschein v. Polo Rodeo, Inc., et al., Case No. 08C00893.)

Otsuka, et al. v. Polo, et al.                                                                 Case No. C-07-02780-SI

DECLARATION OF PATRICK R. KITCHIN IN SUPPORT OF CLASS CERTIFICATION
3

10. In all of the cases described above, including the instant one, I have played a significant role in the factual investigation of class-wide claims, the analysis of class wide damages, drafting pleadings and motions, appearing and arguing almost all motions, and working with the representative class plaintiffs.

11. In the instant case, I have taken 14 depositions of Defendants' witnesses across the country, in New York, Chicago, San Francisco, Palo Alto and Irvine. I have also partnered with other experienced attorneys in the prosecution of this case, including Nancy E. Hudgins, Matthew M. Grigg, Mary M. Leichliter, and William B. Sturgeon. (See, Declaration of Nancy E. Hudgins, submitted herewith.) I have been the primary contact with Plaintiffs during the course of this litigation, keeping them abreast of every significant development.

12. Plaintiffs Keefe, Phipps and Davis have been intimately involved in the prosecution of this action and have cooperated fully with counsel to fulfill their fiduciary duties to the class. They have each had their depositions taken and have assisted counsel in preparing responses to written discovery and in identifying factual issues relevant to their claims. To date, I have personally devoted nearly 1,000 hours to this case and will continue this level of involvement as this case proceeds.

13. Plaintiffs' litigation team also includes economists, licensed private investigators, paralegals and experienced legal assistants who have devoted substantial time to this case under counsels' direction. My office and the Law Offices of Nancy E. Hudgins have devoted substantial resources to the prosecution of this case and have incurred substantial costs on behalf of the putative class. We have made this case a priority and will continue to devote the necessary time and financial resources to its successful prosecution.

14. Finally, I have served as counsel in five lawsuits against the Defendants since 2002 and have personally counseled numerous current and former Polo employees on various employment issues. I have an intimate understanding of Polo's employment policies and practices, its history of operation in California, and I have spoken with dozens of Polo's

employees over the years on various topics relating to the claims made in this case. I have taken depositions of a large number of Polo managers, including senior department heads, some of them on multiple occasions. Numerous current and former employees of the company have directly benefited from my advocacy. Over one hundred Polo employees have contacted my office over the past six years to seek my assistance and counsel.

15. My prosecution of the <u>Toni Young v. Polo</u> matter (see above) resulted in the revocation of Polo's mandatory employee uniform policy across California. I believe the change in that uniform policy has saved Polo employees hundreds of thousands of dollars since the mandatory uniform policy was revoked in December 2002 (three months after I filed the uniform lawsuit against the company.) The results of my advocacy continue to benefit current Polo employees who are no longer required to purchase Polo products as a term and condition of employment.

16. On Saturday, May 31, 2008, I received from Polo's counsel an Excel file containing records of product sales, hours worked, wages paid and commissions earned for Polo fiscal years 2003, 2004, 2005, 2006 and 2007, containing data covering 14,320 pay periods for its Full Price sales associates in California. (These pay periods include data on managers and what Polo calls "senior sellers." The number of pay periods is over estimated in the data because Polo includes references to employees after they are no longer working for the company as products they sold are returned to the store.) The Excel worksheets for each year slightly vary in format, but each fiscal year includes data permitting an accurate analysis of factors relevant to determining the composition and identity of misclassification subclass members.

17. Pursuant to a stipulation between the parties, Polo produced the data in lieu of producing a qualified witness. I have spent approximately 30 hours reviewing the data, identifying misclassification subclass members and preparing the Excel worksheet attached to this declaration as Exhibit 100. Exhibit 100 lists 49 individuals who failed to cover their wages through product sales more than 50% of the pay periods they worked for Polo.

These individuals were identified by sorting the data in various ways, including by store, employee number, sales history, wage history, commission payments and commission rates. When I identified an employee who had failed to cover their hourly wages through sales during a single fiscal years, I copied the employees data to Exhibit 100. With the assistance of a paralegal in my office, I then ran searches for data pertaining to the employee in all other years. When I found data in other years pertaining to the individual, I copied the data into Exhibit 100. The only change made to Polo's payroll records was to the color of the wage entries and in some instances the removal of duplicative data. When a sales associate failed to sell enough merchandise to cover their hourly wage, I highlighted that pay period in red. The data is black on those occasions when a sales associate's sales covered their hourly wages for that pay period. The only analysis I performed on the data was to count the total number of pay periods shown for a specific employee in Polo's data and the total number of times the employee failed to cover their hourly draw. The results of this simple analysis are shown below each employee's data in large print, such as "Missed Draw Target Every Pay Period," meaning the employee failed to cover their wages during any pay period during their employment.

18. Exhibit 100 includes data relating to the sales performance and wages of 49 former Polo employees. I identified an additional 20 individuals whose data have not yet been added to Exhibit 100. Those additional 20 employees are identified by the following numbers in Polo's wage records: 54579, 54983, 20933, 37761, 54835, 555375, 55671, 13779, 51740, 56355, 62750, 52209, 54487, 57865, 66345, 327291, 15671, 61456, 61469 and 55552. According to Polo's data, all of these additional 20 individuals failed to cover their hourly wages through commissions more than 50% of the time. Eight of these individuals never covered their wages through sales. Overall, then, I have identified a total of 69 members of the misclassification subclass, a number sufficient to justify class treatment.

19. The data Polo produced to Plaintiffs, however, does not appear complete. For example, the data for fiscal year 2004 only shows 771 total workweeks for all employees, while all other years show substantially greater numbers of workweeks: 2033 workweeks for 2003, 3440 workweeks for 2005, 4024 workweeks for 2006 and 4052 workweeks for 2007. In addition, data relating to persons Polo calls "senior sellers" have been removed from the Excel workbook.

20. In the subsequent weeks, Plaintiffs intend to re-notice the deposition of a qualified Polo witness who can explain the way the data were compiled and maintained, and what was included or excluded from its production to my office.

21. Based on my review and understanding of the data, three things are apparent. First, Polo's payroll records permit one to identify through a straightforward mechanical formula specific individuals whose sales and wage histories demonstrate they were misclassified as exempt employees. (That Polo maintains the data in Excel format makes the task comparatively simple.) Second, Polo's payroll data appear sufficiently consistent across fiscal years to permit Plaintiffs to evaluate data relating to all Full-Price Store employees who worked for Polo at any time since 2002. Third, the number and composition of the misclassification subclass is likely to grow once Polo provides missing data relating to fiscal year 2004 and senior sellers. Plaintiffs seek to certify a misclassification subclass consisting of such individuals, including those 69 individuals listed in Exhibit 100.

22. On June 4, 2008, Polo's counsel provided my office with Exhibit 107, a compilation of data relating to those persons whose wages were negatively affected by Polo's arrears program. Based on discussions with Polo's counsel, William Goines, I understand Polo knows the specific identify of those persons identified in Exhibit 107 by name. Polo identifies a total of 55 individuals who fell into arrears during the pendency of the arrears program (2004-2006) because they had failed to cover their hourly wages through product sales. Forty-nine of these individuals had their wages adversely affected when Polo debited their earned commissions in subsequent pay periods.

*Otsuka, et al. v. Polo, et al.*   Case No. C-07-02780-SI

DECLARATION OF PATRICK R. KITCHIN IN SUPPORT OF CLASS CERTIFICATION

7

23. On May 31, 2008, Polo produced a database containing the names of 5,352 individuals who terminated their employment with Polo between May 2002 and May 2008. These data apparently do not contain the names of cashiers, like Plaintiff Renee Davis, who worked in Polo's Factory Outlet stores during this time period. I informed Polo's counsels of this data problem on June 5, 2008, asking them to provide my office with a count of these cashiers. I have not received that additional information as of today. Given Polo's counsels' cooperation to date, I anticipate Polo will produce the requested information before Plaintiffs file their reply brief to this motion. At that time, Plaintiffs should have a complete count of the class members.

24. In my estimation, individualized issues concerning the Arrears Subclass would relate primarily, if not exclusively, to a straightforward mechanical calculation of damages.

25. Attached are true and correct copies of the following:

- a printout from Polo Ralph Lauren Corporation's corporate website (Exh. 1);
- an excerpt from Polo Ralph Lauren's 2007 Annual Report, available at http://investor.polo.com/ (Exh. 2);
- Polo Ralph Lauren's list of California stores (Exh. 3);
- excerpts from the deposition of Kimberly Babka[1] (Exh. 4);
- excerpts from the deposition of Sharonda Weatherspoon (Exh. 5);
- excerpts from the deposition of Theresa Cruz (Exh. 6);
- excerpts from the deposition of Tin Hua (Exh. 7);
- excerpts from the deposition of Corinne Phipps (Exh. 8);
- excerpts from the deposition of Janis Keefe (Exh. 9);
- excerpts from the deposition of Renee Davis (Exh. 10);
- excerpts from the deposition of Justin Kiser (Exh. 11);

---

[1] I attended all depositions cited herein, except that of Tin Hua.

- a copy of the Polo Employee Handbook dated 2002, produced by Polo during discovery (Exh. 12);
- a copy of the Polo Employee Handbook dated 2007, produced by Polo during discovery (Exh. 13);
- excerpts from the deposition of Kimberly Babka (Exh. 14);
- excerpts from the deposition of Phoebe Mireles (Exh. 15);
- excerpts from the deposition of Sharonda Weatherspoon (Exh. 16);
- excerpts from the deposition of Valerie Harrison (Exh. 17);
- excerpts from the deposition of Corinne Phipps (Exh. 18);
- excerpts from the deposition of Harvey Resnick (Exh 19);
- excerpts from the deposition of Janis Keefe (Exh. 20);
- excerpts from the deposition of Valerie Harrison (Exh. 21);
- excerpts from the deposition of Tin Hua (Exh. 22);
- excerpts from the deposition of Phoebe Mireles (Exh. 23);
- excerpts from the deposition of Sharonda Weatherspoon (Exh. 24);
- excerpts from the deposition of Kristi Mogel (Exh. 25);
- excerpts from the deposition of Theresa Cruz (Exh. 26);
- excerpts from the deposition of Valerie Harrison (Exh. 27);
- excerpts from the deposition of Janis Keefe (Exh. 28);
- excerpts from the deposition of Renee Davis (Exh. 29);
- excerpts from the deposition of Theresa Cruz (Exh. 30);
- excerpts from the deposition of Valerie Harrison (Exh. 31);
- excerpts from the deposition of Kristi Mogel (Exh. 32);
- excerpts from the deposition of Valerie Harrison (Exh. 33);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 34);
- excerpts from the deposition of Sharonda Weatherspoon (Exh. 35);
- excerpts from the deposition of Theresa Cruz (Exh. 36);

- excerpts from the deposition of Phoebe Mireles (Exh. 37);
- excerpts from the deposition of Harvey Resnick (Exh. 38);
- excerpts from the deposition of Phoebe Mireles (Exh. 39);
- excerpts from the deposition of Janis Keefe (Exh. 40);
- excerpts from the deposition of Renee Davis (Exh. 41);
- excerpts from the deposition of Beth Flynn (Exh. 42);
- excerpts from the deposition of Harvey Resnick (Exh. 43);
- excerpts from the deposition of Phoebe Mireles (Exh. 44);
- excerpts from the deposition of Harvey Resnick (Exh. 45);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 46);
- excerpts of the Deposition of Justin Kiser (Exh. 47);
- excerpts from the deposition of Janis Keefe (Exh. 48);
- excerpts from the deposition of Theresa Cruz (Exh. 49);
- excerpts from the deposition of Renee Davis (Exh. 50);
- excerpts from the deposition of Harvey Resnick (Exh. 51);
- excerpts from the deposition of Justin Kiser (Exh. 52);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 53);
- excerpts from the deposition of Theresa Cruz (Exh. 54);
- the Declaration of Judy Liu (Exh. 55);
- excerpts from the deposition of Harvey Resnick (Exh. 56);
- excerpts from the deposition of Asya Soloian (Exh. 57);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 58);
- excerpts from the deposition of Kimberly Babka (Exh. 59);
- excerpts from the deposition of Kimberly Babka (Exh. 60);
- excerpts from the deposition of Theresa Cruz (Exh. 61);
- excerpts from the deposition of Corinne Phipps (Exh. 62);
- excerpts from the deposition of Justin Kiser (Exh. 63);

- excerpts from the deposition of Harvey Resnick (Exh. 64);
- the Declaration of Allison Dankberg (Exh. 65);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 66);
- excerpts from the deposition of Corinne Phipps (Exh. 67);
- excerpts from the deposition of Janis Keefe (Exh. 68);
- excerpts from the deposition of Renee Davis (Exh. 69);
- excerpts from the deposition of Justin Kiser (Exh. 70);
- the Declaration of Katy Fawver (Exh. 71);
- the Declaration of Megan Glassmeyer (Exh. 72)
- the Declaration of Saundra Nicholson (Exh. 73);
- the Declaration of Mara Apodaca (Exh. 74);
- the Declaration of Amir Filsoof (Exh. 75);
- excerpts from the deposition of Kristi Mogel (Exh. 76);
- excerpts from the deposition of Valerie Harrison (Exh. 77);
- excerpts from the deposition of Phoebe Mireles (Exh. 77A);
- excerpts from the deposition of Rosalinda Wallwork (Exh. 78);
- excerpts from the deposition of Phoebe Mireles (Exh. 79);
- excerpts from the deposition of Theresa Cruz (Exh. 80);
- excerpts from the deposition of Valerie Harrison (Exh. 81);
- the Declaration of Mandy Shade (Exh. 82);
- the Declaration of Dave Land (Exh. 83);
- excerpts from the deposition of Justin Kiser (Exh. 84);
- excerpts from the deposition of Janis Keefe (Exh. 85);
- excerpts from the deposition of Joanne Conovas (Exh. 86);
- excerpts from the deposition of Beth Flynn (Exh. 87);
- excerpts from the deposition of Sharonda Weatherspoon (Exh. 88);

- the Polo Employee Compensation Handbook, dated April 2002, and produced by Polo during discovery (Exh. 89);
- excerpts from the deposition of Kimberly Babka (Exh. 90);
- excerpts from the deposition of Theresa Cruz (Exh. 91);
- excerpts from the deposition of Kristi Mogel (Exh. 92);
- excerpts from the deposition of Valerie Harrison (Exh. 93);
- excerpts from the deposition of Corinne Phipps (Exh. 94);
- excerpts from the deposition of Harvey Resnick (Exh. 95);
- excerpts from the deposition of Kimberly Babka (Exh. 96)
- the PRC Sales Associate Compensation Re-Structure April 2002, produced by Polo during discovery (Exh. 97);
- excerpts from the deposition of Kimberly Babka (Exh. 98);
- excerpts from Defendants' responses to Plaintiffs' Judicial Council Form Interrogatories (Exh. 99);
- a table I created, based on data provided by Polo, showing wage data for 49 former employees of the Defendants in California (Exh. 100);
- a February 7, 1994, Opinion Letter of the California Department of Industrial Relations, Division of Labor Standards Enforcement, signed by Chief Counsel H. Thomas Cadell, Jr., and a true and correct copy of page 50-5 of the California Division of Labor Standards Enforcement, Enforcement Policies and Interpretations Manual, each addressing suspect commission plans like Polo's (Exh. 101);
- excerpts from the deposition of Evan Cohen (Exh. 102);
- Polo's Special FY05 Addendum, produced by Defendants during discovery (Exh. 103);
- Polo's Fiscal 2007 Compensation Update. produced by Defendants during discovery (Exh. 104);

- excerpts from the deposition of Harvey Resnick (Exh. 105);
- excerpts from the deposition of Kimberly Babka (Exh. 106);
- data produced to Plaintiffs by Defendants showing former employees affected by Polo's Arrears program between 2004 and 2006 (Exh. 107);
- the Declaration of Kayla Benado (Exh. 108);
- the Declaration of Samir Abu Tahir (Exh. 109);
- the Declaration of Amberly Ahring (Exh. 110);
- the Declaration of Harvey Resnick (Exh. 111); and
- the Declaration of Stacy Shade (Exh. 112).

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was made on June 10, 2008, in San Francisco, California.

/s/ Patrick R Kitchin

Patrick R. Kitchin