WILLIAM J. GOINES (SBN 061290)
ALISHA M. LOUIE (SBN 240863)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com; louiea@gtlaw.com

JEREMY A. MEIER (SBN 139849)
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Email: meierj@gtlaw.com

Attorneys for Defendants Polo Ralph Lauren
Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation,
doing business in California as Polo Retail Corp.; and Fashions
Outlet of America, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and JUSTIN KISER, an individual; and on behalf of all other similarly situated,<br>Plaintiff(s),<br>v.<br>POLO RALPH LAUREN CORPORATION, a Delaware Corporation; POLO RETAIL, LLC, a Delaware Corporation; POLO RALPH LAUREN CORPORATION, a Delaware Corporation, doing business in California as POLO RETAIL CORP; FASHIONS OUTLET OF AMERICA, INC., a Delaware Corporation and DOES 1-500, inclusive,<br>Defendant(s). | Case No. C07-02780 SI<br><br>**DECLARATION OF EVAN COHEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: July 11, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom 10, 19th Fl.<br>Judge: Hon. Susan Illston |

I, Evan Cohen, declare:

1. I am Manager of Retail Store Operations for Polo Ralph Lauren Polo Ralph Lauren Corporation ("Polo") and Rugby. I have served in this position since approximately July 2005. Previously, I held the position of Retail Store Operations Analyst, from approximately October 2003 - July 2005. Prior to this position, I held the position of Corporate Compensation Analyst from October 1999 - October 2003.

2. I have personal knowledge of the matters set forth below and if called as a witness, I could and would competently testify to as set forth below.

3. In my position of Manager of Retail Store Operations, I am responsible for strategizing, analyzing the business, including employee compensation, and ensuring the efficiency of operations. My duties and responsibilities have largely been the same since I was a Retail Store Operations Analysis, beginning in approximately October 2003.

4. I have responsibilities that include all of California's Ralph Lauren stores ("Full-Price Stores") located in San Francisco, Burlingame, Palo Alto, La Jolla, South Coast Plaza, Beverly Hills, Palm Desert and Malibu (including all three Malibu stores: Men's, Women's and RRL). In California, I also have responsibilities for Polo Rugby ("Rugby"), which has California stores located in San Francisco and Palo Alto.

**ARREARS PROGRAM**

5. On April 18, 2004, Polo introduced an arrears program to its Full-Price Stores, including all Full-Price Stores in California. The arrears program only applied to all new sales associates hired after April 18, 2004. Employees hired prior to this date were not subject to the arrears program. The arrears program was an incentive program developed by Polo to encourage sales associates to meet their sales goals. The arrears program was terminated on March 25, 2006.

6. From April 18, 2004 - March 31, 2005, all sales associates who were subject to the arrears program, with the exception of sales associates working in the home collections department, had a 1 month grace period. Sales associates in the home collections department were given a 2 month grace period. From April 1, 2005 - March 25, 2006, when the arrears program was terminated, all sales associates who were subject to arrears program, with the exception of sales associates

2

working in the home collections department, were given a 3 month grace period. Sales associates in the home collections department were given a 6 month grace period. During the grace period, sales associates' commissions were not subject to arrears.

7.  Under the arrears program, in order for a sales associate to earn commission (i.e., net commissions exceed their base pay for the pay period), the sales associate must have sold a sufficient amount of Polo merchandise, at their commission rate, that created commissionable sales sufficient to cover their base pay for the pay period. When a sales associate failed to cover his/her base pay for a given pay period, the sales associate's minimum sales expectation for the following pay period, which must be satisfied prior to being able to generate commission earnings, increased in the next pay period by the amount the sales associate fell short. Under the arrears program, a sales associate was always paid his/her draw, or base pay, regardless of the amount of merchandise he/she sold.

8.  For example, if a sales associate is paid a draw, or base rate, of $12/hour and works 40 hours a week, he/she has a base pay of $960 a pay period.[1] Therefore, a sales associate who earns an 8% commission must sell at least $12,000 of Polo merchandise in order to cover his/her base pay for a given pay period. The minimum sales expectation for the pay period, in this example, is defined as $12,000. Under the arrears program, if the sales associate only sold $10,000 of Polo merchandise, in the next pay period, the minimum sales expectation would be increased by $2,000, the amount the sales associate fell short of his/her minimum sales expectation. The threshold for being able to earn commission therefore increased to $14,000 in the subsequent pay period, increasing the minimum sales expectation.

9.  Therefore, under the example described above, even if a sales associate were to sell $16,000 of Polo merchandise in the subsequent pay period, he/she would not generate commission earnings above the minimum sales threshold of $12,000. Rather, the sales associate would generate commission earnings above $14,000.

10. I was responsible for determining which sales associates fell into arrears and how to account for those situations. The accounting application of the arrears program reflects a deduction

---

[1] A pay period is the equivalent of two weeks.

3
DECLARATION OF EVAN COHEN IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
Case No. C07-02780 SI

to commissions, which were applied to satisfy the adjusted minimum threshold for earned commissions, even though there was not a deduction for any amount a sales associate was entitled to receive in earned commissions under the arrears program.

**50 % TEST FOR EXEMPTION FROM OVERTIME**

11. In California, I understand that an employee is exempt from overtime pay regulations if the employee's earnings exceed one and one-half (1-1/2) times the minimum wage if more than half of that employee's compensation represents commissions. Polo's policy is to perform "reconciliations" on an annual basis for each sales associate in order to determine if more than half of the compensation of each sales associate represents commissions.

12. Polo performs the reconciliations yearly because Polo has determined that a period of one year in the retail industry is the period which best typifies the total characteristics of each employee's earning pattern. Using one-year period for its reconciliations prevents anomalous results that would occur as a result of seasonal fluctuations in retail business.

13. Polo inadvertently failed to perform reconciliations prior to 2007. In 2007, Polo became aware that reconciliations had not been performed. Upon discovering that reconciliations had not been performed, I undertook reconciliations for 2003, 2004, 2005, 2006 and 2007. For each year, I looked at all sales associate's compensation data and determined if more than 50 percent of each sales associate's compensation was comprised of commissions. If a sales associate did not meet the 50 percent requirement for any given year, then I examined each pay period worked by that sales associate during the year to determine if overtime wages were owed. Polo then paid overtime for all periods where the sales associate was owed overtime wages. Polo also paid the sales associates interest on all owed overtime wages.

14. A true and correct copy of my reconciliation calculations, based upon payroll records, is attached hereto as <u>Exhibit A</u>. This document has been Bates-labeled POLO 02058-02122 and was introduced as Exhibit 53 during my deposition.

15. I determined that in Fiscal Year 2003, the total number of employees whose commissions represented 50% or less of total annual compensation was 4. Polo paid those 4 employees a total sum of $73.40, plus interest. See Exhibit A at 2059.

16. I determined that in Fiscal Year 2004, the total number of employees whose commissions represented 50% or less of total annual compensation was 7. Polo paid those 7 employees a total sum of $138.06, plus interest. See Exhibit A at 2070.

17. I determined that in Fiscal Year 2005, the total number of employees whose commissions represented 50% or less of total annual compensation was 9. Polo paid those 9 employees a total sum of $190.35, plus interest. See Exhibit A at 2071

18. I determined that in Fiscal Year 2006, the total number of employees whose commissions represented 50% or less of total annual compensation was 11. Polo paid those 11 employees a total sum of $537.63, plus interest. See Exhibit A at 2115.

19. I determined that in Fiscal Year 2007, the total number of employees whose commissions represented 50% or less of total annual compensation was 7. Polo paid those 7 employees a total sum of $231.56, plus interest. See Exhibit A at 2117.

20. The total number of Polo sales associates whose commissions represented 50% of less of their annual compensation from 2003 to 2007 was 38. The payments for 2003 to 2007 totaled $1,171.00.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 17 day of June, 2008.

_____
Evan Cohen