WILLIAM J. GOINES (SBN 061290)
ALISHA M. LOUIE (SBN 240863)
KAREN ROSENTHAL (SBN 209419)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email:   goinesw@gtlaw.com
         louiea@gtlaw.com

JEREMY A. MEIER (SBN 139849)
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Email:   meierj@gtlaw.com

Attorneys for Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POLO RALPH LAUREN CORPORATION, a Delaware Corporation; et al.,<br><br>Defendants. | Case No. C07-02780 SI<br><br>**DECLARATION OF KRISTI MOGEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>DATE:  July 11, 2008<br>TIME:  9:00 a.m.<br>CTRM:  10, 19th Fl.<br>JUDGE: The Hon. Susan Illston |

I, Kristi Mogel, declare:

1. I am presently the Director of Human Resources for Polo Ralph Lauren ("Polo"). I have served in this position since approximately June 2007. Previously, I was the Human Resources Manager for Polo since the time I began my employment with the company on December 9, 2003. Although my job title has changed, my responsibilities have remained the same. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as set forth below.

2. I have human resources responsibilities over Ralph Lauren ("full-price stores") located in San Francisco, Burlingame, Palo Alto, La Jolla, South Coast Plaza, Beverly Hills, Palm Desert and Malibu (including all three Malibu stores, Men's, Women's and RRL). I also have responsibilities for full-price stores located in Hawaii, Las Vegas, Phoenix and Colorado. In addition to my responsibilities for the full-price stores, I also have responsibilities over Polo Rugby ("Rugby") which has stores located in San Francisco, Palo Alto and Seattle.

3. Presently, my office is located in the Burlingame store. Previously, from the start of my employment in December of 2003 to approximately May 2007, I based my office in the San Francisco store.

4. My duties and responsibilities as the Director of Human Resources include employee relations, talent acquisition, training and development, payroll administration, benefits and open enrollment and knowledge of Polo's employment policies and practices.

## SALES ASSOCIATE COMPENSATION

5. All sales associates in the California full-price stores, with the exception of sales associates in the Burlingame store and sales associates in the Children's Department in the Beverly Hills store[1], are compensated based on a draw versus commission compensation plan. The draw (also referred to as "base rate" or "hourly rate") is equivalent to at least 1.5 times the minimum wage times the number of hours worked by the sales associate in a pay period. Sales associates are compensated the greater of their draw or net commission earnings. Senior sales associate earn a base salary versus

---

[1] There is also a sales associate in the Palo Alto store who is compensated base plus commission.

commission, whichever is greater. However, Senior Sales Associates are paid a salary, regardless of the number of hours worked. Attached hereto as **Exhibits A, B, C and D** are the Sales Compensation Handbooks for 2002, 2004, 2005 and 2006, respectively.

6. Sales associates in the Burlingame store are compensated based on a base draw, their hourly rate times the number of hours worked, plus commission. Sales associates are compensated by their base hourly rate plus any commissions they receive on top of the base hourly rate.

7. Sales associates in the Rugby stores are compensated at an hourly rate of pay and are paid premium overtime, i.e., 1.5 times the their normal hourly rate whenever they work more than eight hours in a day or 40 hours in a week.

8. Sales associates in the California full-price stores are expected to sell enough Polo merchandise at their commission rate to cover their base salary on a consistent basis, for each pay period. When a sales associate does not sell enough merchandise to cover their base rate for more than two periods, the sales associate is coached by their manager to improve this selling skills and may be provided with a written warning. If in the following quarter the sales associate again fails to sell enough merchandise to cover his/her base for more than two pay periods, the sales associate is provided with additional coaching and discipline.

9. A simple formula may be used to determine a sales associate's minimum sales expectation. For example, if the sales associate's hourly rate is $12.00/hour and the commission rate is 8%, the hourly minimum sales expectation can be determined by dividing the hourly rate by the percentage of commission. Under this example, the sales associate's hourly minimum sales expectation is $150/hour. The sales associate, to meet his her hourly minimum sales expectation, should therefore sell at least $150 of Polo merchandise an hour to meet his/her hourly minimum sales expectation. Similarly, based on a work week of 40 hours, the same formula may be used. Therefore, based on a weekly draw of $480 ($12/ hour times 40 hours) and a commission of 8%, the sales associate must sell at least $6,000 of Polo merchandise a week to meet his/her weekly minimum sales expectation. To determine the pay period minimum sales expectation, the weekly minimum sales expectation is multiplied by two (the number of weeks in a single pay period). Therefore, the pay period minimum sales expectation is $12,000.

10. In order for a sales associate to generate net commission earnings, he/she must exceed the minimum sales expectation, as described above. Sales associates are always paid their draw or base pay regardless of the amount of merchandise sold.

## ARREARS PROGRAM

11. On April 18, 2004, Polo rolled-out an arrears program which applied to all sales associates in the California full-price stores hired after this date. Employees hired prior to April 18, 2004 were not subject to the arrears program. The arrears program was a productivity management program developed by Polo to encourage sales associates to meet their sales goals. Attached hereto as **Exhibit E** is a true and correct copy of "Special FY05 Addendum" which introduced the roll-out of the arrears program.

12. From April 18, 2004 - March 31, 2005, sales associates subject to arrears program had a 1 month grace period. Sales associates in the home collections department were given a 2 month grace period. From April 1, 2005 to the end of the arrears program, March 25, 2006, sales associates were given a 3 month grace period. Sales associates in the home collections department were given a 6 month grace period. During the grace period, sales associates' compensation was not subject to arrears. Attached hereto as **Exhibit F** is a true and correct copy of "FY2006 Comp Plan B Addendum" which sets forth the grace period policy in effect beginning April 1, 2005. Attached hereto as **Exhibit G** is a true and correct copy of "Fiscal 2007 Compensation Update" which terminated the arrears program effective March 25, 2006.

13. The program operated under the same formula as described above. Sales associates were expected to meet a minimum sales expectation which sufficiently covered their draw. Accordingly, based on the arrears program, using the example above, to cover their draw for an entire pay period, sales associates must sell at least $12,000 of Polo merchandise in a single pay period. Under the arrears program, if a sales associate fell short of their minimum sales expectation and only sold $8,000 of Polo merchandise in a pay period, the difference between what was sold ($8,000) and the minimum sales expectation ($12,000) was carried over to the next pay period and was added to the minimum sales expectation for that period. Therefore, as in this example, a sales associate must sell at least $16,000 of Polo merchandise in order to cover his/her draw for the pay period generate

net commission earnings in the next pay period. The arrears policy affected the threshold sales point which a sales associate must satisfy in order to generate net commission earnings, as the sales associate would always be compensated their draw, and no earnings were ever deducted from a sales associate's base rate during the arrears program.

14. Under the arrears program, the amount the sales associate fell short of the minimum sales expectation in a pay period is carried over to the next pay period, until the sales associate has fulfilled the minimum sales expectation. Under the foregoing example, if the sales associate in the third pay period again fell short of the minimum $12,000 sales expectation, say for instance selling only $11,000 of Polo merchandise in a pay period, he/she would have to sell $17,000 of Polo merchandise (as opposed to the initial expectation of $12,000) before he/she could receive net commission earnings. This is because the sales associate fell short of the sales expectation in the second pay period by $4,000 and by $1,000 in the third pay period, for a total of $5,000 that is carried over to the next pay period. Therefore, in the fourth pay period, the sales expectation of $12,000 increased by $5,000 for a minimum sales expectation of $17,000 that the sales associate must satisfy in order to receive net commission earnings.

15. Under the arrears program, the amount short of the sales goal was carried over pay period to pay period until the sales associate had satisfied the entire amount.

16. Under the arrears program, there was no impact on a sales associate's draw/base rate. He/she was always guaranteed his/her draw/base rate.

17. During the roll-out of the arrears program, I had several meetings with the management teams for the California full-price stores. We discussed the arrears program and how it would effect sales associate's compensation, for those sales associate's subject to the arrears program.

18. A manager, usually the General Manager, would review the arrears program with the new hire associate as part of the new hire process.

19. Polo has a policy of requiring one-on-one coaching and improvement sessions ("one-on-ones") between a sales associate and the their manager, in most cases the sales associate's department manager but in some cases the General Manager. During on-on-ones, the manager,

5

among other things, reviews the sales associate's performance, including whether they have been meeting their sales targets and, if subject to the arrears program, whether their commissions had ever been subject to arrears.

20. On March 25, 2006, the arrears program was terminated. Only sales associates in the full-price stores hired during April 18, 2004 - March 25, 2006 were ever subject to the program and no sales associate was subject to the arrears program after March 25, 2006.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Phoenix, Arizona this 17th day of June, 2008.

*Kristi Mogel*