# DIVISION OF LABOR STANDARDS ENFORCEMENT
# ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL

| | |
|---|---|
| 34 | **COMMISSION WAGE PROVISIONS.** |
| 34.1 | **Definition Of "Commission Wages".** The term "commission wages" has been defined in the case of *Keyes Motors, Inc. v. DLSE* (1988) 197 Cal.App.3d 557; 242 Cal.Rptr. 873, which held that commissions arise from the sale of a product, not the making of a product or the rendering of a service. The court further held that in order to be a commission, the compensation must be a percentage of the price of the product or service which is sold. (See also, O.L. 1983.11.25; see also Section 2.5.4 of this Manual.) The California Supreme Court in *Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, reiterated that the definition of commissions in Section 204.1 applies to all employees receiving commissions. |
| 34.1.1 | This chapter is limited to addressing certain salient legal matters pertaining to compensation arrangements involving commissions. The multitude of commission plans precludes an exhaustive treatment of the subject, and the failure to address various matters germane to commission arrangements is not intended to be and should not be construed as exclusionary. |
| 34.1.2 | **Variations Sometimes Confused With Commission Plans.** A plan which simply relies upon a "percentage" of some sum such as the cost of the goods sold or the services rendered by an establishment does not constitute a "commission wage"; the worker receiving the commission must be principally involved in selling the goods or the services upon which the commission is measured. Many of the plans which simply equate "commission" with "percentage" are, if carefully reviewed, revealed to be nothing more than piece rate plans. Other plans which call for the employees to share in a percentage of the gross (or net) profits of the store are usually found to be nothing more than a hybrid hourly pay plan whereby the hourly rate is based on a percentage of the profit and may, for that reason, vary from week to week. These pay plans, based on percentages, are not per se, illegal* |
| 34.1.3 | **Bonus Plans Distinguished.** Bonuses are sometimes confused with commission wages. In order to qualify as a "commission", the scheme must meet the requirements of a "commission wage" as set out in the *Keyes Motors* case. Bonuses are not predicated upon the price of a particular product or service, but are usually based on reaching a minimum amount of sales or making a minimum number of pieces, and can be distinguished from a commission by that fact. Many times a bonus is paid to individuals who are not engaged in sales at all and is also, distinguishable by that fact. |
| 34.1.4 | **Commission Pool Arrangements.** Arrangements where the commission payable to the worker is based upon a "pool" arrangement whereby a group of employees, all of whom are engaged principally in *selling* the products or services upon which the commission percentage is based, share in the "pool" constitute a valid commission plan. |

---

*Any pay plan which is based upon profit should be reviewed within the parameters set out by the court in the case of *Quillian v. Lion Oil* (1979) 96 Cal.App.3d 156; 157 Cal.Rptr. 740, which disallows certain deductions from employee's wages for losses considered to be in the regular course of business.

# DIVISION OF LABOR STANDARDS ENFORCEMENT
# ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL

(But see, *Hudgins v. Neiman Marcus* (1995) 34 Cal.App.4th 1109, which discusses illegal deductions from such plans.)

34.2    **Draws Against Commissions.** If an employee receives a draw against commissions to be earned at a future date, the "draw" must be equal at least to the minimum wage and overtime due the employee for each pay period (unless the employee is exempt, *i.e.*, primarily engaged in outside sales). Although the draw may be reconciled against earned commissions at an agreed date or when the commission is earned, the draw is considered the basic wage and is due for each period the employee works even though commissions do not equal or exceed the amount of the draws, unless there is a specific agreement to the contrary. (*Agnew v. Cameron* (1967) 247 Cal.App.2d 619; 55 Cal.Rptr. 733.) Advances may only be recovered at termination if there is a specific written agreement to that effect and only to the extent that the advances exceed the minimum wage and overtime requirements. (*Agnew, supra*, and IWC Orders; see also O.L. 1987.03.03, 1991.05.07)

34.2.1    **Reconciliation Of Draws Against Commissions.** Reconciliation of draws against commissions are to be construed according to the contract of employment but must be completed within a reasonable time depending upon the transactions involved.

34.3    **Computation Of Commissions.** Commission computation is based upon the contract between the employer and the employee. The commission may be based on either gross sales figures or net sales figures. As discussed below, certain criteria cannot be considered when reaching the "net" sales figures. If the element upon which the deduction from the gross sales is based is predicated upon a cost which is attributable to the employer's cost of doing business, the element may not be used.

34.3.1    Computation of commissions frequently relies on such criteria as the date the goods are delivered or the payment is received. Sometimes, the commission of the selling salesperson is subject to reconciliation and chargebacks if the goods are returned. If these conditions are clear and unambiguous, they may be utilized in computing the payment of the commissions. (O.L. 1993.03.08)

34.4    **Commission Plans Which Provide Forfeitures.** *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 41 Cal.Rptr2d 46, reviewed a commission plan which provided that the salesperson's commission was based on a calculation of a percentage of the individual's gross sales less returns, taxes, gift wrap and alterations. The court found nothing wrong with the commission plan until it was explained that "Returns consisted of all merchandise originally sold by the salesperson and returned during the pay period with adequate documentation to ascertain the identity of the original salesperson, *plus* the 'prorated unidentified returns' received back by Neiman Marcus in the salesperson's 'home base'". It was the "prorated unidentified returns" which the court found were a forfeiture. (O.L. 1990.10.01)

34.4.1    **Commission Plans May Not Involve Calculation Which Includes Costs Attributable To Doing Business.** "Unidentified returns" included, among other categories, all returns for which the absence of identification could have been the result

# DIVISION OF LABOR STANDARDS ENFORCEMENT
# ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL

of customer negligence or misconduct; returns for which the original salesperson can be identified but had not been employed by Neiman Marcus in the past six months; returns of merchandise that was purchased at another Neiman Marcus store where the salesperson cannot be identified, and returns on defective merchandise, customer abuse, etc. The court held such a commission program was illegal in California, citing *Kerr's Catering v. DIR* (1962) 57 Cal.2d 319; 19 Cal.Rptr. 492 and *Quillian v. Lion Oil* (1979) 96 Cal.App.3d 156; 157 Cal.Rptr. 740. (see also O.L. 1990.10.01, 1993.02.22)

34.4.2 **Commission Plans May Not Provide For Deductions From Wages Earned.** The *Neiman Marcus* court held that Labor Code § 221 has been interpreted by the California courts to prohibit deductions from an employee's wages for cash shortages, breakage, loss of equipment, and other business losses that may result from the employee's simple negligence. The court also cited *Barnhill v. Saunders* (1981) 125 Cal.App.3d 1; 177 Cal.Rptr. 803, which held that deductions of this nature would, as the DLSE has long held, "unjustifiably provide employers with self-help remedies that are not available to other creditors." Such deductions, the court further noted, contravene the public policy expressed in sections 400 through 410 of the Labor Code.

34.5 **Commission Forfeitures Found To Be Illegal.** *Dana Perfumes v. Mullica* (9th Cir. 1959) 268 F.2d 936. In this case the contract provided no commissions for "sales or shipments on orders" subsequent to termination. The employee made large sales in the fall for Christmas and the employer terminated him before delivery. The contract was prepared by the employer and, thus, was most strictly construed against the employer. The court found that the commissions were due. An ambiguous contractual provision which an employer asserts establishes a partial or total forfeiture of post-termination commissions will be strictly interpreted against the forfeiture. (Cal. Civ. Code Section 1442.) Two recent California cases have considered challenges to explicit post-termination forfeiture provisions in commission agreements on the ground of unconscionability. A holding of unconscionability requires findings of both procedural and substantive unfairness. *Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal. App.4th 1796, 1803-04. In *McKinnon* the court found procedural unconscionability where the employer did not present the written commission agreement to Ellis until 2 weeks after he had commenced employment and after he had moved in reliance on an oral offer of employment which did not mention the post-termination forfeiture provision. The *McKinnon* court also found substantive unconscionability on the basis that the amount of earnings forfeited by Ellis under the provision indicated it to be commercially unreasonable. By contrast, in *American Software Inc. v. Ali* (1996) 46 Cal.App.4th 1386, no procedural unconscionability was found where: (1) the proposed written commission agreement was presented to Ali prior to her acceptance of employment; (2) Ali had the agreement reviewed by an attorney; and (3) Ali successfully renegotiated several terms of the proposed agreement, but did not propose modification to the forfeiture provision of which she was aware of at the time she signed the negotiated agreement. The *American Software* court, under these circumstances, found that the forfeiture of all

**DIVISION OF LABOR STANDARDS ENFORCEMENT**
**ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL**

commissions 30 days after termination did not "shock the conscience" and held that the agreement was not unconscionable*.

34.6 **Common Law Of Contracts Also Supports Payment Of Commission.** There are a number of contract cases based on the common law as adopted in California which hold that if the employee is the procuring cause of the sale, he or she is entitled to the commissions. The term, "He who shakes the tree is the one entitled to gather the fruit" is used to describe the concept. (See *Willison v. Turner Resilient Floors* (1949) 89 Cal.App.2d 589; 201 P.2d 406) The court in *Wise v. Reeve Electronics, Inc.* (1960) 183 Cal.App.2d 4; 6 Cal.Rptr. 587, held that where the employee was the procuring cause of a sale, he is entitled to the commission "irrespective of the fact that the principal himself, or through others, may have intervened."

34.7 **Commissions Where Employee Terminates.** Generally, if the contract for the commissions is clear and unambiguous and there are substantial duties which must be performed in order to complete the sale, the employee who voluntarily terminates without accomplishing those tasks is not entitled to recover. (*Hudgins v. Neiman Marcus Group, Inc., supra*, 34 Cal.App.4th 1109, 1120) Note that non-recovery is limited to cases involving questions of when a commission has been earned by a terminated employee on a "sale" transaction that is not an instantaneous event (as in the context of retail sales) but, rather, is "completed" over a relatively long period of time during which the sales agent may be required to perform additional services for the customer. (*Hudgins v. Neiman Marcus Group, Inc., supra*, 34 Cal.App.4th 1109, 1121)

34.8 **Commissions Where Employer Terminates Employee.** Where the termination is not a quit, but a discharge, the employee has been prevented from completing the duties and may be able to recover all or a pro rata share of the commissions. (O.L. 1993.03.08)

34.8.1 The use of common law doctrines such as "prevention" and "impossibility of performance" may be asserted by any employee as a basis for recovering commissions despite having failed to perform all of the conditions precedent otherwise required.

34.9 **Payment Of Commissions Upon Termination Of Employment.** A commission is "earned" when the employee has perfected the right to payment; that is, when all of the legal conditions precedent have been met. The provisions of any contract notwithstanding, California courts will not enforce unlawful or unconscionable terms and will construe any ambiguities against the person who wrote the contract (usually the employer) to avoid a forfeiture. (See O.L. 1999.01.09)

---

*The cases cited (*American Software and Ellis v. McKinnon*) appear to be irreconcilable but, in fact, turn on the question of what each of the courts viewed as unconscionable.