Patrick R. Kitchin, Esq. (SBN. 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
415-677-9058
415-627-9076 (fax)

Attorneys for Plaintiffs Janis Keefe, Corinne Phipps and Renee Davis


**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**


| | |
|---|---|
| ANN OTSUKA, an individual; JANIS KEEFE, an individual; CORINNE PHIPPS, an individual; and KISER, an individual; individually and on behalf of all others similarly situated, | Case No.: C-07-02780-SI |
| | **PLAINTIFFS PHIPPS, DAVIS AND KEEFE'S REPLY TO OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs, | |
| vs. | **Date: July 11, 2008** |
| | **Time: 9:00 a.m.** |
| POLO RALPH LAUREN CORPORATION; a Delaware Corporation; POLO RETAIL, LLC., a Delaware Corporation; POLO RALPH LAUREN CORPORATION, a Delaware Corporation, doing business in California as POLO RETAIL CORP; FASHIONS OUTLET OF AMERICA, INC., a Delaware Corporation and DOES 1-500, inclusive, | **Courtroom: 10 (19th Floor)** |
| | **Judge: Hon. Susan Illston** |
| Defendants. | |

# TABLE OF CONTENTS

**PAGE**

I. Introduction …………………………………………………………........................1

II. Rule 23's Requirements Are Satisfied As To The Class…………………………………1

   A.   Predominance is Satisfied ………………………………………………………………1

      1. Polo's Loss Prevention Inspection-Related Arguments Only Further Confirm

      That Common Issues Predominate ………………………………………………..1

         a.  Polo's Portal-to-Portal Act Argument, If Anything, Reveals More

           Common Issues ……………………...……………………………………1

             i. Polo's Argument ……………………………………………………1

             ii. The Act Does Not Apply ……………………………………………1

             iii.   The Act Would Militate in Favor Of Predominance Regardless…..2

         b.  Polo's "De Minimis" Argument Could Yield Only Additional

           Common Issues ……………………………………………………………2

             i.   Polo's "De Minimis" Argument …………………………………2

             ii.   Whether Waiting Time Is Too Difficult To Record Presents

                A Common Question ………………………………………..………3

             iii.  The Total Time Not Compensated Also Presents A Common

                Question …………………………………………………...………4

             iv.  The Third Prong Of The De Minimis Inquiry Also Yields

                Only A Common Issue …………………………………………4

      2.  Resolving The Loss Prevention Inspection-Related Claims Will Entail

      Predominant Common Issues…………………………………………..……4

      3. The Rest Break-Related Claims Make Common Issues Even More

      Predominant………………………………………………………………. 6

    B.   The Other Certification Prerequisites Are Satisfied As To The Class……………7

      1. Numerosity Is Undisputed…………………………………………..……7

2. Typicality Is Satisfied..................................................................7

3. Adequacy of Representation Is Established.................................8

4. A Class Action Is The Superior Means Of Adjudicating The Class's
Claims...........................................................................................8

**III. Rule 23's Requirements Are Satisfied As To The Misclassification Subclass** ...............9

A. The Law Governing When An Inside Salesperson Is Exempt From
Overtime Laws.............................................................................9

1. The 50% Test........................................................................10

2. The *Bona Fide* Commission Plan Test..................................10

B. Polo Disregarded Both Tests, Applied One Inaccurately, And Thereby
Failed To Identify Many Misclassified Sales Associates.....................11

C. Proper Application Of Law Confirms Rule 23's Requirements Are Satisfied..........12

1. Numerosity........................................................................ 12

2. Typicality...........................................................................13

3. Superiority And Adequacy Of Representation.......................13

4. Predominance Of Common Issues........................................13

**IV. Rule 23's Requirements Are Satisfied As To The Arrears Subclass**.........................14

**V. Conclusion** ....................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Addison v. Huron Stevedoring Corp.*, 204 F,2d 88, 95 (2d Cir.) ............................................3

*Agulilar v. Association for Retarded Citizens*, 234 Cal.App.3d. 21 (1991).........................1

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946)..........................3, 4, 6

*Alba v. Papa John's USA, Inc.* 2007 U.S. Dist. LEXIS 28079 .....................................6, 7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, (1997) ...........................................6, 8

*Arnold v. United States Theatre Circuit, Inc., 158 F.R.D. 439, 440 (N.D. Cal. 1994)..............9*

*Bell v. Farmers Insurance Exchange (2001)87 CA4th 805, 815 .........................................10*

*Blackie v. Barrack* 524 F2d 891 (9th Cir. 1975) ..................................................6

*Brewer v. Patel, 20 Cal.App.4th, 1017 (1993) ...................................................2, 3*

*Brown v. Federal Express Corp.*, 2008 WL 906517 (C.D. Cal. 2008)...................................7

*Bono Enterprises, Inc. v. Bradshaw (1995) 32 Cal.App.4th 968 ......................................2*

*Ca. Rural Legal Assistance v. Legal Servcs. Corp, 917 F.2d 1171, 1175 (9th Cir. 1990) ..........8*

*Cicairos v. Summit Logistics, 133 Cal.App.4th 949 (2005) ..........................................6*

*Dunlop v. City Elec., Inc., 527 F.2d 394.........................................................2*

Fast v. Applebee's Int'l Inc., No. 06-4146, 2007 WL 1309680 (W.D. Mo. 2007).................4

*IBP, Inc. v. Alvarez, 546 U.S. 21, 35(2005) ...................................................1*

*Isner v. Falkenberg/Gilliam & Assoc., Inc. 160 Cal.App.4th 1393, 1401 (2008) ...............2, 3*

*Jerzak v. City of South Bend, 996 F.Supp. 840 848 (N.D. Ind. 1998)...............................2*

*Koehl v. Verio, Inc., 142 Cal.App.4th 13, 1334 ................................................15*

*Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 6/20/07)..................7, 9

*Lerwill v. In-flight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)..................8, 9

*Lindlow v. United States, 738 F.2d 1057 (9th Cir. 1984) ................................. passim*

*Local Joint Executive Bd. of Culinary*, 244 F.3d 1152 (9th Cir. 2001) .....................5, 6, 15

*Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000).....................................1, 2

*Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir.1990) ..................................2

*Prachasaisoradej v. Ralphs Grocery Company*, 42 Cal.4th 217 (2007) ............................15

*Reich v. New York Transit Authority*, 45 F.3d 646 (2d Cir. 1995) ... ... ... ... ... ... ... ... .... ... ...*3*

*Reich v. Monfort, Inc.*, 144 F.3d 1329 (10th Cir. 1998*)* ... ... ... ... ... ... ... ... ... ... ... ... ...*3,4*

*Romero v. Producers Dairy Food*, 235 F.R.D. 474, 487 (E.D. Cal. 2006).........................8

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319 (2004)....................................6

*Saunders v. John Morrell & Co.*, No C-88-4143, 1992 WL 531674 (N.D. Iowa  1992)... ... ......*3*

*Steiner v. Mitchell, 350 U.S. 247, 256 (1956)* ... ... ... ... ... ... ... ... ... ... ... ... .... ... ... ... ... ...*2*

*Steinhebel v. Los Angeles Times Communications 126 Cal.App.4th 696, 707 (2005)* ... ... ... .... *15*

*Tierno v. Rite Aid Corp* 2006 WL 2535056 (N.D. Cal. August 31, 2006)  ................... *passim*

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ................... ....... .....*passim*

*Whiteway v. FedEx Kinko's Office & Print Servs.*, 2006 U.S. Dist. LEXIS 69193 ...............…..7

*Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal.App.4th 585 (2006).......................................8

# I. Introduction

Polo argues essentially none of the class certification prerequisites is satisfied. However, its arguments are untenably premised on flawed applications of law and fact. Proper analysis confirms the Class and the Misclassification and Arrears Subclasses should be certified.

## II. Rule 23's Requirements Are Satisfied As To The Class

### A. *Predominance Is Satisfied*

1. Polo's Loss Prevention Inspection-Related Arguments Only Further Confirm That Common Issues Predominate

Polo argues the Class's loss prevention inspection-related claims preclude a finding of predominance because: (1) each Class member's claims ostensibly would have to be assessed individually, and (2) class-wide adjudication supposedly would entail no common issues. (Opposition, 15:12-15, 17:5-6.) Neither argument withstands scrutiny.

### a. *Polo's Portal-to-Portal Act Argument, If Anything, Reveals More Common Issues*

#### i. *Polo's Argument*

Polo first argues the loss prevention-related claims would require assessment of each Class member's day-by-day individualized experiences to determine whether loss prevention process-related time was "postliminary," and thus noncompensable under the Portal-to-Portal Act.[1] *See* Opposition, 14:13-22. Polo's characterization of the Act's implications is misguided.

#### ii. *The Act Does Not Apply*

As an initial matter, the Portal-to-Portal Act would not apply. California law's more employee-friendly definition of compensable "hours worked" would. *Morillion v. Royal Packing Co.* 22 Cal.4th 575, 590 (2000)[2]; *Aguilar v. Association for Retarded Citizens*, 234 Cal.App.3d 21, 34 (1991).

---

[1] The Portal-to-Portal Act amended the federal Fair Labor Standards Act of 1938 (FLSA) by establishing *inter alia* that employers generally do not have to compensate employees for time spent: (1) travelling to and from work, or (2) doing activities "postliminary to" their "principal" work activities. *See generally IBP, Inc. v. Alvarez*, 546 U.S. 21, 35 (2005).

[2] *Morillion* rejected the notion that the Portal-to-Portal Act governed, and concluded compensable time under California law included all time an employee was "subject to the control of an employer." *Id.*, at 592, *et seq.* ("Absent convincing evidence of the IWC's intent to adopt the federal standard for determining whether time spent traveling is compensable under state law, we decline to import any federal standard,

1    *iii.  The Act Would Militate In Favor Of Predominance Regardless*

2        Even if one assumed *arguendo* the Portal-to-Portal Act applied, it would only further

3    militate in favor of a finding of predominance by generating an additional significant common

4    issue: whether time spent in conjunction with Polo's loss prevention inspection process is

5    "postliminary" noncompensable time.  *See Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also*

6    Opposition, 14:14-22.  This issue would, in turn, generate additional common issues because

7    activities are "postliminary" only if they are undertaken for the employees' own convenience, are

8    not required by the employer, and are not a necessary part of the employees' duties. *Jerzak v. City*

9    *of South Bend*, 996 F.Supp. 840, 848 (N.D. Ind. 1998); *Dunlop v. City Elec., Inc.*, 527 F.2d 394,

10   398-400 (5th Cir 1976).[3]

11   **b.  Polo's "De Minimis" Argument Could Yield Only Additional Common Issues**

12       *i.  Polo's "De Minimis" Argument*

13       Polo next argues the loss prevention-related claims would necessitate excessive and

14   unmanageable assessment of individual issues because one would have to consider whether the

15   time each Class member spent was compensable under the "*de minimis*" test.  (Opposition, 14:23-

16   15:14, 17:22-26.)  Polo argues this would "require an individualized trial for each aggrieved party

17   to determine how long they may have had to wait, what were the circumstances, why they waited,

18   what store, what time of day and whether it was in fact *de minimis*."  (*Id.*, at 17:22-26, 15:12-15.)

19   Polo thus misapprehends the *de minimis* test.  *See Lindow v. United States*, 738 F.2d 1057, 1061-

20   62 (9th Cir. 1984).[4]

21

22   which expressly eliminates substantial protections to employees, by implication.")  Like the Wage Order at
     issue in *Morillion*, the IWC Wage Order applicable here requires compensation for all hours an employee is

23   "subject to the control of an employer."  *See* IWC Wage Order 7-2001, §2(G); *see also Bono Enterprises,*

24   *Inc. v. Bradshaw*, 32 Cal.App.4th 968 (1995) (time employees are "precluded from leaving the worksite" is
     compensable under California law).

25   [3] Because Class members are forced to remain in Polo's stores to undergo loss prevention inspections
     without pay, only to further Polo's economic interests, such waiting time thus is compensable.  *See, e.g.,*

26   *Jerzak*, 996 F.Supp. at 848 ("[Noncompenable] postliminary activities are activities spent predominantly in
     [furtherance of] the employees' own interests.")  *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th

27   Cir.1990) (waiting time is compensable if the wait predominately benefits the employer).

28   [4] In a footnote, Polo cites *Isner v. Falkenberg/Gilliam & Assoc., Inc.* 160 Cal.App.4th 1393, 1401 (2008)
     and *Brewer v. Patel*, 20 Cal.App.4th, 1017 (1993) for the proposition that "California employees are not

Assuming the *de minimis* rule applied,[5] its application would yield only further common issues because, "in determining whether otherwise compensable time is *de minimis*, we consider: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d at 1063; *see also Reich v. New York Transit Authority*, 45 F.3d 646, 652 (2d Cir. 1995); *Reich v. Monfort, Inc.*, 144 F.3d 1329 (10th Cir. 1998).[6] Each of these three considerations yields only common issues.

### ii.   *Whether Waiting Time Is Too Difficult To Record Presents A Common Question*

The first *de minimis* test consideration is the "practical administrative difficulty" of recording loss prevention-related waiting time. *Lindow*, 738 F.2d at 1063. Polo argues this consideration would entail numerous individualized inquiries. *See* Opposition, 17:22-26. The reality is that it would entail just one common question: How difficult would it be for Polo to allow employees to clock out *after* loss prevention inspections (e.g., at time clocks by employee exits), rather than requiring them to clock out *before* at cash registers, and then go to exits and wait without pay for up to a half hour until the inspections are completed?[7]

---

entitled to compensation for time spent on a job site when they are not performing work responsibilities and are free to do person tasks such as talking on their phone or other activities." (Opposition, p. 15, n. 8.) This is a wholly misleading oversimplification. Those cases dealt with the specific and limited circumstances of on-call resident managers, whose compensation is governed by IWC Wage Orders wholly inapplicable here. *See id.* ("The primary issue in this case is the correct interpretation of a regulation which sets forth rules governing how resident managers of apartment houses and motels must be paid."); *Isner, supra*, at 1401.

[5] It is unclear whether the *de minimis* rule applies to claims brought pursuant to California labor law-based claims, or just claims under the FLSA. The cases Polo cites, including *Lindow*, only considered the rule as it applied to FLSA-based claims. *See, e.g., Lindow*, 738 F.2d at 1061-62.

[6] In light of this 3-part test, Polo's notion that all claims involving unpaid time of 10-15 minutes or less are noncompensable (*see* Opposition, 15:5-11 & n. 8) is patently untenable. *See Lindow*, 738 F.2d at 1062-63 ("There is no precise amount of time that may be denied compensation as *de minimis*."); 29 C.F.R. § 785.47 ("An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable working period of time he is regularly required to spend on duties assigned to him.") *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88, 95 (2d Cir.) cert. denied, 346 U.S. 877 (1953) (less than $1.00 per week *not de minimis*); *cf. Saunders v. John Morrell & Co.*, No. C88-4143, 1992 WL 531674 (N.D. Iowa October 14, 1992) (approximately 3 minutes per day not *de minimis*).

[7] The *de minimis* rule arose because the "realities of the industrial world," as they existed in the middle of the last century, made it administratively difficult to record small amounts of time. *See Lindow*, 738 F.2d at 1063; *Anderson*, 328 U.S. 680, 692 (1946) ("Split-second absurdities are not justified by the actualities of

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iii.  The Total Time Not Compensated Also Presents A Common Question

Polo argues the "amount of time at issue" prong of the *de minimis* test also would necessitate "individualized trials" concerning "how long [each employee] may have had to wait." Opposition, 17:22-24, 17:13-15. Polo again is mistaken. *See Lindow*, 738 F.2d at 1063.

The second element actually requires consideration of the "the **aggregate** amount of compensable time" in dispute. *Id.* (emphasis added).  One thus must consider whether the total uncompensated waiting time of <u>all</u> class members on <u>all</u> the days they worked, in the aggregate, was substantial.  *Id.* (courts consider "*de minimis*" in light of "the total sum or claim involved in the litigation"); *see also Reich v. Monfort, Inc.*, 144 F.3d at 1334 (explicitly stating it is proper to apply the *de minimis* test in light of an "aggregate based on the total number of workers") (emphasis added).  Thus, the second element would entail analysis of one common issue, not "thousands" of individualized trials.

### iv.  The Third Prong Of The De Minimis Inquiry Also Yields Only A Common Issue

The third prong of the *de minimis* inquiry – the "regularity" with which employees are required to work without pay – also yields only a common inquiry.  That inquiry is:  With what frequency does Polo require its employees to undergo loss prevention inspections before exiting its stores?  The question is common to all Class members and requires no "individualized trials" because it is undisputed that Polo has required *every* employee to spend uncompensated time in connection with its loss prevention inspections *every* day. *See* Opposition, 4:15-16, 6:22.

2.  <u>Resolving The Loss Prevention Inspection-Related Claims Will Entail</u>

   <u>Predominant Common Issues</u>

Polo also argues "the loss prevention inspection allegations do not portend a theory of liability that presents a common question."  Opposition, 17:5-6.  As evident from the above discussion, however, the loss prevention-related claims do implicate common questions.  Polo implicitly concedes this by not even attempting to refute the existence of the numerous significant

working conditions....")   In this age of technology, it would seem increasingly disingenuous for multibillion dollar companies like Polo to argue recording waiting time (like that at issue here) would not be feasible. *See Fast v. Applebee's Int'l Inc.*, No. 06-4146, 2007 WL 1309680, at * 9 (W.D. Mo. May 3, 2007) (time not *de minimis* because "even if the amount of time is small, it could easily be measured"); *Reich v. IBP, Inc.*, No. 88-2171, 1996 WL 137817, at *7 (D. Kan. Mar. 21, 1996).

common issues previously-cited. *See* Pl.s' Motion, 13:7-24, 18:1-10). By way of brief review, some of these common questions, as illustrated on a claim-by-claim basis include, in addition to those discussed above:

- 3rd Claim ("Failure to Pay Wages"): Has Polo failed to compensate employees for time spent in connection with loss prevention inspections?

- 4th Claim ("Breach of Contract"): By not compensating employees for time they spent in connection with the loss prevention inspection process, did Polo breach its contractual agreement with employees as set forth in the employee compensation handbooks?

- 5th Claim: ("Failure to Pay Wages Upon Discharge Or Quitting"): By not compensating employees for time expended in connection with the loss prevention inspection process, did Polo fail to pay employees all wages due when the employees ceased working for Polo?

- 7th Claim ("Failure to Maintain Pay Records"): By not recording time employees spend in connection with the loss prevention inspection process, has Polo failed to maintain accurate pay records in violation of Labor Code §226? Was Polo's failure to maintain accurate records "knowing and intentional," warranting Labor Code §226(f)-based penalties?

- 8th and 9th Claims (Unfair Business Practices & "Declaratory Relief"): Are Polo's standardized policies and practices of not recording time expended in connection with its loss prevention inspection process or paying employees for that time unfair within the meaning of Business and Professions Code §17200, *et seq.*, or unlawful?

Because resolution of the Class's loss prevention-related claims pivots on these common questions, the claims are "sufficiently cohesive to warrant adjudication by representation." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Balanced against these numerous significant common issues are individual issues that are limited and relate only to damages. *Cf. Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("[S]ome variation among the individual employees as well as some proof – including as to damages – does not defeat predominance.") In this regard, the amount of time Class members spent waiting could be determined through either an agreed-upon average as applied to the number of days employees worked, or through any number of procedural tools, the use of which courts have repeatedly

*Otsuka, et al. v. Polo, et al.*
Pl.s' Reply Re Mot. For Certification     5     Case No. C-07-02780-SI
otsuka/p/ReplyCert08f27

endorsed.[8] The use of estimated evidence of damage is particularly appropriate when, as here, an employer has disregarded its statutory wage record-keeping duties.[9]

In sum, because the loss prevention inspection-related claims themselves present common questions forming "a significant aspect of the case," there is "clear justification" for certification. *See Hanlon*, 150 F. 3d 1011, 1022.

### 3.    The Rest Break-Related Claims Make Common Issues Even More Predominant

Polo argues the benefit of addressing common rest break claim-related issues would be vastly outweighed by the need to address individualized inquiries concerning whether rest breaks were missed because Polo failed to provide them or an employee waived them.[10] (Opposition, 13:20-14:10; 16:1-17:4.) Polo's arguments do not support its conclusions.

Plaintiffs have produced evidence of Polo's standardized policies and practices of affirmatively discouraging employees from taking rest breaks through both understaffing and managerial discouragement. *See* Pls.' Mot., 6:10, *et seq.*, and evidence cited therein.[11] The existence of such common policies and practices satisfies the predominance requirement. *See Alba*

---

[8] *See, e.g., Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 at *35-37 (N.D. Cal. 2006) (approving use of "innovative procedural tools that can efficiently resolve individual questions regarding…damages [including] administrative mini-proceedings, special master hearings, and specially fashioned formulas or surveys"); *Whiteway v. FedEx Kinko's Office & Print Servs.*, 2006 U.S. Dist. LEXIS 69193, at 29-30 (N.D. Cal. 2006); *Romero v. Producers Dairy Food*, 235 F.R.D. 474, 487 (E.D. Cal. 2006); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 332-35, 337 and n. 12 (2004).

[9] "Where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages." *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16; *see also Anderson*, 328 U.S. 680, 688 ("Due regard must be given to the fact that it is the employer who has the duty to keep proper records of…hours…. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.")

[10] *Cf. Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal.App.4th 585 (2006) ("[B]y enacting Labor Code section 219, subdivision (a), the Legislature made…**rest breaks**…specifically **nonwaivable**…."); *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949 (2005) (rest-break requirement is a nonwaivable "state-mandated minimum labor standard").

[11] Polo denies the existence of such policies, but "whether or not [it] employed a policy of not providing meal and rest periods as required by California law goes to the merits of the case, not to whether common issues predominate, which is the issue that the Court must examine on a motion for class certification." *Alba v. Papa John's USA, Inc.*, 2007 U.S. Dist. LEXIS 28079, 2007 WL 953849 (C.D. Cal. Feb. 7, 2007).

*v. Papa John's USA, Inc.*, 2007 U.S. Dist. LEXIS 28079, at *39-41 (C.D. Cal. 2007) ("Whether the policy satisfied the right to meal and rest periods under California law is a question of law not only common to the proposed subclass, but also one that predominates over individual factual questions that may arise.")[12]

Moreover, even absent evidence of such common policies and practices, courts routinely have certified classes when the plaintiffs presented the same nature and volume of common questions as are present here. *See, e.g., Wang*, 231 F.R.D. at 13 (certifying class and finding "whether defendant deprived employees of meal and rest breaks and failed to pay appropriate penalties for missed breaks" one of several common issues satisfying predominance).[13]

Consequently, Polo's undisputed standard practice of never paying employees the hour's wage mandated by law for those occasions on which it has failed to provide them with rest breaks, in violation of Labor Code §226.7, is properly challenged on a class-wide basis. (*See, e.g., id.*)

**B.    *The Other Certification Prerequisites Are Satisfied As To The Class***

    1.    <u>Numerosity Is Undisputed</u>

        Polo does not dispute that numerosity is satisfied with respect to the Class.

    2.    <u>Typicality Is Satisfied</u>

---

[12] *Brown v. Federal Express Corp.*, 2008 WL 906517 (C.D. Cal. 2008), on which Polo heavily relies, is not instructive because dozens of differences regarding how the proposed class members (FedEx drivers) were affected by their employers' alleged policies existed there such that no method of common proof existed. By contrast, the Class members are all similarly positioned inside Polo's stores, subject to immediate managerial supervision, and the effects of Polo's policies can be established through any number of the procedural tools (e.g., representative plaintiffs, or surveys) courts have repeatedly approved. *See, e.g., Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794. *Brown* also did not involve additional claims generating common issues, unlike this case or other cases certifying classes asserting rest break claims. *See, e.g., Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ("Most difference among putative class members, such as...the number of breaks that have been missed, affect damages, not Defendant's liability."); *Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246 (S.D. Cal. 2008). Moreover, *Brown*, in contrast to California courts (see note 10, *infra*) concluded rest breaks were waivable, which suggests the existence of yet another common issue: whether *Brown* or California courts have properly interpreted California rest break law.

[13] *See also Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 6/20/07) (certifying class asserting claims including those based on missed rest breaks); *Tierno.*, 2006 U.S. Dist. LEXIS 71794 at *2 (same); *Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246 (S.D. Cal. 2008) *Whiteway*, 2006 U.S. Dist. LEXIS 69193.

---

The "permissive" typicality element is satisfied as to the class because class representatives and class members need only "share a common issue of law or fact." *California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Here, the Class and its representatives share multiple common issues of both law and fact. Pursuant to Polo's standard policies, none of them <u>ever</u> was compensated, as required by law, for time expended in connection with loss prevention inspections or for missed rest breaks. Both the Class and its representatives thus assert the same claims for relief. Differences regarding the extent of undercompensation are irrelevant. *See, e.g., Arnold v. United States Theatre Circuit, Inc.*, 158 F.R.D. 439, 440 (N.D. Cal. 1994) ("[C]laims of the named plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial and legal theories.") Polo's arguments regarding an ostensible lack of common claims or variances in the number of missed rest breaks thus are irrelevant. *Id.*

     3.    <u>Adequacy of Representation Is Established</u>

The "adequacy of representation" requirement is satisfied because Representative Plaintiffs Keefe, Phipps, and Davis and their counsel: (1) are willing and able to vigorously prosecute the action on behalf of the entire putative class, and (2) have no conflicts of interest. *Lerwill v. In-flight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d 1020.

Polo's allusion to difficulties with communicating with Plaintiff Ann Otsuka is irrelevant to adequacy of representation because Ms. Otsuka is not currently seeking certification, and has not asked to be appointed as a class representative.[14]

4.    <u>A Class Action Is The Superior Means Of Adjudicating The Class's Claims</u>

Superiority is satisfied because, as in a case involving strikingly congruent claims, "[i]f a class was not certified…the alternative would be either numerous individual suits or the abandonment of individual claims[;] the former would undoubtedly result in a great duplication of effort given the predominance of common questions of law and fact, while the latter would result in lost access to the courts." *Tierno*, WL 2535056, at *12.

---

[14] To the extent Polo's allusion is intended to disparage the capabilities of the Law Office Of Patrick R. Kitchin or the Law Offices Of Nancy E. Hudgins, it is at best speculative, and thus insufficient to counter the Representative Plaintiffs' showing of adequacy. *See, e.g.,* Kitchin Decl., ¶7; Hudgins Decl., ¶¶1-13.

*Otsuka, et al. v. Polo, et al.*
Pls' Reply Re Mot. For Certification       8      Case No. C-07-02780-SI
otsuka/p/ReplyCert08f27

Polo argues class-wide litigation of the Class's rest break and loss prevention-related claims would "not advance the goals of fair and efficient adjudication," but tellingly offers no explanation for this dubious assertion. (Opposition, 19:1-3.) Regardless, that this argument is unfounded has been repeatedly judicially confirmed by courts finding superiority satisfied in closely analogous classes. *See, e.g., id.; Lerwill*, 582 F.2d 507, 512 (certifying a class of technicians seeking overtime pay and holding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated"); *Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518 (certifying class of employees asserting *inter alia* missed rest break claims and finding superiority satisfied because: (1) the expenditure of additional time, effort and money attendant to numerous individual suits was greatly reduced, (2) the potential for differing outcomes was avoided, and (3) individual employees may have lacked the resources to pursue individual litigation against the big corporate defendant); *Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246 (S.D. Cal. 2008) (certifying class of former FedEx employees asserting *inter alia* missed rest break claims).

Polo's argument that injured Class members could instead bring DLSE actions does not militate against superiority because Polo does not even contend such actions would be superior to a class action, let alone cite any authority or rationale supporting such a position. *See* Opposition, 19:3-5. This is unsurprising because "courts have not hesitated to certify class actions for wage and hour claims simply because California law provides for administrative relief." *Wang*, 231 F.R.D. at 614 (finding class action involving *inter alia* inaccurate records and rest breaks claim superior to DSLE actions); *see also Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518 (same).

### III. Rule 23's Requirements Are Satisfied As To The Misclassification Subclass

Polo's arguments against certifying the Misclassification Subclass are based almost exclusively on its gross underestimation of the number of employees it misclassified as exempt from California overtime laws.

### A.    *The Law Governing When An Inside Salesperson Is Exempt From Overtime Laws*

California has two tests for determining whether an employee qualifies as an inside commissioned salesperson (to whom employers need not pay premium overtime compensation). These tests are: "the 50% Test" and "the *Bona Fide* Commission Plan Test."[15]

1.    The 50% Test

The 50% Test is set forth in California Industrial Welfare Commission (IWC) Order 7-2001, subpart 3(D).[16]  Subpart 3(d) provides *inter alia* that its provisions concerning premium overtime "shall not apply to any employee whose earnings exceed one and one-half (1½) times the minimum wage if more than half of that employee's compensation represents commissions." IWC Wage Order 7-2001, Subpart 3(D).

California sales associates thus can be classified as exempt only if:  (1) they are making more than 1½ times the applicable minimum wage, **and** (2) the commissions they generated during a representative period are sufficient to cover at least 50% of their wages.

Employers must evaluate their employees' exemption status as often as necessary, at time periods not less than one month, nor longer than necessary to determine whether each employee is covering at least 50% of his or her wages through their commissions.  *Labor Standards Enforcement Policies and Interpretations Manual*, § 34.2.1 (attached as Exh. 3 to the Suppl. Kitchin Decl.)

2.    The *Bona Fide* Commission Plan Test

Under both California and federal law, the 50% test is supplemented by a second test that evaluates the overall commission system based on salespersons' earning patterns.  Under this test, "Consistent commission earnings below, at, or near the draw are indicative of a commission plan

---

[15] These two tests are used under the Fair Labor Standards Act as well.  See, 29 USC 201, *et seq.*, including 207(i), and 29 CFR 779.416.

[16] A copy of the Order is attached as Exh. 2 to the accompanying Supplemental Kitchin Declaration.

that is <u>not</u> *bona fide.*"[17]    *Labor Standards Enforcement Policies and Interpretations Manual,* section 50.6.1(4) (emphasis added) (Exh. 101 to the Kitchin Decl.)[18].

Plaintiffs are unaware of cases construing the Bona Fide Commission Plan Test, and thus have adopted a reasonable working measure of this standard:  If a sales associate fails to cover his or her guaranteed draw through sales commissions 50% or more of the time,[19] the sales associate is an hourly employee entitled to premium overtime compensation.

**B.     *Polo Disregarded Both Tests, Applied One Inaccurately, And Thereby Failed To Identify Many Misclassified Sales Associates***

Polo historically has classified *the position* of sales associate in its Full-Price Stores as exempt, and thus never has paid its sales associates premium overtime – without ever considering whether the sales associates actually could lawfully be considered exempt.[20]    After years of "inadvertently" not checking whether it was complying with California wage laws, Polo purported to apply the 50% Test in August of 2007.  Based on its faulty application of that test, it identified only 38 employees as misclassified, some of whom had worked for Polo since as 2002.  (Cohen Decl., pp. 4-5.)

---

[17] "A commission rate is not *bona fide* if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each work week (as would be the case where the computed commissions seldom or never exceed the amount of the draw or guarantee." 29 CFR 779.416.

[18] Courts consider the DSLE Manual persuasive authority.  See, e.g., *Bell v. Farmer's Ins. Exch.* 87 Cal.App.4th 805, 815 (2001).

[19] Polo argues Plaintiffs "utilize a two week pay period as the basis of this subclass."  Opposition, 23:25. Polo thus seems to be confusing different aspects of California wage requirements.  While a "representative period" must be at least one month, "Compliance with the requirements of this exemption is determined on a workweek basis.  The minimum compensation component of the exemption must be satisfied in each workweek and paid in each pay period."  *Labor Standards Enforcement Policies and Interpretations Manual,* section 50.6.1.3, Pl.s' Exh. 101.

[20] Polo contends its failure to conduct reconciliations at any time prior to 2007 was "inadvertent," because it supposedly was not until 2007 that Polo first "became aware that reconciliations had not been performed." Opposition, 23:14-15; Declaration of Evan Cohen, ¶¶ 11-20.  However, Kimberly Babka, Polo's Regional Director, testified she recalled "surfacing" the issue of reconciliations in about March 2006 with someone in Polo's Human Resources Department.  Moreover, Polo was alerted to its failure to perform the reconciliations at least by May 2005, when Plaintiffs filed this lawsuit.

---

Polo's application of the 50% Test was faulty because, among other things, it considered only whether sales associates' yearly commissions were sufficient to cover at least 50% of their wages. It did not consider the second element of the 50% Test – viz., whether employees were being paid more than 1½ times the applicable minimum wage. *See* IWC Wage Order 7-2001, Subpart 3(D). Had it done so, it would have identified at least 74 sales associates who were not paid in excess of 1.5 times the applicable minimum wage during the entirety of 2004-2007. Suppl. Kitchin Decl., ¶¶2-9.

In San Francisco, minimum wage has been set by ordinance since 2004. *See* Pls' Req. for Judicial Notice, Exhs. 1 & 2. In 2004, when Representative Plaintiffs Phipps and Keefe worked in Polo's San Francisco store, the applicable minimum wage was $8.50 per hour. They were each paid $12.75 per hour, which is *exactly* 1.5 times the applicable minimum wage, and thus not *more than* 1.5 times the minimum wage. *See* Pls' Exh. 100, page 1.[21] All other San Francisco sales associates were paid $12.75 per hour in 2004 *or less*. Exh. 1 to the Suppl. Kitchin Declaration. During 2004-2007, Polo then failed to increase its San Francisco store's sales associates' wages to keep pace with the minimum wage requirements. *See* Suppl. Kitchin Decl., ¶¶2-9. Further, Polo did not apply the *Bona Fide* Commission Plan test to ensure that it was properly treating as non-exempt those sales associates who generally earned below, at or near their hourly draw. Had it done so, it would have identified an additional misclassified 182 former sales associates whose sales performance revealed "a commission plan that is not *bona fide.*"[22] *Labor Standards Enforcement Policies and Interpretations Manual*, §50.6.1.3, Pls' Exh. 101; L. Liu Decl., ¶¶3-7.

**C.    *Proper Application Of Law Confirms Rule 23's Requirements Are Satisfied***

1.    <u>Numerosity</u>

Numerosity is satisfied because the Misclassification Subclass consists of more than 40 individuals: (1) the 38 former sales associates Polo admittedly misclassified when it performed its commission reconciliation (based on the 50% Test) in 2007; (2) the 74 San Francisco sales

---

[21] The San Francisco store number is identified in Polo's wage data as Store 802.

[22] For example, Ms. Phipps commission earnings were always below her hourly draw, and Ms. Keefe's commission earnings were below her hourly draw every pay period except one. *See* Pls' Exh. 100, p. 1.) While both worked overtime during their employment at Polo, neither was paid premium overtime for that work. *See generally* TAC, ¶¶24, 31.

associates who did not qualify under the 50% test because they were not being paid in excess of 1.5 times the applicable minimum wage; and (3) the additional 182 former sales associates Polo overlooked by not applying the *Bona Fide* Commission Plan Test. *Cf. Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (deeming 39 persons sufficient for numerosity).[23]

2.    Typicality

Polo argues typicality is lacking because "[n]one of the named plaintiffs has a claim for unpaid overtime wages based on misclassification." Opposition, 22:18-21. Polo's argument is unfounded, however, because, as discussed above, Plaintiffs Phipps and Keefe *were* misclassified under both the 50% Test and the *Bona Fide* Commission Plan Test.

It also is undisputed that Polo falsely represented in writing to Plaintiffs Keefe and Phipps and the rest of the Misclassification Subclass that it would conduct an annual "reconciliation" to ensure they were properly paid. *(Id.)* Because the same course of conduct resulted in the same variety of injury to the entire Subclass, including Plaintiffs Phipps and Keefe, typicality is satisfied. *See Armstrong*, 275 F.3d. at 275; *Wang*, 231 F.R.D. at 608.

3.    Superiority And Adequacy Of Representation

Polo makes the same "superiority" and "adequacy" arguments in connection the Misclassification Subclass as it does in connection with the Class. Consequently, its arguments are untenable for the same reasons.

4.    Predominance of Common Issues

Polo argues predominance is lacking because it ostensibly fully compensated all sales associates it misclassified. It is mistaken because all misclassified sales associates were injured by Polo's common practice of classifying them all as exempt regardless of whether they qualified, despite its representations that it would ensure they were paid in accordance with law. Consequently, significant common issues abound.[24] Tellingly, Polo does not even attempt to

---

[23] The Misclassification Subclass thus would seem to consist of approximately 294 members, all of whom can be identified through Polo's records, though its membership may be reduced to a minor extent if, for example, any of the 38 misclassified employees Polo identified worked in the San Francisco store or were misclassified under the Bona Fide Commission Plan test.

[24] These include: (1) Was it an unfair business practice for Polo to uniformly treat all sales associates in Full-Price Stores as exempt commissioned salespeople? (2) Did Polo's misclassification of sales associates result in: (a) inaccurate pay records, (b) failures to pay all wages owed when due, including premium

refute the existence of these significant common issues or the overwhelming weight of authority cited in the opening brief indicating predominance is satisfied in cases like this.[25] On the flip side of the analytic coin, individualized issues again would relate solely to purely mathematical calculations of damages, which are insufficient to preclude a finding of predominance. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 ("[S]ome variation among the individual employees as well as some proof – including as to damages – do not defeat predominance.")

## IV. Rule 23's Requirements Are Satisfied As To The Arrears Subclass

Polo attempts to avoid certification of the Arrears Subclass by insisting that: (1) Plaintiffs Phipps and Keefe and the rest of the Arrears Subclass could assert only one viable theory of recovery (breach of contract), and (2) adjudication of that claim would entail "highly individualized fact inquiries into what manager said what to which employee, and into what each employee understood and accepted." Opposition, 20:3, *et seq.*, 21:10-12. Polo is incorrect.

Preliminarily, this is <u>not</u> a legally appropriate context for assessing "whether plaintiffs have stated a cause of action or will prevail on the merits." *Eisen v Carlisle & Jacquelin* (1974) 417 US

---

overtime wages, and/or (c) failures to pay all wages owed at the cessation of employment? (3) Did Polo willfully misclassify employees, warranting imposition of penalties for failures to pay wages owed upon cessation of employment and/or to maintain accurate pay records? (4) Did Polo commit fraud by falsely promising all sales associates in writing that it would perform wage "reconciliations" to assess whether they were entitled to premium overtime? (5) Does Polo's fraud warrant the imposition of punitive damages? (6) If so, how should punitive damages be apportioned among the defrauded employees?

[25] *See* Pl.s' Mot., at 19:1-20:3, citing, *In Re Wells Fargo*, 2007 U.S. Dist. LEXIS 77525, *17-19 (N.D. Cal. 2007) ("In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations."); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 329 (2004) ("[I]t is sufficient, for class treatment, that Plaintiff show either the likelihood of a standardized or uniform policy of *deliberate* misclassification *or* simply that the defendant's uniform practices likely led to wide spread *de facto* misclassification.); *Alba*, 2007 U.S. Dist. LEXIS 28079, at *39-41 ("[T]he question of whether store managers are 'exempt' is a common defense [that] supports class adjudication."); *Wang v. Chinese Daily News* (finding predominance satisfied where there were common questions including "whether Defendant has a uniform policy of unlawfully treating certain classifications of employees as 'exempt;' whether Defendant conducted an appropriate investigation to support a good faith defense of this policy; whether Defendant failed to pay overtime compensation to non-exempt employees; whether Defendant deprived employees of meal and rest breaks and failed to pay appropriate penalties for missed breaks; whether Defendant failed to keep accurate records of hours worked; whether Defendant failed to provide accurate itemized wage statements to employees; whether Defendant failed to pay all wages due to employees at the time that their employment was terminated.")

*Otsuka, et al. v. Polo, et al.*
Pl.s' Reply Re Mot. For Certification                14                Case No. C-07-02780-SI
otsuka/p/ReplyCert08f27

1    156, 178. Regardless, Polo mischaracterizes the Arrears Subclass's claims' viability. For instance,

2    compensation deduction schemes like Polo's are only valid if they are agreed to in writing. *See*

3    *Steinhebel v. Los Angeles Times Communications*, 126 Cal.App.4[th] 696, 705 (2005)[26]; *see also*

4    *Koehl v. Verio, Inc.*, 142 Cal.App.4[th] 1313.[27] Here, it is undisputed that Polo purposefully

5    withheld Arrears Scheme documents from sales associates, such that they could not have agreed in

6    writing to its terms. *See* Pl.s' Motion, 10:16-19.[28] More importantly, all these claims can be

7    adjudicated in light of Polo's standardized handbooks and governing law, without the need for any

8    individualized issue consideration, except regarding damages. Thus, common issues predominate.

9    *Hanlon*, 150 F. 3d 1011, 1022; *Local Joint Exec. Bd. Of Culinary*, 244 F.3d at 1163.

10       Polo makes effectively no other attempt to dispute Plaintiffs' showings that Rule 23's

11    elements are all satisfied, except to argue that joinder of 49 people would not be impracticable, and

12    that requiring each of the 49 Arrears Subclass members to pursue separate trials to recover

13    amounts as little as $2.83 would be superior to certification. Courts have soundly rejected both

14    notions. *Jordan*, 669 F.2d at 1319 (39 persons sufficient for numerosity);   *Allison v. Citgo*

15    *Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) (negative value suits "most compelling

16    rationale for finding superiority").

17                              **V. Conclusion**

18       For the foregoing reasons, the Representative Plaintiffs respectfully submit the Class and

19    Subclasses should be certified.

---

20

21    [26] *Steinhebel* establishes that Labor Code §221 must be read in the context of §224. Section 221 provides,

22    "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Labor Code § 224, in turn, provides: "The provisions of Sections 221, 222 and 223 shall in no way make it unlawful for an employer to withhold or divert any portion of an

23    employee's wages when the employer is required or empowered so to do by state or federal law or **when a deduction is expressly authorized in writing**...."

24

25    [27] Polo's reliance on *Prachasaisoradej v. Ralphs Grocery Company*, 42 Cal.4[th] 217 (2007) is misplaced. There, the "supplementary incentive compensation system" was in the form of a **written** contract between

26    the employees and Ralphs and was designed to benefit both the company and its employees. *Id.*, at 222.

27    [28] Thus, the Subclass has not only a viable breach of contract claim, it also has viable claims based on *inter alia*: (1) Polo's standard misrepresentations that it would pay all wages owed when due, (2) its taking of

28    earned commissions in violation of Labor Code §221, (3) its failure to pay all wages owed when due, and (4) its use of an unfair and unlawful business practice. *See generally* TAC, pp. 19, *et seq.*

---

1   Dated:  June 27, 2008        THE LAW OFFICE OF PATRICK R. KITCHIN

2

3

4                          By:  Patrick R. Kitchin,

5                          Attorneys for Janis Keefe, Corinne Phipps and Renee Davis

*Otsuka, et al. v. Polo, et al.*
Pl.s' Reply Re Mot. For Certification        16        Case No. C-07-02780-SI
otsuka/p/ReplyCert08f27