IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA; JANIS KEEFE; CORINNE PHIPPS; and RENEE DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POLO RALPH LAUREN CORPORATION, et al.,<br><br>Defendants.           / | No. C 07-02780 SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs have filed a motion for class certification. The motion is scheduled for hearing on July 11, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiffs' motion to certify the class.

**BACKGROUND**

The subject of this litigation is an employment dispute over unpaid wages brought by former retail sales employees against defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Retail Corporation, and Fashions Outlet of America, who operate 28 full-price and outlet stores in the state of California. On May 30, 2006, plaintiffs Ann Otsuka, Janis Keefe, Corrine Phipps, and Justin Kiser filed a putative class action complaint in state court against defendants. Defendants removed the action to federal court on May 29, 2007, on grounds that this Court has either diversity jurisdiction or jurisdiction

pursuant to the Class Action Fairness Act. The complaint was amended multiple times in order to add named plaintiff Renee Davis, remove plaintiff Kiser, and make other adjustments, such that the operative complaint is now the Third Amended Complaint ("TAC"), which was filed by stipulation of the parties in March 2008.

Plaintiffs have brought suit on behalf of all former California employees of defendants who worked as sales associates or cashiers and were injured by defendants' violation of employment laws from May 30, 2002 to the present. TAC at ¶ 10, 43. The gravamen of the complaint is that defendants failed to provide rest breaks, failed to pay employees for off-the-clock time spent inside the stores, improperly classified all sales associates as commission salespeople who are exempt from premium overtime compensation, and improperly used an arrears program in which sales associates who did not meet minimum commission requirements were subject to reduced earnings on future commissions above the minimum requirements. Plaintiffs contend that defendants use a single employee handbook for all California stores, and that defendants' policies and practices are standardized throughout California in both retail and outlet stores. *See*, *e.g.*, TAC at ¶ 45. One of these practices, plaintiffs contend, is to discourage or prevent employees from taking required rest breaks. *See*, *e.g.*, TAC at ¶ 35, 41. Another practice is to conduct loss-prevention inspections (i.e. bag checks for stolen merchandise) on all employees every time they leave the store, such as at the end of their shifts or to take lunch breaks. *See*, *e.g.*, TAC at ¶ 11; Kitchin Decl. ex. 12 at 25 (2002 employee handbook describing the required inspections). Plaintiffs allege that these inspections only occur after an employee has clocked out, and that employees often have to wait for 10-15 minutes, and sometimes longer, for a manager to show up at the back door to conduct the inspection. TAC at ¶¶ 27, 34, 40. Plaintiffs also allege that defendants treated all salespeople at retail stores as exempt from overtime compensation, even though many such employees did not sell enough merchandise to be considered exempt commissioned employees, and failed to conduct the promised "reconciliations" to determine whether the employees actually were exempt. TAC at ¶ 11. These allegations are supported in large part by deposition testimony of the named plaintiffs and by declarations filed by absent class members, though competing declarations contesting many of these allegations have been filed by current employees on behalf of defendants.

The complaint alleges the following causes of action on behalf of all members of the putative

2

class: failure to pay wages, including overtime wages; breach of contract; failure to pay all wages due upon separation from employment; failure to provide rest breaks; failure to maintain accurate pay records; and unfair business practices. The complaint also alleges additional causes of action on behalf of two subclasses of plaintiffs. The first subclass consists of former sales associates who were misclassified as exempt from premium overtime compensation ("the misclassified subclass"), while the second subclass consists of former sales associates who were required to participate in the arrears program ("the arrears subclass").[1] The complaint alleges a cause of action for fraud for the misclassified subclass and a cause of action for violation of California Labor Code § 221 for the arrears subclass.

Plaintiff Otsuka worked as a sales associate at the Palo Alto retail store in 2004. She alleges that defendants denied her overtime compensation, required her to participate in the arrears program, required her to wait for bag inspections without compensation, and discouraged her from taking rest breaks. *See* TAC at ¶¶ 13-20. Plaintiff Phipps worked as a sales associate at the San Francisco retail store in 2004. She alleges that defendants denied her overtime compensation, required her to participate in the arrears program, and required her to wait for bag inspections without compensation. *See* TAC at ¶¶ 21-27. Plaintiff Keefe worked as a sales associate at the San Francisco retail store in 2004 and 2005. She alleges that defendants denied her overtime compensation, required her to participate in the arrears program, required her to wait for bag inspections without compensation, and discouraged her from taking rest breaks. *See* TAC at ¶¶ 28-35. Plaintiff Davis worked at the Cabazon factory outlet store in 2002, 2003, and 2004. She alleges that defendants did not pay all overtime compensation due to her, required her to participate in the arrears program, required her to wait for bag inspections without compensation, and discouraged her from taking rest breaks. *See* TAC at ¶¶ 36-42. All named plaintiffs except Otsuka now move for class certification.

---

[1] In fact, the Third Amended Complaint explicitly mentions only the misclassified subclass, not the arrears subclass. *See* TAC at ¶ 43. The complaint does address the arrears program, however, and it also makes clear that additional subclasses are contemplated. *Id.* ¶ 44 ("The Class definition may be further defined or modified in Plaintiffs' motion for class certification, depending on additional information obtained through ongoing discovery.").

3

## LEGAL STANDARD

The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364 (1982). The burden is on the plaintiff to establish that the Rule 23(a) and Rule 23(b) requirements have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citing *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971)). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 ( 9th Cir. 1975). However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.26 (3d ed. 1992); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744

4

(5th Cir. 1996).

**DISCUSSION**

Plaintiffs move to certify a class of all former sales associates and cashiers who worked for defendants in California from May 20, 2002 through the conclusion of this action. Plaintiffs also move to certify the misclassified subclass as well as the arrears subclass. Defendants vigorously object to class certification, arguing that plaintiffs fail to meet almost every requirement of Rule 23 for the main class and the two subclasses. As discussed below, however, defendants' arguments primarily dispute the merits of plaintiffs' claims and raise questions of fact that will not be resolved at this juncture, and the Court finds that class certification is appropriate because plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3).

**I.    Rule 23(a)**

As mentioned above, "Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2004). Plaintiffs have demonstrated that each is present here.

**A.    Numerosity**

Plaintiffs argue that the proposed main class consists of an estimated 5,300 former cashiers and sales associates. Defendants concede that this number of plaintiffs meets the numerosity requirement, and the Court agrees. *See, e.g.*, *Immigrant Assistance Project of the L.A. County Fed. of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding that district court did not abuse discretion in certifying class of approximately 11,000 and stating that "[c]ourts have certified classes with far fewer members").

Plaintiffs argue that the misclassified subclass consists of approximately 69 former sales associates and possibly as many as 294 people, depending on the test used to determine whether the sales associates were misclassified. Plaintiffs also argue that the arrears subclass consists of approximately 49 members. Defendants contend that these subclasses are insufficiently numerous and that joinder is not impracticable as a result of their size. The Court disagrees. The Ninth Circuit has

5

held that as few as 39 members may be sufficiently numerous under the right circumstances, *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983), and the Court finds that the spread of the subclasses throughout California, the likely small size of the damages claimed by the subclasses, and the fact that the subclass members are also members of the larger class, all suggest that the subclasses, though small, meet the numerosity requirement of Rule 23(a).

### B. Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." In the Ninth Circuit, the commonality requirement "has been construed permissively," such that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs persuasively argue that many questions of law and fact are common to the class, such as whether: (1) defendants' policy of not compensating employees for time spent waiting for loss-prevention inspections violates California law or constitutes an unfair business practice; (2) time spent waiting for these inspections was "postliminary" or *de minimis*, and whether these federal standards would even apply to plaintiffs' California law claims; (3) defendants breached their contracts with class members by failing to compensate them for time spent awaiting loss prevention inspections; (4) defendants had a policy of not providing or discouraging rest breaks; (5) defendants violated California law by failing to pay employees one hour's wage when rest breaks were not provided; (6) defendants failed to maintain accurate pay records as a result of these alleged labor code violations; and (6) whether defendants' failure to maintain accurate records was knowing and intentional. As these questions suggest, plaintiffs have sufficiently demonstrated that the commonality requirement of Rule 23(a) has been met with respect to the main class.

As for the subclasses, plaintiffs argue that there are common questions of law and fact posed by the claims of the misclassified subclass, such as whether defendants misclassified sales associates, whether defendants committed fraud by promising sales associates that they would perform "reconciliations" to determine whether the associates were entitled to overtime compensation, and

6

whether defendants' policy of treating all sales associates as exempt employees constituted an unfair business practice. Defendants dispute the merits of the claims raised by the misclassified subclass, but do not explain why plaintiffs have failed to demonstrate that these questions are common to every member of the misclassified subclass.

Plaintiffs also argue that the arrears subclass meets the commonality requirement because the claims brought by this subclass raise common questions, such as whether the arrears program violated California law and constituted a breach of the employment agreement set forth in defendants' employee handbooks. In response, defendants raise questions with regard to the merits of plaintiffs' arrears claims – questions the Court does not and need not reach today – and also argue that the breach of contract claim would turn on individual questions about what each subclass member was told about the arrears program. Even if defendants are correct that individual inquiries would need to be made with regard to whether the terms of the program were misrepresented to plaintiffs, this in no way detracts from the common questions presented by the subclass claims, such as whether the program on the whole violated California law and whether the terms of the program had to be presented in writing. For these reasons, the Court finds that the commonality requirement has been met with regard to the two subclasses.

### C. Typicality

Rule 23(a)(3) examines the class representatives and asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As the Ninth Circuit has explained, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). Plaintiffs argue that the claims of the class representatives are typical of the main class because Keefe, Phipps, and Davis all should have been compensated for time spent waiting for loss-prevention inspections and missed rest breaks. Defendants do not take issue with the typicality of the representatives with regard to the loss-prevention inspections, but do argue that the rest break claims of the named plaintiffs are not typical of the class because Phipps testified that she took rest breaks, Davis testified that she missed only 25% of her rest breaks, and Davis worked at an outlet store rather than a full-priced Polo store. The

1 Court finds that although Phipps may be unable to assert rest break claims, the other representatives
2 allege that they were forced or coerced to skip rest breaks as part of a culture – alleged to exist at both
3 outlet stores and full-priced stores – that discouraged the taking of rest breaks, and thus they meet the
4 test for typicality. Although absent class members may have missed more or fewer rest breaks than the
5 named plaintiffs, all were subjected to the same alleged policies with regard to rest breaks, and any
6 individual differences in the number of breaks missed is a question that can be addressed if and when
7 the amount of damages is determined.

8 Plaintiffs also argue that Phipps and Keefe are members of both subclasses and have claims that
9 are typical of the subclasses. Defendants make no argument with regard to the arrears subclass, and the
10 Court finds that Phipps' and Keefe's arrears-based claims are typical of the claims of the arrears
11 subclass. As for the misclassified subclass, defendants argue that Phipps and Keefe do not have claims
12 for unpaid overtime wages based on misclassification because defendants performed a reconciliation
13 in 2007 in which the amount of overtime owed to Phipps and Keefe was determined and paid to them.
14 *See* Cohen Decl. at ¶¶ 13-20; *id.* at ex. A. The Court disagrees with defendants' contention for two
15 reasons. First, to the extent Phipps and Keefe are successful on their other claims, the number of
16 overtime hours they worked may increase. Second, even though they may have been compensated for
17 some of their overtime hours, Phipps and Keefe may still assert claims that are typical of the absent
18 subclass members, such as the claim that defendants committed fraud by failing to conduct annual
19 reconciliations or the claim that defendants engaged in an unfair business practice by treating all sales
20 associates as exempt. Thus, the claims of the class representatives who are members of the subclasses
21 are "reasonably co-extensive with those of absent class members," *Hanlon*, 150 F.3d at 1020, and the
22 Court finds that plaintiffs have satisfied the typicality requirement with regard to the misclassified
23 subclass.

24

25 **D.    Adequacy of representation**

26 Finally, under Rule 23(a)(4), plaintiffs must demonstrate that "the representative parties will
27 fairly and adequately protect the interests of the class." When considering the adequacy of a class
28 representative, courts generally consider only two questions "(1) [d]o the representative plaintiffs and

8

their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Defendants' only objection to the adequacy of the named plaintiffs and their counsel is that disagreements arose in the past between class counsel and named plaintiff Ann Otsuka. These disagreements were resolved, however, by the appointment of separate counsel for Otsuka. In addition, Otsuka is no longer involved in this case other than as an absent class member, as she has been out of touch and has not asked to be named a class representative. The Court has not been made aware of any other problems between counsel and the class representatives, and defendants do not argue that any conflicts of interest exist or that plaintiffs and their counsel will not prosecute this action vigorously. The Court therefore finds that Keefe, Phipps, and Davis will fairly and adequately protect the interests of the class and the subclasses.

## II.     Rule 23(b)

In addition to meeting the requirements of Rule 23(a), plaintiffs must also demonstrate, to the Court's satisfaction, that at least one of the conditions of Rule 23(b) are satisfied. Here, plaintiffs argue that they satisfy Rule 23(b)(3), which provides:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Defendants argue that common questions do not predominate over individual questions and that a class action is not a superior vehicle for bringing plaintiffs' claims. For the following reasons, the Court disagrees.

### A.     Predominance

Under Rule 23(b)(3), plaintiffs must show that common questions of law and fact "predominate over any questions affecting only individual members." This "'inquiry tests whether proposed classes

9

are sufficiently cohesive to warrant adjudication by representation.'" *Hanlon*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance analysis goes beyond the commonality requirement of Rule 23(a)(2) because it assumes the existence of common questions of law or fact and probes the relationship between these common questions and questions that arise based on the individual differences between class members. *See id.*

Plaintiffs argue that common questions of law and fact predominate over individual questions because all of plaintiffs' claims address policies and procedures that defendants implement across the board at each of their California stores. These common questions include whether defendants' failure to compensate employees for time spent waiting for loss-prevention inspections violates California law, whether defendants discouraged employees from taking rest breaks and unlawfully failed to compensate them when rest breaks were skipped, and whether, if the first two questions are answered in plaintiffs' favor, defendants violated other sections of the labor code by, for example, intentionally or unintentionally keeping inaccurate pay records. Defendants, meanwhile, contend that individual questions predominate, but defendants support this contention primarily by advancing arguments that either address the legal merits of plaintiffs' claims or contest plaintiffs' factual allegations. As to the rest break claims, defendants first suggest that California law does not require them to *ensure* that all employees take rest breaks, only that they *provide* rest breaks. This disputed question of California law, of course, is itself a common issue of overriding importance in this action and, in any case, plaintiffs do in fact allege that defendants failed to provide rest breaks because defendants had a policy or practice of preventing or discouraging rest breaks. *See* TAC at ¶¶ 35, 41, 88-89; *see also* Kitchin Decl. ex. 111 at ¶ 10 (declaration of a department manager regarding the discouragement of taking rest breaks). Defendants also argue that their policy is to provide rest breaks and that the employees who did not take rest breaks voluntarily waived them. *See* Defendants' Opposition at 16 n.10 (citing declarations by defendants' employees who either took rest breaks or voluntarily chose not to take them); *but see* Kitchen Decl. at exs. 55, 57, 71, 74, 75, 82, 83, 112 (declarations by absent class members regarding the lack of rest breaks and the reasons rest breaks were often skipped). This, too, poses a common question of fact regarding whether defendants had such a policy. While this contention does, as defendants argue, pose individual questions about why particular employees may have failed to take rest

breaks and whether certain stores may have encouraged breaks while other stores discouraged them, the Court finds that these individual questions are secondary to the larger questions raised about whether defendants had an overall policy with regard to rest breaks and whether they are liable for missed rest breaks regardless of the reasons they were missed.

As to plaintiffs' claim for off-the-clock wages, defendants argue that because, under federal law, time spent waiting for loss-prevention inspections is not compensable if it was *de minimis*, *see Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984), common questions do not predominate because in order to show that any waiting time was not *de minimis*, plaintiffs necessarily will get bogged down in individual questions about how long each class member had to wait for bag inspections after clocking out. Here, again, defendants actually raise a significant question of law that is common to all class members: whether the *de minimis* rule, derived from federal law, applies to plaintiffs' claims, which arise under California law. In addition, if, as plaintiffs argue, the *de minimis* rule does not apply here, then the most significant questions will still be whether plaintiffs were made to wait for inspections without compensation and whether this off-the-clock time is compensable, questions that are common to all class members. On the other hand, if defendants are correct that the *de minimis* rule applies to off-the-clock claims brought under California law, then the question whether the time spent by plaintiffs was *de minimis* will still raise other common questions, such as the "difficulty of recording small amounts of time for payroll purposes" and the regularity with which sales associates and cashiers were made to wait for bag inspections. *See id.* Thus, while defendants are correct that the application of the *de minimis* rule might require inquiries into the individual experiences of class members, these individual questions will arise only after significant common questions of law and fact have been answered, and may not arise at all in the liability context.[2] The Court therefore finds that, as to the main class, common questions predominate over individual questions. *See Hanlon*, 150 F.3d at 1022 ("When

---

[2] To the extent that these individual questions regarding the amount of time each class member waited for bag inspections – as well as individual questions regarding the number of missed rest breaks – will arise in the damages context, the Ninth Circuit has explained that they will not adversely affect plaintiffs' ability to demonstrate the predominance of common questions. *See Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands*, 244 F.3d 1152, 1163 (9th Cir. 2001).

11

common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").

As to the subclasses, defendants do not seriously contend that common questions of fact or law do not predominate over individual questions. As discussed above, there are multiple common questions, of primary importance, raised by the claims asserted by the misclassified and arrears subclasses, and the Court therefore finds that common questions predominate for the subclasses as well.

### B.     Superiority

Plaintiffs must also demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and is certainly superior "if no realistic alternative exists." *Valentino*, 97 F.3d at 1234-35. Plaintiffs argue that a class action is a superior vehicle for bringing their claims because it will further the interests of judicial economy and will facilitate meaningful access to redress for the class members, many of whom might not otherwise attempt to litigate their relatively small wage and hour claims against defendants. Defendants argue in response that plaintiffs could easily bring small claims actions or file complaints with California's Department of Labor and Standards Enforcement, either of which would be less onerous alternatives to filing individual suits in state or federal court. While the Court agrees with defendants that the class members certainly could file such claims, the Court finds that it would be far more efficient and far less costly to litigate their claims in a class action. *See Wiegele v. FedEx Ground Package Sys., Inc.*, 2008 WL 410691, *11 (S.D. Cal. Feb. 12, 2008) ("Here, it would be far more costly and time consuming for each individual putative class member to seek and compel discovery of Defendants' policies and procedures, take multiple depositions, retain experts, and litigate damages issues. For these reasons, Courts often certify class actions when employer wage and hour practices similarly impact a large number of workers."); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. Jan. 20, 2005) (noting that "courts have not hesitated to certify class actions for wage and hour claims simply because

California law provides for administrative relief."). The Court also agrees with plaintiffs that, left to bring their own claims, many plaintiffs may choose not to do so given the potentially small individual recoveries and the possibility that many class members may not be aware that defendants may owe them additional compensation. This potential loss of access to the courts also supports plaintiffs' argument that a class action is superior to other available methods of resolving plaintiffs' claims. *See Tierno v. Rite Aid Corp.*, 2006 WL 2535056, *12 (N.D. Cal. Aug. 31, 2006).

Looking to the other factors laid out in Rule 23(b)(3), the Court finds nothing to warrant a finding that resolution on a class-wide would be inferior to other methods. Defendants do not argue, and there is no indication, that class members seek to individually control their cases or that there would be an advantage to doing so. Defendants also do not argue that this particular forum is undesirable for any reason, or that it would be difficult to manage a class action in this case. Finally, while plaintiffs acknowledge that one former named plaintiff has filed an individual claim in state court, the Court does not find that this single action suggests that a class action is not the superior method for resolving plaintiffs' claims.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for class certification, and certifies the following class:

> All former sales associates and cashiers who were employed in defendants' retail and outlet stores in the state of California between May 30, 2002 and the conclusion of this action.

The Court also certifies the following subclasses:

> 1. All members of the class who were sales associates and were misclassified as exempt inside commissioned salespeople.
>
> 2. All members of the class who were sales associates from whom defendants took back earned wages through its arrears program.

**IT IS SO ORDERED.**

Dated: July 8, 2008

SUSAN ILLSTON
United States District Judge