WILLIAM J. GOINES (SBN 061290)
CINDY HAMILTON (SBN 217951)
ALISHA M. LOUIE (SBN 240863)
GREENBERG TRAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: goinesw@gtlaw.com; hamiltonc@gtlaw.com; louiea@gtlaw.com

JEREMY A. MEIER (SBN 139849)
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Email: meierj@gtlaw.com

Attorneys for Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANN OTSUKA, an individual and on behalf of all others similarly situated; JANIS KEEFE, an individual; CORINNE PHIPPS, and individual; JUSTIN KISER, an individual; and RENEE DAVIS,

Plaintiff,

v.

POLO RALPH LAUREN CORPORATION; POLO RETAIL, LLC; POLO RALPH LAUREN CORPORATION, DOING BUSINESS IN CALIFORNIA AS POLO RETAIL CORPORATION; AND FASHIONS OUTLET OF AMERICA, INC.,

Defendants.

Case No. C07-02780 SI

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DECERTIFICATION OF PLAINTIFFS' REST BREAK CLASS**

Date: October 10, 2008
Time: 9:00 a.m.
Dept.: Courtroom 10, 19th Floor
Judge: Hon. Susan Illston

## I. INTRODUCTION

It is well established that changes in procedural or substantive law may justify decertification of a class. Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc ("Polo" or "Defendants") bring this motion to decertify the class with respect to rest breaks in light of the July 22, 2008 decision by the Fourth Appellate District Court of Appeal in *Brinker Restaurant Corporation v. The Superior Court of San Diego County (Hohnbaum),* ___ Cal.App. 4th ___, 2008 WL 2806613. A true and correct copy of the *Brinker* decision is attached as Exhibit A. *Brinker* held that because rest breaks need only be "made available" and not "ensured", individual issues predominate as a matter of law and are not amenable to class treatment. This is true even in the face of claims and declarations that a company-wide policy exists to discourage taking breaks.

This decision--which was certified for publication--expressly disapproved and distinguished prior cases relied upon by Plaintiffs in their Motion for Class Certification ("Cert Motion"). Point by point, the decision in *Brinker* adopts virtually all of the same arguments that Polo raised in its opposition to Plaintiffs' Motion for Class Certification ("Cert Opposition").

This Court certified Plaintiffs' claims without the benefit of a clear, unequivocal California standard for adjudicating rest break claims. *Brinker* held that rest breaks need only be "made available" and not "ensured", and decided that in the face of conflicting evidence about whether employees took rest breaks, individual issues necessarily predominate.

Accordingly, Polo now moves this Court for an order decertifying Plaintiffs' class with respect to rest break claims based on *Brinker* and for the reasons set forth in Plaintiffs' Cert Opposition, which is hereby incorporated by reference.

## II. BACKGROUND

To avoid unnecessary duplication, Polo incorporates its Statement of Facts set forth in its Cert Opposition. The named plaintiffs, Ann Otsuka ("Otsuka"), Janice Keefe ("Keefe"), Corrine Phipps ("Phipps"), and Renee Davis ("Davis") ("Plaintiffs"), are former employees who worked in Ralph Lauren stores, located in San Francisco (Keefe and Phipps), in Palo Alto (Otsuka), and at the Polo

Ralph Lauren Factory Outlet store, located in Cabazon, near Palm Springs (Davis). Two of the named plaintiffs worked for Polo for a matter of just a few short months, and Davis worked at the Cabazon store for less than two years.

## III. LEGAL ARGUMENT

### A. Standards for Motions to Decertify

Pursuant to the Federal Rule of Civil Procedure 23(c)(1), an order certifying a class "may be altered or amended before final judgment" Fed. R. Civ. P. 23(c)(1)(C). Thus, "developments in the litigation, such as the discovery of new facts or changes in the parties *or in the substantive or procedural law*, will necessitate reconsideration of the earlier order [to certify a class] and the granting or denial of certification or redefinition of the class. *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)(emphasis added)(quoting *Cook v. Rockwell Int'l Corp*., 181 F.R.D. 473 (D. Colo. 1998). In *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)(footnote omitted), the Supreme Court noted that courts have a continuing obligation to review whether proceeding as a class action is appropriate:

> Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in litigation. *For such an order, particularly during the period before any notice is sent to members of the class, "is inherently tentative*." 437 U.S., at 469, n.11, 98 S.Ct at 2458 n. 11. (emphasis added).

The district court is provided with broad discretion under the federal rules to determine whether a class should be certified and to "revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, n. 28 (9th Cir. 2001). Further, in the courts discretion, "where appropriate, the district court may redefine the class, may excise portions of a plaintiff's class allegations and even decertify the class." *Id.* (citations omitted). Accordingly, a district court's decision to modify or decertify a class is committed to its sound discretion. *See, Slaven v. B.P. Am., Inc*., 190 F.R.D. 649, 651 (C.D. Cal. 2000)(granting decertification and stating that a district court's decision to decertify is committed to its sound discretion);cf. *Knight v. Kenai Peninsula Borough Sch. Dist*., 131 F.3d 807, 816 (9th Cir. 1997)(reviewing district court's denial of class certification for abuse of discretion).

"The standards used by the courts in reviewing a motion to certify is the same as the standard used in evaluating a motion to certify." *O'Connor*, 197 F.R.D. at 410. For example, "[w]hen it becomes clear to the trial court that common issues no longer predominate over individual questions requiring separate adjudication, the court may decertify the case, as long as it employs correct criteria." T. COHELAN, COHELAN ON CALIFORNIA CLASS ACTIONS §7:17, at 175 (2005) (hereinafter, "COHELAN"). Here, as explained below, the *Brinker* decision represents a significant development in the law regarding rest breaks, holding that since employers are obligated to provide, but not ensure, rest breaks, individual factual issues predominate, warranting decertification of the rest break class.

In both state and federal courts, the Court is tasked with examining the issue of whether common issues of law and fact predominate over individual issues and must examine the issues in light of the pleadings and allegations. Even though, therefore, the *Brinker* court conducted its class certification analysis against the backdrop of California Code of Civil Procedure section 382, the certification analysis on the substantive claims would be the same as the one conducted under Rule 23b.

**B. <u>The Court Should Decertify Plaintiff's Rest Break Claims Based on the Fourth Appellate District's Recent Holding in *Brinker*</u>**

**1. <u>*Brinker* clarifies California meal and rest break law that breaks must merely be provided, not ensured.</u>**

*Brinker* represents a significant shift in California law with regard to how employers coordinate rest breaks, the circumstances under which rest break classes may be certified, and the content of a class certification order. [1] With regard to rest breaks, *Brinker* distinguishes the facts of *Cicairos v. Summitt Logistics, Inc.* (2005) 133 Cal. App. 4th 949 to clarify an employers responsibility

[1] Following the publication of Brinker on July 22, 2008, the California Labor Commissioner issued a directive to the Division of Labor Standards Enforcement ("DLSE") on July 25, 2008, stating that "The court in Brinker decided several significant issues regarding the interpretation of California's meal and rest period requirements. The decision is a published decision, and its rulings are therefore binding upon the [DLSE]." The Labor Commissioner goes on to instruct DLSE managers to follow *Brinker* as the governing law of California, and thus emphasizes that "employers must provide rest periods by making them available, but need not ensure that they are taken."

to provide, but not ensure, rest and meal breaks, and that these breaks may in fact be waived by employees.

Specifically, *Brinker* holds that:

> hourly employees may waive their rest breaks, and thus Brinker is not obligated to ensure that its employees take those breaks, any showing on a class basis that plaintiffs or other members of the proposed class missed rest breaks or took shortened rest breaks would not necessarily establish, without further individualized proof, that Brinker violated the provisions of section 226.7… (31).

In the case at bar, Plaintiffs were granted class certification with their argument that Polo must ensure their rest breaks, in fact this Court's certification order acknowledges that this point was a "disputed question of California law" that presented a "common question of fact" based on the conflicting declarations presented by both sides as to "whether Defendant had such a policy" of discouraging rest breaks. July 8, 2008 Order ("Order"), p. 10. However, the holding in *Brinker* has resolved this issue to find that Polo's obligation was only to provide, but not ensure, rest breaks.

### 2. ***Brinker* Sets New Guidelines for the Circumstances Under Which Missed-Break Classes May Be Certified**

The *Brinker* court was faced with conflicting declarations from 1) former employees who claimed to have missed breaks, claiming that Brinker had a policy of discouraging such breaks through understaffing, and 2) current employees who claim that they take breaks, and occasionally waive their right to take such breaks. *Brinker* at 14 (missed breaks), 15-16 (taken and waived breaks). *Brinker* examined the dueling declarations from both sides and concluded that the discrepancies led to highly individualized inquires not suitable for class certification.

Specifically, *Brinker* held:

> Plaintiffs claim they were forced to forego rest breaks, while Brinker submitted evidence from management and employees that rest breaks were made available but on occasion waived by the employees. The question of whether employees were forced to forego rest breaks or voluntarily chose not to take them is a highly individualized inquiry that would result in thousands of mini-trials to determine as to each employee if a particular manager prohibited a full, timely break or if the employee waived it or voluntarily cut it short. (32)

Faced with a similar set of dueling declarations from class representatives that they missed breaks due to understaffing and from current employees that breaks were waived, "the evidence does

not show that Brinker had a class-wide policy that prohibited meal breaks. The evidence in this case indicated that some employees took meal breaks and others did not". *Brinker* at 49.

Similarly, Plaintiffs and Polo submitted conflicting declarations from former Polo employees who missed breaks, claiming that Polo's policy of understaffing discouraged such breaks, and declarations from current Polo employees, explaining that they generally take breaks, but occasionally waive them.

Based on case law pre-*Brinker*, this Court reached the opposite conclusion with a nearly identical set of facts, finding that there were "common questions…whether defendants discouraged employees from taking rest breaks" and that "these individual questions are secondary to the larger questions raised about whether defendants had an overall policy with regard to rest breaks and whether they are liable for missed rest breaks regardless of the reasons they were missed." Order p. 10-11.

Based on *Brinker* and its impact on rest break law and appropriateness of the instant rest break class for certification, Polo respectfully requests that this Court decertify Plaintiffs' rest break class.

**3. *Brinker* Impacts Polo's Liability For Missed Rest Break Penalties**

*Brinker* further impacts Plaintiffs' class certification argument that because rest breaks must be ensured and not merely provided, missed rest breaks for any reason require employers to pay a penalty of one hours wages, which Polo has failed to do. Cert Motion p. 7. *Brinker* finds that payment of penalties as a class for missed rest breaks would be impracticable, as "with thousands of employees working multiple shifts, [ensuring breaks] would be an impossible task. If they were unable to do so, employers would have to pay an extra hour of pay any time an employee voluntarily chose not to take a meal period, or to take a shortened one". *Brinker* at 47. The Court in *Brinker* specifically disclaims Plaintiffs' argument that employees who miss a rest break are entitled to payment of penalties, regardless of the circumstances.

Likewise, this Court's pre-*Brinker* certification Order found that there was an issue as to whether "defendants had an overall policy with regard to rest breaks and whether they are liable for missed breaks regardless of the reasons they were missed." Order p. 11. *Brinker* has now resolved

this issue. Accordingly Polo would not be liable to pay an extra hour of wages to employees who elected not to take a rest break at their own discretion. Polo respectfully requests that the rest break class be decertified consistent with *Brinker's* ruling on this subject.

**4. <u>Polo, Like *Brinker*, Does Not Have A Policy Of Discouraging Breaks</u>**

The class representatives in *Brinker* argued that "because the restaurants were so inadequately staffed…employees could not actually take permitted meal breaks." and that this led to a policy of effectively discouraging employees from taking their breaks. *Brinker*, at 48. Similarly, Plaintiffs in their Cert Motion argued "…staffing levels often are insufficient for employees to be able to take care of customers' needs without skipping breaks..." Plaintiffs' Cert. Motion p. 6.

Regardless of the class representatives claims and employee declarations in Brinker that its policies discouraged rest breaks, the Court denied class certification, finding "the evidence does not show that Brinker had a class-wide policy that prohibited breaks. Some took meal breaks and other did not", and that these inconclusive results were not sufficient evidence of a "policy". *Brinker*, at 49.

Plaintiffs and Polo provided evidence similar to that analyzed in *Brinker*. In support of its Cert Opposition, Polo provided declarations, primarily of full-price store employees, who voluntarily waived their breaks to remain on the selling floor and earning commission, just as some *Brinker* employees remained waiting tables in the restaurant to earn tips. Meanwhile, Plaintiffs submitted at least one declaration from an employee who felt that his or her supervisor discouraged breaks. Similarly, following *Brinker*, these inconclusive results do not indicate a "policy" on a class-wide basis and are no longer susceptible to class treatment under California law.

*Brinker* clarifies the standard that must be applied to such situations in a class certification context by explaining that "the issue of whether rest periods are prohibited or voluntarily declined is by its nature an individual inquiry" and that the "trier of fact <u>cannot determine on a class-wide basis</u> whether members of the proposed class of Brinker employees missed rest as a result of a supervisor coercion or the employee's uncoerced choice to waive such breaks and continue working." *Brinker*, at 31 (emphasis added)

The *Brinker* court ultimately ruled that although rest breaks need to be provided, but not ensured, employers cannot "impede, discourage, or dissuade employees from taking rest periods". Brinker at 4. The class representatives in *Brinker* claimed that they were discouraged from taking breaks, but the *Brinker* court distinguished this factual situation where there is conflicting accounts of whether employees were taking breaks with cases like *Cicairos*, where the assignments of truck drivers were so tightly scheduled that there was no possible way for the truck drivers to stop for a meal or a rest break. Further, in *Cicairos*, the defendant employer had a computerized system allowing the employer to track all of the activities of the drivers, including speed, starts, stops, and time. Based on this high level of micromanagement combined with the truck drivers tight schedules, "The defendant in Cicairos knew that employees were driving while eating and did not take steps to address the situation." *Brinker*, quoting *White v. Starbucks Corp*. (N.D. Cal. 2007) 497 F.Supp. 2d 1080, discussing *Cicairos*, supra, 133 Cal.App. 4th 949.

Polo's rest break policies and procedures are far more consistent with *Brinker* than with *Circairos*. Like Brinker, Polo has a policy of providing rest breaks and informed its employees that they were entitled to such breaks. The Polo Factory Outlet stores actually went to opposite extreme of *Cicairos*, *micromanaging rest breaks* on the Daily Planning Agenda to practically ensure that they were taken, going above and beyond the *Brinker* standard.

A potential class so factually similar to Polo's did not exist before *Brinker*, and Polo respectfully requests that in light of *Brinker's* finding that this exact factual situation as a matter of law presents an individualized inquiry unsuitable for class-wide adjudication, that the rest break class be decertified.

### C. The Rest Break Factual and Legal Arguments of the Class Representatives in *Brinker* Match the Plaintiffs Arguments Point for Point and are all Rejected by the *Brinker* Court

The factual and legal arguments of the class representatives in *Brinker* match Plaintiffs arguments on class certification nearly point for point; all of these arguments are rejected by the *Brinker* court.

- The class representatives in *Brinker*, like Plaintiffs, argued that the employer has a duty to ensure rest break period; *Brinker* rejects this argument, finding that rest breaks need only be provided. Brinker at 17; Plaintiffs' Cert Motion p. 6.
- The class representatives in *Brinker*, like Plaintiffs, submitted declarations by employees who claim to have missed rest breaks due to inadequate staffing; *Brinker* rejects this argument as too individual and inappropriate for class-wide determination. *Brinker* at 48; Plaintiffs' Cert Motion p. 6.
- The class representatives in *Brinker*, like Plaintiffs, argued that there was a "company-wide polic[y] of discouraging" rest periods due to "inadequate staffing"; *Brinker* rejects this as appropriate for class-wide certification due to the need to determine the individual circumstances of why rest breaks were missed. *Brinker* at 18, 32, 49; Plaintiffs' Cert. Motion p. 6.
- The class representatives in *Brinker*, like Plaintiffs, relied upon *Cicairos v. Summitt Logistics, Inc.* (2005) 133 Cal. App. 4th 949 for the proposition that rest breaks may not be waived or declined by employees; *Brinker* distinguishes *Cicairos* as applicable only when an employer is aware of the failure to take meal breaks and fails to address the situation, ultimately depriving employees of breaks. *Brinker* at 45-46; Plaintiffs' Cert. Reply Brief p. 6.

**D. <u>The Rest Break and Predominance Arguments Made By Polo Are Affirmed and Adopted By Brinker</u>**

The factual and legal rest break and predominance argument made by Brinker in its class certification opposition match Plaintiffs' arguments nearly point for point; all of these arguments are adopted by the *Brinker* court.

In its Cert Opposition, Polo argued that the issue of rest breaks do not predominate over individual questions because the result would be mini-trials into the circumstances whether, and why, each Polo employee missed rest breaks. Specifically, Polo argued:

> such a fact finding expedition would therefore require many separate trial into the reasons why each particular employee may or may not have elected to take his or her rest breaks. Such trials would raise conflicting evidence into why each aggrieved employee did not take rest breaks, what their motivation was, what the circumstances were, and when the circumstances arose and under what particular conditions. Cert. Opposition p. 16-17.

*Brinker's* holding mirrors Polo's rest break argument nearly verbatim. *Brinker* holds:

> The question of whether employees were forced to forego rest breaks or voluntarily chose not to take them is a highly individualized inquiry that would result in thousands of mini-trials to determine as to each employee if a particular manager prohibited a full, timely break or if the employee waived it or voluntarily cut it short. *Brinker* at 32, citing *Brown v. Federal Express Corp*. (C.D. Cal. 2008) ___ F.R.D.___ [2008 WL 906517 at 8*].

As with *Brinker,* both sides submitted conflicting declarations from former employees who missed breaks, claiming that a policy of understaffing discouraged such breaks, and declarations from current employees, explaining that they generally take breaks, but occasionally waive them. *Brinker* resolves this conflicting evidence by finding that individual issues predominated, even in the face of claims and declaration that the employer had a policy that in place that "discouraged" rest breaks.

## IV. CONCLUSION

For the foregoing reasons, Polo respectfully requests that the Court decertify Plaintiffs' class with respect to Plaintiffs' rest break claims.

Dated: August 18, 2008.

GREENBERG TRAURIG, LLP

By: */s/ William J. Goines*
William J. Goines
Jeremy A. Meier
Cindy Hamilton
Alisha M. Louie

Attorneys for Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc.