1   seeks information that is not relevant and is not reasonably calculated to lead to the discovery of
2   admissible evidence.

3       Subject to and without waiving these objections, Defendants respond as follows:

4       See information contained in chart for store #334, attached hereto as Exhibit A.

5   SPECIAL INTERROGATORY NO. 122

6       State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo
7   Jeans Co. Factory Store in Gilroy, California, between May 30, 2003, and May 30, 2004.

8   RESPONSE TO SPECIAL INTERROGATORY NO. 122

9       Defendants object to this interrogatory on the grounds that it is overly broad, unduly
10  burdensome and oppressive. Defendants further object to this request on the ground that this request
11  seeks information that is not relevant and is not reasonably calculated to lead to the discovery of
12  admissible evidence.

13      Subject to and without waiving these objections, Defendants respond as follows:

14      See information contained in chart for store #334, attached hereto as Exhibit A.

15  SPECIAL. INTERROGATORY NO. 123

16      State the number of SALES ASSOCIATES. employed for any amount of time in YOUR Polo
17  Jeans Co. Factory Store in Gilroy, California, between May 30, 2004, and May 30, 2005.

18  RESPONSE TO SPECIAL INTERROGATORY NO. 123

19      Defendants object to this interrogatory on the grounds that it is overly broad, unduly
20  burdensome and oppressive. Defendants further object to this request on the ground that this request
21  seeks information that is not relevant and is not reasonably calculated to lead to the discovery of
22  admissible evidence.

23      Subject to and without waiving these objections, Defendants respond as follows:

24      See information contained in chart for store #334, attached hereto as Exhibit A.

25  SPECIAL INTERROGATORY NO. 124

26      State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo
27  Jeans Co. Factory Store in Gilroy, California, between May 30, 2005, and May 30, 2006.

28  ///

1  RESPONSE TO SPECIAL INTERROGATORY NO. 124

2  Defendants object to this interrogatory on the grounds that it is overly broad, unduly

3  burdensome and oppressive. Defendants further object to this request on the ground that this request

4  seeks information that is not relevant and is not reasonably calculated to lead to the discovery of

5  admissible evidence.

6  Subject to and without waiving these objections, Defendants respond as follows:

7  See information contained in chart for store #334, attached hereto as Exhibit A.

8  SPECIAL INTERROGATORY NO. 125

9  State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo

10 Jeans Co. Factory Store in Gilroy, California, between May 30, 2006, and the present.

11 RESPONSE TO SPECIAL INTERROGATORY NO. 125

12 Defendants object to this interrogatory on the grounds that it is overly broad, unduly

13 burdensome and oppressive. Defendants further object to this request on the ground that this request

14 seeks information that is not relevant and is not reasonably calculated to lead to the discovery of

15 admissible evidence. Finally, Defendants object on the ground that the interrogatory seeks

16 information for a time period after the store ceased its business operations.

17 Subject to and without waiving these objections, Defendants respond as follows:

18 See information contained in chart for store #334, attached hereto as Exhibit A.

19 SPECIAL INTERROGATORY NO. 126

20 State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo

21 Jeans Co. Factory Store in San Diego, California, between May 30 2002, and May 30, 2003.

22 RESPONSE TO SPECIAL INTERROGATORY NO. 126

23 Defendants object to this interrogatory on the grounds that it is overly broad, unduly

24 burdensome and oppressive. Defendants further object to this request on the ground that this request

25 seeks information that is not relevant and is not reasonably calculated to lead to the discovery of

26 admissible evidence.

27 Subject to and without waiving these objections, Defendants respond as follows:

28 See information contained in chart for store #341, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 127

State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo Jeans Co. Factory Store in San. Diego, California, between May 30, 2003, and May 30, 2004.

RESPONSE TO SPECIAL INTERROGATORY NO. 127

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive. Defendants further object to this request on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart for store #341, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 128

State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo Jeans Co. Factory Store in San Diego, California, between May 30, 2004, and May 30, 2005.

RESPONSE TO SPECIAL INTERROGATORY NO. 128

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive. Defendants further object to this request on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart for store #341, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 129

State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo Jeans Co. Factory Store in San Diego, California, between May 30, 2005, and May 30, 2006.

RESPONSE TO SPECIAL INTERROGATORY NO. 129

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive. Defendants further object to this request on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart for store #341, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 130

State the number of SALES ASSOCIATES employed for any amount of time in YOUR Polo Jeans Co. Factory Store in San Diego, California, between May 30, 2006, and the present. ///

RESPONSE TO SPECIAL INTERROGATORY NO. 130

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome and oppressive. Defendants further object to this request on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. Finally, Defendants object on the ground that the interrogatory seeks information for a time period after the store ceased its business operations.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart for store #341, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 131

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Beverly California? (For purposes of these interrogatories, "ARREARS PROGRAM" means the practice pursuant to which employees' compensation is adjusted based on the extent to which they may deemed in "arrears" (as referenced, e.g., in the document entitled "Arrears," attached hereto as Exhibit A).

RESPONSE TO SPECIAL INTERROGATORY NO. 131

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "used" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 132

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Beverly Hills, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 132

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 133

If YOU discontinued using YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Beverly Hills, California, specify the date YOU did so.

RESPONSE TO SPECIAL INTERROGATORY NO. 133

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "using" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 134

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Burlingame, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 134

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 135

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in. Burlingame, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 135

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

1  SPECIAL INTERROGATORY NO. 136

2      If YOU discontinued using YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in

3  Burlingame, California, identify the date YOU discontinued using it.

4  RESPONSE TO SPECIAL INTERROGATORY NO. 136

5      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.

6  Defendants further object that the term "using" is vague, ambiguous and unintelligible. Finally,

7  Defendants object to the definition of "Arrears Program" which inaccurately states the policy and

8  practice.

9      Subject to and without waiving these objections, Defendants respond as follows:

10      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second

11  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

12  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was

13  terminated on March 25, 2006.

14  SPECIAL INTERROGATORY NO. 137

15      At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

16  PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Costa Mesa, California?

17  RESPONSE TO SPECIAL INTERROGATORY NO. 137

18      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.

19  Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.

20  Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

21  and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to

22  "adjust employee wages."

23      Subject to and without waiving these objections, Defendants respond as follows:

24      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second

25  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

26  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was

27  terminated on March 25, 2006.

28  ///

SPECIAL INTERROGATORY NO. 138

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Costa Mesa, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 138

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 139

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Costa Mesa, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 139

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

///

1  SPECIAL INTERROGATORY NO. 140

2      At any time between May 30, 2002, and the present, have YOU used YOUR ARREAR

3  PROGRAM to adjust employee wages in YOUR Ralph Lauren store in La Jolla, California?

4  RESPONSE TO SPECIAL INTERROGATORY NO. 140

5      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.

6  Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.

7  Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

8  and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to

9  "adjust employee wages."

10      Subject to and without waiving these objections, Defendants respond as follows:

11      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second

12  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

13  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was

14  terminated on March 25, 2006.

15  SPECIAL INTERROGATORY NO. 141

16      On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren

17  store in La Jolla, California?

18  RESPONSE TO SPECIAL INTERROGATORY NO. 141

19      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.

20  Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally,

21  Defendants object to the definition of "Arrears Program" which inaccurately states the policy and

22  practice.

23      Subject to and without waiving these objections, Defendants respond as follows:

24      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second

25  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

26  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was

27  terminated on March 25, 2006.

28  ///

SPECIAL INTERROGATORY NO. 142

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in La Jolla, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 142

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 143

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Malibu, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 143

Defendants object to this interrogatory on the grounds that it is vague and ambiguous and object as to time as the interrogatory requests information for a time period prior to the store's existence. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

///

///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

SPECIAL INTERROGATORY NO. 144

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Malibu, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 144

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 145

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages YOUR Ralph Lauren store in Malibu, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 145

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 146

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Palo Alto, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 146

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

61

and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 147

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren store in Palo Alto, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 147

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 148

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages YOUR Ralph Lauren store in Palo Alto, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 148

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

All sales associates hired after April 18, 2004 were subject to arrears beginning in the second quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions failed to cover their base salary, the sales associate was subject to arrears. The arrears program was terminated on March 25, 2006.

SPECIAL INTERROGATORY NO. 149

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Rugby store in Palo Alto, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 149

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages and object as to time as the interrogatory requests information for a time period prior to the store's existence. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 150

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Rugby store in Palo Alto, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 150

Defendants object to this interrogatory on the grounds that it is vague, ambiguous and unintelligible as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 151

4    If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

5    YOUR Rugby store in Palo Alto, California, identify the date YOU discontinued using it.

6    SPECIAL RESPONSE TO SPECIAL INTERROGATORY NO. 151

7    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

8    sales associate in this store is paid commission wages. Defendants also object that the terms "using"

9    and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

10   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

11   characterization of the "Arrears Program" as used to "adjust employee wages."

12   Subject to and without waiving these objections, Defendants respond as follows:

13   An "Arrears Program" was never implemented in this store.

14   SPECIAL INTERROGATORY NO. 152

15   At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

16   PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Sacramento, California?

17   RESPONSE TO SPECIAL INTERROGATORY NO. 152

18   Defendants object to this interrogatory on the grounds that it is vague and ambiguous.

19   Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.

20   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

21   and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to

22   "adjust employee wages."

23   Subject to and without waiving these objections, Defendants respond as follows:

24   The Sacramento store is fowned by a licensee of Defendants and as a result, Defendants have

25   no knowledge or information to be able to respond to this request.

26   SPECIAL INTERROGATORY NO. 153

27   On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren

28   store in Sacramento, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 153

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

The Sacramento store is owned by a licensee of Defendants and as a result, Defendants have no knowledge or information to be able to respond to this request.

SPECIAL INTERROGATORY NO. 154

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in Sacramento, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 154

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

The Sacramento store is owned by a licensee of Defendants and as a result, Defendants have no knowledge or information to be able to respond to this request.

SPECIAL INTERROGATORY NO. 155

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Ralph Lauren store in San Francisco, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 155

Defendants object to this interrogatory on the grounds that it is vague and ambiguous. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

1  and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to
2  "adjust employee wages."

3      Subject to and without waiving these objections, Defendants respond as follows:

4      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second
5  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions
6  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was
7  terminated on March 25, 2006.

8  SPECIAL INTERROGATORY NO. 156

9      On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Ralph Lauren
10  store in San Francisco, California?

11  RESPONSE TO SPECIAL INTERROGATORY NO. 156

12      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.
13  Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally,
14  Defendants object to the definition of "Arrears Program" which inaccurately states the policy and
15  practice.

16      Subject to and without waiving these objections, Defendants respond as follows:

17      All sales associates hired after April 18, 2004 were subject to arrears beginning in the second
18  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions
19  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was
20  terminated on March 25, 2006.

21  SPECIAL INTERROGATORY NO. 157

22      If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in
23  YOUR Ralph Lauren store in San Francisco, California, identify the date YOU discontinued using it.

24  RESPONSE TO SPECIAL INTERROGATORY NO. 157

25      Defendants object to this interrogatory on the grounds that it is vague and ambiguous.
26  Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.
27  Defendants further object to the definition of "Arrears Program" which inaccurately states the policy

28

1  and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to

2  "adjust employee wages."

3       Subject to and without waiving these objections, Defendants respond as follows:

4       All sales associates hired after April 18, 2004 were subject to arrears beginning in the second

5  quarter of fiscal year 2005. During pay periods in which a sales associates' earned commissions

6  failed to cover their base salary, the sales associate was subject to arrears. The arrears program was

7  terminated on March 25, 2006.

8  SPECIAL INTERROGATORY NO. 158

9       At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

10  PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Alpine,

11  California?

12  RESPONSE TO SPECIAL INTERROGATORY NO. 158

13       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

14  sales associate in this store is paid commission wages. Defendants also object that the terms "used"

15  and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

16  "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

17  characterization of the "Arrears Program" as used to "adjust employee wages."

18       Subject to and without waiving these objections, Defendants respond as follows:

19       An "Arrears Program" was never implemented in this store.

20  SPECIAL INTERROGATORY NO. 159

21       On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph

22  Lauren Factory store in Alpine, California?

23  RESPONSE TO SPECIAL INTERROGATORY NO. 159

24       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

25  sales associate in this store is paid commission wages. Defendants further object that the term "use"

26  is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

27  Program" which inaccurately states the policy and practice.

28  ///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 160

4    If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

5    YOUR Polo Ralph Lauren Factory store in Alpine, California, identify the date YOU discontinued

6    using it.

7    RESPONSE TO SPECIAL INTERROGATORY NO. 160

8    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

9    sales associate in this store is paid commission wages. Defendants also object that the terms "using"

10   and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

11   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

12   characterization of the "Arrears Program" as used to "adjust employee wages."

13   Subject to and without waiving these objections, Defendants respond as follows:

14   An "Arrears Program" was never implemented in this store.

15   SPECIAL INTERROGATORY NO. 161

16   At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

17   PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Anderson,

18   California?

19   RESPONSE TO SPECIAL INTERROGATORY NO. 161

20   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

21   sales associate in this store is paid commission wages. Defendants further object that the term "used"

22   is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

23   Program" which inaccurately states the policy and practice.

24   Subject to and without waiving these objections, Defendants respond as follows:

25   An "Arrears Program" was never implemented in this store.

26   SPECIAL INTERROGATORY NO. 162

27   On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph

28   Lauren Factory store in Anderson, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 162

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 163

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Anderson, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 163

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "using" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 164

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Barstow, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 164

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 165

4    On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph

5    Lauren Factory store in Barstow, California?

6    RESPONSE TO SPECIAL INTERROGATORY NO. 165

7    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

8    sales associate in this store is paid commission wages. Defendants further object that the term "using"

9    is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

10   Program" which inaccurately states the policy and practice.

11   Subject to and without waiving these objections, Defendants respond as follows:

12   An "Arrears Program" was never implemented in this store.

13   SPECIAL INTERROGATORY NO. 166

14   If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

15   YOUR Polo Ralph Lauren Factory store in Barstow, California, identify the date YOU discontinued

16   using it.

17   RESPONSE TO SPECIAL INTERROGATORY NO. 166

18   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

19   sales associate in this store is paid commission wages. Defendants also object that the terms "using"

20   and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

21   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

22   characterization of the "Arrears Program" as used to "adjust employee wages."

23   Subject to and without waiving these objections, Defendants respond as follows:

24   An "Arrears Program" was never implemented in this store.

25   SPECIAL INTERROGATORY NO. 167

26   At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS.

27   PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Cabazon,

28   California?

70

RESPONSE TO SPECIAL INTERROGATORY NO. 167

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 168

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Cabazon, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 168

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "using" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 169

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Cabazon, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 169

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 170

4    At any time between May 30, 2002, and the present have YOU used YOUR ARREARS

5    PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Camarillo,

6    California?

7    RESPONSE TO SPECIAL INTERROGATORY NO. 170

8    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

9    sales associate in this store is paid commission wages. Defendants also object that the terms "used"

10   and "adjust" are vague, ambiguous and unintelligible.  Defendants further object to the definition of

11   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

12   characterization of the "Arrears Program" as used to "adjust employee wages."

13   Subject to and without waiving these objections, Defendants respond as follows:

14   An "Arrears Program" was never implemented in this store.

15   SPECIAL INTERROGATORY NO. 171

16   On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph

17   Lauren Factory store in Camarillo, California?

18   RESPONSE TO SPECIAL INTERROGATORY NO. 171

19   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

20   sales associate in this store is paid commission wages. Defendants further object that the term "use"

21   is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

22   Program" which inaccurately states the policy and practice.

23   Subject to and without waiving these objections, Defendants respond as follows:

24   An "Arrears Program" was never implemented in this store.

25   SPECIAL INTERROGATORY NO. 172

26   If YOU discontinued using YOUR. ARREARS PROGRAM to adjust employee wages in

27   YOUR Polo Ralph Lauren Factory store in Camarillo, California, identify the date YOU discontinued

28   using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 172

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 173

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Carlsbad, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 173

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 174

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Carlsbad, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 174

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

1  Subject to and without waiving these objections, Defendants respond as follows:

2  An "Arrears Program" was never implemented in this store.

3  SPECIAL INTERROGATORY NO. 175

4  If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

5  YOUR Polo Ralph Lauren Factory store in Carlsbad, California, identify the date YOU discontinued

6  using it.

7  RESPONSE TO SPECIAL INTERROGATORY NO. 175

8  Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

9  sales associate in this store is paid commission wages. Defendants also object that the terms "using"

10  and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of

11  "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

12  characterization of the "Arrears Program" as used to "adjust employee wages."

13  Subject to and without waiving these objections, Defendants respond as follows:

14  An "Arrears Program" was never implemented in this store.

15  SPECIAL INTERROGATORY NO. 176

16  At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

17  PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Gilroy,

18  California?

19  RESPONSE TO SPECIAL INTERROGATORY NO. 176

20  Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

21  sales associate in this store is paid commission wages. Defendants also object that the terms "used"

22  and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of

23  "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

24  characterization of the "Arrears Program" as used to "adjust employee wages."

25  Subject to and without waiving these objections, Defendants respond as follows:

26  An "Arrears Program" was never implemented in this store.

27  ///

28  ///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

SPECIAL INTERROGATORY NO. 177

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Gilroy, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 177

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 178

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Gilroy, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 178

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 179

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Mammoth Lakes, California?

///

///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

RESPONSE TO SPECIAL INTERROGATORY NO. 179

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 180

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR. Polo Ralph Lauren Factory store in Mammoth Lakes, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 180

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 181

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Mammoth Lakes, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 181

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 182

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Ontario, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 182

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages and object as to time as the interrogatory requests information for a time period prior to the store's existence. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 183

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Ontario, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 183

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

///

///

SPECIAL INTERROGATORY NO. 184

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Ontario, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 184

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages and object as to time as the interrogatory requests information for a time period prior to the store's existence. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.  Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 185

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Pismo Beach, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 185

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages and object as to time as the interrogatory requests information for a time period prior to the store's existence. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.  Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 186

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Pismo Beach, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 186

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 187

If YOU discontinued using, YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Pismo Beach, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 187

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "using" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 188

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in San Diego, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 188

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used"

1  and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

2  "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

3  characterization of the "Arrears Program" as used to "adjust employee wages."

4          Subject to and without waiving these objections, Defendants respond as follows:

5          An "Arrears Program" was never implemented in this store.

6  SPECIAL INTERROGATORY NO. 189

7          On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph

8  Lauren Factory store in San Diego, California?

9  RESPONSE TO SPECIAL INTERROGATORY NO. 189

10         Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

11  sales associate in this store is paid commission wages. Defendants further object that the term "use"

12  is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

13  Program" which inaccurately states the policy and practice.

14         Subject to and without waiving these objections, Defendants respond as follows:

15         An "Arrears Program" was never implemented in this store.

16  SPECIAL INTERROGATORY NO. 190

17         If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

18  YOUR Polo Ralph Lauren Factory store in San Diego, California, identify the date YOU

19  discontinued using it.

20  RESPONSE TO SPECIAL INTERROGATORY NO. 190

21         Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

22  sales associate in this store is paid commission wages. Defendants also object that the terms "using"

23  and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

24  "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

25  characterization of the "Arrears Program" as used to "adjust employee wages."

26         Subject to and without waiving these objections, Defendants respond as follows:

27         An "Arrears Program" was never implemented in this store.

28  ///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

SPECIAL INTERROGATORY NO. 191

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Tulare, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 191

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 192

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Tulare, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 192

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 193

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Tulare, California, identify the date YOU discontinued using it.

///

///

81

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

RESPONSE TO SPECIAL INTERROGATORY NO. 193

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 194

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Ralph Lauren Factory store in Vacaville, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 194

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 195

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Ralph Lauren Factory store in Vacaville, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 195

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

82

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 196

4    If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

5    YOUR Polo Ralph Lauren Factory store in Vacaville, California, identify the date YOU discontinued

6    using it.

7    RESPONSE TO SPECIAL INTERROGATORY NO. 196

8    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

9    sales associate in this store is paid commission wages. Defendants also object that the terms "using"

10   and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

11   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

12   characterization of the "Arrears Program" as used to "adjust employee wages."

13   Subject to and without waiving these objections, Defendants respond as follows:

14   An "Arrears Program" was never implemented in this store.

15   SPECIAL INTERROGATORY NO. 197

16   At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

17   PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store in Cabazon,

18   California?

19   RESPONSE TO SPECIAL INTERROGATORY NO. 197

20   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

21   sales associate in this store is paid commission wages. Defendants also object that the terms "used"

22   and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

23   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

24   characterization of the "Arrears Program" as used to "adjust employee wages."

25   Subject to and without waiving these objections, Defendants respond as follows:

26   An "Arrears Program" was never implemented in this store.

27   ///

28   ///

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

SPECIAL INTERROGATORY NO. 198

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Jeans Co. Factory store in Cabazon, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 198

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 199

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store in Alpine, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 199

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 200

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store in Camarillo, California?

///

///

RESPONSE TO SPECIAL INTERROGATORY NO. 200

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 201

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Jeans Co. Factory store in Camarillo, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 201

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 202

If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store in Camarillo, California, identify the date YOU discontinued using it.

RESPONSE TO SPECIAL INTERROGATORY NO. 202

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible. Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 203

4    At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS

5    PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store in Gilroy, California?

6    RESPONSE TO SPECIAL INTERROGATORY NO. 203

7    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

8    sales associate in this store is paid commission wages. Defendants also object that the terms "used"

9    and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

10    "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

11    characterization of the "Arrears Program" as used to "adjust employee wages."

12    Subject to and without waiving these objections, Defendants respond as follows:

13    An "Arrears Program" was never implemented in this store.

14    SPECIAL INTERROGATORY NO. 204

15    On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Jeans Co.

16    Factory store in Gilroy, California?

17    RESPONSE TO SPECIAL INTERROGATORY NO. 204

18    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

19    sales associate in this store is paid commission wages. Defendants further object that the term "use"

20    is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears

21    Program" which inaccurately states the policy and practice.

22    Subject to and without waiving these objections, Defendants respond as follows:

23    An "Arrears Program" was never implemented in this store.

24    SPECIAL INTERROGATORY NO. 205

25    If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

26    YOUR Polo Jeans Co. Factory store in Gilroy, California, identify the date YOU discontinued using

27    it.

28    ///

RESPONSE TO SPECIAL INTERROGATORY NO. 205

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "using" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 206

At any time between May 30, 2002, and the present, have YOU used YOUR ARREARS PROGRAM to adjust employee wages in YOUR Polo Jeans Co. Factory store San Diego, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 206

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants also object that the terms "used" and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the characterization of the "Arrears Program" as used to "adjust employee wages."

Subject to and without waiving these objections, Defendants respond as follows:

An "Arrears Program" was never implemented in this store.

SPECIAL INTERROGATORY NO. 207

On what date did YOU begin to use YOUR ARREARS PROGRAM in YOUR Polo Jeans Co. Factory store in San Diego, California?

RESPONSE TO SPECIAL INTERROGATORY NO. 207

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Defendants further object that the term "use" is vague, ambiguous and unintelligible. Finally, Defendants object to the definition of "Arrears Program" which inaccurately states the policy and practice.

///

1    Subject to and without waiving these objections, Defendants respond as follows:

2    An "Arrears Program" was never implemented in this store.

3    SPECIAL INTERROGATORY NO. 208

4    If YOU discontinued using YOUR ARREARS PROGRAM to adjust employee wages in

5    YOUR Polo Jeans Co. Factory store in San Diego, California, identify the date YOU discontinued

6    using it.

7    RESPONSE TO SPECIAL INTERROGATORY NO. 208

8    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as no

9    sales associate in this store is paid commission wages. Defendants also object that the terms "used"

10   and "adjust" are vague, ambiguous and unintelligible.   Defendants further object to the definition of

11   "Arrears Program" which inaccurately states the policy and practice. Finally, Defendants object to the

12   characterization of the "Arrears Program" as used to "adjust employee wages."

13   Subject to and without waiving these objections, Defendants respond as follows:

14   An "Arrears Program" was never implemented in this store.

15   SPECIAL INTERROGATORY NO. 209

16   If YOU contend YOUR policies pertaining to loss prevention inspections of YOUR

17   employees in YOUR "Ralph Lauren" stores (see Exhibit B, "Ralph Lauren Store Locations" printout

18   from www.polo.com) differed from store to store in any way between May 30, 2002 and the present,

19   describe those differences in detail.

20   RESPONSE TO SPECIAL INTERROGATORY NO. 209

21   Defendants object to this interrogatory on the grounds that it is overly broad, unduly

22   burdensome, is compound in nature, and is unduly burdensome and oppressive. Defendants further

23   object to this interrogatory as vague, ambiguous and overbroad, and unintelligible as to the terms

24   "policies," "'Ralph Lauren' stores," "differed from store to store in any way" and as to time.

25   Subject to and without waiving these objections, Defendants respond as follow:

26   Beverly Hills:

27   The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

28   Handbook" that provides:

All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.

The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There are three patron exits to the store. Two of the exits are located at the front of the store, through the main exit on Rodeo Drive. The doors sit opposite to one another in the foyer through the main exit. The third exit, the valet exit, is located at the back of the building. There are two other pass ways in the Beverly Hills store. There is the shipping and receiving freight elevator, located at the ground level at the back of the store off the alleyway and an emergency exit located in the employee locker room and that exits to the back of the store on the second level. At present, employees are required to exit the store using the designated "valet exit." Prior to a Sales Associate's departure from the store, he/she must contact a Manager who will escort him/her to the door. Only managers, including the General Manager, Department Managers, Assistant Department Managers, Housekeeping Manager, Shipping/Receiving Manager, Alterations Manager and key holders (if there are any) have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. The Sales Associate may locate a manager either by finding him/her on the sales floor or the back of house, or by contacting him/her through the manager's portable phone. All managers in the store have portable phones. There is no formalized system for when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house and some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the valet exit to perform the bag inspection search. For sales associates who are at the back of the house, in certain instances, those Sales Associates will leave through the shipping and receiving exit that is connected to the freight elevator. These Sales Associates generally are inspected by the Shipping and Receiving Manager, Operations Manager or Manager for Alterations, all whom are located at the back of the house and located right near the shipping and receiving exit.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they congregate near the valet exit of the store and are one-by-one inspected by the manager.

Burlingame:

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There is one patron exit to the store that is located at the front of the store on Burlingame Avenue. There is a second exit that is located at the back of the store near the shipping and receiving

office. The door is also the emergency exit. At present, Sales Associates are required to enter and exit the store using the designated "back exit." For rest and meal breaks, Sales Associates may come and go using the main front exit on Burlingame Avenue. Prior to a Sales Associate's departure from the store, he/she must contact a Manager who will escort him/her to the door. Only managers, including the General Manager, Assistant General Manager, Assistant Manager and key holder (if there are any) have the authority to excuse a Sales Associate from the store and perform a bag inspection search. At present, there is one key holder in the store who also responsible for shipping and receiving so is located at the back of the store near the employee exit. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. The Sales Associate may locate a manager either by finding him/her on the sales floor or the back of house.  There is no formalized system for when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house and some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they congregate near the back door exit of the store and are one-by-one inspected by the manager.

South Coast Plaza:

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There are two patron exits to the store, the main exit located at the front of the store and a side exit. At present, employees are required to exit the store using the designated "front door" exit. An emergency exit is located in the back of the house. Prior to a Sales Associate's departure from the store, he/she must contact a manager who will escort him/her to the door. Only managers, including the General Manager,  Men's Department Manager and Women's Department Manager, and key holder (if there is one) have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. The Sales Associate may locate a manager either by finding him/her on the sales floor or at the back of house. There is no formalized system for when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house and some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager. There is a POS system located near the front door exit.

92

1     Once a manager has been located and informed that the Sales Associate wishes to leave the

2 store, the manager will then escort the Sales Associate to the front door exit to perform the bag

3 inspection search.

4     All managers when inspecting packages, including, but not limited to, shopping bags,

5 briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

6 store, will ask to look inside the interior of all packages. The manager does not touch any of the items

7 within the package but may ask the Sales Associate to open compartments and move items around so

8 that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

9 without any package(s) on him/her, a manager will give him/her permission to leave and will observe

10 the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

11     When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

12 Associates usually exit the store with the closing manager. The closing manager usually takes

13 responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

14 leave, they congregate near the front door of the store and are one-by-one inspected by the manager.

15     La Jolla:

16     The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

17 Handbook" that provides:

18        All packages are subject to inspection by Store Management.
         Inspections will be conducted at the employee entrances and exits. A
19        sales receipt must accompany all purchases made by employees.

20        The Company reserves the right to randomly inspect all shopping bags,
         briefcases, totes, handbags or other items taken from the store as well
21        as work areas and lockers. Such inspections are a condition of
         employment.
22

23     There is one patron exit to the store, located at the front of the store on Girard Avenue.  There

is also a back door and an emergency exit located at the back house of the store. Immediately across
24
from the back door exit is a flight of stairs leading up to the General Manager's office. At present,
25
employees are required to enter and exit the store using the designated "back door" exit. For rest and
26
meal breaks, Sales Associates may enter and exit through the main exit at the front of the store. Prior
27
to a Sales Associate's departure from the store, he/she must contact a manager who will escort
28

1    him/her to the door. Only managers, including the General Manager, Men's Department Manager

2    and Women's Department Manager, and key holder (if there is one) have the authority to excuse a

3    Sales Associate from the store and perform a bag inspection search. The bag inspection search only

4    applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags

5    that are in the possession of the Sales Associate when he/she exits the store at any given time.

6    When a Sales Associate is prepared to leave the store, he/she will inform a manager. The

7    Sales Associate may locate a manager either by finding him/her on the sales floor, at the back of

8    house or in the managers' office, located right across from the employee exit. There is no formalized

9    system for when a Sales Associate must clock-out, either before or after finding a manager to excuse

10   him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather

11   their personal belongings from the back house and some Sales Associates clock-out after they have

12   gathered their personal belongings and are ready to leave, either before or soon after locating a

13   manager. Once a manager has been located and informed that the Sales Associate wishes to leave the

14   store, the manager will then escort the Sales Associate to the back door exit to perform the bag

15   inspection search.

16   All managers when inspecting packages, including, but not limited to, shopping bags,

17   briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

18   store, will ask to look inside the interior of all packages. The manager does not touch any of the items

19   within the package but may ask the Sales Associate to open compartments and move items around so

20   that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

21   without any package(s) on him/her, a manager will give him/her permission to leave and will observe

22   the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

23   When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

24   Associates usually exit the store with the closing manager. The closing manager usually takes

25   responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

26   leave, they congregate near the front door of the store and are one-by-one inspected by the manager.

27   ///

28   ///

94

Malibu:

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There are two stores located in Malibu that are next door to each other. The first store is the Malibu Women's Store. The store has two patron exits. The main exit faces the street and the second exit is located to the side of the store and empties into a courtyard that is part of the Malibu Women's store space, although no retail items are sold on the patio area. The patio can be exited/entered through a wooden gate which is closed after business hours. The floor room space of the Malibu store is open without any dividing walls separating departments. Employees may exit the store either through the front door or the side exit. Prior to a Sales Associate's departure from the store, he/she must contact a manager who will escort him/her to the door. Only managers, including the General Manager,  Assistant Manager, and key holder (if there is one) have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. The Sales Associate may locate a manager either by finding her on the sales floor or in the back storage room. In some instances, there may be only one manager on duty between the Women's store and the RRL store, and that manager may be physically at the RRL store, located next door. In those cases, the manager is contacted by phone and advised that the employee wishes to leave. There is no formalized system for when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house and some Sales Associates clock-out

1   after they have gathered their personal effects and are ready to leave, either before or soon after

2   locating a manager.

3       Once a manager has been located and informed that the Sales Associate wishes to leave the

4   store, the manager will then escort the Sales Associate to the door exit to perform the bag inspection

5   search.

6       At the second store, RRL, located next door to the Malibu Women's store, there is only one

7   door, which is akin to a garage door in look and size. The floor room space is also open, similar to the

8   Malibu Women's store, and without any partitions to distinguish different departments. Given the

9   small size of the store, there are only a couple of employees staffed at any given time.

10      When a Sales Associate is prepared to leave the store, he/she will inform a manager. The

11  Sales Associate may locate a manager either by finding her on the sales floor or in the back storage

12  room. In some instances, there may be only one manager on duty between the Women's store and the

13  RRL store, and that manager may be physically at the Women's store, located next door. In those

14  cases, the manager is contacted by phone and advised that the employee wishes to leave. There is no

15  formalized system for when a Sales Associate must clock-out, either before or after finding a

16  manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales

17  floor to gather their personal belongings from the back house and some Sales Associates clock-out

18  after they have gathered their personal belongings and are ready to leave, either before or soon after

19  locating a manager

20      Once a manager has been located and informed that the Sales Associate wishes to leave the

21  store, the manager will then escort the Sales Associate to the front of the store to perform the bag

22  inspection search.

23      All managers when inspecting packages, including, but not limited to, shopping bags,

24  briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

25  store, will ask to look inside the interior of all packages. The manager does not touch any of the items

26  within the package but may ask the Sales Associate to open compartments and move items around so

27  that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

28

without any package(s) on him/her, a manager will give him/her permission to leave and will observe

the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

Associates usually exit the store with the closing manager. The closing manager usually takes

responsibility for performing the loss prevention searches. At times, there may only be one closing

manager for both the Women's and RRL stores. The closing manager will usually first close one

store, then go next door to close that store. Once the manager is finished closing the second store and

is ready to leave, she will inspect all Sales Associate(s) present and then exit the store with them.

Palo Alto:

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

Handbook" that provides:

> All packages are subject to inspection by Store Management.
> Inspections will be conducted at the employee entrances and exits. A
> sales receipt must accompany all purchases made by employees.

> The Company reserves the right to randomly inspect all shopping bags,
> briefcases, totes, handbags or other items taken from the store as well
> as work areas and lockers. Such inspections are a condition of
> employment.

There are two patron exits to the store which sit opposite on opposite sides to each other in the

atrium.  At present, employees may exit the store using either of the patron exits. An emergency exit

is located in the back of the house on the second floor. Prior to a Sales Associate's departure from the

store, he/she must contact a manager who will escort him/her to the door. Only managers, including

the General Manager,  Men's Department Manager, Women's Department Manager, Operations

Manager and key holder (if there is one) have the authority to excuse a Sales Associate from the store

and perform a bag inspection search. The bag inspection search only applies to all packages,

including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession

of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. The

Sales Associate may locate a manager either by finding him/her on the sales floor or at the back of

house. The Sales Associate may also page a manager through the store's intercom systerm. There is

DEFENDANTS' RESPONSES TO SPECIAL INTERROGATORIES - SET ONE

no formalized system for when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house and some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to one of the patron exits to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they congregate near the atrium and are one-by-one inspected by the manager.

San Francisco:

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

1    There are two patron exits to the store. The first exit is the main exit and is located at the front
2    of the store located on the corner of Post and Montgomery Streets. The second exit is located through
3    the store's Home Collection. There are two other exits, including a door that is always locked on the
4    Montgomery Street side of the building and the employee exit (and emergency exit) located at the
5    back of the house near the shipping and receiving department. At present, employees are required to
6    enter and exit the store using the designated employee exit located at the back house of the store. On
7    Saturdays, Sales Associates are allowed to enter through the Home Collection door and on Sundays,
8    Sales Associates are allowed to enter through the main entrance at the start of work day. Sales
9    Associates must use the employee exit for rest and meal breaks.  Only managers, including the
10   General Manager, Department Managers, Operations Manager, Shipping and Receiving Manager and
11   key holder (if there is one) have the authority to excuse a Sales Associate from the store and perform
12   a bag inspection search. The bag inspection search only applies to all packages, including, but not
13   limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales
14   Associate when he/she exits the store at any given time.

15   When a Sales Associate is prepared to leave the store, he/she will inform a manager. The
16   Sales Associate may locate a manager either by finding him/her on the sales floor or at the back of
17   house. The Shipping and Receiving Manager usually is contacted since he is located near the
18   employee exit and is easily accessible to inspect Sales Associates. There is no formalized system for
19   when a Sales Associate must clock-out, either before or after finding a manager to excuse him/her
20   from the store. Some Sales Associates clock-out when they leave the sales floor to gather their
21   personal belongings from the back house and some Sales Associates clock-out after they have
22   gathered their personal belongings and are ready to leave, either before or soon after locating a
23   manager.

24   Once a manager has been located and informed that the Sales Associate wishes to leave the
25   store, the manager will then escort the Sales Associate to the employee exit to perform the bag
26   inspection search.

27   All managers when inspecting packages, including, but not limited to, shopping bags,
28   briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they congregate near the valet exit of the store and are one-by-one inspected by the manager.

SPECIAL INTERROGATORY NO. 210

IDENTIFY the person or persons most knowledgeable regarding YOUR response to the immediately preceding interrogatory.

RESPONSE TO SPECIAL INTERROGATORY NO. 210

Defendants object to this interrogatory on the grounds that it is vague, ambiguous and overly broad, is compound in nature, and is unduly burdensome and oppressive.

Subject to and without waiving these objections, Defendants respond as follow:

Beverly Hills

    David Seitz - Director of Loss Prevention

    Kim Babka - Regional Director

    Kristi Mogel - Regional Human Resources Manager

    Jonathan Possidente - General Manager

    Yousef Abgoon - Men's Department Manager

    Sun Lee - Women's Department Manager and Children's Department Manager

    Katja Choque - Assistant Women's Department Manager

    Diane Squires - Operations Manager

    Terry Kelly - Shipping and Receiving Manager

Burlingame

    David Seitz - Director of Loss Prevention