1    Kim Babka - Regional Director

2    Kristi Mogel - Regional Human Resources Manager

3    Tin Hua, former Area Manager

4    South Coast Plaza

5    David Seitz - Director of Loss Prevention

6    Kim Babka - Regional Director

7    Kristi Mogel - Regional Human Resources Manager

8    Shaheen Mufti - General Manager

9    Le Hua - Men's Department Manager

10    Lethrice Cabungcal - Women's Department Manager

11    Gary Morrill, former General Manager

12    La Jolla

13    David Seitz - Director of Loss Prevention

14    Kim Babka - Regional Director

15    Kristi Mogel - Regional Human Resources Manager

16    Brooke Stengel, General Manager

17    Betsy Cleary - Men's Department Manager

18    Ann Powell - Women's Department Manager

19    Malibu

20    David Seitz - Director of Loss Prevention

21    Kim Babka - Regional Director

22    Kristi Mogel - Regional Human Resources Manager

23    Jenna Baker, General Manager

24    Jennifer McDonell - Assistant Manager

25    Palo Alto

26    David Seitz - Director of Loss Prevention

27    Kim Babka - Regional Director

28    Kristi Mogel - Regional Human Resources Manager

1    Tim Gotzinger, General Manager

2    Sergio Espinoza - Men's Department Manager

3    Jenn Hsu - Women's Department Manager

4    Jesus Valdovinos - Operations Manager

5    Tin Hua - former Area Manager

6    <u>San Francisco</u>

7    David Seitz - Director of Loss Prevention

8    Kim Babka - Regional Director

9    Kristi Mogel - Regional Human Resources Manager

10   Cathy Post, General Manager

11   Chris Schivo - Shipping and Receiving Manager

12   <u>Rugby</u>

13   David Seitz - Director of Loss Prevention

14   Kim Babka - Regional Director

15   Kristi Mogel - Regional Human Resources Manager

16   Cathy Post, General Manager

17   Tara Hladun - General Manager

18   Jenn Loob - Assistant Manager Operations

19

20   <u>SPECIAL INTERROGATORY NO. 211</u>

21       If YOU contend that YOUR practices pertaining to loss prevention inspections of YOUR

22   employees in YOUR "Ralph Lauren" stores (See Exhibit B, "Ralph. Lauren Store Locations" printout

23   from www.polo.com) differed from store to store in any way between May 30, 2002 and the present,

24   describe those differences in detail.

25   <u>RESPONSE TO SPECIAL INTERROGATORY NO. 211</u>

26       See Response to Special Interrogatory No. 209.

27   ///

28   ///

SPECIAL INTERROGATORY NO. 212

IDENTIFY the person or persons most knowledgeable regarding YOUR response to the immediately preceding interrogatory.

RESPONSE TO SPECIAL INTERROGATORY NO. 212

See Response to Special Interrogatory No. 210.

SPECIAL INTERROGATORY NO. 213

If YOU contend that YOUR policies pertaining to loss prevention inspections of YOUR employees in YOUR "Factory Stores" (See Exhibit B, "Ralph Lauren Store Locations" printout from www.polo.com) differed from store to store in any way between May 30, 2002 and the present describe those differences in detail.

RESPONSE TO SPECIAL INTERROGATORY NO. 213

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, is compound in nature, and is unduly burdensome and oppressive. Defendants further object to this interrogatory as vague, ambiguous and overbroad, and unintelligible as to the terms "policies," "Factory Stores," "differed from store to store in any way" and as to time. Finally, Defendants object on the basis that the interrogatory erroneously refers to "Exhibit B, 'Ralph Lauren Store Locations'".

Subject to and without waiving these objections and assuming Plaintiffs are referring to "Exhibit A" for Polo Ralph Lauren Factory Stores in California, Defendants respond as follow:

Alpine

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management. Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There is one patron exit to the store which is located at the front of the store and also serves as the employee exit. There is also an emergency exit located in the back house of the store that is also

used for trash removal. Only managers, including the General Manager, Assistant Managers and supervisor have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times, Sales Associates tend to locate that manager to excuse them from the store. Although there is no formal policy for when a Sales Associate must clock-out but, generally Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by the manager.

Anderson

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

1
2

> All packages are subject to inspection by Store Management.
> Inspections will be conducted at the employee entrances and exits. A
> sales receipt must accompany all purchases made by employees.

3
4

> The Company reserves the right to randomly inspect all shopping bags,
> briefcases, totes, handbags or other items taken from the store as well
> as work areas and lockers. Such inspections are a condition of
> employment.

5
6
7
8
9
10
11

There is one patron exit to the store which is located at the front of the store. There is also an emergency exit located in the back house of the store which is also used as a shipping and receiving door. Only managers, including the General Manager, Assistant Managers and supervisor have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

12
13
14
15
16
17

When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times, Sales Associates tend to locate that manager to excuse them from the store. Although there is no formal policy for when a Sales Associate must clock-out but, generally Sales Associates clock-out after they have gathered their personal belongings from the back house and but prior to the loss prevention search and exiting the store.

18
19
20

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

21
22
23
24
25
26
27
28

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. In addition, if the Sales Associate is carrying items of clothing, such as a jacket, the jacket will be pat down while the employee is holding it. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give

1  him/her permission to leave and will observe the Sales Associate walking out without immediately

2  escorting the Sales Associate to the exit.

3      When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

4  Associates usually exit the store with the closing manager. The closing manager usually takes

5  responsibility for performing the loss prevention searches. Sales Associates first retrieve their

6  personal items from the back house of the store, clock-out, then are inspected by the manager

7  immediately prior to exiting the store.

8      Barstow

9      The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

10  Handbook" that provides:

11          All packages are subject to inspection by Store Management.
           Inspections will be conducted at the employee entrances and exits. A
12          sales receipt must accompany all purchases made by employees.

13          The Company reserves the right to randomly inspect all shopping bags,
           briefcases, totes, handbags or other items taken from the store as well
14          as work areas and lockers. Such inspections are a condition of
           employment.
15
16      There are two patron entrances/exits to the store, one which is located in the children's and

17  home department and the other, located in the women's department. There are also two emergency

18  exits located in the back house of the store, one of which also is used to remove trash from the store.

19  At present, employees are required to enter and exit the store using the door that is located in the

20  children's and home department. Only managers, including the General Manager, Assistant

21  Managers and supervisors have the authority to excuse a Sales Associate from the store and perform

22  a bag inspection search. The bag inspection search only applies to all packages, including, but not

23  limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales

24  Associate when he/she exits the store at any given time.

25      When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since

26  there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,

27  Sales Associates can generally can locate that manager easily to perform the bag inspection search.

28  Although there is no formal policy for when a Sales Associate must clock-out, generally Sales

1    Associates clock-out when they leave the sales floor, gather their personal belongings, then are

2    escorted to the door by a manager.

3         Once a manager has been located and informed that the Sales Associate wishes to leave the

4    store, the manager will then escort the Sales Associate to the employee exit to perform the bag

5    inspection search.

6         All managers when inspecting packages, including, but not limited to, shopping bags,

7    briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

8    store, will ask to look inside the interior of all packages. The manager does not touch any of the items

9    within the package but may ask the Sales Associate to open compartments and move items around so

10   that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

11   without any package(s) on him/her, a manager will give him/her permission to leave and will observe

12   the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

13        When Sales Associate is leaving at the end of the day, Sales Associates clock-out, gather their

14   personal belongings and then locate a manager to perform the bag inspection search prior to leaving

15   the store.

16        Cabazon

17        The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

18   Handbook" that provides:

19             All packages are subject to inspection by Store Management.
               Inspections will be conducted at the employee entrances and exits. A
20             sales receipt must accompany all purchases made by employees.

21             The Company reserves the right to randomly inspect all shopping bags,
               briefcases, totes, handbags or other items taken from the store as well
22             as work areas and lockers. Such inspections are a condition of
               employment.
23
          There are two patron entrances/exits to the store which are located next to each other at the
24
     front of the store. There is also an emergency exit located in the back house of the store. At present,
25
     employees are required to enter and exit the store using the door that is located on the right when
26
     facing the store. Only managers, including the General Manager, Assistant Managers and supervisors
27
     have the authority to excuse a Sales Associate from the store and perform a bag inspection search.
28

---
107

1  The bag inspection search only applies to all packages, including, but not limited to, shopping bags,
2  briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the
3  store at any given time.

4  When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since
5  there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,
6  Sales Associates can generally can locate that manager easily to perform the bag inspection search.
7  Although there is no formal policy for when a Sales Associate must clock-out, generally Sales
8  Associates clock-out when they leave the sales floor to gather their personal belongings from the
9  back house. However, without a firm policy in place, some Sales Associates clock-out after they have
10  gathered their personal belongings and are ready to leave, either before or soon after locating a
11  manager.

12  Once a manager has been located and informed that the Sales Associate wishes to leave the
13  store, the manager will then escort the Sales Associate to the employee exit to perform the bag
14  inspection search.

15  All managers when inspecting packages, including, but not limited to, shopping bags,
16  briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the
17  store, will ask to look inside the interior of all packages. The manager does not touch any of the items
18  within the package but may ask the Sales Associate to open compartments and move items around so
19  that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store
20  without any package(s) on him/her, a manager will give him/her permission to leave and will observe
21  the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

22  When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales
23  Associates usually exit the store with the closing manager. The closing manager usually takes
24  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to
25  leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by
26  the manager.

27  ///

28  ///

Camarillo

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management.
> Inspections will be conducted at the employee entrances and exits. A sales receipt must accompany all purchases made by employees.
>
> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There are two patron entrances/exits to the store which are located next to each other at the front of the store. There is also an emergency exit located in the back house of the store. Sales Associates enter and exit the store using the door that is located on the right when facing the store. Only managers, including the General Manager, Assistant Managers and supervisors have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times, Sales Associates can generally can locate that manager easily to perform the bag inspection search. Although there is no formal policy for when a Sales Associate must clock-out but, generally Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house. However, without a firm policy in place, some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

1    store, will ask to look inside the interior of all packages. The manager does not touch any of the items

2    within the package but may ask the Sales Associate to open compartments and move items around so

3    that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

4    without any package(s) on him/her, a manager will give him/her permission to leave and will observe

5    the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

6           When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

7    Associates usually exit the store with the closing manager. The closing manager usually takes

8    responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

9    leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by

10   the manager.

11          Carlsbad

12          The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

13   Handbook" that provides:

14               All packages are subject to inspection by Store Management.
                 Inspections will be conducted at the employee entrances and exits. A
15               sales receipt must accompany all purchases made by employees.

16               The Company reserves the right to randomly inspect all shopping bags,
                 briefcases, totes, handbags or other items taken from the store as well
17               as work areas and lockers. Such inspections are a condition of
                 employment.
18
            There are two patron exits to the store which are located next to each other at the front of the
19
     store. There is also an emergency exit located in the back house of the store. At present, employees
20
     are required to enter and exit the store using the door that is located on the far left when facing the
21
     store. Only managers, including the General Manager, Assistant Managers and supervisors have the
22
     authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag
23
     inspection search only applies to all packages, including, but not limited to, shopping bags,
24
     briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the
25
     store at any given time.
26
            When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since
27
     there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,
28

                                                     110

1   Sales Associates can generally can locate that manager easily to perform the bag inspection search.

2   Although there is no formal policy for when a Sales Associate must clock-out but,  generally Sales

3   Associates clock-out when they leave the sales floor to gather their personal belongings from the

4   back house. However, without a firm policy in place, some Sales Associates clock-out after they have

5   gathered their personal belongings and are ready to leave, either before or soon after locating a

6   manager.

7       Once a manager has been located and informed that the Sales Associate wishes to leave the

8   store, the manager will then escort the Sales Associate to the employee exit to perform the bag

9   inspection search.

10      All managers when inspecting packages, including, but not limited to, shopping bags,

11  briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

12  store, will ask to look inside the interior of all packages. The manager does not touch any of the items

13  within the package but may ask the Sales Associate to open compartments and move items around so

14  that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

15  without any package(s) on him/her, a manager will give him/her permission to leave and will observe

16  the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

17      When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

18  Associates usually exit the store with the closing manager. The closing manager usually takes

19  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

20  leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by

21  the manager.

22      Gilroy

23      The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

24  Handbook" that provides:

25          All packages are subject to inspection by Store Management.
            Inspections will be conducted at the employee entrances and exits. A
26          sales receipt must accompany all purchases made by employees.

27          The Company reserves the right to randomly inspect all shopping bags,
            briefcases, totes, handbags or other items taken from the store as well
28

111

as work areas and lockers. Such inspections are a condition of employment.

There are two patron exits to the store which are located next to each other at the front of the store. There are also three exits located at the back of the store, two of which are emergency exits and the third which is used for shipping and receiving. At present, employees are required to enter and exit the store using the patron door located in the women's department. Only managers, including the General Manager, Assistant Managers and supervisors have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. At least two managers are on the sales floor at all times, so Sales Associates tend to locate one of those managers to excuse them from the store. Although there is no formal policy for when a Sales Associate must clock-out but, generally Sales Associates clock-out prior to leaving the sales floor to gather their personal belongings from the back house. However, without a firm policy in place, some Sales Associates clock-out after they have gathered their personal belongings and are ready to leave, either before or soon after locating a manager.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit. Employees are not permitted to wear jackets out of the store. Jackets must be carried out of the store.

1    When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

2  Associates usually exit the store with the closing manager. The closing manager usually takes

3  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

4  leave, they clock-out, gather their personal belongings, then congregate near the front exit of the store

5  and are one-by-one inspected by the manager.

6    Mammoth Lakes

7    The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

8  Handbook" that provides:

9    All packages are subject to inspection by Store Management.
     Inspections will be conducted at the employee entrances and exits. A

10   sales receipt must accompany all purchases made by employees.

11   The Company reserves the right to randomly inspect all shopping bags,
     briefcases, totes, handbags or other items taken from the store as well

12   as work areas and lockers. Such inspections are a condition of
     employment.

13   There is one patron exit to the store which is located at the front of the store. There are also

14  two emergency exits located in the back house of the store. Sales Associates exit the store using the

15  front exit. Only managers, including the General Manager, Assistant Managers and supervisors have

16  the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag

17  inspection search only applies to all packages, including, but not limited to, shopping bags,

18  briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the

19  store at any given time.

20   When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since

21  there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,

22  Sales Associates can generally can locate that manager easily to perform the bag inspection search.

23  There is no formalized system for when a Sales Associate must clock-out, either before or after

24  finding a manager to excuse him/her from the store. Some Sales Associates clock-out when they

25  leave the sales floor to gather their personal belongings from the back house and some Sales

26  Associates clock-out after they have gathered their personal belongings and are ready to leave, either

27  before or soon after locating a manager.

28

113

1    Once a manager has been located and informed that the Sales Associate wishes to leave the

2    store, the manager will then escort the Sales Associate to the employee exit to perform the bag

3    inspection search.

4    All managers when inspecting packages, including, but not limited to, shopping bags,

5    briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

6    store, will ask to look inside the interior of all packages. The manager does not touch any of the items

7    within the package but may ask the Sales Associate to open compartments and move items around so

8    that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

9    without any package(s) on him/her, a manager will give him/her permission to leave and will observe

10   the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

11   When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

12   Associates usually exit the store with the closing manager. The closing manager usually takes

13   responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

14   leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by

15   the manager.

16   Ontario

17   The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

18   Handbook" that provides:

19       All packages are subject to inspection by Store Management.
         Inspections will be conducted at the employee entrances and exits. A
20       sales receipt must accompany all purchases made by employees.

21       The Company reserves the right to randomly inspect all shopping bags,
         briefcases, totes, handbags or other items taken from the store as well
22       as work areas and lockers. Such inspections are a condition of
         employment.
23
         There are two patron exits to the store. The front exit is located in the interior of the mall. The
24
     second exits is located on the side of the store exits outside of the mall. There is also an emergency
25
     exit located in the back house of the store. At present, employees are required to enter and exit the
26
     store using the door that is located on the side of the mall, exiting outside the mall. Only managers,
27
     including the General Manager, Assistant Managers and supervisors have the authority to excuse a
28

─────────────────────────────────────

114

Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times, Sales Associates can generally can locate that manager easily to perform the bag inspection search. Although there is no formal policy for when a Sales Associate must clock-out but, Sales Associates are generally required to clock-out prior to leaving the sales floor.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give him/her permission to leave and will observe the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales Associates usually exit the store with the closing manager. The closing manager usually takes responsibility for performing the loss prevention searches. When the Sales Associates are prepared to leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by the manager.

Pismo Beach

The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee Handbook" that provides:

> All packages are subject to inspection by Store Management.
> Inspections will be conducted at the employee entrances and exits. A
> sales receipt must accompany all purchases made by employees.

115

> The Company reserves the right to randomly inspect all shopping bags, briefcases, totes, handbags or other items taken from the store as well as work areas and lockers. Such inspections are a condition of employment.

There are two patron exits to the store which are located at the front of the store. There are also two exits located at the back of the store, one is used for emptying trash and one is used for shipping and receiving. Both back door exits are also designated emergency exits At present, employees are required to enter and exit the store using the door that is located in the women's department . Only managers, including the General Manager, Assistant Managers and supervisors have the authority to excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the store at any given time.

When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times, Sales Associates can generally can locate that manager easily to perform the bag inspection search. Although there is no formal policy for when a Sales Associate must clock-out but,  generally Sales Associates clock-out when they leave the sales floor to gather their personal belongings from the back house.

Once a manager has been located and informed that the Sales Associate wishes to leave the store, the manager will then escort the Sales Associate to the employee exit to perform the bag inspection search.

All managers when inspecting packages, including, but not limited to, shopping bags, briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the store, will ask to look inside the interior of all packages. The manager does not touch any of the items within the package but may ask the Sales Associate to open compartments and move items around so that they may gain a clearer view of the contents. In addition, if the Sales Associate is carrying items of clothing, such as a jacket, the jacket will be pat down while the employee is holding it. Generally, when a Sales Associate exits the store without any package(s) on him/her, a manager will give

1   him/her permission to leave and will observe the Sales Associate walking out without immediately

2   escorting the Sales Associate to the exit.

3          When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

4   Associates usually exit the store with the closing manager. The Sales Associates gather their

5   belongings, bring them up front, then clock out together prior to being inspected by a manager.

6          <u>San Diego</u>

7          The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

8   Handbook" that provides:

9                  All packages are subject to inspection by Store Management.
                   Inspections will be conducted at the employee entrances and exits. A
10                 sales receipt must accompany all purchases made by employees.

11                 The Company reserves the right to randomly inspect all shopping bags,
                   briefcases, totes, handbags or other items taken from the store as well
12                 as work areas and lockers. Such inspections are a condition of
                   employment.
13
          There are two patron exits to the store, one on the left that faces the parking lot and the other
14
    on the right which faces the outdoor mall. There is also an emergency exit located in the back house
15
    of the store. At present, employees are required to enter and exit the store using the door that faces
16
    the parking lot. Only managers, including the General Manager, Assistant Managers and supervisors
17
    have the authority to excuse a Sales Associate from the store and perform a bag inspection search.
18
    The bag inspection search only applies to all packages, including, but not limited to, shopping bags,
19
    briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the
20
    store at any given time.
21
          When a Sales Associate is prepared to leave the store, he/she will inform a manager that
22
    he/she wishes to leave, which is broadcast over the walkie-talkie communication system in place in
23
    the store. In the evening hours, after an employee has notified a manager that he/she wishes to leave,
24
    there is usually no broadcast made over the walkie-talkie communication system since the store is
25
    usually closed. The Sales Associate then proceeds to clock-out, then gather his/her belongings at the
26
    back of the store in the employee locker area.
27

28

                                        117

1    Once a manager has been located and informed that the Sales Associate wishes to leave the

2  store, the manager will meet the Sales Associate at the employee exit to perform the bag inspection

3  search. The store's security camera is pointed to the front of the store which includes the area where

4  bag inspection searches are performed.

5    All managers when inspecting packages, including, but not limited to, shopping bags,

6  briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

7  store, will hold the bottom of the package while instructing the employee to move around the

8  contents of the package. Generally, when a Sales Associate exits the store without any package(s) on

9  him/her, a manager will give him/her permission to leave and will observe the Sales Associate

10  walking out without immediately escorting the Sales Associate to the exit.

11    When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

12  Associates usually exit the store with the closing manager. The closing manager usually takes

13  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

14  leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by

15  the manager.

16    Tulare

17    The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee

18  Handbook" that provides:

19        All packages are subject to inspection by Store Management.
          Inspections will be conducted at the employee entrances and exits. A
20        sales receipt must accompany all purchases made by employees.

21        The Company reserves the right to randomly inspect all shopping bags,
          briefcases, totes, handbags or other items taken from the store as well
22        as work areas and lockers. Such inspections are a condition of
          employment.
23
    There are two patron exits to the store which are located at the front of the store, one in the
24
    women's department and one in the men's department. At present, the door located in the men's
25
    department is the designated employee entrance/exit. There are also two exits located in the back
26
    house of the store that are emergency exits and one is used for shipping and receiving. Only
27
    managers, including the General Manager, Assistant Managers and supervisor have the authority to
28

1   excuse a Sales Associate from the store and perform a bag inspection search. The bag inspection
2   search only applies to all packages, including, but not limited to, shopping bags, briefcases, totes and
3   handbags that are in the possession of the Sales Associate when he/she exits the store at any given
4   time.

5       When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since
6   there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,
7   Sales Associates can generally can locate that manager easily to perform the bag inspection search.
8   Although there is no formal policy for when a Sales Associate must clock-out but,  generally Sales
9   Associates clock-out after gathering their personal belongings from the back house and prior to
10  undergoing the loss prevention search and exiting the store.

11      Once a manager has been located and informed that the Sales Associate wishes to leave the
12  store, the manager will then escort the Sales Associate to the employee exit to perform the bag
13  inspection search.

14      All managers when inspecting packages, including, but not limited to, shopping bags,
15  briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the
16  store, will ask to look inside the interior of all packages. The manager does not touch any of the items
17  within the package but may ask the Sales Associate to open compartments and move items around so
18  that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store
19  without any package(s) on him/her, a manager will give him/her permission to leave and will observe
20  the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

21      When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales
22  Associates usually exit the store with the closing manager. The closing manager usually takes
23  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to
24  leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by
25  the manager.

26      Vacaville

27      The store abides by the "Bag Inspection" policy that is enumerated in the "Retail Employee
28  Handbook" that provides:

                                    119

1    All packages are subject to inspection by Store Management.
     Inspections will be conducted at the employee entrances and exits. A
2    sales receipt must accompany all purchases made by employees.

3    The Company reserves the right to randomly inspect all shopping bags,
     briefcases, totes, handbags or other items taken from the store as well
4    as work areas and lockers. Such inspections are a condition of
     employment.

5        There are two patron exits to the store which are located on opposite sides of the cash wrap in

6    the store. Sales Associates exit the building through the door located in the men's department. There

7    are also two exits at the back house of the store that are emergency exits and used for shipping and

8    receiving. Sales Associates enter and exit the store using the door that is located on the right when

9    facing the store. Only managers, including the General Manager, Assistant Managers and supervisor

10   have the authority to excuse a Sales Associate from the store and perform a bag inspection search.

11   The bag inspection search only applies to all packages, including, but not limited to, shopping bags,

12   briefcases, totes and handbags that are in the possession of the Sales Associate when he/she exits the

13   store at any given time.

14       When a Sales Associate is prepared to leave the store, he/she will inform a manager. Since

15   there is a designated manager, the Customer Sales Manager (CSM), on the sales floor at all times,

16   Sales Associates can generally can locate that manager easily to perform the bag inspection search.

17   Although there is no formal policy for when a Sales Associate must clock-out but, generally Sales

18   Associates clock-out when they leave the sales floor to gather their personal belongings from the

19   back house. However, without a firm policy in place, some Sales Associates clock-out after they have

20   gathered their personal belongings and are ready to leave, either before or soon after locating a

21   manager.

22       Once a manager has been located and informed that the Sales Associate wishes to leave the

23   store, the manager will then escort the Sales Associate to the employee exit to perform the bag

24   inspection search.

25       All managers when inspecting packages, including, but not limited to, shopping bags,

26   briefcases, totes and handbags that are in the possession of the Sales Associate wishing to exit the

27   store, will ask to look inside the interior of all packages. The manager does not touch any of the items

28

1  within the package but may ask the Sales Associate to open compartments and move items around so

2  that they may gain a clearer view of the contents. Generally, when a Sales Associate exits the store

3  without any package(s) on him/her, a manager will give him/her permission to leave and will observe

4  the Sales Associate walking out without immediately escorting the Sales Associate to the exit.

5      When a Sales Associate is leaving at the end of the day, after the store has closed, the Sales

6  Associates usually exit the store with the closing manager. The closing manager usually takes

7  responsibility for performing the loss prevention searches. When the Sales Associates are prepared to

8  leave, they clock-out, then congregate near the front exit of the store and are one-by-one inspected by

9  the manager.

10      Vacaville - Polo Jeans Co.

11      Loss prevention searches are no longer performed in this store because the store is no longer

12  in operation.

13      Camarillo - Polo Jeans Co.

14      Loss prevention searches are no longer performed in this store because the store is no longer

15  in operation.

16      Gilroy - Polo Jeans Co.

17      Loss prevention searches are no longer performed in this store because the store is no longer

18  in operation.

19      San Diego - Polo Jeans Co.

20      Loss prevention searches are no longer performed in this store because the store is no longer

21  in operation.

22      SPECIAL INTERROGATORY NO. 214

23      IDENTIFY the person or persons most knowledgeable regarding YOUR response to the

24  immediately preceding interrogatory.

25  RESPONSE TO SPECIAL INTERROGATORY NO. 214

26      Defendants object to this interrogatory on the grounds that it is vague, ambiguous and overly

27  broad, is compound in nature, and is unduly burdensome and oppressive.

28      Subject to and without waiving these objections, Defendants respond as follow:

121

Alpine

    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

    Scott Kafoury - District Manager for Southern California

    Everett Ferrieria - General Manager

    Carol Ann Umbrasas - Assistant Manager Merchandising

    Jason Waters - Assistant Manager Human Resources

    Mark Dubois - Assistant Manager Operations

Anderson

    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

    Tracy Ficklin Wagner - District Manager for Northwest

    Dian Sharp - General Manager

    Heather Wyatt - Assistant Manager Merchandising

    Kathryn Mattson - Assistant Manager Human Resources

    Sarah Matthews - Assistant Manager Operations

Barstow

    Sharonda Weatherspoon, Director of Human Resources - FSC Stores

    Matt Peyton - District Manager for Southwest

    Tanya Taylor - General Manager

    Adrian Pina - Assistant Manager Merchandising

    Felisha Jones - Assistant Manager Human Resources

    John Serrano - Assistant Manager Operations

Cabazon

    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

    Scott Kafoury - District Manager for Southern California

    Mike Ko - Store Director

    April Hicks - General Manager

    Cynthia Mora - Assistant Manager Merchandising Men's and Home

    Leighann Arizmendi - Assistant Manager Women and Kids

122

Alyssa Julian - Assistant Manager Human Resources

Alex Herrera - Assistant Manager Operations

Camarillo

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Matt Peyton - District Manager for Southwest

Lianne Ishiagawa -General Manager

Mario Cadena - Assistant Manager Merchandising Men's and Home

Jennifer Wemeke - Assistant Manager Women's and Kids

Michelle Meyers - Assistant Manager Human Resources

Darlene Villavicencio - Assistant Manager Operations

Carlsbad

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Scott Kafoury - District Manager for Southern California

Nancy Hong - General Manager

Joseph Santapaoloa - Assistant Manager Men's and Home

Jennifer Hanson - Assistant Manager Women's and Kids

Emily Broker - Assistant Manager Human Resources

Abel Manansala - Assistant Manager Operations

Gilroy

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Tracy Ficklin Wagner - District Manager for Northwest

John Navarro - General Manager

Loren Johnson - Assistant Manager Human Resources

Mammoth Lakes

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Tracy Ficklin Wagner - District Manager for Northwest

Tara Wright - General Manager

Thomas Richards - Assistant Manager Merchandising Men's and Home

1    Sandra Brodie - Assistant Manager Merchandising Women's and Kids

2    Brandon Willis - Assistant Manager Human Resources

3    Ontario

4    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

5    Diana Copeland - Regional Manager, Western Region

6    Scott Kafoury - District Manager for Southern California

7    Andrea Williams - General Manager

8    Rachel Delamora - Assistant Manager Merchandising

9    Dena Braxton - Assistant Manager Human Resources

10    Jessica Hipol - Assistant Manager Operations

11    Pismo Beach

12    Matt Peyton - District Manager for Southwest

13    Joey Sandoval - General Manager

14    Nick Williams - Assistant Manager Merchandising

15    Carin Penninski - Assistant Manager Human Resources

16    Michelle Torez - Assistant Manager Operations

17    San Diego

18    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

19    Scott Kafoury - District Manager for Southern California

20    Carey Hernandez - General Manager

21    Ivy Mighty - Assistant Manager Merchandising

22    Jeffrey Jimenez - Assistant Manager Human Resources

23    Daniel Murphy - Assistant Manager Operations

24    Tulare

25    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

26    Matt Peyton - District Manager for Southwest

27    David Botello - General Manager

28    Valentina Paloma - Assistant Manager Merchandising

1        Spencer Vandergriff - Assistant Manager Human Resources

2        Tiffany Crawford - Assistant Manager Operations

3   Vacaville

4        Sharonda Weatherspoon - Director of Human Resources - FSC Stores

5        Tracy Ficklin Wagner - District Manager Northwest

6        Denny Howe - General Manager

7        Megan Roos - Assistant Manager Merchandising Men's and Home

8        Tony Cichy - Assistant Manager Women's and Kids

9        Shari Foree - Assistant Manager Human Resources

10        Will Henderson - Assistant Manager Operations

11   Vacaville - Polo Jeans Co.

12        Sharonda Weatherspoon - Director of Human Resources - FSC Stores

13   Camarillo - Polo Jeans Co.

14        Sharonda Weatherspoon - Director of Human Resources - FSC Stores

15   Gilroy - Polo Jeans Co.

16        Sharonda Weatherspoon - Director of Human Resources - FSC Stores

17   San Diego - Polo Jeans Co.

18        Sharonda Weatherspoon - Director of Human Resources - FSC Stores

19   SPECIAL INTERROGATORY NO. 215

20        If YOU contend YOUR practices pertaining to loss prevention inspections of YOUR

21   employees in YOUR "Factory Stores" (See Exhibit B, "Ralph Lauren Store Locations" printout from

22   www.polo.com) differed from store to store in any way between May 30, 2002 and the present,

23   describe those differences in detail.

24   RESPONSE TO SPECIAL INTERROGATORY NO. 215

25        See Response to Special Interrogatory No. 213.

26   SPECIAL INTERROGATORY NO. 216

27        IDENTIFY the person or persons most knowledgeable regarding YOUR response to the

28   immediately preceding interrogatory.

RESPONSE TO SPECIAL INTERROGATORY NO. 216

See Response to Special Interrogatory No. 214.

SPECIAL INTERROGATORY NO. 217

IDENTIFY the person or persons most knowledgeable about YOUR payment COMPENSATION to SALES ASSOCIATES currently employed in YOUR Rodeo Drive store in Beverly Hills, California. (For purposes of these interrogatories, "COMPENSATION" means am form of compensation received by your SALES ASSOCIATES, including but not limited to wages, commissions, bonuses, and medical, dental and/or vision insurance.)

RESPONSE TO SPECIAL INTERROGATORY NO. 217

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Jonathan Possidente - General Manager

SPECIAL INTERROGATORY NO. 218

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Burlingame Avenue store in Burlingame, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 218

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

126

1    Kristi Mogel - Regional Human Resources Manager

2    Tin Hua - former Area Manager

3    SPECIAL INTERROGATORY NO. 219

4    IDENTIFY the person or persons most knowledgeable about YOUR payment of

5    COMPENSATION to SALES ASSOCIATES currently employed in YOUR South Coast Plaza store

6    in Costa Mesa, California.

7    RESPONSE TO SPECIAL INTERROGATORY NO. 219

8    Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

9    broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

10    and ambiguous.

11    Subject to and without waiving these objections, Defendants respond as follow:

12    Evan Cohen - Manager of Store Operations - Full Price Retail Stores

13    Kim Babka - Regional Director

14    Kristi Mogel - Regional Human Resources Manager

15    Gary Morrill, former General Manager

16    SPECIAL INTERROGATORY NO. 220

17    IDENTIFY the person or persons most knowledgeable about YOUR. payment of

18    COMPENSATION to SALES ASSOCIATES currently employed in YOUR Girard Avenue store in

19    La Jolla, California.

20    RESPONSE TO SPECIAL INTERROGATORY NO. 220

21    Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

22    broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

23    and ambiguous.

24    Subject to and without waiving these objections, Defendants respond as follow:

25    Evan Cohen - Manager of Store Operations - Full Price Retail Stores

26    Kim Babka - Regional Director

27    Kristi Mogel - Regional Human Resources Manager

28    Brooke Stengel - General Manager

SPECIAL INTERROGATORY NO. 221

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Malibu Ralph Lauren store.

RESPONSE TO SPECIAL INTERROGATORY NO. 221

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Jenna Baker - General Manager

SPECIAL INTERROGATORY NO. 222

IDENTIFY the person or persons most knowledgeable about YOUR payment of compensation to SALES ASSOCIATES currently employed in YOUR Ralph Lauren Stanford Shopping Center store in Palo Alto, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 222

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Tin Hua - former Area Manager

///

///

SPECIAL INTERROGATORY NO. 223

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Rugby store in Palo Alto, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 223

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Tara Hladun - General Manager

SPECIAL INTERROGATORY NO. 224

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Pavilions Lane store in Sacramento, California

RESPONSE TO SPECIAL INTERROGATORY NO. 224

Subject to and without waiving these objections, Defendants respond as follows:

The Sacramento store is owned by a licensee of Defendants and as a result, Defendants have no knowledge or information to be able to respond to this request.

SPECIAL INTERROGATORY NO. 225

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Post Street Ralph Lauren store in San Francisco, California.

///

///

///

129

RESPONSE TO SPECIAL INTERROGATORY NO. 225

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Evan Cohen - Manager of Store Operations - Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Cathy Post - General Manager

Tin Hua - former Area Manager

SPECIAL INTERROGATORY NO. 226

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Larsen Factory Outlet store in Alpine, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 226

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Scott Kafoury - District Manager for Southern California

Everett Ferrieria - General Manager

Jason Waters - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 227

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Anderson, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 227

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Tracy Ficklin Wagner - District Manager for Northwest

Dian Sharp - General Manager

Kathryn Mattson - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 228

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Barstow, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 228

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Matt Peyton - District Manager for Southwest

Tanya Taylor - General Manager

Felisha Jones - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 229

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Palo Ralph Lauren Factory Outlet store in Cabazon, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 229

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Scott Kafoury - District Manager for Southern California

Mike Ko - Store Director

April Hicks - General Manager

Alyssa Julian - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 230

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Camarillo, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 230

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Matt Peyton - District Manager for Southwest

Lianne Ishiagawa -General Manager

Michelle Meyers - Assistant Manager Human Resources

///

///

///

SPECIAL INTERROGATORY NO. 231

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Carlsbad, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 231

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Scott Kafoury - District Manager for Southern California

Nancy Hong - General Manager

Emily Broker - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 232

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren. Factory Outlet store in Gilroy, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 232

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Tracy Ficklin Wagner - District Manager for Northwest

John Navarro - General Manager

Loren Johnson - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 233

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Mammoth Lakes, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 233

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Tracy Ficklin Wagner - District Manager for Northwest

Tara Wright - General Manager

Brandon Wllis - Assistant Manager Human Resources

SPECIAL INTERROGATORY NO. 234

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren Factory Outlet store in Ontario, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 234

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Diana Copeland - Regional Manager, Western Region

Scott Kafoury - District Manager for Southern California

Andrea Williams - General Manager

Dena Braxton - Assistant Manager Human Resources

1   SPECIAL INTERROGATORY NO. 235

2       IDENTIFY the person or persons most knowledgeable about YOUR payment of

3   COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren

4   Factory Outlet store in Pismo Beach, California.

5   RESPONSE TO SPECIAL INTERROGATORY NO. 235

6       Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

7   broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

8   and ambiguous.

9       Subject to and without waiving these objections, Defendants respond as follow:

10      Matt Peyton - District Manager for Southwest

11      Diana Copeland - Regional Manager, Western Region

12      Joey Sandoval - General Manager

13      Carin Penninski - Assistant Manager Human Resources

14  SPECIAL INTERROGATORY NO. 236

15      IDENTIFY the person or persons most knowledgeable about YOUR payment of

16  COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren

17  Factory Outlet store in San Diego, California.

18  RESPONSE TO SPECIAL INTERROGATORY NO. 236

19      Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

20  broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

21  and ambiguous.

22      Subject to and without waiving these objections, Defendants respond as follow:

23      Sharonda Weatherspoon - Director of Human Resources - FSC Stores

24      Diana Copeland - Regional Manager, Western Region

25      Scott Kafoury - District Manager for Southern California

26      Carey Hernandez - General Manager

27      Jeffrey Jimenez - Assistant Manager Human Resources

28  SPECIAL INTERROGATORY NO. 237

135

1    IDENTIFY the person or persons most knowledgeable about YOUR payment of

2    COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren

3    Factory Outlet store in Tulare, California.

4    RESPONSE TO SPECIAL INTERROGATORY NO. 237

5    Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

6    broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

7    and ambiguous.

8    Subject to and without waiving these objections, Defendants respond as follow:

9    Sharonda Weatherspoon - Director of Human Resources - FSC Stores

10   Diana Copeland - Regional Manager, Western Region

11   Matt Peyton - District Manager for Southwest

12   David Botello - General Manager

13   Spencer Vandergriff - Assistant Manager Human Resources

14   SPECIAL INTERROGATORY NO. 238

15   IDENTIFY the person or persons most knowledgeable about YOUR payment of

16   COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Ralph Lauren

17   Factory Outlet store in Vacaville, California.

18   RESPONSE TO SPECIAL INTERROGATORY NO. 238

19   Defendants object to this interrogatory on the grounds that it vague ambiguous and overly

20   broad as to time and scope. Defendants further object on the ground that the term "payment" is vague

21   and ambiguous.

22   Subject to and without waiving these objections, Defendants respond as follow:

23   Sharonda Weatherspoon - Director of Human Resources - FSC Stores

24   Diana Copeland - Regional Manager, Western Region

25   Tracy Ficklin Wagner - District Manager Northwest

26   Denny Howe, General Manager

27   Shari Foree, Assistant Manager Human Resources

28   ///

SPECIAL INTERROGATORY NO. 239

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Jeans Co. Factory store in Cabazon, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 239

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Scott Kafoury - District Manager Southern California

SPECIAL INTERROGATORY NO. 240

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Jeans Co. Factory store in Camarillo, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 240

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Matt Peyton - District Manager Southwest

SPECIAL INTERROGATORY NO. 241

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Jeans Co. Factory store in Gilroy, California.

///

///

RESPONSE TO SPECIAL INTERROGATORY NO. 241

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Tracy Ficklin Wagner - District Manager Northwest

SPECIAL INTERROGATORY NO. 242

IDENTIFY the person or persons most knowledgeable about YOUR payment of COMPENSATION to SALES ASSOCIATES currently employed in YOUR Polo Jeans Co. Factory store in San Diego, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 242

Defendants object to this interrogatory on the grounds that it vague ambiguous and overly broad as to time and scope. Defendants further object on the ground that the term "payment" is vague and ambiguous.

Subject to and without waiving these objections, Defendants respond as follow:

Sharonda Weatherspoon - Director of Human Resources - FSC Stores

Scott Kafoury - District Manager Southern California

SPECIAL INTERROGATORY NO. 243

Describe how CHARGE BACK POLICY currently is applied to SALES ASSOCIATES' COMPENSATION in YOUR Ralph Lauren stores in California. (For purposes of these interrogatories, "CHARGE BACK POLICY" means the policy pursuant to which a SALES ASSOCIATE'S COMPENSATION is adjusted when a customer returns a product that SALES ASSOCIATE has sold.)

RESPONSE TO SPECIAL INTERROGATORY NO. 243

Defendants object to this interrogatory on the grounds that the phrase "Ralph Lauren stores" is overly broad, vague, ambiguous and calls for speculation. Defendants further object to the definition of "charge back policy" which misstates the policy and is as such vague and ambiguous.

138

1   Finally, Defendants object on the ground that this request seeks information that is not relevant and is

2   not reasonably calculated to lead to the discovery of admissible evidence.

3         Subject to and without waiving these objections, Defendants respond as follows:

4         A "chargeback" occurs when a client, who purchased his/her merchandise through the use of

5   a credit card, disagrees with the posted charge. When he/she instructs his/her credit card company to

6   stop payment, the result is a chargeback to Polo. This is distinct from the returns/exchanges policy

7   applicable only to sales associates who receive a base rate plus commission or base rate against

8   commission. The returns/exchanges policy provides the following:

9        •  If a customer purchases product from Sales Associate A and returns the product, the return

10         is credited to Sales Associate A's number, regardless of the location of either the purchase

11         or return.

12       •  All returns of damaged, defective, or mis-altered merchandise should be returned to the

13         original sales associate's number regardless of responsibility.

14       •  If a customer purchases product from both Sales Associate A and Sales Associate B, all

15         returns of the product are credited to the applicable sales associate number.

16       •  If a customer purchases product from Sales Associate A and returns the product to Sales

17         Associate B, the return is credited to Sales Associate A's employee number.

18       •  If a customer purchases product from Sales Associate A and Sales Associate A is

19         unavailable or not working when the customer comes back, then Sales Associate B should

20         assist the customer.

21              •  If the product is exchanged for a like item, then the product should be

22                returned and re-sold under Sales Associate A's number. For example, a

23                medium blue knit shirt is exchanged for a large red knit shirt.

24              •  If the product is returned, then the product should be returned under Sales

25                Associate A's number.

26        In either case, if the customer selects additional merchandise or a different style of

27  product, then those items are considered new purchases and Sales Associate B should

28  receive commission for all new purchases.

- If the original sales associate is unknown, then the following principles apply:
  - If the product is exchanged for a like item, then the product should be returned and re-sold under the appropriate house number.
  - If the product is returned, then the product should be returned under the appropriate house number.

In either case, if the customer selects additional merchandise or a different style or product, then those items are considered new purchases and the sales associate should receive commission for all new purchases.

- If the product is returned from a department store, Polo.com or any of our factory stores every attempt should be made to identify the product and return it under the appropriate House Return designation.

SPECIAL INTERROGATORY NO. 244

Describe how YOUR CHARGE BACK POLICY is applied to SALES ASSOCIATES' wages, commissions and/or earnings in YOUR Rugby store in Palo Alto, California, at the present time.

RESPONSE TO SPECIAL INTERROGATORY NO. 244

Defendants object to the definition of "charge back policy" which misstates the policy and is as such vague and ambiguous. Defendants further object to this interrogatory on the grounds that it is vague and ambiguous as no sales associate in this store is paid commission wages. Finally, Defendants object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

There is no policy which exists in this store that adjusts a sales associate's compensation when a customer returns merchandise the sales associate had previously sold.

///

///

///

140

1    SPECIAL INTERROGATORY NO. 245

2        Describe how YOUR CHARGE BACK POLICY is applied to SALES ASSOCIATES'

3    wages, commissions and/or earnings in YOUR Polo Ralph Lauren Factory stores in California at the

4    present time.

5    RESPONSE TO SPECIAL INTERROGATORY NO. 245

6        Defendants object to this interrogatory on the grounds that the phrase "Polo Ralph Lauren

7    Factor stores" is overly broad, vague, ambiguous and calls for speculation. Defendants further object

8    to the definition of "charge back policy" which misstates the policy and is as such vague and

9    ambiguous. Finally, Defendants object on the ground that this request seeks information that is not

10   relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

11       Subject to and without waiving these objections, Defendants respond as follows:

12       There is no policy which exists in any of the factory stores that adjusts a sales associate's

13   compensation when a customer returns merchandise the sales associate had previously sold.

14   SPECIAL INTERROGATORY NO. 246

15       Describe how YOUR CHARGE BACK POLICY is applied to SALES ASSOCIATES'

16   wages, commissions and/or earnings in YOUR Polo Jeans Co. Factory stores in California at the

17   present time.

18   RESPONSE TO SPECIAL INTERROGATORY NO. 246

19       Defendants object to this interrogatory on the grounds that the phrase "Polo Jeans Co. Factory

20   stores" is overly broad, vague, ambiguous and calls for speculation. Defendants further object to the

21   definition of "charge back policy" which entirely misstates the policy. Defendants finally object on

22   the ground that this request seeks information that is not relevant and is not reasonably calculated to

23   lead to the discovery of admissible evidence since the interrogatory seeks information from a period

24   of time after business operations ceased in these stores.

25       Subject to and without waiving these objections, Defendants respond as follows:

26       There is no policy which exists in any of the factory stores that adjusts a sales associate's

27   compensation when a customer returns merchandise the sales associate had previously sold.

28   ///

141

1    SPECIAL INTERROGATORY NO. 247

2        IDENTIFY YOUR current Operations Manager in YOUR Burlingame Avenue store in

3    Burlingame, California. (For purposes of these interrogatories, "IDENTIFY" means to state the

4    applicable individual or entity's full name)

5    RESPONSE TO SPECIAL INTERROGATORY NO. 247

6        Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

7    term "Operations Manager." Defendants further object on the ground that this request seeks

8    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

9    evidence.

10       Subject to and without waiving these objections, Defendants respond as follows:

11       There is no employee with the title "Operations Manager" in this store.

12   SPECIAL INTERROGATORY NO. 248

13       IDENTIFY YOUR current Operations Manager in YOUR South Coast Plaza store in Costa

14   Mesa, California.

15   RESPONSE TO SPECIAL INTERROGATORY NO. 248

16       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

17   term "Operations Manager." Defendants further object on the ground that this request seeks

18   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

19   evidence.

20       Subject to and without waiving these objections, Defendants respond as follows:

21       There is no employee with the title "Operations Manager" in this store.

22   SPECIAL INTERROGATORY NO. 249

23       IDENTIFY YOUR current Operations Manager in YOUR Girard Avenue store in La Jolla,

24   California.

25   RESPONSE TO SPECIAL INTERROGATORY NO. 249

26       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

27   term "Operations Manager." Defendants further object on the ground that this request seeks

28

142

1  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
2  evidence.

3       Subject to and without waiving these objections, Defendants respond as follows:

4       There is no employee with the title "Operations Manager" in this store.

5  SPECIAL INTERROGATORY NO. 250

6       IDENTIFY YOUR current Operations Manager in YOUR Malibu Ralph Lauren store.

7  RESPONSE TO SPECIAL INTERROGATORY NO. 250

8       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
9  term "Operations Manager." Defendants further object on the ground that this request seeks
10 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
11 evidence.

12      Subject to and without waiving these objections, Defendants respond as follows:

13      There is no employee with the title "Operations Manager" in this store.

14 SPECIAL INTERROGATORY NO. 251

15      IDENTIFY YOUR current Operations Manager in YOUR Ralph Lauren Stanford Shopping
16 Center store in Palo Alto, California.

17 RESPONSE TO SPECIAL INTERROGATORY NO. 251

18      Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
19 term "Operations Manager." Defendants further object on the ground that this request seeks
20 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
21 evidence.

22      Subject to and without waiving these objections, Defendants respond as follows:

23      The Operations Manager is Jesus Valdovinos.

24 SPECIAL INTERROGATORY NO. 252

25      IDENTIFY YOUR current Operations Manager in YOUR Rugby store in Palo Alto,
26 California.

27 ///

28 ///

1    RESPONSE TO SPECIAL INTERROGATORY NO. 252

2           Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

3    term "Operations Manager." Defendants further object on the ground that this request seeks

4    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

5    evidence.

6           Subject to and without waiving these objections, Defendants respond as follows:

7           The Assistant Manager Operations is Jenn Loob.

8    SPECIAL INTERROGATORY NO. 253

9           IDENTIFY YOUR current Operations Manager in YOUR Pavilions Lane store in

10   Sacramento, California

11   RESPONSE TO SPECIAL INTERROGATORY NO. 253

12          Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

13   term "Operations Manager." Defendants further object on the ground that this request seeks

14   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

15   evidence.

16          Subject to and without waiving these objections, Defendants respond as follows:

17          The Sacramento store is owned by a licensee of Defendants and as a result, Defendants have

18   no knowledge or information to be able to respond to this request.

19   SPECIAL INTERROGATORY NO. 254

20          IDENTIFY YOUR current Operations Manager in YOUR Post Street Ralph Lauren store in

21   San Francisco, California.

22   RESPONSE TO SPECIAL INTERROGATORY NO. 254

23          Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

24   term "Operations Manager." Defendants further object on the ground that this request seeks

25   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

26   evidence.

27          Subject to and without waiving these objections, Defendants respond as follows:

28          The Operations Manager is Teresa Cruz.

1   SPECIAL INTERROGATORY NO. 255

2      IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

3   store in Alpine, California.

4   RESPONSE TO SPECIAL INTERROGATORY NO. 255

5      Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

6   term "Operations Manager." Defendants further object on the ground that this request seeks

7   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

8   evidence.

9      Subject to and without waiving these objections, Defendants respond as follows:

10     The Assistant Manager Operations is Mark Dubois.

11   SPECIAL INTERROGATORY NO. 256

12      IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

13   store in Anderson, California.

14   RESPONSE TO SPECIAL INTERROGATORY NO. 256

15      Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

16   term "Operations Manager." Defendants further object on the ground that this request seeks

17   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

18   evidence.

19      Subject to and without waiving these objections, Defendants respond as follows:

20     The Assistant Manager Operations is Sarah Matthews.

21   SPECIAL INTERROGATORY NO. 257

22      IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

23   store in Barstow, California.

24   RESPONSE TO SPECIAL INTERROGATORY NO. 257

25      Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

26   term "Operations Manager." Defendants further object on the ground that this request seeks

27   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

28   evidence.

1    Subject to and without waiving these objections, Defendants respond as follows:

2    The Assistant Manager Operations is John Serrano.

3    SPECIAL INTERROGATORY NO. 258

4    IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

5    store in Cabazon, California.

6    RESPONSE TO SPECIAL INTERROGATORY NO. 258

7    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

8    term "Operations Manager." Defendants further object on the ground that this request seeks

9    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

10    evidence.

11    Subject to and without waiving these objections, Defendants respond as follows:

12    The Assistant Manager Operations is Alex Herrera.

13    SPECIAL INTERROGATORY NO. 259

14    IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

15    store in Camarillo, California.

16    RESPONSE TO SPECIAL INTERROGATORY NO. 259

17    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

18    term "Operations Manager." Defendants further object on the ground that this request seeks

19    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

20    evidence.

21    Subject to and without waiving these objections, Defendants respond as follows:

22    The Assistant Manager Operations is Darlene Villavicencio

23    SPECIAL INTERROGATORY NO. 260

24    IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

25    store in Carlsbad, California.

26    RESPONSE TO SPECIAL INTERROGATORY NO. 260

27    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

28    term "Operations Manager." Defendants further object on the ground that this request seeks

146

1    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
2    evidence.

3        Subject to and without waiving these objections, Defendants respond as follows:

4        The Assistant Manager Operations is Abel Manansala.

5    SPECIAL INTERROGATORY NO. 261

6        IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet
7    store in Gilroy, California.

8    RESPONSE TO SPECIAL INTERROGATORY NO. 261

9        Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
10   term "Operations Manager." Defendants further object on the ground that this request seeks
11   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
12   evidence.

13       Subject to and without waiving these objections, Defendants respond as follows:

14       The Assistant Manager Operations is Anthony Velazquez.

15   SPECIAL INTERROGATORY NO. 262

16       IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet
17   store in Mammoth Lakes, California.

18   RESPONSE TO SPECIAL INTERROGATORY NO. 262

19       Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
20   term "Operations Manager." Defendants further object on the ground that this request seeks
21   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
22   evidence.

23       Subject to and without waiving these objections, Defendants respond as follows:

24       The Assistant Manager Operations is Shana Thompson.

25   SPECIAL INTERROGATORY NO. 263

26       IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet
27   store in Ontario, California.

28   ///

147

1    RESPONSE TO SPECIAL INTERROGATORY NO. 263

2         Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

3    term "Operations Manager." Defendants further object on the ground that this request seeks

4    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

5    evidence.

6         Subject to and without waiving these objections, Defendants respond as follows:

7         The Assistant Manager Operations is Jessica Hipol.

8    SPECIAL INTERROGATORY NO. 264

9         IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

10   store in Pismo Beach, California.

11   RESPONSE TO SPECIAL INTERROGATORY NO. 264

12        Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

13   term "Operations Manager." Defendants further object on the ground that this request seeks

14   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

15   evidence.

16        Subject to and without waiving these objections, Defendants respond as follows:

17        The Assistant Manager Operations is Michelle Torez.

18   SPECIAL INTERROGATORY NO. 265

19        IDENTIFY YOUR current Operations Manager in YOUR Burlingame Avenue store in

20   YOUR Polo Ralph Lauren Factory Outlet store in San Diego, California.

21   RESPONSE TO SPECIAL INTERROGATORY NO. 265

22        Defendants object to this interrogatory on the grounds that it is vague, ambiguous and

23   unintelligible as to the "Burlingame Avenue store in YOUR Polo Ralph Lauren Factory Outlet store

24   in San Diego, California." Defendants further object to this interrogatory on the grounds that it is

25   vague and ambiguous as to the term "Operations Manager." Finally, Defendants object on the ground

26   that this request seeks information that is not relevant and is not reasonably calculated to lead to the

27   discovery of admissible evidence.

28   ///

148

1    Subject to and without waiving these objections, Defendants respond as follows:

2    The Assistant Manager Operations is Daniel Murphy.

3    SPECIAL INTERROGATORY NO. 266

4    IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

5    store in Tulare, California.

6    RESPONSE TO SPECIAL INTERROGATORY NO. 266

7    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

8    term "Operations Manager." Defendants further object on the ground that this request seeks

9    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

10   evidence.

11   Subject to and without waiving these objections, Defendants respond as follows:

12   The Assistant Manager Operations is Tiffany Crawford.

13   SPECIAL INTERROGATORY NO. 267

14   IDENTIFY YOUR current Operations Manager in YOUR Polo Ralph Lauren Factory Outlet

15   store in Vacaville, California.

16   RESPONSE TO SPECIAL INTERROGATORY NO. 267

17   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

18   term "Operations Manager." Defendants further object on the ground that this request seeks

19   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

20   evidence.

21   Subject to and without waiving these objections, Defendants respond as follows:

22   The Assistant Manager Operations is Will Henderson.

23   SPECIAL INTERROGATORY NO. 268

24   IDENTIFY YOUR current Operations Manager in YOUR Polo Jeans Co. Factory store in

25   Cabazon, California.

26   RESPONSE TO SPECIAL INTERROGATORY NO. 268

27   Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the

28   term "Operations Manager." Defendants further object on the ground that this request seeks

1    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
2    evidence.

3    Subject to and without waiving these objections, Defendants respond as follows:

4    This store is now closed. Thus, there is no employee with the title of "Operations Manager."

5    SPECIAL INTERROGATORY NO. 269

6    IDENTIFY YOUR current Operations Manager in YOUR Polo Jeans Co. Factory store in
7    Camarillo, California.

8    RESPONSE TO SPECIAL INTERROGATORY NO. 269

9    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
10    term "Operations Manager." Defendants further object on the ground that this request seeks
11    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
12    evidence since it seeks information regarding a store no longer doing business.

13    Subject to and without waiving these objections, Defendants respond as follows:

14    This store is now closed. Thus, there is no employee with the title of "Operations Manager."

15    SPECIAL INTERROGATORY NO. 270

16    IDENTIFY YOUR current Operations Manager in YOUR Polo Jeans Co. Factory store in
17    Gilroy, California.

18    RESPONSE TO SPECIAL INTERROGATORY NO. 270

19    Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
20    term "Operations Manager." Defendants further object on the ground that this request seeks
21    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible
22    evidence since it seeks information regarding a store no longer doing business.

23    Subject to and without waiving these objections, Defendants respond as follows:

24    This store is now closed. Thus, there is no employee with the title of "Operations Manager."

25    SPECIAL INTERROGATORY NO. 271

26    IDENTIFY YOUR current Operations Manager in YOUR Polo Jeans Co. Factory store in San
27    Diego, California.

28    ///

RESPONSE TO SPECIAL INTERROGATORY NO. 271

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the term "Operations Manager." Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence since it seeks information regarding a store no longer doing business.

Subject to and without waiving these objections, Defendants respond as follows:

This store is now closed. Thus, there is no employee with the title of "Operations Manager."

SPECIAL INTERROGATORY NO. 272

IDENTIFY the person or persons most knowledgeable regarding sales commission reconciliations for SALES ASSOCIATES employed in your Ralph Lauren stores in California at the present time.

RESPONSE TO SPECIAL INTERROGATORY NO. 272

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the term "Operations Manager." Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Evan Cohen, Manager of Store Operations - Full Price Retail Stores

SPECIAL INTERROGATORY NO. 273

IDENTIFY the person or persons most knowledgeable regarding YOUR compliance with California laws governing the accurate and timely payment of wages to YOUR SALES ASSOCIATES.

RESPONSE TO SPECIAL INTERROGATORY NO. 273

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

///

151

Subject to and without waiving these objections, Defendants respond as follows:

Evan Cohen, Manager of Store Operations - Full Price Retail Stores- Full Price Retail Stores

Kim Babka - Regional Director

Kristi Mogel - Regional Human Resources Manager

Sharonda Weatherspoon - Director of Human Resources Manager - FSC Stores

SPECIAL INTERROGATORY NO. 274

State the number of YOUR SALES ASSOCIATES in California who have quit between May 30, 2002 and the present.

RESPONSE TO SPECIAL INTERROGATORY NO. 274

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, and vague and ambiguous as to the phrase "who have quit," as well as to time. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 275

State the number of YOUR SALES ASSOCIATES in California whose employment YOU have terminated between May 30, 2002 and the present.

RESPONSE TO SPECIAL INTERROGATORY NO. 275

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

See information contained in chart, attached hereto as Exhibit A.

SPECIAL INTERROGATORY NO. 276

IDENTIFY each business entity that, at any time from May 30, 2002 to the present, owned or operated YOUR Burlingame Avenue store in Burlingame, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 276

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., Western Polo Retailers, LLC

SPECIAL INTERROGATORY NO. 277

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,. owned or operated YOUR South Coast Plaza store in Costa Mesa, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 277

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Polo California, LLC

SPECIAL INTERROGATORY NO. 278

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Girard Avenue store in La Jolla, California,

RESPONSE TO SPECIAL INTERROGATORY NO. 278

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., Western Polo Retailers, LLC

///

SPECIAL, INTERROGATORY NO. 279

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Malibu Ralph Lauren store.

RESPONSE TO SPECIAL INTERROGATORY NO. 279

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Polo California, LLC

SPECIAL INTERROGATORY NO. 280

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Ralph Lauren Stanford Shopping Center store in Palo Alto, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 280

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., Western Polo Retailers, LLC

SPECIAL INTERROGATORY NO. 281

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Rugby store in Palo Alto, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 281

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

1    Subject to and without waiving these objections, Defendants respond as follows:

2    Fashions Outlet of America, Polo California, LLC

3    SPECIAL INTERROGATORY NO. 282

4    IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

5    owned or operated YOUR Pavilions Lane store in Sacramento, California.

6    RESPONSE TO SPECIAL INTERROGATORY NO. 282

7    Defendants object to this interrogatory on the grounds that it is overly broad, unduly

8    burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

9    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

10   evidence.

11   Subject to and without waiving these objections, Defendants respond as follows:

12   The Sacramento store is licensed by Julius Clothing, LLC, a California corporation.

13   SPECIAL INTERROGATORY NO. 283

14   IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

15   owned or operated YOUR Post Street Ralph Lauren store in San Francisco, California.

16   RESPONSE TO SPECIAL INTERROGATORY NO. 283

17   Defendants object to this interrogatory on the grounds that it is overly broad, unduly

18   burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

19   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

20   evidence.

21   Subject to and without waiving these objections, Defendants respond as follows:

22   Fashions Outlet of America, Inc., Polo California, LLC

23   SPECIAL INTERROGATORY NO. 284

24   IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

25   owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Alpine, California.

26   RESPONSE TO SPECIAL INTERROGATORY NO. 284

27   Defendants object to this interrogatory on the grounds that it is overly broad, unduly

28   burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

155

1   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

2   evidence.

3         Subject to and without waiving these objections, Defendants respond as follows:

4         Fashions Outlet of America, Inc., Polo California, LLC

5   SPECIAL INTERROGATORY NO. 285

6         IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

7   owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Anderson, California.

8   RESPONSE TO SPECIAL INTERROGATORY NO. 285

9         Defendants object to this interrogatory on the grounds that it is overly broad, unduly

10  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

11  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

12  evidence.

13        Subject to and without waiving these objections, Defendants respond as follows:

14        Fashions Outlet of America, Inc., Polo California, LLC

15  SPECIAL INTERROGATORY NO. 286

16        IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

17  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Barstow, California.

18  RESPONSE TO SPECIAL INTERROGATORY NO. 286

19        Defendants object to this interrogatory on the grounds that it is overly broad, unduly

20  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

21  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

22  evidence.

23        Subject to and without waiving these objections, Defendants respond as follows:

24        Fashions Outlet of America, Inc., Polo California, LLC

25  SPECIAL INTERROGATORY NO. 287

26        IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

27  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Cabazon, California.

28  ///

RESPONSE TO SPECIAL INTERROGATORY NO. 287

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., R.L. Fashions of Cabazon, CA

SPECIAL INTERROGATORY NO. 288

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Camarillo, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 288

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., Polo California, LLC

SPECIAL INTERROGATORY NO. 289

IDENTIFY the company or companies that, at any time from May 30, 2002 to the present, owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Carlsbad, California.

RESPONSE TO SPECIAL INTERROGATORY NO. 289

Defendants object to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows:

Fashions Outlet of America, Inc., Polo California, LLC

///

1  SPECIAL INTERROGATORY NO. 290

2      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

3  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Gilroy, California.

4  RESPONSE TO SPECIAL INTERROGATORY NO. 290

5      Defendants object to this interrogatory on the grounds that it is overly broad, unduly

6  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

7  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

8  evidence.

9      Subject to and without waiving these objections, Defendants respond as follows:

10      Fashions Outlet of America, Inc., Polo California, LLC

11  SPECIAL INTERROGATORY NO. 291

12      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

13  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Mammoth Lakes, California.

14  RESPONSE TO SPECIAL INTERROGATORY NO. 291

15      Defendants object to this interrogatory on the grounds that it is overly broad, unduly

16  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

17  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

18  evidence.

19      Subject to and without waiving these objections, Defendants respond as follows:

20      Fashions Outlet of America, Inc., Polo California, LLC

21  SPECIAL INTERROGATORY NO. 292

22      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

23  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in. Ontario, California.

24  RESPONSE TO SPECIAL INTERROGATORY NO. 292

25      Defendants object to this interrogatory on the grounds that it is overly broad, unduly

26  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

27  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

28  evidence.

1    Subject to and without waiving these objections, Defendants respond as follows:

2    Fashions Outlet of America, Inc., Polo California, LLC

3    SPECIAL INTERROGATORY NO. 293

4    IDENTIFY the company or 'companies that, at any time from May 30, 2002 to the present,

5    owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Pismo Beach, California.

6    RESPONSE TO SPECIAL INTERROGATORY NO. 293

7    Defendants object to this interrogatory on the grounds that it is overly broad, unduly

8    burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

9    information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

10   evidence.

11   Subject to and without waiving these objections, Defendants respond as follows:

12   Fashions Outlet of America, Inc., Polo California, LLC

13   SPECIAL INTERROGATORY NO. 294

14   IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

15   owned or operated YOUR Polo Ralph Lauren Factory Outlet store in San Diego, California.

16   RESPONSE TO SPECIAL INTERROGATORY NO. 294

17   Defendants object to this interrogatory on the grounds that it is overly broad, unduly

18   burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

19   information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

20   evidence.

21   Subject to and without waiving these objections, Defendants respond as follows:

22   Fashions Outlet of America, Inc., Polo California, LLC

23   SPECIAL INTERROGATORY NO. 295

24   IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

25   owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Tulare, California.

26   RESPONSE TO SPECIAL INTERROGATORY NO. 295

27   Defendants object to this interrogatory on the grounds that it is overly broad, unduly

28   burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

1  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

2  evidence.

3       Subject to and without waiving these objections, Defendants respond as follows:

4       Fashions Outlet of America, Inc., Polo California, LLC

5  SPECIAL INTERROGATORY NO. 296

6       IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

7  owned or operated YOUR Polo Ralph Lauren Factory Outlet store in Vacaville, California.

8  RESPONSE TO SPECIAL INTERROGATORY NO. 296

9       Defendants object to this interrogatory on the grounds that it is overly broad, unduly

10 burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

11 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

12 evidence.

13      Subject to and without waiving these objections, Defendants respond as follows:

14      Fashions Outlet of America, Inc., Polo California, LLC

15 SPECIAL INTERROGATORY NO. 297

16      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

17 owned or operated YOUR Polo Jeans Co. Factory store in Cabazon, California.

18 RESPONSE TO SPECIAL INTERROGATORY NO. 297

19      Defendants object to this interrogatory on the grounds that it is overly broad, unduly

20 burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

21 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

22 evidence.

23      Subject to and without waiving these objections, Defendants respond as follows:

24      Fashions Outlet of America, Inc., R.L. Fashions of Cabazon, CA, LLC

25 SPECIAL INTERROGATORY NO. 298

26      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

27 owned or operated YOUR Polo Jeans Co. Factory store in Camarillo, California.

28 ///

1  RESPONSE TO SPECIAL INTERROGATORY NO. 298

2      Defendants object to this interrogatory on the grounds that it is overly broad, unduly

3  burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

4  information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

5  evidence.

6      Subject to and without waiving these objections, Defendants respond as follows:

7      Fashions Outlet of America, Inc., Polo California, LLC

8  SPECIAL INTERROGATORY NO. 299

9      IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

10 owned or operated YOUR Polo Jeans Co. Factory store in Gilroy, California.

11 RESPONSE TO SPECIAL INTERROGATORY NO. 299

12     Defendants object to this interrogatory on the grounds that it is overly broad, unduly

13 burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

14 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

15 evidence.

16     Subject to and without waiving these objections, Defendants respond as follows:

17     Fashions Outlet of America, Inc., Polo California, LLC

18 SPECIAL INTERROGATORY NO. 300

19     IDENTIFY the company or companies that, at any time from May 30, 2002 to the present,

20 owned or operated YOUR Polo Jeans Co. Factory store in San Diego, California.

21 RESPONSE TO SPECIAL INTERROGATORY NO. 300

22     Defendants object to this interrogatory on the grounds that it is overly broad, unduly

23 burdensome, vague and ambiguous. Defendants further object on the ground that this request seeks

24 information that is not relevant and is not reasonably calculated to lead to the discovery of admissible

25 evidence.

26     Subject to and without waiving these objections, Defendants respond as follows:

27     Fashions Outlet of America, Inc., Polo California, LLC

28 ///

161

SPECIAL INTERROGATORY NO. 301

Describe in detail all litigation (by pertinent case name, number, and court) filed in the last 10 years against you that involves allegations that you failed to compensate a California employee or employees for hours worked off the clock.

RESPONSE TO SPECIAL INTERROGATORY NO. 301

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the terms "describe" and "detail." Defendants further object to this request on the ground that this request seeks information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, Defendants respond as follows: No litigation has been filed against Polo in the last 10 years that is responsive to this interrogatory.

SPECIAL INTERROGATORY NO. 302

Describe in. detail all litigation (by pertinent case name, number, and court) filed in the last 10 years against you that involves allegations about your alleged failure to provide rest breaks to a an employee or employees in California.

RESPONSE TO SPECIAL INTERROGATORY NO. 302

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the terms "describe" and "detail." Defendants further object to this request on the grounds that it is vague, ambiguous, overbroad, and seeks information that is irrelevant to this dispute.

Subject to and without waiving these objections, Defendants respond as follows:

Lazon v. Club Monaco, Case No. CGC 06-229963, Superior Court for the State of California, County of San Francisco, filed March 2, 2006.

SPECIAL INTERROGATORY NO. 303

Describe in detail all litigation (by pertinent case name, number, and court) filed in the last. 10 years against you that involves allegations challenging your loss prevention searches.

RESPONSE TO SPECIAL INTERROGATORY NO. 303

Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the terms "describe" and "detail." Defendants further object to this request on the ground that this

---

162

1 request seeks information that is not relevant and is not reasonably calculated to lead to the discovery
2 of admissible evidence.

3     Subject to and without waiving these objections, Defendants respond as follows:

4     No litigation has been filed against Polo in the last 10 years that is responsive to this
5 interrogatory.

6 SPECIAL INTERROGATORY NO. 304

7     Describe in detail all litigation (by pertinent case name, number, and court) filed in the last
8 10 years against you that involves allegations challenging your ARREARS PROGRAM.

9 RESPONSE TO SPECIAL INTERROGATORY NO. 304

10     Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
11 terms "describe" and "detail." Defendants further object to this request on the ground that this
12 request seeks information that is not relevant and is not reasonably calculated to lead to the discovery
13 of admissible evidence.

14     Subject to and without waiving these objections, Defendants respond as follows:

15     No litigation has been filed against Polo in the last 10 years that is responsive to this
16 interrogatory.

17 SPECIAL INTERROGATORY NO. 305

18     Describe in detail all class action litigation (by pertinent case name, number, and court) filed
19 in the last 10 years against you that involved class members who were your California employees.

20 RESPONSE TO SPECIAL INTERROGATORY NO. 305

21     Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the
22 terms "describe" and "detail." Defendants further object to this request on the ground that this
23 request seeks information that is not relevant and is not reasonably calculated to lead to the discovery
24 of admissible evidence.

25     Subject to and without waiving these objections, Defendants respond as follows:

26     Esteen v. Polo Ralph Lauren Corp., Case No. 418019, Superior Court for the State of
27 California, County of San Francisco, filed March 25, 2003

28

1    <u>Young v. Polo Retail</u>, LLC, Case No. C 02-4546, United States District Court, Northern

2   District of California, filed September 18, 2002.

3        <u>Lazon v. Club Monaco</u>, Case No. CGC 06-229963, Superior Court for the State of California,

4   County of San Francisco, filed March 2, 2006.

5        <u>Brown v. Albertsons, Inc.</u>, Case No. BC 294155, Superior Court for the State of California,

6   County of Los Angeles, filed April 17, 2003.

7

8    Dated: **5-11-07**                          GREENBERG TRAURIG, LLP

9

10                                       By: _____

11                                            William J. Goines
                                             Brian S. Cousin
                                             Neil A. Capobianco
12                                           Jeremy A. Meier
                                             Alisha M. Louie
13
                                         Attorney for Defendants Polo Ralph Lauren
14                                       Corporation; Polo Retail, LLC; Polo Ralph Lauren
                                         Corporation, doing business in California as Polo
15                                       Retail Corporation; and Fashions Outlet of America,
                                         Inc
16

17

18

19

20

21

22

23

24

25

26

27

28

164

1

# VERIFICATION

2

STATE OF CALIFORNIA        )
3    COUNTY OF SANTA CLARA    )

4

5        I have read the foregoing DEFENDANTS POLO RALPH LAUREN
CORPORATION'S, POLO RETAIL, LLC., POLO RALPH LAUREN CORP. DBA POLO
RETAIL CORP.'S AND FASHIONS OUTLET OF AMERICA, INC.'S RESPONSES TO
6    PLAINTIFFS' SPECIAL INTERROGATORIES (SET ONE) and know its contents.

7        I am the Regional Human Resources Manager for Polo Ralph Lauren Corp., a party
to this action, and am authorized to make this verification for and on behalf of Polo Ralph
8    Lauren Corp., Polo Retail, LLC., Polo Ralph Lauren Corp. dba Polo Retail Corp. and
9    Fashions Outlet of America, Inc., and I make this verification for that reason. The matters
stated in the foregoing document, pertaining to the full price retail stores, are true of my
10    own knowledge except as to those matters which are stated on information and belief, and
11    as to those matters I believe them to be true.

12        Executed on May 3, 2007, at Palo Alto, California.

13        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
14

15

16                                                        Kristi Mogel

17

18

19

20

21

22

23

24

25

26

27

28

VERIFICATION

1       **VERIFICATION**

2   STATE OF NEW JERSEY         )
3   COUNTY OF BERGEN            )

4       I have read the foregoing DEFENDANTS POLO RALPH LAUREN
5   CORPORATION'S, POLO RETAIL, LLC., POLO RALPH LAUREN CORP. DBA POLO
    RETAIL CORP.'S AND FASHIONS OUTLET OF AMERICA, INC.'S RESPONSES TO
6   PLAINTIFFS' SPECIAL INTERROGATORIES (SET ONE) and know its contents.

7       I am the Human Resources Director - FSC stores, parties to this action, and am
    authorized to make this verification for and on behalf of Polo Ralph Lauren Corp., Polo
8   Retail, LLC., Polo Ralph Lauren Corp. dba Polo Retail Corp. and Fashions Outlet of
9   America, Inc., and I make this verification for that reason. The matters stated in the
    foregoing document, pertaining to Ralph Lauren Factory Store and Polo Jeans Co. are true
10  of my own knowledge except as to those matters which are stated on information and
11  belief, and as to those matters I believe them to be true.

12      Executed on May _11_, 2007, at Lyndhurst, New Jersey.

13      I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.
14

15
                            _Sharonda L. Weatherspoon_
16                          Sharonda Weatherspoon

17

18

19

20

21

22

23

24

25

26

27

28
                            VERIFICATION

SV 346155175v1 5/3/2007