IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA, et al., | No. C 07-02780 SI |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS, DENYING DEFENDANTS' MOTION FOR DECERTIFICATION, AND GRANTING PLAINTIFFS' MOTION TO SEVER** |
| v. | |
| POLO RALPH LAUREN CORPORATION, et al., | |
| Defendants. | |

On January 22, 2010, the Court heard oral argument on plaintiffs' motion for sanctions due to spoliation of evidence, defendants' motion for decertification or stay, and plaintiffs' motion to sever. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES plaintiffs' motion for sanctions and defendants' motion to decertify and GRANTS plaintiffs' motion to sever.

**BACKGROUND**

This litigation involves an employment dispute over unpaid wages brought on behalf of a class of approximately 6000 former employees of Polo brand stores in California. Plaintiffs originally filed suit in 2006 in the San Francisco Superior Court, alleging a number of violations of California wage and hour laws. The action was removed to this Court on May 29, 2007 on the basis of diversity jurisdiction and jurisdiction under the Class Action Fairness Act. By order dated July 8, 2008, the Court certified a class consisting of all former sales associates and cashiers who were employed at Polo's retail and factory stores in California from May 20, 2002 through the conclusion of this action. *See* July 8, 2008

Order at *13 (Docket No. 109). A detailed background is set forth in the Court's July 8, 2008 Order and is incorporated by reference here.

Plaintiffs assert claims for failure to provide rest breaks, failure to pay employees for off-the-clock time spent waiting inside the stores for post-shift bag searches, improper classification of all sales associates as overtime-exempt commission salespeople, and improper use of an arrears program in which sales associates who did not meet minimum commission requirements were subject to reduced earnings on future commissions above the minimum requirements.

On November 5, 2008, the Court stayed litigation of plaintiffs' rest break claims pending the California Supreme Court's resolution of *Brinker Restaurant Corporation v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. Ct. App. 2008), *review granted*, 196 P.3d 216 (Cal. 2008), a case bearing directly on California standards for class treatment of claims relating to missed rest breaks. *See* Nov. 5, 2008 Order (Docket No. 126). The parties now seek various orders relating to disposition of the rest break claims as well as plaintiffs' claims regarding uncompensated time spent waiting for post-shift bag inspections ("waiting time claims"). Before the Court at this time are plaintiffs' motion for sanctions due to spoliation of evidence related to the waiting time claims, defendants' motion to decertify or stay the waiting time claims, and plaintiffs' motion to sever the rest break claims.

## DISCUSSION

### I. Motion for Sanctions

#### A. Background

Plaintiffs seek imposition of sanctions against Polo due to alleged spoliation of video evidence related to plaintiffs' waiting time claims. The waiting time claims arise from Polo's undisputed practice of requiring employees to undergo "loss prevention inspections" (bag checks) by a manager at the end of the each employee's shift. Plaintiffs seek recovery for uncompensated time spent waiting for a manager to conduct a bag check after an employee's shift ends, either because the manager cannot immediately be located to perform the search or because there is a line of other employees waiting to be searched.

Polo maintains closed-circuit television ("CCTV") systems in some of its California stores for

the purpose of deterring theft.[1] These cameras are trained on store exits, and in at least some stores, on cash registers and other portions of the store's interior. *See* Hanson Decl. ¶ 2; Gunder Decl. ¶ 2. Polo's CCTV systems are designed to record an average of two months' worth of footage before they automatically overwrite the oldest footage with new shots. Gunder Decl. ¶ 3. The cameras are not designed to permanently store video spanning long periods of time. *Id.*

Although post-shift bag inspections are not required to be performed on camera, *id.*, Polo company policy directs managers to do so when possible. *See* Aug. 30, 2004 Email, Pltf. Ex. P ("Complete bag checks are to be done at [employee exits] and in view of the camera where possible."). Plaintiffs assert that this video footage would reflect the amount of off-the-clock time employees spent waiting for post-shift bag checks. In plaintiffs' first request for production of documents, propounded in November 2006, plaintiffs requested discovery of "all documents" related to Polo's "policies or practices governing performance of loss prevention searches" in each store, as well as "the amount of time sales associates have been required to wait inside [the relevant stores] . . . after they have clocked out from work but before they were permitted to leave." Document Requests Set 1 Nos. 64-89, 168-193, Pltf. Ex. C. Although these requests did not specifically seek video footage, the form language at the beginning of the request defined "document" to include video tapes. *Id.* at 4. Plaintiffs specifically requested video footage in their second set of document requests, sent to Polo in July 2008. *See* Document Requests Set 2, Pltf. Ex. F.

Despite these discovery requests, Polo did not make efforts to preserve any video footage. In its moving papers, Polo represented that it "never considered its CC TV camera footage responsive or relevant to Plaintiff's discovery requests." Gunder Decl. ¶ 4. At argument, defense counsel stated that counsel was not even aware of the possibility that the videos might have some bearing on the suit until November or December 2008. Consequently, much of the footage covering the relevant time period was overwritten by new footage and thus irretrievably lost. After several meet and confer efforts spanning nearly a year, Polo ultimately, in July and August 2009, produced a sample of videotape

---

[1] According to Polo's Senior Director of Asset Protection, Alyson Gunder, 25 of Polo's California stores have CCTV systems. *See* Ex. A to Gunder Decl. Of these, 12 locations had cameras in place at the time this action was instituted, and 13 others installed camera during the course of this litigation. *Id.*

3

consisting of "all the currently stored footage (recorded 24 hours a day) from each store's CC TV camera pointed at the door where loss inspection searches are typically conducted." Gunder Decl. ¶ 5. This footage consisted of tapes from only the previous 30 days. March 13, 2009 Letter from Def. Counsel, Pltf. Ex. K, at 1. Polo did not produce any footage from cameras trained on areas inside the relevant stores. Plaintiffs now seek evidentiary and monetary sanctions against Polo due to its failure to preserve the videos despite knowing of their evidentiary value.

### B. Legal Standard

Plaintiffs seek three forms of sanctions against Polo: an adverse inference jury instruction, an order prohibiting Polo from introducing any evidence of the amount of unpaid waiting time spent by class members, and an award of attorney's fees and costs incurred by plaintiffs as a result of the alleged spoliation.

District courts possess the inherent power to levy sanctions for spoliation of evidence, including dismissal of the action. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Appropriate sanctions short of dismissal may include exclusion of the disputed evidence, an adverse inference jury instruction, or monetary sanctions. *Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991); *Leon*, 464 F.3d at 961. Before issuing sanctions, however, the court must find that the offending party had notice that the spoliated evidence was potentially relevant to the litigation. *Leon*, 464 F.3d at 959. "A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009).

### C. Evidentiary Sanctions

Before imposing an adverse inference instruction, a court must find: (1) that the spoliating party had an obligation to preserve the evidence; (2) that the evidence was spoliated with "a culpable state of mind"; and (3) that the evidence was relevant to the other party's claim, meaning that "a reasonable trier of fact could find that it would support that claim." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) (citation omitted). In order to exclude evidence, the court must

4

1 find "willfulness or fault by the offending party." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992) (citation omitted). To impose either sanction, however, the court need not find that the spoliating party acted in bad faith. *Id.*; *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

The parties dispute vigorously whether the video footage contained any relevant evidence. Plaintiffs state that an employee's total "clock out to walk out" time for a given date could be calculated by comparing the clock-out time recorded on an employee's time card to the actual walk-out time shown in the video. Responding to Polo's contention that such an analysis would capture non-compensable time employees spent "dallying" (e.g., visiting the restroom or chatting with a coworker before seeking a manager to perform a bag search), plaintiffs assert that video footage spanning the interior of the stores would permit assessment of how a given employee spent the time between the moment he or she clocked out and the moment he or she left the store after a manager had performed the bag check. Polo asserts that the footage would not produce any relevant evidence because it would display only the bag searches themselves, not any time spent waiting for the searches to be performed. Both parties mischaracterize the evidence. On the one hand, plaintiffs exaggerate the extent of the available in-store camera footage. There is no evidence in the record showing that cameras were installed in the interior of all 25 stores with CCTV systems; rather, declarations submitted by both parties suggest only that such footage was available in two stores, San Francisco and Carlsbad, and only "recently" in San Francisco. *See* Gunder Decl. ¶ 2; Hanson Decl. ¶ 2. On the other hand, Polo focuses solely on the exit-door cameras, ignoring the fact that its own witness acknowledged the presence of interior cameras. Polo also fails to acknowledge that even exit-door cameras might have captured significant time spent waiting in line for a bag check. Moreover, as plaintiffs correctly point out, Polo may not now rely on the asserted irrelevance of the spoliated footage to support its actions. *See Leon*, 464 F.3d at 959 ("[B]ecause the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents.") (internal quotation marks, alterations, and citation omitted). On this record, the Court can only conclude that some of the tapes would have had some relevance to plaintiffs' claims.

Even assuming that the evidence was relevant, however, the Court is not persuaded that Polo's

5

obligation to preserve the entirety of the footage or its state of mind in failing to preserve the footage justifies either an adverse inference instruction or the harsher sanction of precluding Polo from presenting any evidence regarding class members' wait times. Given the unrelated purpose for which the CCTV systems were designed and installed, the Court cannot conclude that Polo was obligated to identify the footage as relevant to plaintiffs' claims and to begin preserving it from the moment this lawsuit was filed. Indeed, by that point, much of the footage sought by plaintiffs had already been destroyed in the normal course of business. Once Polo was specifically advised in July 2008 that plaintiffs sought discovery of video footage, Polo was on notice of the potential relevance of the footage and should have undertaken steps to preserve the evidence, including, if necessary, negotiating with plaintiffs' counsel to share the cost and burden of the preservation, so as to alleviate Polo's legitimate cost and burden concerns. Although the Court does not condone Polo's actions, the Court also observes that plaintiff did not seek the Court's intervention in this matter at any time during the discovery process. Given this procedural history, the Court is not persuaded that it would be appropriate to impose evidentiary sanctions. Plaintiffs' motion for evidentiary sanctions in the form of an adverse inference instruction and an exclusion order is therefore DENIED, but without prejudice to plaintiffs later requesting a jury instruction or some other form of evidentiary proffer to make the jury aware that certain potentially relevant evidence is no longer available.

### D. Monetary Sanctions

Plaintiffs also seek monetary sanctions in the form of attorney's fees and costs incurred due to Polo's actions. A court may award attorney's fees as a sanction for spoliation of evidence against a party "who acts in bad faith, vexatiously, wantonly, or for oppressive purposes." *Id.* at 961 (citation omitted). "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Id.* (internal quotation marks and citation omitted). Having concluded that Polo's conduct does not sufficiently culpable to justify the imposition of evidentiary sanctions, the Court further concludes that Polo's conduct did not constitute and was not tantamount to bad faith. Accordingly, the Court DENIES in full plaintiffs' motion for sanctions.

## II. Motion to Decertify or Stay Waiting Time Claims

### A. Decertification

Pursuant to Federal Rule of Civil Procedure 23(c)(1)©), an order certifying a class "may be altered or amended before final judgment." The party seeking decertification must show that the class no longer meets Rule 23's certification requirements. *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007). Doubts should be resolved in favor of certification. *Id.* at 1154.

Polo's first contention is that decertification is warranted due to the discovery of new facts. After the Court issued its certification ruling, plaintiffs' counsel distributed surveys to a number of class members to ascertain the amount of time spent waiting for post-shift bag checks. Polo asserts that the results of these surveys reveal significant variation in class members' experiences, undermining the commonality of the class.[2] First, Polo points to the range of survey responses, with class members reporting wait times of anywhere between zero and sixty minutes. Polo argues that, as a result, it "has to come up with different factual and legal defenses for each individual waiting time class member." Second, Polo states that "each Polo store is unique and policies are carried out in slightly different ways in each store that may increase or decrease the likelihood of an employee having to wait," including the size and layout of the store as well as the particular shift an employee works (e.g., closing shift employees may have to wait for a manager to lock up before he or she can conduct the bag search).

In the Court's view, neither of these facts justifies decertification of the waiting time class. The Court has already rejected Polo's contention that variations in the specific amounts of class members' wait times defeats commonality. The Court observed that, regardless of differences in amounts of time, "the most significant questions [are] . . . whether plaintiffs were made to wait for inspections without compensation and whether this off-the-clock time is compensable, questions that are common to all class members." July 8, 2008 Order at *11. Moreover, as the Court has likewise already observed, to the

---

[2] Polo asserts that the Court must follow a "two-tiered" approach to assessing the continued viability of the class, applying a more lenient approach at the "notice stage" of the litigation, and a more stringent approach now that discovery is underway. Polo relies almost exclusively on *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009). Although Polo represents that *Wren* is binding authority on the issue of Rule 23 class certification, that decision actually dealt with certification of collective actions under the Fair Labor Standards Act, 29 U.S.C. § 216(b), an entirely different context from that presented here. Accordingly, the Court's inquiry will focus solely on whether Polo has demonstrated to the Court's satisfaction that Rule 23's commonality requirement is no longer met.

7

extent that "application of the *de minimis* rule might require inquiries into the individual experiences of class members, these individual questions will arise only after significant common questions of law and fact have been answered, and may not arise at all in the liability context." *Id.*

The Court also rejects Polo's contention that variations among Polo stores warrant decertification of the waiting time claims. Polo does not dispute that it maintains a uniform policy requiring employees to submit to bag searches, or that it does not compensate employees for time spent waiting for these searches. Differences in the size and layout of each store, or the timing of class members' shifts, will only affect damages, rather than Polo's liability. Accordingly, the Court DENIES Polo's motion to decertify the waiting time claims on the basis of new facts.

Polo's next contention is that the waiting time claims should be decertified based on new law. In its certification ruling, the Court held that common questions of law predominate over any individual issues, in part due to a threshold common issue as to whether federal *de minimis* standards apply to plaintiffs' California law claims. Polo contends that new developments in federal case law demonstrate that individualized questions now predominate.

Under federal law, "employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). According to Polo, the most recent case dealing with the *de minimis* exception, *Rutti v. Lojack Corp.*, 578 F.3d 1084 (9th Cir. 2009), establishes that, in general, periods of ten minutes or less are *de minimis* and therefore cannot give rise to recovery. Polo asserts that because many of the class members surveyed reported waiting times of ten minutes or less, the Court should decertify the claim. Once again, however, Polo has failed to persuasively rebut the conclusions reached in the Court's certification order. As the Court noted in that order, even if defendants are correct that federal *de minimis* standards apply to plaintiffs' California claims, application of those standards will still require resolution of a number of significant common legal questions, including "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow*, 738 F.2d at 1063. Therefore, *Rutti* does not justify decertification of the waiting time claims.

Polo cites no new California case law in support of its decertification motion, but contends that application of California's rule of non-compensability for time an employee is not "subject to the control

8

of an employer," *Morillion v. Royal Packing Co.*, 995 P.2d 139, 143 (Cal. 2000), undermines the commonality of the class. The Court finds, however, that application of the "control" rule presents a common question of law that can be resolved on a class basis, outweighing any individualized inquiries that will be required. Accordingly, the Court DENIES Polo's motion for decertification.[3]

### B. Stay

In the alternative, Polo asserts that the Court should stay litigation of the waiting time claims pending the California Supreme Court's resolution of *Brinker*. However, *Brinker* does not involve any issue that is central to resolution of the waiting time claims. *Brinker* will address the issue of whether California law requires that an employer have constructive or actual knowledge that an employee is working off-the-clock in order for that time to be compensable. The factual context in *Brinker* concerns employees' failure to consistently clock in and out for meal breaks, contrary to the employer's policy. 80 Cal. Rptr. 3d 781, 787. By contrast, plaintiffs' claims in this case concern times when employees are off-the-clock but still on the employer's premises *pursuant to the employer's own rules*. Accordingly, this Court's resolution of plaintiffs' claims is not dependent on the California Supreme Court's decision in *Brinker*, and defendants' motion to stay litigation of these claims is DENIED.

### III. Motion to Sever

The third and final motion before the Court at this time is plaintiffs' motion to sever the rest break claims. This court previously stayed litigation of those claims pending resolution of *Brinker*. *See* Nov. 5, 2008 Order. Plaintiffs assert that the California Supreme Court is unlikely to resolve *Brinker* earlier than August 2010. Estimating that discovery on the rest break claims will take an additional 3 to 6 months after *Brinker* is decided, plaintiffs ask the Court to sever the rest break claims so that the

---

[3] Both parties filed objections to the declarations submitted in support of the other party's motion papers. As these declarations were not material to the Court's resolution of the decertification motion, the Court need not rule on the objections.

9

remaining claims may proceed to trial on March 8, 2010, as currently scheduled.[4]

Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." This rule "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Plaintiff argues that several concerns weigh in favor of severance, including ensuring prompt resolution of class members' claims, lessening the likelihood of jury confusion due to trying multiple issues together, avoiding loss of evidence due to failures in witness recollection, and promoting judicial economy. Polo objects that severance is not warranted because the prejudice to plaintiffs as a result of any delay is outweighed by the "inefficiencies and inequities" of conducting two trials in one year on the same subjects.

A significant dispute between the parties concerns the extent of discovery completed thus far on the rest break claims, an issue that bears on the likely delay to these proceedings if the rest break claims are not severed. Polo asserts that plaintiffs have been able to conduct significant discovery on rest break issues, including sending surveys to class members, deposing class members and defense witnesses, conducting expert discovery, and propounding requests for documents and interrogatories. As plaintiffs point out, however, in a joint case management statement filed by the parties several months ago, Polo agreed that *Brinker*'s resolution "will set specific standards for the prosecution of rest break claims on a class-wide basis," thus necessitating "additional fact and expert discovery." Joint CMC Statement at 6 (Docket No. 153). Accordingly, it seems clear to the Court that additional discovery will be required once *Brinker* is decided, a factor weighing heavily in favor of severing the rest break claims so that the remaining claims may be tried on their present schedule. The Court is mindful that severance will result in additional inconvenience and expense to the parties. Nonetheless, in light of the seemingly interminable delay occasioned by keeping plaintiffs' other claims on schedule with those stayed pending resolution of *Brinker*, the Court concludes that severance of plaintiffs' rest break claims is the better of the two available options.

---

[4] Plaintiffs originally estimated that the California Supreme Court would decide *Brinker* in July 2010, and that rest break discovery would require an additional 120 days, but increased these estimates to August 2010 and 3-6 months in their reply brief.

10

Plaintiffs' motion to sever is GRANTED. The rest break claims previously stayed by this Court are SEVERED for purposes of trial pending a final decision in *Brinker*, and the remaining claims will proceed on trial on the date presently set. The parties are directed to notify the Court within seven days of the date the California Supreme Court's decision in *Brinker* becomes final, and may propose a discovery plan at that time.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for sanctions and defendants' motion to decertify or stay the waiting time claims are DENIED (Docket Nos. 162, 178) and plaintiffs' motion to sever the rest break claims is GRANTED (Docket No. 175).

**IT IS SO ORDERED.**

Dated: January 25, 2010

SUSAN ILLSTON
United States District Judge

11