WILLIAM J. GOINES (SBN 061290)
KAREN ROSENTHAL (SBN 209419)
CINDY HAMILTON (SBN 217951)
GREENBERG TAURIG, LLP
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email:   goinesw@gtlaw.com
         rosenthalk@gtlaw.com
         hamiltonc@gtlaw.com

JEREMY A. MEIER (SBN 139849)
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
Email:   meierj@gtlaw.com

Attorneys for Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA, an individual and on behalf of all others similarly situated; JANIS KEEFE, an individual; CORINNE PHIPPS, and individual; JUSTIN KISER, an individual; and RENEE DAVIS,<br><br>　　　　Plaintiff,<br>v.<br><br>POLO RALPH LAUREN CORPORATION; POLO RETAIL, LLC; POLO RALPH LAUREN CORPORATION, DOING BUSINESS IN CALIFORNIA AS POLO RETAIL CORPORATION; AND FASHIONS OUTLET OF AMERICA, INC.,<br><br>　　　　Defendants. | Case No.  C07-02780 SI<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE RELATING TO PLAINTIFFS' WAGE AND HOUR CLASS ACTION QUESTIONNAIRE**<br><br>Pretrial:  February 23, 2010<br>Time:    3:30 p.m.<br>Dept.:   Courtroom 10, 19th Floor<br>Judge:   Hon. Susan Illston<br><br>Trial Date: March 8, 2010 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1
II. RELEVANT BACKGROUND ............................................................................................. 1
III. ARGUMENT ......................................................................................................................... 2
   A. The Survey Is Inadmissible Hearsay. ......................................................................... 2
   B. The Survey Does Not Fall Within An Evidentiary Hearsay Exception. .................... 2
      1. The Survey Does Not Reflect Then-Existing States Of Mind. ............................ 3
      2. The Survey Is Not A Recorded Recollection Or Business Record. .................... 4
      3. The Survey Is Not Admissible Under The Residual Exception To Hearsay. ..... 4
   C. Plaintiffs' Expert May Not Testify As To Any Opinions Reached In Reliance On the Survey. .............................................................................................................. 10
   D. The Survey Should Be Excluded Under Rule 403 Because Any Probative Value Is Outweighed By the Danger of Prejudice And Confusion. ....................................... 11
IV. CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*
  376 F. Supp. 2d 251 (D.R.I. 2005).................................................................................10

*Black v. Rhone-Poulenc, Inc.*
  19 F. Supp. 2d 592 (S.D. W. Va. 1998)............................................................................9

*Chavez v. IBP, Inc.*
  2004 U.S. Dist. LEXIS 28838 at *28................................................................................9

*Gibson v. County of Riverside*
  181 F. Supp. 2d 1057 (C.D. Cal. 2002)....................................................................5, 6, 7

*Harolds Stores, Inc v. Dillard Dep't Stores*
  82 F.3d 1533 (10th Cir. 1996)......................................................................................5, 10

*Hershell Gill Consulting Eng'rs, Inc. v. Miami-Dade County*
  333 F. Supp. 2d 1305 (S.D. Fla. 2004)...........................................................................10

*Johnson v. Big Lots Stores, Inc.*
  2008 U.S. Dist. LEXIS 35316, 16-17 (E.D. La. Apr. 29, 2008).......................................9

*Keith v. Volpe*
  858 F.2d 467 (9th Cir. 1988)............................................................................................5

*Lutheran Mut Life Ins. Co. v. United States*
  816 F.2d 376 (8th Cir. 1987)............................................................................................6

*Parsons v Honeywell, Inc.*
  929 F.2d 901 (2d Cir. 1991).............................................................................................5

*Pittsburgh Press Club v United States*
  579 F.2d 751 (3d Cir. 1978)................................................................................5, 6, 7, 10

*Prudential Ins. Co. v. Gibraltar Financial Corp.*
  694 F.2d 1150 (9th Cir. Cal. 1982)...................................................................................2

*Ramdass v. Angelone*
  530 U.S. 156 (2000).......................................................................................................10

*Schering Corp. v. Pfizer Inc.*
  189 F.3d 218 (2d Cir. 1999).........................................................................................3, 8

*Sterling Drug, Inc. v. Bayer AG*
  14 F.3d 733 (2d Cir. 1994)...............................................................................................2

*Televisa, S.A. de C.V. v. Univision Communs., Inc.*
  635 F. Supp. 2d 1106 (C.D. Cal. 2009)............................................................................7

*United States v. 88 Cases, Bireley's Orange Beverage*
  187 F.2d 967 (3d Cir. 1951), cert. denied 342 U.S. 861 (1951) ......................................2

*United States v. Dentsply Int'l, Inc.*
  277 F. Supp. 2d 387 (D. Del. 2003).............................................................................9, 10

*Univ. of Kan. v. Sinks*
  2008 U.S. Dist. LEXIS 23763, 14-15 (D. Kan. Mar. 19, 2008) ..................................9, 10

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*
  746 F.2d 112 (2d Cir. 1984)...........................................................................................10

*Zippo Manufacturing Co. v. Rogers Imports, Inc.*
   216 F. Supp. 670 (S.D.N.Y. 1963)..................................................................................2

**FEDERAL STATUTES**

FRE, Rule 403................................................................................................................11, 12
FRE, Rule 703................................................................................................................10, 11
FRE, Rule 801..........................................................................................................................2
FRE, Rule 802..........................................................................................................................2
FRE, Rule 803(3)................................................................................................................2, 4
FRE, Rule 803(5).....................................................................................................................4
FRE, Rule 803(6).....................................................................................................................4
FRE, Rule 807.................................................................................................................3, 4, 5

**OTHER AUTHORITIES**

Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, *Reference Guide on Survey Research* (2d ed. 2000)................................................................7, 9

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.168, at 32-246 (4th ed. 2007)..........................................................................................................2

Scott Burton and Edward Blair, "Task Conditions, Response Formulation Processes, and Response Accuracy for Behavioral Frequency Questions in Surveys," page 52. PUBLIC QUARTERLY, 55:50-79 (1991)..........................................................................8

## I. INTRODUCTION

Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc. (collectively "Polo") hereby move this Court for an Order to exclude evidence at trial relating to, referring to, or discussing the Wage and Hour Class Action Questionnaire conducted by Plaintiffs' expert, Dwight D. Steward, Ph.D. ("Dr. Steward").

Polo respectfully requests that the Court enter an order, *in limine*, as follows:

> That Plaintiffs may not introduce, elicit, discuss or refer to any evidence based upon the Wage and Hour Class Action Questionnaire disseminated by Plaintiffs' expert, Dwight D. Steward, Ph.D.

As discussed below, this motion is based upon the grounds that Plaintiffs' Wage and Hour Class Action Questionnaire is inadmissible hearsay under the Federal Rules of Civil Procedure.

## II. RELEVANT BACKGROUND

Dr. Steward provided a Declaration and Expert Report on October 5, 2009 ("Steward Report"), and provided a Supplemental Declaration and Expert Report on October 16, 2009 ("Supplemental Steward Report") that included Dr. Steward's analysis of the economic damages associated with (a) Plaintiffs' allegations of missed rest breaks and (b) Plaintiffs' allegations of uncompensated loss prevention inspection wait times. Steward Report, ¶ 3.

Dr. Steward's damages calculations are based upon estimates for the average numbers of rest breaks missed, and the average wait times for loss prevention inspections. Dr. Steward obtained this information from responses to the Wage and Hour Class Action Questionnaire ("Survey") designed, disseminated, collected and analyzed by Dr. Steward. Steward Report, ¶¶ 6, 9. A true and correct copy of the Survey is attached hereto as **Exhibit A**.

The Survey was sent to a randomly selected sample of 1,646 class members who had not been contacted previously in this matter and who had a deliverable address. Steward Report, ¶ 7. Responses to the Survey were received from 368 class members, or 22.36% of the sample. Steward Report, ¶ 7.

For the reasons discussed below, the Survey's response rate of 22.36% renders the Survey results, and all evidence based upon the Survey results, inherently unreliable. Accordingly, the Court

1  should not allow Plaintiffs to introduce such evidence at the trial of this Action.

2  III.   **ARGUMENT**

3      A.   **The Survey Is Inadmissible Hearsay.**

Under Rule 802 of the Federal Rules of Evidence ("FRE"), hearsay "is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." FRE 802. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. FRE 801.

The Survey consists of statements made by class members in response to Plaintiffs' questionnaire. To Polo's knowledge, most of the class members who responded to the Survey will not testify at the trial of this matter. The Survey is being offered by Plaintiffs in order to prove the truth of the matter asserted because Plaintiffs are using the Survey responses regarding rest breaks and loss prevention inspection wait times in order to form the basis for its damages calculations. Accordingly, the Survey is hearsay and may only be admitted if it falls into one of the hearsay exceptions. *Prudential Ins. Co. v. Gibraltar Financial Corp.*, 694 F.2d 1150, 1156 (9th Cir. Cal. 1982), citing *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 682-684 (S.D.N.Y. 1963) ("Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception.")

    B.   **The Survey Does Not Fall Within An Evidentiary Hearsay Exception.**

Surveys are generally admitted into evidence under one of three hearsay exceptions. The first is FRE 803(3) (and state counterparts), which creates an exception to the hearsay rule for statements that express a declarant's state of mind at the time of the utterance. Most surveys admitted into evidence fall into this category because they poll individuals about their presently-existing state of mind. *See Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 741-42 (2d Cir. 1994) (polling consumers for their then-existing perceptions to establish actual confusion). *See also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.168, at 32-246 (4th ed. 2007) ("[S]ince at least 1951 the cases are now unanimous that evidence of the state of mind of persons surveyed is not inadmissible as hearsay") (citing *United States v. 88 Cases, Bireley's Orange Beverage*, 187 F.2d 967 (3d Cir. 1951), cert. denied 342 U.S. 861 (1951)).

The second exception is the residual exception set forth in FRE 807. To be admitted under FRE 807, (1) the survey must have equivalent circumstantial guarantees of trustworthiness; (2) the survey must be more probative on the point for which it was offered than any other which the party could procure through reasonable efforts, and; (3) the general purpose of the rules and interest of justice must be best served by admitting the survey. This exception requires an initial trustworthiness determination and, generally, such guarantees are satisfied if the survey is conducted in accordance with generally accepted survey principles and if the results are used in a statistically correct way. *See, e.g., Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 235 (2d Cir. 1999). Still, a court must examine carefully the classic hearsay risks of insincerity, faulty perception, faulty memory and faulty narration. *See id.*

The last exception is Rule 702, which allows the admissibility of expert opinion testimony, even where the opinion is based on non-admissible data, when the data is of "a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." That is not the case here.

For the reasons discussed in detail below, the Survey does not meet the requirements of any of the hearsay exceptions under the evidentiary rules.

1. **The Survey Does Not Reflect Then-Existing States Of Mind.**

The Survey responses are not admissible under FRE 803(3) because they do not reflect each witness's then-existing state of mind. FRE 803 provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

FRE 803. The Survey elicits factual recollections from class members regarding their employment with Polo, including whether each respondent took rest breaks, how often rest breaks were missed, whether loss prevent inspections were conducted, and the frequency and duration of wait times for

such inspections. The Survey responses *are not* statements regarding each respondent's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" as specifically described in FRE 803(3). To the contrary, in direct contravention of FRE 803(3), the Survey actually seeks statements "of memory or belief to prove the fact remembered or believed" which are specifically excluded from the scope of FRE 803(3). Accordingly, the Survey responses are not admissible under the "state of mind" hearsay exception.

### 2. The Survey Is Not A Recorded Recollection Or Business Record.

Plaintiffs may attempt to argue that the Survey is admissible under the "recorded recollection" hearsay exception or the "business records" exception. Neither argument has merit. The recorded recollection exception provides:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness *when the matter was fresh in the witness' memory* and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

FRE 803(5) (emphasis added). Plaintiffs cannot demonstrate that each Survey response was made when the matter was fresh in the responding witness' memory. Similarly, the Survey would not be admissible under the business records exception, which provides:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, *made at or near the time by, or from information transmitted by, a person with knowledge*, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification[.]

FRE 803(6) (emphasis added). Plaintiffs cannot demonstrate that each Survey response was made at or near the time that each responding class member missed his or her rest breaks or experienced wait times for loss prevention inspections. Accordingly, the Survey responses are not admissible under FRE 803(5) nor 803(6).

### 3. The Survey Is Not Admissible Under The Residual Exception To Hearsay.

Plaintiffs will likely argue that the Survey responses are admissible under FRE 807, the

"residual" hearsay exception. Rule 807 provides in relevant part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

FRE 807. Thus, "to be admissible pursuant to the residual exception, the evidence must fulfill five requirements: trustworthiness, materiality, probative importance, the interests of justice and notice." *See Parsons v Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991). The Survey is not admissible because, as discussed in detail below, the Survey is not trustworthy and does admission would not further the interest of justice.

        **a.**    **The Survey Evidence Does Not Have Circumstantial Guarantees Of Trustworthiness Because It Was Not Conducted In Accordance With Generally Accepted Principles.**

Plaintiffs' Survey does not have circumstantial guarantees of trustworthiness. To satisfy the "circumstantial guarantees of trustworthiness" requirement of Rule 807, the survey must have been conducted in accordance with generally accepted principles. *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1067 (C.D. Cal. 2002), citing *Pittsburgh Press Club v United States*, 579 F.2d 751, 758 (3d Cir. 1978); *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988), *Harolds Stores, Inc v. Dillard Dep't Stores*, 82 F.3d 1533, 1544 (10th Cir. 1996) Technical and methodological deficiencies in the survey typically bear on the weight of evidence, not on its admissibility. See *Volpe*, 858 F.2d at 480, *Harold Stores*, 82 F.3d at 1544. However, substantial deficiencies in the design or execution of a survey of individuals is grounds for its complete exclusion. See *Harold Stores*, 82 F.3d at 1544, *Pittsburgh Press*, 579 F.2d at 759-60.

In *Pittsburgh Press*, the Third Circuit set forth the following standards for assessing whether a survey of individuals had been conducted in accordance with generally accepted principles: A proper universe must be examined and a representative sample must be chosen, the persons

conducting the survey must be experts, the data must be properly gathered and accurately reported. *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1068 (C.D. Cal. 2002), citing *Pittsburgh Press*, 579 F.2d at 758. It is essential that the sample design, the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques. *Id.* Just as important, the survey must be conducted independently of the attorneys involved in the litigation. The interviewers or sample designers should, of course, be trained, and ideally should be unaware of the purposes of the survey or the litigation. A fortiori, the respondents should be similarly unaware. *Pittsburgh Press*, 579 F.2d at 758 (emphasis in original); accord *Lutheran Mut Life Ins. Co. v. United States*, 816 F.2d 376, 378 (8th Cir. 1987).

In the present case, the Survey was designed and administered by Plaintiffs' expert, Dr. Steward, who also collected and analyzed the responses. Dr. Steward was obviously aware of the purpose of the Survey, fully knowledgeable about the litigation, and is being compensated for his testimony by Plaintiffs.

More importantly, the respondents are aware of the purpose of the Survey. Before even receiving the Survey, most respondents would have received class notice from Plaintiffs. In addition, on the very first page of the Survey, the very first line of the Survey indicates that there is a case against Polo, as it reads:

**OTSUKA, ET AL. V. POLO RALPH LAUREN CORP., ET AL.,**
**U.S. District Court Case Number C-07-02780-SI**
**Northern District of California**

Any reasonable person receiving the Survey would be made aware, upon reading the first words of the Survey, that there is a litigation against Polo and that the Survey is being used in such litigation.

The questions are also leading and suggestive. The second question regarding rest breaks asks: "What percentage of the days you worked did you miss taking rest breaks lasting at least 10 minutes during each four-hour period you worked because managers either failed to make them available to you or discouraged you from taking them?" *See* Survey, Exhibit A hereto. This question on its face conveys to the respondent the idea that Polo managers failed to make rest breaks available and/or discourage rest breaks. These questions also make apparent the nature of the

lawsuit.

A reasonable person would conclude based on the questions that the lawsuit against Polo involves missed rest breaks and waiting times for loss prevention searches. Thus, he or she will conclude that answering questions in a certain way will yield financial gain. Accordingly, each respondent will be influenced by the Survey to answer the questions in the manner that could result in the greatest possible financial gain. Self-serving responses from class members who are fully aware that they stand to reap financial gain based upon certain responses render the Survey responses inherently untrustworthy. See, e.g., *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1067-1068 (C.D. Cal. 2002) ("More importantly, the recipients of the survey were informed of the purpose of the survey and reminded that they were the beneficiaries of the survey. This is exactly the situation that the *Pittsburgh Press* court found so egregious.")

In addition, the Survey failed to conform to generally accepted principles because the Survey did not include "don't know", "can't remember" or "no opinion" options. This option is essential to a properly constructed Survey, as discussed in the Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, *Reference Guide on Survey Research* (2d ed. 2000) ("REFERENCE MANUAL"):

> By signaling to the respondent that it is appropriate not to have an opinion, the question ***reduces the demand for an answer*** and, as a result, the inclination to hazard a ***guess just to comply***. . . . Studies indicate that, although the relative distribution of the respondents selecting the listed choices is unlikely to change dramatically, presentation of an explicit "don't know" or "no opinion" alternative commonly leads to a ***20%-25% increase*** in the proportion of respondents selecting that response.

REFERENCE MANUAL at 250 (emphasis added). A true and correct copy of the survey research section of the REFERENCE MANUAL is attached hereto as **Exhibit B**. Plaintiffs' failure to include such options is one more indicator that the Survey lacks trustworthiness and therefore is inadmissible.

### b. The Survey Evidence Suffers The Classic Hearsay Risks Of Faulty Memory and Faulty Perception.

Hearsay is generally excluded from trial because of the classic risks associated with such out-of-court statements, which include faulty perception, faulty memory, and faulty narration. *Televisa, S.A. de C.V. v. Univision Communs., Inc.*, 635 F. Supp. 2d 1106, 1109 (C.D. Cal. 2009); *Schering*

*Corp. v. Pfizer Inc.*, 189 F.3d 218, 232-33 (2d Cir. 1999). In the present case, there is a significant probability that the respondents do not accurately recall details about their rest breaks or loss prevention inspection wait times.

The Survey completely failed to account for respondents' "episode enumeration" which is a technical term referring to a person's ability to <u>retrieve and count</u> the <u>number of episodes</u> in order to report on the frequency of such episodes. The Survey requires each respondent to engage in significant episode enumeration, as it requires respondents to judge the number of times rest breaks were missed, the number of times loss prevention searches were performed, and the average waiting time for a loss prevention search.

Established data shows that longer time frames on frequency questions lead respondents to abandon episode enumeration, presumably because more distant events are harder to access in memory and the increased number of events are burdensome to retrieve. Scott Burton and Edward Blair, "Task Conditions, Response Formulation Processes, and Response Accuracy for Behavioral Frequency Questions in Surveys," page 52. PUBLIC QUARTERLY, 55:50-79 (1991) ("Burton/Blair Article"). A true and correct copy of the Burton/Blair Article is attached hereto as **Exhibit C**. Thus, when people are asked to recall behavior performed long ago, their reporting becomes less accurate. Weisberg, Krosnick and Bowen, An Introduction to Survey Research, Polling, and Data Analysis, 3rd Ed., page 148. Thousand Oaks, CA: Sage Publications, Inc. (1996). A true and correct copy of the Weisberg/Krosnick/Bowen Article is attached hereto as **Exhibit D**.

The class of Polo employees includes employees who worked for Polo as early as 2002. As it is now 2010, Survey respondents are being asked to recall the minute details of their employment that occurred up to 8 years earlier. It is simply unrealistic to believe that the Survey respondents can recall such details with any type of accuracy.

        c.       **The Staggeringly Low Response Rate Indicates A Lack Of Trustworthiness.**

The Survey's response rate of 22.36% is alarmingly low and renders the Survey results, and all evidence based upon the Survey results, inherently unreliable. According to well-established guidelines in the scientific community, which have been accepted and relied up on by courts

throughout the United States, response rates below 50% raise significant concerns.

The primary formula for quantifying a tolerable level of non-response in a probability sample is based on the guidelines for statistical surveys issued by the former U.S. Office of Statistical Standards. See REFERENCE MANUAL at 229-246 (2d ed. 2000); see also *Black v. Rhone-Poulenc, Inc.*, 19 F. Supp. 2d 592, 602 (S.D. W. Va. 1998).

According to these guidelines, response rates of 90% or more are reliable and generally can be treated as random samples of the overall population. REFERENCE MANUAL at 45. Response rates between 75% and 90% usually yield reliable results, but the researcher should conduct some check on the representativeness of the sample. REFERENCE MANUAL at 45. Potential bias should receive greater scrutiny when the response rate drops below 75%. REFERENCE MANUAL at 45. The REFERENCE MANUAL further provides: "If the response rate drops ***below 50%***, the survey should be regarded with ***significant caution*** as a basis for ***precise quantitative statements about the population*** from which the sample was drawn." REFERENCE MANUAL at 45 (emphasis added).

Courts consistently rely on these guidelines in evaluating whether survey results are reliable. See *Johnson v. Big Lots Stores, Inc.*, 2008 U.S. Dist. LEXIS 35316, 16-17 (E.D. La. Apr. 29, 2008) ("In determining whether a survey was conducted in accordance with "accepted survey principles," most courts look to the Federal Judicial Center's Reference Manual on Scientific Evidence"); *Chavez v. IBP, Inc.*, 2004 U.S. Dist. LEXIS 28838 at *28 (citing Diamond, supra note 1, at 245 (stating "[i]f the response rate drops below 50%, the survey should be regarded with significant caution as a basis for precise quantitative statements about the population from which the sample was drawn"); *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 437 (D. Del. 2003) ("A response rate below the 50% level serves as a "red flag" that the survey possibly is not projectable").

The Court in *Univ. of Kan. v. Sinks*, 2008 U.S. Dist. LEXIS 23763, 14-15 (D. Kan. Mar. 19, 2008), found that a response rate of 2.16% was too low to provide valid results. The Court focused on the defendant's failure to take any steps to rectify the low response rate:

> [T]he Court agrees with plaintiffs that 2.16% appears, by any standard, to be quite low. The ***low response rate could point toward non-response bias*** or diminish the validity of the results. The Court also takes into account plaintiffs' rebuttal expert, Robert N. Reitter, who explains that regardless of the rate of response, "it is extremely likely that the non-response level exerted a bias on the results." Importantly, Reitter

> explains that Berger *did not take any steps* to *reduce the effect of non-response bias*, to *determine how differently the non-respondents answer* compared to those who willingly responded. The Court considers this as evidence that the sample chosen by Berger *was not representative* of the sample universe.

*Univ. of Kan. v. Sinks*, 2008 U.S. Dist. LEXIS 23763, 14-15 (D. Kan. Mar. 19, 2008) (emphasis added). See also *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F. Supp. 2d 251, 261 n.4 (D.R.I. 2005) (concluding that the survey methodology was not significantly rigorous where the response rate was 34% and no meaningful effort was made to verify the representativeness); *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 437 (D. Del. 2003) (noting that individual conducting the survey failed to take any measures to address the non-response bias).

While some technical and methodological deficiencies in the survey typically bear on the weight of evidence, not on its admissibility, substantial deficiencies in the design or execution of a survey of individuals is grounds for its complete exclusion. *Harold Stores*, 82 F.3d at 1544, *Pittsburgh Press*, 579 F.2d at 759-60. "As the Supreme Court has explained . . . courts have the authority to exclude or minimize survey results which are deficient." *Hershell Gill Consulting Eng'rs, Inc. v. Miami-Dade County*, 333 F. Supp. 2d 1305, 1322 (S.D. Fla. 2004), citing *Ramdass v. Angelone*, 530 U.S. 156, 172-73 (2000). A combination of technical flaws or a single, fundamental defect may eviscerate the evidentiary force of a survey. *See, e.g., Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (2d Cir. 1984); see also *United States v. Dentsply Int'l, Inc.*, 277 F. Supp. 2d 387, 437 (D. Del. 2003) ("A survey that suffers from non-response bias cannot be fixed by any other means than re-doing the entire survey.")

For the reasons set forth in detail above, Plaintiffs should be prohibited from introducing the Survey responses as evidence during trial.

### C. Plaintiffs' Expert May Not Testify As To Any Opinions Reached In Reliance On the Survey.

Dr. Steward should be prohibited from testifying as to any opinions that are based upon the Survey because the Survey is not of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. FRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the

> hearing. If of a type *reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject*, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FRE 703 (emphasis added). The undisputed evidence before this Court is that surveys are not generally accepted in the field for the accurate recall of distant, specific facts for the reasons discussed above.

A survey of the type conducted by Dr. Steward has never been scientifically tested by the community of survey experts. To the contrary, Plaintiffs' counsel and its expert Dr. Steward are still fine-tuning and experimenting in an attempt to achieve the results they are seeking from the survey responses. The fact that Plaintiffs' counsel disseminated two surveys prior to Dr. Steward's involvement indicates that Plaintiffs' counsel and Dr. Steward are floundering in unfamiliar territory and cannot with any confidence rely on the instant Survey responses to support any damages analysis. Because experts in the field of surveys would not and have not sanctioned Dr. Steward's Survey, Dr. Steward should not be permitted to testify as to any opinion based on the Survey results.

In sum, it would not be reasonable for Dr. Steward to rely on his Survey to form opinions about missed rest breaks or wait times for loss prevention inspections. The inherent problems with the Survey, the suggestive nature of the questions, the extremely low response rate, and the lack of scientific support for the Survey lead to the conclusion that Dr. Steward cannot use the Survey results to form any type of conclusion.

### D. The Survey Should Be Excluded Under Rule 403 Because Any Probative Value Is Outweighed By the Danger of Prejudice And Confusion.

Any probative value of the Survey responses is outweighed by the danger that the jury would assign the results of the Survey undue and unwarranted weight in their deliberations. FRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FRE 403. The probative value of the Surveys is low because, as discussed above, the Survey has

significant flaws and is inherently unreliable for drawing conclusions regarding the entire class. On the other hand, there is a significant risk that the jury might become confused and assign undue importance to the Survey results. Accordingly, under FRE 403, the Survey results should not be admitted as evidence.

## IV. CONCLUSION

For the foregoing reasons, Polo respectfully requests that the Court grant Polo's Motion *in Limine* No. 1.

Dated: February 8, 2010

GREENBERG TRAURIG, LLP

By:   /s/ *William J. Goines*
    William J. Goines
    Jeremy A. Meier
    Karen Rosenthal
    Cindy Hamilton

Attorneys for Defendants Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc.