Patrick R. Kitchin, Esq. (SBN. 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
Telephone: 415-677-9058
Facsimile: 415-627-9076

Nancy E. Hudgins, Esq. (SBN. 85222)
Matthew M. Grigg, Esq. (SBN 195951)
**LAW OFFICES OF NANCY E. HUDGINS**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
Telephone: 415-979-0100
Facsimile: 415-979-0747

Attorneys for Plaintiffs
Janis Keefe, Corinne Phipps, Renee Davis
And the Certified Plaintiffs' Class

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANN OTSUKA, et al.,<br><br>　　　　　　Plaintiffs,<br>　　vs.<br>POLO RALPH LAUREN CORPORATION; et al.,<br>　　　　　　Defendants. | Case No.: C-07-02780-SI<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: August 27, 2010<br>Time: 9:00 a.m.<br>Place: Courtroom 10 (19th Floor)<br>Judge: Hon. Susan Illston |

# Table Of Contents

**Page**

I.    **Introduction** …………………………………………………............... 3

II.    **Procedural History** ………………………………………………….. 3

III.   **The Class-Wide Settlement** …………..……………………………..... 4

IV.  **The Court Should Approve The Settlement Because It Is Reasonable, Adequate And Fair To The Class**………………………………..……6

    A.    <u>Standard of Review</u> …………………………………………………… 6

    B.    <u>All Relevant Considerations Favor Approval Of The Settlement</u> ……7

        *1. Strength Of Plaintiff' Case and the Amount Offered in*

           *Settlement* …………………………………………….... 7

        *2. The Risk, Expense, Complexity, and Likely Duration of*

           *Further Litigation* …………………………………... 9

        *3. The Settlement was Negotiated and Approved Following Three*

           *Mediations and Extensive Settlement Negotiations* …………..… 9

        *4. Risk of Maintaining a Class Action* ……………………..……. 10

        *5. Stage of the Proceedings* ……………….....……………...…… 10

        *6. The Reaction of the Settlement Class Members to the Settlement* . 11

    C. <u>The Court Should Approve The Plan Of Allocation As Fair</u>
       <u>And Adequate To The Class</u> ……………………………………….. 12

        *1. The Plan of Allocation is Fair* ………………………………... 12

        *2. The Payment of Service or Incentive Payments*

          *to the Three Class Representatives Is Fair* ……………………… 13

        *3. The Payment of Service of Incentive Payments to*

          *the Class Members Who Testified at Trial Is Fair* ……………… 13

        *4. The Payment of Plaintiffs' Attorneys' Fees and Costs Is Fair* ……. 13

        *5. The payment of Claims Administrative Costs is Fair* ………..…….. 13

IV.  **Conclusion**……………………………………………………..………… 14

## Table of Authorities

**Cases** **Page**

*Anixter v. Hone-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) ………..……… 10

*Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) …...………………….. 10

*Boyd V. Bechtel Corp.,* 485 F.Supp. 610, 622 (N.D. Cal. 1979) ………...…….. 10

*Chatelain v. Prudential-Bache Sec.,* 805 F.Supp. 209, 213-14
 (S.D.N.Y. 1992) …………………………………………………………………….. 11

*Churchill Village v. General Electric,* 361 F.3d 566, 575
(9th cir.) …………………...………………………………………………………… 7

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.) ……………….. 6

*Davis v. City and County of San Francisco*,
 890 F.2d 1438, 1444 n. 5 (9th Cir.1989) …………………………………………… 6

*Eisenstadt v. Centel Corp.,* 113 F.3d 738 (7th Cir. 1997) ………..………….. 10

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18
 (N.D. Cal. 1980) ………………………………………...……………………. 6

*Fisher Bros. v. Cambridge-Lee Industries, Inc.,*
630 F. Supp 482, 488 (E.D. Pa. 1985) ……………………………………………… 10

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ………………. 6, 7

*Heritage Bond,* 2005 U.D. Dist. LEXIS 135555  ……………….…………..11, 12

*In re Apple Computer Sec. Litig.,* 1991 U.S. Dist. LEXIS 15608 …...………… 10

*In re Equity Funding Corp. Sec. Litig.,* 603 F.2d 1353, 1362
(9th Cir. 1979) …………………………………………………………………… 12

*Otsuka v. Polo*

*In re King Res. Co. Sec. Litig.,* 420 F. Supp. 610, 625
(D.Colo. 1976) ……………………………..…………………………….. 10

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 ………..………………….. 6

*In re N. Telecom, Ltd., Sec. Litig.,* 116 F. Supp. 2d 446 (S.D.N.Y. 2000) …….. 10

*In re Pain Webber Ltd. Pshisps, Litig.*, 171 F.R.D. 104, 126
(S.D.N.Y.), 117 F.3d 721 (2d Cir. 1997) ……..……………………………….. 11

*In re Veritas Software Corp., Sec. Litig.*,
(N.D. Cal. Nov. 15, 2005) ……………..……………………………………………… 9

*Lewis v. Newman*, 59 F.R.D. 525, 528 (D.D.N.Y. 1973) …………....…………… 8

*Linney v. Alaska Cellular P'ship*, 151 F,3d 1234, 1238
(9th Cir.1998) ………………………………………………………………………. 6, 7

*Milstein v. Huck,* 600 F. Supp. 254, 267 (E.D.N.Y. 1984) ………….………… 11

*Officers for Justice v. Civil Serv. Comm'n*
688 F.2d 65, 624 (9th Cir.1982) ……………………………………………...….. 6

*Robbins v. Koger Props, Inc.,* 116 F.3d 1441 (11th Cir. 1997) ………………… 10

*Warner Communications*, 618 F.Supp at 745 ………..……………….…… 10, 11

*West Virginia Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) …..…… 8

**NOTICE OF MOTION AND MOTION**

To all interested parties and their attorneys, please take notice that, on August 27, 2010, at 9:00 a.m., in Courtroom 10 of this Court (450 Golden Gate Avenue, San Francisco, CA), or as soon thereafter as counsel may be heard, Plaintiffs will, and hereby do, seek an order granting final approval of the settlement of this class action, and such additional relief as the Court deems just.

This motion is brought pursuant to Federal Rules of Civil Procedure 23(e) on the grounds that the standards for final approval are satisfied. This motion is based on this Notice, the Memorandum of Points and Authorities that follows, the accompanying declarations and exhibits, all pleadings on file and on such additional evidence as the Court may allow.

DATED:  July 23, 2010                          LAW OFFICE OF PATRICK R. KITCHIN

                                                               */s/  Patrick R. Kitchin*

                                                              Patrick R. Kitchin

DATED:  July 23, 2010                          LAW OFFICES OF NANCY E. HUDGINS

                                                              */s/  Nancy E. Hudgins*

                                                              Nancy E. Hudgins
                                                              Attorneys for Plaintiffs Janis Keefe, Corinne Phipps,
                                                              Renee Davis and the Plaintiff Class

///
///
///
///
///
///
///
///

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     Introduction**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs request an order granting final approval of the proposed $4,000,000.00 settlement of this class action.  Such an order is appropriate because the proposed settlement is fair, adequate and reasonable.

**II.    Procedural History**

The representative plaintiffs originally filed this action in the Superior Court of California for the County of San Francisco on May 30, 2006, on behalf of themselves and all other former sales associates, customer service representatives and cashiers who worked in a Polo store in California since May 30, 2002.  Defendants are Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Ralph Lauren Corporation d.b.a. Polo Retail Corp., and Fashions Outlet of America, LLC.

Plaintiffs alleged Defendants failed to compensate Class Members: (1) for time they spent waiting off the clock for post-shift, loss prevention inspections; and (2) for occasions when Defendants failed to pay Class Members an extra hour's wage for failing to make rest breaks available to them. Plaintiffs also alleged on behalf of two subclasses that Defendants misclassified some full-price store employees as exempt from overtime pay and wrongfully took back wages through an "arrears" compensation plan.

Defendants removed the action to this Court on May 29, 2007. Numerous motions were filed and decided, both in San Francisco Superior Court and in this Court.  On January 22, 2010, the Court granted Plaintiffs' motion to sever their rest break-related claims to avoid a substantial delay in the resolution of their other wage and hour claims.

Plaintiffs' counsel conducted substantial discovery and investigation over the course of four years, including, *inter alia*: the exchange of information pursuant to formal and informal discovery; review and analysis of thousands of documents, including hundreds of thousands of payroll and timekeeping records; review of extensive video depicting loss prevention inspections; numerous depositions of fact witnesses, including current and former Polo managers, regional directors and department directors, and Polo's expert statistician; extensive consultation with experts in retail practices, survey research, economics and statistics; interviews of numerous Class

Members; and three surveys of the Class involving the mailing of questionnaires to over 3,000 Class Members.

With the exception of the stayed and severed rest break-related claims, trial of all other claims commenced on March 8, 2010. Plaintiffs presented the testimony of approximately forty (40) witnesses, from across California, and from Nevada, Illinois and Texas. A settlement was reached near the conclusion of Plaintiffs' case-in-chief, three weeks into trial.

To achieve settlement the parties negotiated repeatedly and extensively. The parties mediated on November 10, 2008, before Judge Edward Infante (Ret.) of JAMS. The parties subsequently mediated before Catherine Yanni of JAMS on two separate occasions, first on October 20, 2009 and then on February 25, 2010. The parties continued conferring about settlement through Ms. Yanni thereafter, ultimately leading to the settlement.

### III. The Class-Wide Settlement

The full settlement terms are set forth in the parties' settlement agreement. (Docket No. 281, Exh. A.) Under the terms of the settlement, Defendants will make a gross payment of $4 million to the Class. In exchange, Class Members will dismiss all claims asserted in this action. The release is narrowly tailored to avoid waiver of unrelated claims.

Of the $4 million, gross settlement amount:

- $1,332,000 will be paid to Class counsel for their services to the class (1/3 of gross settlement) (Docket No. 295);
- $243,336.54 will be used to reimburse the Representative Plaintiffs and Class counsel for litigation costs (*Id.*);
- an estimated $103,000-$124,700 will be paid to Rosenthal & Company for its administration of the claims and settlement process, including the management and distribution of the settlement proceeds[1] (*Id.*);

---

[1] Rosenthal & Company will present its estimate of costs to complete its management of the claims process in a supplemental declaration prior to the hearing of this motion. Horton Decl., ¶ 36.

- an estimated $18,000-$30,000 will be paid to Dr. Hossein Borhani for his design and management of the distribution plan;
- $60,000 ($20,000 each) will be paid to the three Representative Plaintiffs for their substantial investment of time and committed service to the Class; and
- $12,500 ($500.00 each) will be paid to each of the 25 Class Members who testified at trial for their time and service to the class.

The remaining estimated $2,100,000 to $2,200,000 will be distributed to Settlement Class Members based on the number of shifts they worked for Defendants during the class period and the total number of valid claims submitted. Additional amounts will be awarded to members of the Misclassification and Arrears Subclasses. Under no circumstances will any portion of the $4 million revert to any of the Defendants.

Following a May 14, 2010 hearing, this Court preliminarily approved the proposed $4 million settlement of this class action. Notices sent to Class Members have resulted, to date, in 2,222 timely claims, an overall claims submission rate of over 33%. This response rate falls within the 25-45% expected response rate in similar class action cases. Horton Decl., ¶¶ 33 and 34. Only one class member requested exclusion from the settlement, for reasons undisclosed. *Id.*, ¶ 29. Only one Class Member filed an objection to the settlement. The objector, Jaysen Harley, is a current California State Prison inmate who worked for Polo for only 14 days, five years ago.[2] His objections focus on Polo's alleged conduct with respect to current and future employees, and employees in other states (i.e., people who are not Class Members). Horton Decl., ¶ 29 and Exh. G.

///

///

---

[2] Mr. Harley did not participate in any way in the prosecution of this case. His objections betray his misunderstanding of California law, the litigation process, the strengths and weaknesses of Plaintiffs' claims and the benefits of the settlement to the Class. Plaintiffs have attempted to educate Mr. Harley about these issues and have asked him to withdraw his objection. (Kitchin Decl., ¶ 25.)

### III. The Court Should Approve The Settlement Because It Is Reasonable, Adequate And Fundamentally Fair To The Class.

#### A. <u>Standard of Review</u>

Federal Rule of Civil Procedure 23(e) requires the District Court to "approve any settlement of a certified class" before such a settlement becomes final. In evaluating a class action settlement under Rule 23(e), courts determine whether the settlement is fundamentally fair, reasonable and adequate. *Id.* The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights. *See Davis v. City and County of San Francisco*, 890 F.2d 1438, 1444 n. 5 (9th Cir.1989).

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Linney v. Cellular Alaska Partnership* 151 F.3d 1234, 1238 (9th Cir. 1998); *see also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied 506 U.S. 953 (1992). Consequently, in making a Rule 23(e) determination, the Court's evaluation of what is otherwise a private consensual agreement is limited to whether the settlement is fair, reasonable and adequate to the class, and not the product of fraud, overreaching or collusion. *See Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 65, 624 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998).

That having been said, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should a proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. To the contrary, the involvement of experienced class action counsel and the fact that a settlement was reached in arm's length negotiations after relevant discovery had occurred create a presumption that the settlement is fair. *See*, *e.g.*, *Linney v. Alaska Cellular P'ship,* No. C-963008, 1997 WL 450064 (ND. Cal. July 18, 1997), *aff'd.*151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).

///

B.  All Relevant Considerations Favor Approval Of The Settlement

In the Ninth Circuit, to determine whether a proposed settlement is fair, reasonable and adequate, a court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 543 U.S. 818 (2004), citing *Hanlon,* 150 F.3d at 1026; *see also Linney,* 151 F.3d at 1242. One of these factors alone may prove determinative. *Id.* Further, a presumption of fairness exists when, as here: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objections is small. *See*, *e.g.*, Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992) sec. 11.41, pp. 11-91.

*1. Strength of Plaintiffs' Case and the Amount Offered in Settlement*

The amount negotiated in settlement ($4,000,000) demonstrates that the settlement is fair and should be approved. First, the net settlement funds available to Settlement Class Members exceed the <u>full amount</u> of their alleged unpaid compensation. Based on extensive investigation, discovery, survey research, class member testimony and the expert opinions of Dr. Dwight Steward (for Plaintiffs) and Dr. Hossein Borhani (for Defendants), the underlying wage damages for the entire class is substantially less than the $2.1 to $2.2 million available to the Class under the settlement. Second, though the net settlement amount will not award settlement class members the full value of penalties Class counsel sought on their behalf (e.g., record keeping and Labor Code §

203 30-day waiting time penalties), it will provide each settlement class member a significant portion of them.[3]

The likelihood of recovering damages and penalties in this case always was uncertain. *Cf. Lewis v. Newman,* 59 F.R.D 525, 528 (D.D.N.Y. 1973) (noting complex litigation "is notably difficult and notoriously uncertain"); *West Virginia Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d. Cir.), *cert. denied,* 404 U.S. 871 (1971) ("no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). The prospect of recovering <u>all</u> damages and <u>all</u> penalties for Plaintiffs' off-the-clock claim was uncertain because, among other things, Polo asserted strong affirmative defenses and mustered evidence suggesting it had a good faith basis for its defense that loss prevention inspection time at issue was "*de minimis*," and thus not compensable.

Further, the prospect of prevailing on the missed rest break claims was problematic because, among other things, the standards governing such claims are still being determined by the California Supreme Court in *Brinker.* Further, convincing <u>all</u> jurors that Polo "knowingly" failed to compensate <u>each</u> class member for <u>each</u> of the thousands of occasions it failed to provide them with a rest break would have been an extremely difficult task, particularly if the Supreme Court in *Brinker* were to accept the individualized analytic structure adopted by the appellate court. *Brinker* also raises questions about whether claims like those asserted by the Class, particularly in the rest break context, even may be maintained on a class-wide basis, raising the specter of a complete loss for the Class on such claims.

///

///

///

---

[3] Given the 33% claim submission rate, the payment to each Settlement Class Member from the net settlement funds will result in significant per person settlement awards. Rosenthal and Co. and Dr. Borhani will submit final declarations regarding individual awards before the hearing of this motion in August as final claims come in and their work is completed.

### 2. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation.*

Absent a settlement, further litigation would have been risky, expensive, complex and prolonged. Not only would the parties have had to complete the trial that was ongoing at the time of settlement, they also would have had to conduct extensive additional discovery (including expensive expert discovery) regarding the Class's missed rest break-related claims, and thereafter try what effectively would have been an entire new case. Further, in light of the numerous and diverse legal uncertainties in the case (as evident from both *Brinker* and the parties' numerous competing jury instructions), one or more appeals very likely would have been inevitable, regardless of the outcomes of the separate trials in this case. Such an unfortunate result would not only have delayed Class Members' receipt of *any* compensation (which compensation has been withheld from some Class Members for more than eight years), it also likely would have necessitated the generation of millions of dollars in additional attorneys' fees and hundreds of thousands of dollars in additional costs, all of which could have eroded the class's potential recovery in the event a settlement and/or verdict later was reached. By approving the settlement, the Court can guarantee a substantial recovery for all Settlement Class Members interested in obtaining such a recovery, and thereby avoid all the risks to which they otherwise would be subjected. *Cf. In re Veritas Software Corp. Sec. Litig.,* Master File No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other litigation risks supports approval of settlement).

### 3. *The Settlement was Negotiated and Approved Following Three Mediations and Extensive Settlement Negotiations.*

The parties managed to achieve settlement, mid-trial, after years of litigation, and only after their attorneys (experienced class action attorneys on both sides) completed three mediation sessions with highly regarded mediators (Judge Edward Infante (Ret.) and Catherine Yanni), in November 2008, October 2009 and February 2010. Ms. Yanni remained engaged in settlement discussions thereafter, until settlement was achieved during trial. The settlement was not the

product of overly hasty decision-making, collusion or cursory analysis, but of sustained advocacy and extensive arms-length negotiations.

In this regard, the belief of Class counsel that the settlement is reasonable, adequate and fair to all class members, while not dispositive, "is entitled to considerable weight." *Boyd v. Bechtel Corp.,* 485 F.Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v. Cambridge-Lee Industries, Inc.,* 630 F. Supp 482, 488 (E.D. Pa. 1985); *In re King Res.Co. Sec. Litig.,* 420 F.Supp. 610, 625 (D.Colo. 1976) ("Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching.")  (Kitchin Decl., ¶ 23-26.)

### 4.   *Risk of Maintaining a Class Action*

Maintaining a class action is an expensive and risky enterprise.  The possibility that any victory attained by Plaintiffs could be overturned also perpetually lingers.  *See, e.g., In re N. Telecom, Ltd., Sec. Litig.,* 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of litigation); *Robbins v. Koger Props, Inc.,* 116 F.3d 1441(11th Cir 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp.,* 113 F.3d 738 (7th Cir. 1997) (affirming the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of a 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed - after 11 years of litigation).  The instant settlement eliminates all of these risks.

### 5.   *Stage of the Proceedings.*

By the time the parties agreed to settle this case, this litigation had proceeded to the point where both Plaintiffs and Defendants "certainly ha[d] a clear view of the strengths and weaknesses of their cases."  *Warner Communications,* 618 F.Supp. at 745.  When the parties reached the

settlement during trial, Plaintiffs had been actively litigating the case for more than four years, and had conducted extensive informal and formal investigation and discovery. Further, Plaintiffs had essentially completed the presentation of evidence at trial for all of their claims, excluding the stayed rest break claims. Like all other factors, the stage of the proceedings and the amount of discovery completed thus also militate in favor of final approval. *See*, *e.g.*, *Chatelain v. Prudential-Bache Sec.,* 805 F.Supp. 209, 213-14 (S.D.N.Y. 1992).

### *6.     The Reaction of the Settlement Class Members to the Settlement.*

The reaction of Class Members to the settlement has been overwhelmingly positive. The excitement of Class Representatives and other Class Members who have orally communicated their enthusiastic approval of the settlement has been echoed by Class Members' response to the notice of preliminary approval. Specifically, to date 2,222 Class Members (more than 33% of the Class) have approved the settlement by submitting claim forms. By contrast, only one Class Member expressed her desire to be excluded from the settlement, for unstated reasons, and only one class member objected. Horton Decl., ¶¶ 28 and 29. Further, the one objector (Docket No. 304) protests the settlement largely because he is (ostensibly) concerned that the settlement will not cause Polo to cease its challenged employment practices on a nationwide basis. His objection thus is misguided because current and future employees and employees in other states are not class members. (Nevertheless, as Polo V.P. Ravi Motwani admitted, this lawsuit has prompted Polo to change its employment practices.)

The overwhelmingly positive response to the settlement strongly supports approval of the settlement. *See, e.g., Heritage Bond,* 2005 U.S. Dist. LEXIS 43555 AT *34-35; *Warner Communications,* 618 F.Supp at 746; *Milstein v. Huck,* 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *In re Pain Webber Ltd. Pships, Litig.* 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd,* 117 F.3d 721 (2d Cir. 1997).

///

///

///

C. The Court Should Approve The Plan Of Allocation As Fair And Adequate To The Class

The trial court has sound discretion to approve the plan of allocation of a settlement fund. *In re Equity Funding Corp. Sec. Litig.,* 603 F.2d 1353, 1362 (9th Cir. 1979). However, a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Heritage Bond,* 2005 U.S. Dist. LEXIS 13555 AT *38. This is a "practical and flexible" standard within the discretion of the court. *Broadcom,* 2005 U.S. Dist. LEXIS 41976 at *7. Assistance of experts in developing the plan of allocation also supports approval. *Id.* at *5 (granting approval of plan of allocation based upon expert consultation).

*1. The Plan of Allocation is Fair.*

Here, the Class is represented by experienced and competent class counsel. (See, Docket Nos. 294 and 296.) They developed a proposal for allocation of settlement proceeds only after extensive analysis of the fairest way to distribute them. Further, the plan of allocation was developed with the assistance of an expert in statistics (Dr. Hossein Borhani, Ph.D.). Under the plan of allocation, Class Members who submitted valid claims will be entitled to a recovery that takes into account the precise duration of their employment at Polo. (Docket No. 281, Exh. A, Attachment 2.) In the estimation of Class counsel, the plan of allocation is fair and reasonable, and no Class Member (even the one objector) has contended otherwise. *See* Kitchin Decl., ¶ 26.

For those members of the Misclassification Subclass and the Arrears Subclass who submitted valid claims, they will receive a full 50% of the full value of their subclass-based claim.

A relatively small number of claims are still being processed at this time. Horton Decl., ¶¶ 32, 33 and 35. Once those claims are received and/or processed, Rosenthal & Company will provide the claims submission data to Dr. Borhani to calculate the value of each Settlement Class Member's share of the recovery. Plaintiffs will submit a supplemental declaration from Ms. Horton on or about August 13, 2010, which will set out the final data regarding valid claims made. Plaintiffs will also submit a declaration by Dr. Borhani that sets forth his calculations of claim values for Settlement Class Members at or about the same time.

### 2. The Payment of Service or Incentive Payments to the Three Class Representatives Is Fair.

The proposed $20,000 incentive payments to the three class representatives is fair in light of the risk they assumed, the time they devoted to the Class's cause, and the substantial assistance they provided to Class counsel up to and including during trial. (Kitchin Decl. ¶¶ 12-22.) The incentive payments also are consistent with those provided in other similar cases.[4]

### 3. The Payment of Service or Incentive Payments to the Class Members Who Testified at Trial Is Fair.

The 25 Class Members who testified at trial invested their time to further the interests of their fellow Class Members. Most of them met with Class counsel on more than one occasion before trial, helping to educate counsel about relevant experiences in stores across California. Most of them travelled a great distance to attend trial in San Francisco; many were required to stay overnight, away from their homes and families. Awarding them $500 service payments, though perhaps inadequate to compensate them for their time, is both reasonable and fair.

### 4. The Payment of Plaintiffs' Attorneys' Fees and Costs Is Fair.

Plaintiffs' attorneys' fees and litigation costs are reasonable for the reasons set forth in Class counsel's contemporaneously set motion for fees and reimbursement of costs.

### 5. The Payment of Claims Administrative Costs Is Fair.

The fees charged by Rosenthal & Company (claims administration) and Dr. Hossein Borhani (claims calculation) are fair. Given the complexity of the claims process, the large number of Class Members and the need to evaluate claim values in a fair and even-handed way based on each Settlement Class Member's employment history at Polo, the settlement could not be managed appropriately without the involvement of these well-respective experts.

---

[4] In the *Toni Young v. Polo Ralph Lauren Corporation* employee uniform class action, Judge Vaughn Walker awarded Ms. Young a $25,000 service or incentive award. That case settled long before trial. (Case No.: C02-4546 VRW.)

### IV. Conclusion

The settlement is fair, reasonable and adequate, and it should be approved as it was negotiated among the parties. The settlement is the product of over four years of litigation and offers substantial benefits to the Class. The only objection timely submitted should be overruled because it is based on a misunderstanding of the law, facts and history of this litigation, and does not identify any real deficiencies in the settlement.

Respectfully submitted,

Dated: July 23, 2010                   THE LAW OFFICE OF PATRICK R. KITCHIN

/s/ *Patrick R. Kitchin*
By:_____
     Patrick R. Kitchin
Attorneys for Plaintiffs Janis Keefe,
Corinne Phipps, Renee Davis and
the Certified Plaintiff Class

Dated: July 23, 2010                   LAW OFFICES OF NANCY E. HUDGINS

/s/ *Nancy E. Hudgins*
By:_____
     Patrick R. Kitchin
Attorneys for Plaintiffs Janis Keefe,
Corinne Phipps, Renee Davis and
the Certified Plaintiff Class