Patrick R. Kitchin (SBN 162965)
**THE LAW OFFICE OF PATRICK R. KITCHIN**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
Telephone:    (415) 677-9058
Facsimile:    (415) 627-9076

Nancy E. Hudgins, Esq. (SBN. 85222)
Matthew M. Grigg, Esq. (SBN 195951)
**LAW OFFICES OF NANCY E. HUDGINS**
565 Commercial Street, 4th Floor
San Francisco, CA 94111
Telephone:  415-979-0100
Facsimile:  415-979-0747
**Attorneys for Plaintiffs**
**Janis Keefe, Corinne Phipps, Renee Davis and**
**The Certified Plaintiffs' Class**

William J. Goines (SBN 061290)
**GREENBERG TRAURIG, LLP**
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
**Attorneys for Defendants Polo Ralph Lauren**
**Corporation; Polo Retail, LLC; Polo Ralph Lauren**
**Corporation, doing business in California as Polo**
**Retail Corporation; and Fashions Outlet of America,**
**Inc.**

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN OTSUKA, et al.<br><br>        Plaintiffs,<br>v.<br><br>POLO RALPH LAUREN CORPORATION, a Delaware Corporation; et al.,<br><br>        Defendants. | Case No.  C07-02780 SI<br><br>**STIPULATION AND [PROPOSED] ORDER MODIFYING THE SETTLEMENT AGREEMENT**<br><br><br>Judge:  Hon. Susan Illston |

Plaintiffs Janis Keefe, Corinne Phipps, Renee Davis and the Certified Plaintiff Class ("Plaintiffs") and Defendants Polo Ralph Lauren Corporation, Polo Retail, LLC, Polo Ralph Lauren Corporation, doing business in California as Polo Retail Corp. and Fashions Outlet of

America, Inc. ("Polo" or "Defendants") hereby seek the Court's approval of a modification of the settlement agreement in this wage and hour class action case.

## I. Background

A.  <u>The Settlement Agreement Provides For A $5,000 Cap On Recovery For Loss Prevention Waiting Time And Missed Rest Breaks.</u>

In their settlement agreement, the parties agreed to place a $5,000 (Five Thousand Dollar) cap on recovery for loss prevention waiting time and missed rest breaks for all Settlement Class Members. (Docket No. 281, Exhibit A, page 9, ¶ 5(C).) The parties set the cap at $5,000 to avoid giving Class Members a windfall if only a small portion of the Class submitted claims. For example, if only 10% of the Class had submitted claims, individual recoveries would have exceeded the total value of all claims made on their behalf.[1]

The parties agreed any settlement funds remaining after application of the $5,000 cap would be designated as a charitable contribution to the "State of California's Labor & Workforce Development Agency's General Funds, to be used at the Agency's discretion for programs designed to protect and improve the well-being of California's current and future workforce." (*Id.*)

The settlement proceeds distribution model developed by the parties, through Dr. Hossein Borhani, Ph.D., and approved by the Court in its Order granting preliminary approval of the settlement (Docket No. 286.), assigns a value to each day or shift worked by Settlement Class Members based on the number of valid claims submitted. Dr. Borhani has now calculated the net cash settlement value available to compensate Settlement Class Members for loss prevention waiting time and missed rest breaks. The net settlement value was computed by reducing the gross settlement ($4 million) by the following: incentive and service payments to Class Members; portions set aside for members of the Misclassification and Arrears Settlement Subclasses; claims administration fees; claims analysis service fees; and attorneys' fees and costs.

---

[1] 34.5% percent of the Class actually submitted timely claims, resulting in a reasonable per day or shift recovery rate of $9.60 per shift. A 10% response rate would have resulted in a per shift rate of more than three times his value.

After these reductions, the net settlement value is $2,192,250. When this net settlement value is divided by the total number of days or shifts worked by Settlement Class Members, each work day or shift is valued at $9.60. Thus, if a Settlement Class Member worked 100 shifts, her recovery for loss prevention waiting time and missed rest breaks would be $960 (100 shifts times $9.60 per shift).

To reach the $5,000 cap on this portion of the Class recovery, a Settlement Class Member would need to have worked a total of 521 shifts. Any shifts worked in excess of 521 by a Settlement Class Member would not result in additional compensation for those extra shifts. Thus, a Settlement Class Member who worked 1,300 shifts would receive the same recovery as a Member who worked 521 shifts.

B.   S*eventy-Five Settlement Class Members Would Be Adversely Affected By The $5,000 Cap.*

Based on the payroll and timekeeping analyses Dr. Hossein Borhani performed after the claim period expired earlier this month, the parties have determined that the settlement recovery for 75 Settlement Class Members would be adversely affected by the $5,000 recovery cap. If subjected to the $5,000 cap, these 75 Settlement Class Members would forfeit more than $208,329 for shifts they worked in excess of 521.

But for the recovery cap, 16 Settlement Class Members would be entitled to over $10,000. Fifty-nine Settlement Class Members would be entitled to a recovery between $5,001 and 9,999.

In their settlement agreement, the parties indicated that the net settlement funds that remained after applying the $5,000 cap would be designated a charitable contribution to the "State of California's Labor & Workforce Development Agency's General Funds, to be used at the Agency's discretion for programs designed to protect and improve the well-being of California's current and future workforce." (Docket No. 281, Exhibit A, page 9, ¶ 5(C).)

The parties now agree and request Court approval to modify section 5(C) of the settlement agreement to eliminate the $5,000 recovery cap. This modification would result in the payment of approximately $208,329 to those 75 Settlement Class Members affected by the

recovery cap who worked more than 521 shifts during their employment with Polo during the class period. The parties agree that the reallocation of $208,329 to 75 Settlement Class Members instead of to the State of California would result in a more equitable distribution of the net settlement funds.

C.  *Lifting The Settlement Cap Would Not Adversely Affect Any Other Class Member, But, Instead, Would Fairly Compensate Settlement Class Members Who Worked Longest For Polo.*

No other Settlement Class Member will be affected by lifting the $5,000 recovery cap. The remaining net settlement funds, which had been designated for donation to the State of California, simply will now be reallocated and divided among the 75 Settlement Class Members based on the number of days or shifts they worked.

## II. Stipulation

Plaintiffs and Polo, by and through their attorneys of record hereby stipulate to <u>delete</u> from section 5(C) of the settlement agreement the following language:

> If the number of Settlement Class Members submitting timely claims would result in a proportional award in excess of $5,000.00 for any Settlement Class Member, the Net Settlement Amount remaining after Settlement Awards shall be designated as a charitable award to the State of California's Labor & Workforce Development Agency's General Funds, to be used at the Agency's discretion for programs designed to protect and improve the well-being of California's current and future workforce.

///
///
///
///
///
///
///
///

Based on this modification, and upon the Court's final approval of the settlement, all Settlement Class Members will receive a portion of the net settlement funds in accordance with the total number of days or shifts they worked for Polo during the class period. With the Court's approval, their individual recoveries for loss prevention waiting time and missed rest breaks will not be capped at any specific level.

IT IS SO STIPULATED,

DATED: August 19, 2010         THE LAW OFFICE OF PATRICK R. KITCHIN

                               By:  /s/ *Patrick R. Kitchin*
                                    PATRICK R. KITCHIN
                                    Attorneys for Janis Keefe, Corinne Phipps
                                    and Renee Davis and the Certified Class


DATED: August 19, 2010         GREENBERG TRAURIG, LLP

                               By:  /s/ *William J. Goines*
                                    WILLIAM J. GOINES
                                    CINDY HAMILTON
                                    Attorneys for Attorneys for Defendants
                                    Polo Ralph Lauren Corporation; Polo
                                    Retail, LLC; Polo Ralph Lauren
                                    Corporation, doing business in California
                                    as Polo Retail Corporation; and Fashions
                                    Outlet of America, Inc.

**[PROPOSED] ORDER**

IT IS SO ORDERED.

DATED: __8/27/10_____        _____
                                      Honorable Susan Illston
                                      Judge, United States District Court